IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,                )
         Plaintiff,        )
                            )
v.                            )        Case. No. 20-cv-4084-EFM-TJJ
                            )
                            )
STATE OF KANSAS, et al.,       )
         Defendants.       )

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Doc. 5)**

The State of Kansas and Legislative Administrative Services ("LAS") submit this Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5).[1] Plaintiff Chris Haulmark's Motion for Temporary Restraining Order and Preliminary Injunction fails to establish a clear and unequivocal right to relief under the heightened burden applicable for the extraordinary and disfavored relief sought.  Haulmark's  Motion seeks an order enjoining defendants "to immediately develop . . . a policy requiring online broadcasting" of proceedings of the Kansas Legislature to have captioning.[2]  Haulmark complains that legislative proceedings are contained in audio-only files and complains that the auto-generated captioning placed on legislative proceedings when those proceedings are streamed to YouTube are less than perfect.[3] While the ADA does not require a public entity to adopt

---

[1] Defendants submit this Motion without waiving any defenses they may wish to raise in a timely Rule 12 motion which is not due until February 22, 2021. Doc. 13 [text entry]. Tom Day, named as a Defendant in the Complaint, has filed a Motion to Quash regarding the propriety of the attempted service on him, Doc. 8, which is not yet ripe for decision by the Court.

[2] Doc. 5, Exh. 3.

[3] Doc. 5, at ¶¶ 7-8; Doc. 1, at ¶ 20 (alleging the YouTube captioning lacks "errorless accuracy.").

any particular form of accommodation, the Legislature already has a policy of offering

ADA accommodations upon request,[4] a policy that information technology projects be

ADA-complaint,[5] a December 19, 2019, resolution from the Legislative Coordinating

Council to improve ADA-accessibility,[6] and as the Complaint and Motion obliquely

acknowledge,[7] a $2.74 million technology project designed to achieve real-time closed

captioning on legislative activities streamed on the Internet, soon replacing the

complained of audio-only and YouTube streams with a system Haulmark acknowledges

has produced effective communication for other State Legislatures.[8] Haulmark's Motion

fails for lack of a present case or controversy, and failure to show the required elements

for the extraordinary injunctive relief sought against activities of a State Legislature.

"There is no point in ordering an action that has already taken place."[9] The Motion must

be denied for lack of jurisdiction and for failure to meet the high threshold for the

disfavored injunction sought.

## I.      Applicable Legal Standard

"As a preliminary injunction is an extraordinary remedy, the right to relief must be

clear and unequivocal."[10] To be entitled to entry of a preliminary injunction pursuant to

---

[4] Doc. 1, ¶¶ 3, 15; Doc. 1, Exhibit 1.

[5] Doc. 1, at ¶ 35.

[6] Declaration of Thomas Day, at ¶ 3; Day Exhibit A; *see* Doc. 1, at ¶ 48. The Declaration is attached hereto.

[7] Doc. 1, at ¶ 57; Doc. 5, at ¶ 6

[8] Doc. 1, at ¶ 18 (referring to Sliq Media Technologies as providing effective communication and accurate real-time captioning of legislative proceedings in Arkansas and Virginia); Declaration of Alan Weis, attached hereto (referring to use of Sliq for the Kansas Virtual Statehouse Project).

[9] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1112 (10th Cir. 2010) (quoting *Southern Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 728 (10th Cir. 1997)).

[10] *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018) (citation omitted); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established."); *Heritage Family Church, Inc. v. Kansas Dept. of Corrections,* No. 18-1259-EFM-KGG, 2018 WL 6065248, * 3 (D. Kan. Nov. 20, 2018) (citing *N.M. Dept. of Game and Fish v. U.S. Dept. of the Interior,* 854 F.3d 1236, 1245 (10th Cir. 2017)).

Fed. R. Civ. P. 65, the moving party must establish that: (1) the movant is substantially likely to prevail on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) (3) the injunction, if issued, would not be adverse to the public interest.[11]

The limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."[12] The Tenth Circuit has identified disfavored preliminary injunctions which "require a stronger showing by the movant – viz., movants must satisfy a heightened standard."[13] These disfavored injunctions are: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[14] An injunction is mandatory if the requested relief "affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."[15] Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[16] "Furthermore, because a historically disfavored preliminary injunction operates

---

[11] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009); *Heritage Family Church, Inc.*, 2018 WL 6065248, at * 3 (citing *First W. Capital Mgt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)).
[12] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).
[13] *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Heritage Family Church, Inc., at * 3* (citation omitted).
[14] *Heritage Family Church, Inc., at * 3* (quoting *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012)).
[15] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 979 (10th Cir. 2004) (en banc) (citation omitted, subsequent history omitted).
[16] *Id.,* at 975.

outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified-likelihood-of-success-on-the-merits standard."[17]

Haulmark's Motion fails to meet the heightened standard of showing a clear and unequivocal right to relief particularly as to the relief sought which represents more than one disfavored form of injunction. Haulmark's Motion seeks mandatory relief --- an order requiring Tom Day, Director of LAS, to take affirmative action.[18] If granted, it would provide him all the relief he could recover at the conclusion of a full trial on the merits. Haulmark is asking the Court to order Tom Day do something that either has already been done – adopt ADA policies where the Legislature already has several – and/or do what is already being done – complete implementation of the Kansas Virtual Statehouse Project which is well underway and scheduled for completion on or before February 28, 2021. There is no point in such an order, for which the Court has no jurisdiction in any event.[19]

## II. Statement of Facts

### A. The $2.74 Million Kansas Virtual Statehouse Project

The Legislature has contracted for and is engaged in a $2.74 million technology project termed the Kansas Virtual Statehouse Project which has a contractual deliverable of an ADA-compliant system, consistent with the State's Policy (ITEC Policy 1210) that

---

[17] *Id., a*t 975-76; *Heritage Family Church, Inc., at * 3* (citing *O Centro*). Plaintiff's statement at paragraph 32 of his Motion that he may rely upon a more lenient standard is incorrect.

[18] Doc. 5, at ¶ 37, Exhibit 3; *Heritage Family Church, Inc.,* at * 4 (citing *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009)).

[19] *Silvery Minnow,* at 1112 (10th Cir. 2010) ("There is no point in ordering an action that has already taken place.")(citation omitted).

state technology projects be ADA-compliant, to include real-time closed captioning of Kansas legislative proceedings streamed on the Internet.[20]  The contract was signed by the Legislative Coordinating Council ("LCC"),[21] on November 19, 2020 after the LCC gave its final approval of the project, and installation begun on an expedited basis the same day.[22] A project normally taking nine months was pressed forward in six weeks.[23] As per state purchasing law, the $2.74 million system was subject to the state bidding process whereby a request for proposal was written and posted by September 25, 2020, bids solicited, received and reviewed, vendor demonstrations scheduled, and a vendor selected.[24] The RFP includes provisions for accessibility, including compliance with ITEC Policy 1210.[25] Robert Cooper of the Kansas Commission on the Deaf and Hard of Hearing was invited to the vendor presentations and provided input.[26] Funding for the Project had to be requested and approved, a process involving several presentations to the Legislative Joint Budget Committee and the LCC, including at least two separate approvals of the project by the LCC.[27] As required by Kansas statute, the Project was reviewed for compliance with legislative information technology policies, including but not limited to ITEC Policy 1210.[28] Because the Statehouse is a historic structure, the Kansas Historical Society was also involved in the Project.[29]

---

[20] Declaration of Tom Day, at ¶¶ 7-12, with Exhibits E, F, H; Declaration of Alan Weis, with attached ITEC Policy 1210, referred to in the Complaint (Doc. 1 at ¶ 35).
[21] Day Exhibit H, Agreement, at § 3.
[22] Day Declaration, at ¶¶ 11-13; Weis Declaration, at ¶ 2.
[23] Weis Declaration, at ¶ 4.
[24] Day Declaration, at ¶¶ 8-10.
[25] RFP, at p.15, items 30-32, Exhibit E to Day Declaration.
[26] Day Declaration, at ¶ 9.
[27] Day Declaration, at ¶¶ 5-7.
[28] K.S.A. 75-7208(a); Weis Declaration, at ¶ 3; Weis Exhibit 1.
[29] Day Declaration, at ¶ 5.

World Wide Technology was selected as the successful vendor; WWT is utilizing subcontractors to complete the Project, involving approximately 100 employees.[30]  The Project has already been paid for in the amount of $2,724,076.77.[31] Hundreds of pieces of equipment were ordered, shipped and installed in all thirteen separate committee rooms, two legislative chambers, ten conference and training rooms and two rooms in the visitor center.[32] A successful captioning project requires that the hardware be sufficient for ensuring adequate audio and visual streaming; updating the rooms involved was the essential first step in the Project.[33] The system went up on January 6, 2021[34] and was tested on an expedited basis.[35] During the first two weeks of the legislative session, the testing process was delayed when the vendor had to quarantine two employees due to COVID; three days were lost because of the Martin Luther King Holiday and two days upon which the Statehouse was closed due to security concerns related to the Inauguration.[36] The captioning is provided by the Webex system, which will be streamed into the Sliq system where the audio, video and text will be made available to the public.[37] The goal will be at least 95% accuracy.[38] The contract calls for the project to be complete on or before February 28, 2021.[39] Director Day will work with the Kansas Commission of Hard of Hearing and the State ADA Coordinator  to ensure the Project works as designed

---

[30] Weis Declaration, at ⁋ 5.
[31] Day Declaration, at ⁋ 14; Day Exhibit H, Agreement at § 1.10.1.
[32] Weis Declaration, at ⁋ 4.
[33] Weis Declaration, at ⁋ 4; *see* Exhibit E to Day Declaration (KS VSP RFP).
[34] Weis Declaration, at ⁋ 5.
[35] Weis Declaration, at ⁋ 5.
[36] Weis Declaration, at ⁋ 5.
[37] Weis Declaration, at ⁋ 6.
[38] Id.
[39] Day Declaration, Exhibit H; Weis Declaration, at ⁋ 6.

and offers a means of effective communication for all as specified in the contract and ITEC Policy 12.0 requiring ADA compliance.[40]  Any remaining issues will be addressed.[41]

The Kansas Virtual Statehouse Project is a continuation of and authorized in part by the December 19, 2019, resolution of the LCC authorizing Tom Day to work towards improving the quality of legislative proceedings made available on the Internet, including addressing concerns about accessibility.[42] The LCC is a body created by statute.[43] Since December 2019, Day has requested and received additional authorization through several presentations to the Legislative Joint Budget Committees and the LCC, receiving LCC authorizations to proceed on  September 16, 2020 and November 19, 2020.[44]  The LCC through its Chair Ron Ryckman signed the contract for the Project.[45]

Usually, video and audio from legislative proceedings are streamed to YouTube in near real time and given auto-generated captions quickly, generally within 24-hours of posting.[46] Neither Day nor LAS controlled the captioning of legislative proceedings posted on the Legislature's YouTube channel.[47] Haulmark has complained that the auto-generated captions must contain "errorless accuracy."[48] Haulmark has expressed to Day that any captioning must be "100% accurate."[49]

When the Kansas Virtual Statehouse Project is complete, there will no longer be audio-only streams of legislative proceedings.[50]  The audio and visual streams with the

---

[40] Day Declaration, at ¶ 27.
[41] *Id.*
[42] Day Declaration, at ¶¶ 3-4; Exhibit A.
[43] K.S.A. 46-1201, *et seq.*
[44] Day Declaration, at ¶¶ 5-7; Exhibits B-D.
[45] Day Exhibit H, Agreement at § 3.
[46] Weis Declaration, at ¶ 7.
[47] *Id.*
[48] Doc. 1, at ¶ 20.
[49] Day Declaration, at ¶ 24; Exhibit M.
[50] Weis Declaration, at ¶ 8.

real-time closed captioning will be made available to the public through the Legislature's Website utilizing technology from Sliq,[51] rather than through YouTube.[52]

The Kansas Legislature is one of three branches of Kansas government created by the Kansas Constitution,[53] consisting of a 125-member House and a 40-member Senate.[54] They are assisted by more than 154 regular staff and 185 temporary session staff.[55] The current legislative session began January 11, 2021 with all new legislation as legislation did not carry over from prior sessions.[56] LAS and its Director Tom Day carry out administrative duties for the Legislature upon direction from the  LCC.[57]

Since the COVID Pandemic was declared by the World Health Organization on March 11, 2020, the Kansas Legislature, Governor and Judicial Branch have been proceeding under emergency orders.[58]  Due to COVID, some of the 165 legislators are participating in legislative proceedings remotely under detailed recommendations to attempt to ensure safety during the Pandemic conditions.[59]

### B.    Background Facts

The Kansas Legislature is committed to accommodating all Kansas citizens, including those with disabilities, as per the Americans with Disabilities Act ("ADA"). As

---

[51] Weis Declaration, at ¶¶ 6-7.  Plaintiff's Complaint (Doc. 1) includes exhibits 8-10 from the Governor's budget report relating to legislative expenditures referring to the Kansas Legislative Information Services System "which includes the website for the Kansas Legislature and the streaming of legislative meetings on the web."

[52] Weis Declaration, at ¶¶ 6-7.

[53] Kan. Const., art. 1-3.

[54] "About the Kansas Legislature," at www.kslegislature.org, subject to judicial notice as per Fed. R. Evid. 201. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224-25 (10th Cir. 2007).

[55] Day Declaration, at ¶ 26.

[56] Kan. Const. art. 2, § 8; Day Declaration, at ¶ 25.

[57] K.S.A. 46-1212a; Day Declaration, at ¶ 2.

[58] *See, e.g.,* Kansas Supreme Court Administrative Orders relating to the COVID-19 Pandemic referencing the WHO Declaration and state measures regarding the Pandemic available at kscourts.org, subject to judicial notice as per Fed. R. Evid. 201. *O'Toole,* at 1224-25.

[59] Day Declaration, at ¶ 26; Exhibit N.

per its posted ADA Notice,[60] the Legislature provides qualified interpreters upon prior request.[61]   The agendas for legislative committee meetings which are posted on the Internet also contain an ADA notice notifying interested persons of the availability of accommodations and how to request them.[62] State technology projects are required to be ADA-compliant as per ITEC Policy 1210.[63] The Legislature works to meet the needs of disabled individuals, providing reasonable accommodations through auxiliary aids appropriate to the individual requestor's needs upon request as per the notice through an interactive process, as contemplated by the ADA.[64] Citizens participate in the legislative process through their elected representatives or the committee processes.[65]

In the past, LAS has provided qualified interpreters to Haulmark upon his prior request as per the ADA notice.[66] The only time an interpreter was not provided was on a single date when Haulmark gave no prior notice. No interpreter was available since there had been no prior notice.[67]

On or about November 1, 2019, Haulmark sent a request to Tom Day pursuant to the Kansas Open Records Act ("KORA")[68] asking LAS to produce professional transcripts for 13-pages of legislative proceedings, numbering nearly 900 separate proceedings.[69] Haulmark demanded that the transcripts be errorless or 100% accurate.[70] Day responded

---

[60] Doc. 1, at ⁋ 3; Day Declaration, at ⁋ 15; Exhibit I.

[61] The Complaint does not allege that Haulmark was denied an interpreter by Tom Day or the Legislature when he gave prior notice of his request, as per the Notice. Doc. 1. He was not. Day Declaration, at ⁋ 19.

[62] Day Declaration, at ⁋ 17; Exhibit K.

[63] Doc. 1, at ⁋ 35; Weis Declaration, at ⁋ 3; Weis Exhibit 2.

[64] Day Declaration, at ⁋ 15.

[65] "About the Kansas Legislature," at www.kslegislature.org, subject to judicial notice as per Fed. R. Evid. 201. The Court may take judicial notice of matters appearing on the Internet. *O'Toole,* at 1224-25.

[66] Day Declaration, at ⁋ 19.

[67] Doc. 1, at ⁋⁋ 28-31; Day Declaration, at ⁋ 19.

[68] K.S.A. 45-215, *et seq*.

[69] Day Declaration, at ⁋ 21; Exhibit L; Doc. 1, at ⁋ 39.

[70] *Id*.

that while KORA did not require production of the transcripts requested, he would produce specific transcripts of interest to Haulmark.[71] Day also offered to meet with Haulmark regarding his request.[72] Haulmark never responded to Day's offer to produce specific transcripts of interest.[73] This pattern was repeated.[74] Although Haulmark mentioned to Day in one email that he was following bills, Haulmark never identified any specific bills he was following or requested assistance relating to those bills.[75] Day met with Haulmark on December 5, 2019, and with Haulmark and the Commission on Deaf and Hard of Hearing on January 10, 2020, indicating that the Legislature was working on improving the captioning on legislative proceedings streamed on the Internet.[76]   The Legislature ended its 2020 session early due to COVID in mid-March, 2020 and has not met as a body until January 11, 2021.[77] This lawsuit was filed on December 16, 2020.[78]

### C.  Facts Alleged in Haulmark's Motion

The factual recitations in Haulmark's Motion are not supported by citations to evidence.[79] The Complaint itself, which is referred to, is unverified and insufficient to provide a basis for injunctive relief.[80] Haulmark's Affidavit is vague and conclusory, and

---

[71] *Id.;* Doc. 1, at ⁋ 40.

[72] Doc. 1, at ⁋ 40.

[73] Day Declaration, at ⁋ 22. The Complaint does not allege that Haulmark responded to Day's offer. *See* Doc. 1 at ⁋ 40.

[74] Day Declaration, at ⁋ 22.

[75] *Id.*

[76] Doc. 1, at ⁋⁋ 46, 48. Day, who is not a lawyer, denies making statements about the ADA attributed to him by Haulmark. Day Declaration, at ⁋ 23.

[77] Day Declaration, at ⁋ 25.

[78] Doc. 1.

[79] Doc. 5; *see* Guidelines for Motion Practice Before Judge Melgren, at 2 ("Statements of fact . . .shall contain a citation to the record. . ..), available at D. Kan., and subject to judicial notice herein as per Fed. R. Evid. 201.

[80] Doc. 5, at p.2, ⁋ 3 (referring to the requirement that allegations must be supported by a verified complaint or affidavit).

is not tied to the paragraphs of the Motion and does not support allegations made., including paragraphs 7 and 8 which are the apparent basis for the Motion.[81]

Haulmark does not allege that he made a request for accommodation since the start of the 2021 Kansas Legislative Session on January 11, 2021.[82] Neither the Motion nor Haulmark's affidavit point to any particular bill of interest that came before the Legislature in the January 11-15, 2021 period that he was unable to participate in, or that was subject to any critical, time-sensitive proceedings during that week.[83] Although each committee agenda bears an ADA Notice as to how to request accommodations,[84] Haulmark does not allege that he requested accommodations during the January 2021 Legislative Session.[85] No bills were passed between January 11 and January 15, 2021.[86]

## II.    Arguments and Authorities

### A.  Brief Summary of Argument

Haulmark's Motion fails to meet the required high standard of showing a clear and unequivocal right to the relief sought, particularly under the heightened standard applicable to the disfavored form of injunction sought here.[87] Haulmark has not demonstrated that he is substantially likely to prevail on the merits of his claim.[88]  The ADA only requires a public entity to make *reasonable* modifications or offer *reasonable* or *appropriate* accommodations upon request. The ADA does not require a public entity

---

[81] Doc. 5, at 3-4.
[82] Doc. 5; Doc. 5-1; Day Declaration, at ⁋ 18. Although Haulmark's Motion attaches an Affidavit from Kim Anderson as Exhibit 2, Ms. Anderson is not a party and does not allege that she personally made a request for accommodation since the start of the 2021 legislative session.
[83] Exhibit 1 to Motion, Doc. 5. The same is true for Anderson's, Exhibit 2.
[84] Day Declaration, at ⁋ 17; Exhibit K.
[85] *Id.* The same is true of Anderson, Doc. 5, Exhibit 2.
[86] Day Declaration, at ⁋ 17.
[87] *Heritage Family Church, Inc.,* 2018 WL 6065248, at ** 3-4, 9.
[88] Doc. 1, 5.

to give the requestor exactly what he or she demands; nor does the ADA require perfection. LAS through Day has offered reasonable and appropriate accommodations to Haulmark, including providing qualified interpreters upon prior request, offering to provide transcripts of specific proceedings of interest to Haulmark, providing auto-generated captions on legislative proceedings on YouTube and now the $2.74 million Kansas Virtual Statehouse Project which will provide accurate real-time closed captioning on legislative proceedings streamed on the Internet. As stated herein, Haulmark also fails to demonstrate the other three elements for the extraordinary relief sought.

### B.  Other Issues Bar the Requested Injunction

In addition to being factually and legally unsupported, the Motion asks for relief this Court cannot or should not grant. *First*, the request and proposed Order[89] are unclear as to what precise conduct is being enjoined, failing to meet the specificity requirements of Fed. R. Civ. P. 65(d).[90]  If an injunction is being sought that defendants will "follow the law," that is not an injunction this Court should grant.[91]

*Second*, under the demonstrated facts where the Legislature is actively engaged in a project to provide the captioning, a request that the Court order the defendants "enjoined to immediately develop, implement, promulgate, and comply with a policy requiring the online broadcasting equipment, streaming audio and audiovisual content of the legislative proceedings to be readily accessible with accurate and intelligible real-time captioning provided," as requested in Exhibit 3 is properly denied for lack of a current

---

[89] Doc. 5, at ₽ 37, Doc. 5, Exhibit 3.
[90] "Every order granting an injunction or restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."
[91] *Shook v. Board of County Comm'rs of County of El Paso,* 543 F.3d 597, 604 (10th Cir. 2008) ("injunctions merely requiring defendant to obey the law are too vague to satisfy Rule 65")(citation omitted); *Keyes v. School Dist. No. 1, Denver, CO,*  895 F.2d 659, 668 (10th Cir. 1990).

case or controversy as the requested injunction would have no effect in the real world.[92] The Legislature already has the policies Haulmark requests. The "policy" Haulmark wants was adopted via the LCC's December 19, 2019, Resolution. A policy of ADA compliance is expressed in the Legislature's ADA Policy and ITEC Policy 12.0. With the Kansas Virtual Statehouse Plan, the Legislature is completing the project as per policy. There is no point in ordering someone to do what has already been done.[93] Alleged past conduct is not a basis for injunctive relief.[94]  To obtain either declaratory or injunctive relief the Plaintiff must demonstrate a good likelihood of being injured in the future,[95] something Haulmark has not shown here. Standing and a case or controversy are lacking.[96]

*Third,* while the Court need not resolve this issue to decide this Motion which fails on other grounds, Plaintiff seeks to enjoin an individual, Tom Day.[97] Day is not a "public entity."[98] The legislative activities which are the subject of the proposed order are not

---

[92] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F3d 1096, 1112 (10th Cir. 2010) (citations omitted); *Crews v. Sawyer,* No. 19-2541-JWB, 2020 WL 1528502, **3-4 (D. Kan. Mar. 31, 2020) (prisoner's lawsuit seeking injunctive relief against Bureau of Prisons properly dismissed as moot when treatment requested was provided). *See Prison Legal News v. Fed. Bureau of Prisons,* 944 F.3d 868, 879-82 (10th Cir. 2019) (prisoners' challenge to prison rejection of 11 publications was rendered moot by the Bureau of Prison's revision of its institutional policies and allowing the publications at issue); *Brown v. Buhman,* 822 F.3d 1151, 1168 (10th Cir. 2016) (defendant's policy change regarding bigamy prosecutions rendered lawsuit moot, lacking a live dispute); *Unified Sch. Dist. No. 259, Sedgwick Cty., Kan. v. Disability Rights Ctr. of Kansas,* 491 F.3d 1143, 1149-50 (10th Cir. 2007) (dispute no longer presented a live case or controversy when records request at issue was voluntarily withdrawn).
[93] *Silvery Minnow*, at 1121 (challenges seeking injunctive and declaratory relief as to biological opinions were rendered moot when the opinions were withdrawn or superseded); *Crews v. Sawyer, 2020 WL 1528502, at ** 3-4* (plaintiff's complaints about medical treatment became moot when treatment was provided).
[94] *City of Los Angeles v. Lyons,* 461 U.S. 95, 104-05 (1983); *Tyler v. Kansas Lottery,* 14 F. Supp. 2d 1220, 1224 (D. Kan. 1998) (ADA plaintiff lacked standing to seek injunctive relief where he failed to show that he faced a "real and immediate threat" of future harm)(citing *Lyons,* at 105).
[95] *Barney v. Pulsipher,*143 F.3d 1299, n.3 (10th Cir. 1998) (citing *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991))(request for injunction properly denied where there was no "good chance" of likely future injury).
[96] U.S. Const., art. III, § 2.
[97] Exhibit 3 to Doc. 5.
[98] 42 U.S.C. § 12131 (1) defines "public entity" to mean "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government...." The definition does not mention individuals or individual public officials such as Day. The Complaint does not allege that Day is a public entity. Doc. 1, at ¶ 14.

*Day's* activities.[99] Although Haulmark asserts Day has unlimited power, that assertion is unsupported. Under the relevant statute, K.S.A. 46-1212a, Day works at the direction of the Legislative Coordinating Council.[100] Thus, assuming for the sake of argument the legal fiction of *Ex parte Young*[101] applies in this context where Congress has set forth a detailed remedial scheme, *Ex parte Young*, does not apply to allow for an Order against Day here where Day lacks the capacity to do what is being requested, even if so ordered.[102]

Further, the limited exception to State Eleventh Amendment immunity in *Ex parte Young* "is designed to end continuing violations of federal law," and thus, when there is "no ongoing violation of federal law a suit against a state officer – a suit the decision of which will as a practical matter bind the state – should be treated for what it is:  a suit against the state."[103] *Ex parte Young* does not permit federal courts to render a judgment that a state official violated federal law in the past.[104]   *Ex parte Young* also does not authorize a federal court to issue an injunction against a state official based upon alleged violations of state law.[105]  To date, Day has not even been properly served.[106] Although Haulmark refers to LAS, it is an administrative office operating only as per the direction

---

[99] Doc. 5, Exhibit 3 (referring to legislative activities). *See* 42 U.S.C. 12132 in relevant part provides "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in . . . the . . . programs or activities of a public entity, or be subjected to discrimination by any such entity."
[100] K.S.A. 46-1212a; Day Declaration, at ¶ 2.
[101] 209 U.S. 123 (1908).
[102] *Klein v. University of Kan. Medical Center,* 975 F. Supp. 1408, 1417 (D. Kan. 1997) (dismissing injunctive relief claims against state official sued in his official capacity as barred by the Eleventh Amendment where the official lacked the capacity to provide the relief sought under state statute).
[103] *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir. 1995) (citations and internal quotation marks omitted). .
[104] *Id.*, at 1553 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, __, 117 S. Ct. 684, 688 (1993)); *Sanders v. Kansas Dept. of Social and Rehab. Serv.,* 317 F. Supp. 2d 1233, 1243-44 (D. Kan. 2004) (for *Ex parte Young*, the violation must be ongoing; the Eleventh Amendment does not permit federal courts to render a judgment that a state official violated federal law in the past).
[105] *Johns,* at 1553 (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104-06 (1984)).
[106] Doc. 8.

of the LCC, lacking the capacity to sue or be sued as a matter of state law.[107] The proposed Order directed at "all persons of the Defendant State of Kansas," is too vague for a Rule 65 order.[108]  The requested order is also too broad as to the State, given that the activities at issue are legislative activities, activities of only one of three branches of Kansas government; no other  activities are at issue.[109]

If Haulmark is seeking an Order from this Court enjoining a State Legislature from holding legislative proceedings or ordering the Legislature to meet in person as is requested at paragraph 30 of the Motion, no authority has been provided for such an order.  This is also contrary to the ADA itself which provides that while a public entity is required to make reasonable modifications if necessary to avoid discriminating against a person with a disability, a public entity is not required to make modifications that would fundamentally alter the nature of its program or activity.[110]  An order that the Legislature stop its activities or be required to meet in person in a time of Global Pandemic as suggested in paragraph 30 of the Motion would not be reasonable or appropriate, even if it such an Order were consistent with separation of powers, federalism, legislative immunity, the Tenth Amendment and related concerns, which it is not.  Haulmark cites no authority that would allow the Court to order a state legislature how it can conduct its legislative business. Existing authority regarding similar requests is to the contrary.[111]

---

[107] K.S.A. 46-1212a. *See, e.g., Fugate v. Unified Govt. of Wyandotte County, Kan.,* 161 F. Supp. 2d 1261, 1266 (D. Kan. 2001) (dismissing court services as a defendant because it lacked capacity to sue or be sued under state law).

[108] *Compare* Doc. 5, Exhibit 3 *with* Fed. R Civ. P. 65(d).

[109] *See* Doc. 1, Doc. 5.

[110] 28 CFR Pt. 35.130(b)(7)(i); 28 CFR Pt. 35.164.

[111] *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–34 (1980) (state legislators acting in a legislative capacity are absolutely immune from the imposition of equitable remedies in a suit under 42 U.S.C. 1983).  *See New Orleans Water Works Co. v. City of New Orleans,* 164 U.S. 471, 481 (1896) ("[A] court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character."). *See, e.g., Leech Lake Citizens Comm. v. Leech Lake Band of Chippewa Indians,* 355 F. Supp. 697, 699 (D. Minn. 1973) ("The

### C. Haulmark's Motion Fails for Lack of Standing/Case or Controversy

Under Article III, this Court's jurisdiction is limited to cases or controversies.[112] "The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III.' "[113] Standing requires three elements: injury in fact, causation and redressability.[114] "Standing has been rejected . . . because the alleged injury is not 'concrete and particularized.'"[115] Speculation does not support standing.[116] "[A] plaintiff must demonstrate standing separately for each form of relief sought."[117] "[S]tanding is not dispensed in gross."[118] Self-inflicted injury does not support standing as the alleged injury is not "fairly traceable" to a defendant's unlawful conduct.[119]  As the party seeking jurisdiction, the Plaintiff has the burden of establishing standing.[120] The Plaintiff "must 'clearly . . . allege facts demonstrating' each element of standing."[121]

Haulmark's Complaint and Motion fail to "clearly allege facts demonstrating standing."[122]  The allegations of injury are vague and conclusory. Haulmark's Motion fails to identify any time-sensitive matter regarding a bill heard between January 11 and January 15, 2021, that he has missed out on due to any issues with the YouTube

---

Court is without authority to enjoin the Legislature from ratifying the agreement. The doctrine of Separation of Powers forbids it.")

[112] U.S. Const., art. III, § 2 (the judicial power is limited to cases or controversies).

[113] *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

[114] *Goico v. U.S.F.D.A.,* 20-1248-JAR-KGG, 2020 WL 7078731, * 6 (D. Kan. Dec. 3, 2020) (citing *Lujan,* at 560-61).

[115] *Cuno,* at 344 (quoting *Lujan,* at 560).

[116] *Id.*

[117] *Id.,* at 352 (citing *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 185 (2000); *Lyons,* at 109).

[118] *Id.,* at 353 (quoting *Lewis v. Casey,* 518 U.S. 343, 358, n.6 (1996)).

[119] *Clapper v. Amnesty Int'l, USA,* 568 U.S. 398, 418 (2013).

[120] *Lujan,* at 561.

[121] *Goico,* at * 6 (citing *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)).

[122] *Id.*

captioning. Haulmark has also not shown that any alleged injury will be ongoing, particularly given the Kansas Virtual Statehouse Project. It is speculative to say otherwise. More importantly, since Haulmark did not request accommodations from Day for January 11-15, his injuries if any from allegedly not being able to participate in legislative activities that week are self-inflicted. They are not fairly traceable to Tom Day's actions. Most importantly, Haulmark has not shown that the requested order, Exhibit # 3, will likely redress any alleged injury. Haulmark fails to clearly allege facts to meet his burden of demonstrating standing, particularly for the injunctive relief sought.

### D. Haulmark Fails to Show a Clear and Unequivocal Right to Relief

Aside from the threshold issue of jurisdiction, Haulmark cannot make the required showing that he is substantially likely to succeed on the merits. Haulmark failed to comply with the procedure for requesting accommodation for any proceeding in the legislative session that began January 11, 2021.[123]   Haulmark's lawsuit and this Motion are also premised upon the faulty assumption that the ADA entitles him to exactly what he requests when he requests it. However, that is not the law and as discussed below, the Tenth Circuit has repeatedly rejected this contention.

Title II provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such

---

[123] Day Declaration, at ⁋ 18. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) ("the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request'")(citing and quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001)). *See, e.g., Baker v. State of Louisiana through Guste,* Civ. A. No. 91-1784, 1992 WL 510773, * 4 (W.D. La. Sept. 8, 1992), *aff'd,* 9 F.2d 103 (5ᵗʰ Cir. 1993) (rejecting ADA and RA claim against the State and state court judge for failure to provide an interpreter where plaintiff failed to request an interpreter in advance, holding that the plaintiff could not make such a claim where she had failed to avail herself of the specified procedure for making such a request).

entity."[124]  In relevant part, "public entity" means (A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government."[125] A public entity is asked to make reasonable or appropriate modifications and accommodations to allow the disabled to participate in its programs but is not required to make fundamental or substantial modifications to its programs or to incur an undue burden.[126] The public entity is to take "appropriate steps" to provide for effective communication[127]  and "and shall furnish appropriate auxiliary aids and services were necessary to afford individuals with disabilities ...an equal opportunity to participate in . . . a service, program or activity of a public entity."[128]  While the disabled person's preference is considered, the type of auxiliary aid which is appropriate will vary with the situation.[129] The regulation contains a non-exhaustive list of options for appropriate auxiliary aids.[130] The disabled person is not entitled to the accommodation he or she prefers.[131]  The  ADA does not require "equal results."[132] The

[124] 42 U.S.C. § 12132.
[125] 42 U.S.C. § 12131.
[126] *Alexander v. Choate,* 469 U.S. 287, 300 (1985); 28 CFR Pt. 35.130(b)(7).
[127] 28 CFR Pt. 35.160(a)(1).
[128] 28 CFR Pt. 35.160(b)(1).
[129] 28 CFR Pt. 35.160(b)(2); *Cropp v. Laramie County,* No. 18-1262, 793 Fed. Appx. 771, 773 (10th Cir. 2019).
[130] 28 CFR Pt. 35.104.
[131] 28 CFR Pt. 35.160(a), (b)(1); *Cropp,* at 777-85; *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1265 (10th Cir. 2018) (citing *Barber v. Colorado Dept. of Revenue,* 562 F.3d 1222, 1232 (10th Cir. 2009)*; Nunes v. Mass. Dept. of Corrections,* 766 F.3d 136, 146 (1st Cir. 2014) (a disabled person is "entitled to reasonable accommodation, not to optimal ones fine-tuned to his preferences," citing *JD ex rel. JD v. Pawlet School Dist.,* 224 F.3d 60, 71-72 (2d Cir. 2000) (disabled child's parent's request for an accommodation for the "best" education failed to state a claim)); *Barber,* 562 F.3d  at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633-34 (9th Cir. 1999).
[132] *Alexander v. Choate,* 469 U.S. at 304; *Havens,* 897 F.3d at 1263.

ADA does not require perfection.[133] The standard is one of "meaningful access."[134] "[T]the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.'"[135]  Plaintiff bears the burden of showing discrimination and that the accommodations offered were not reasonable.[136]

In addressing requests for mandatory injunctive relief in a Title II ADA case against the City of Manhattan, Kansas after a full trial on the merits, Judge Dale Saffels of this Court recognized that such relief is subject to a stricter standard and  "should be granted only under compelling circumstances because it is a harsh remedial process not favored by courts."[137]  "[M]andatory injunctions are not granted in doubtful cases in which the facts and law do not clearly favor the moving party."[138] Even where the Court may be of the view that the law has been violated, if a public entity is making "dutiful progress," the Court should "exercise restraint" and withhold injunctive relief.[139]

Haulmark cannot legitimately argue that Day failed to accommodate his alleged desire to participate in the 2021 Legislative Session the week of January 11-15 when Haulmark made no request for accommodation as per the notice.[140]  Haulmark is vague about specifically what, if anything, he missed out on in terms of legislative activity

---

[133] *Cropp,*  at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7  (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs,* No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva).*
[134] *Alexander v Choate,* 469 U.S. at 301; *Havens,* at 1263.
[135] *Kiman v. New Hampshire Dep't of Corr.,* 451 F.3d 274, 283 (1st Cir. 2006) (citing and quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001)).
[136] *Havens,* at 1263; *Memmer,* at 634.
[137] *Tyler v. City of Manhattan,* 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).
[138] *Id.* (citation omitted).
[139] *Id.* (citation omitted).
[140] Day Declaration, at ¶ 18. Although not a Plaintiff, Anderson made no request. Doc. 5, Exh.2.

occurring that first week of the session;[141] no bills were passed during that week.[142] Assuming the YouTube captioning were imperfect, 100% accuracy or perfection is not what the ADA requires; rather the standard is one of meaningful access. As to the proceedings that were not conveyed to YouTube because of technical error, Haulmark could have requested transcripts of specific proceedings of interest or other auxiliary aids but did not. Going forward, there is no reason to believe that the Virtual Statehouse Project will not provide meaningful access as the system will provide real-time closed captioning through Sliq, which Haulmark admits has provided effective communication for the Arkansas and Virginia Legislatures.[143]   Haulmark cannot show any non-speculative claim of ongoing injury for purposes of injunctive or declaratory relief.

Haulmark also cannot show that he is substantially likely to prevail on his claim of discrimination or   damages under the ADA.  Haulmark will not meet his burden of demonstrating that what Day and LAS have offered to him was not in fact reasonable; he will not be able to meet the very high "deliberate indifference" standard[144] for his request for $5 million in compensatory damages.[145] Haulmark has been provided qualified interpreters upon prior request.[146] Haulmark's demand to LAS for nearly 900 professional and "errorless" transcripts for each and every legislative proceeding is not a reasonable request.[147]   Nor did Haulmark ever explain why or why production of every

---

[141] *Loye v. County of Dakota,* 625 F.3d 494, 499-501 (8th Cir. 2010) (affirming the district court's rejection of plaintiff's claims that the county had failed to provide effective communication in a series of meetings utilizing various auxiliary aids and methods, stating that the information was not time-sensitive and plaintiff identified no information missed or any harm suffered as a result of any alleged failure, nothing that an effective communication does not require an identical result).

[142] Day Declaration, at ¶ 17.

[143] Doc. 1, at ¶¶ 17-18; Weis Declaration, at ¶¶ 6, 8.

[144] *Barber v. Colorado Dept. of Revenue,* 562 F.3d 1222, 1228-32 (10th Cir. 2009)

[145] Doc. 1, at p.27, ¶ 86.

[146] Doc. 1, at ¶¶ 28-31, referring only to a single instance upon which an interpreter was not provided when no prior request was made as per the Notice. Day Declaration, at ¶ 19.

[147] Day Declaration, at ¶ 21; Exhibit L.

single proceeding was necessary for meaningful access to the specific bills he may have been following, bills which were never identified.[148] In response, Day offered to provide transcripts for specific proceedings of interest to Haulmark.[149] Haulmark never responded to Day's offer.[150]   This pattern was repeated in a subsequent request and response.[151] Haulmark's Complaint fails to meet his burden of demonstrating why Day's responses were not reasonable accommodations under the ADA.[152]

*Havens*[153] is one recent example of a Tenth Circuit case rejecting a Title II claim similar to Haulmark's. In *Havens,* the Tenth Circuit affirmed the district court's ruling that the prison was not deliberately indifferent to the disabled prisoner's rights so as to support a Title II claim for damages where the prison had offered accommodations and where the plaintiff had the opportunity for meaningful participation in prison programs, affirming the district court's finding that the prisoner was not discriminated against in violation of Title II even though the prisoner was not placed exactly where he wanted to be placed and was not given everything he wanted, having been placed in a less accessible facility with fewer programs. The Circuit rejected  the idea that failure to give Plaintiff what he wanted constituted discrimination or justified damages.[154]  The Court found that when a defendant provides accommodations or offers to, or engages in an interactive process with a plaintiff, that is the opposite of deliberate indifference. [155]  The Court noted

---

[148] Exhibit L to Day Declaration; Day Declaration, at ❡ 22.

[149] Day Declaration, at ❡❡ 21-22; Exhibit L; *accord* Doc. 1

[150] *Id.*

[151] *Id.*

[152] *Barber,* at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir. 1999) (Plaintiff "must establish the existence of specific and reasonable accommodations" that the public entity failed to provide).

[153] *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250 (10th Cir. 2018).

[154] *Id.*(citing *Barber v. State of Colorado, Dept. of Rev.,* 562 F.3d 1222, 1232 (10th Cir. 2009)).

[155] *Id.,* at 1265 (citing *McCulley v. Univ. of Kan. School of Med.,* 591 F. App'x 648, 651 (10th Cir. 2014) (unpublished)); *id.,* at 1267-68.

that alleged negligence is insufficient, [156] and that delay that could be termed, "not uncommon bureaucratic inertia" or "slippage" in updating systems does not amount to deliberate indifference.[157]

Barber, cited in Havens, is another useful example of how the Tenth Circuit has analyzed reasonable accommodation requirements. There state law required that a minor driver practice driving with a licensed driver who had to be a "parent, step parent, or guardian."[158] The minor's mother was disabled and was not a licensed driver; the mother asked DMV for an accommodation, namely that another licensed driver such as the girl's grandfather be allowed to serve in that role.[159]   DMV responded that the mother's preferred option was not allowed by current state law but made suggestions as to options.[160] The statute was eventually amended.[161] The minor's mother sued, claiming DMV had violated the ADA and the Rehabilitation Act.[162] The district court found that the claims for injunctive relief were moot and granted judgment for DMV on the damage claims.[163]   The Circuit affirmed, finding that DMV was not deliberately indifferent where it offered objectively reasonable alternatives.[164]   The Circuit also pointed to the mother's refusal to engage in any sort of interactive process with DMV and her insistence that her requested accommodation was the only accommodation worthy of consideration, finding that the mother had failed in her "obligation to proceed in a reasonably interactive

---

[156] Id. (citing Barber, 562 F.3d at 1229).
[157] Id. (citing cases including Ferguson v. City of Phoenix, 157 F.3d 668, 675 (9th Cir. 1998) (holding that "not uncommon bureaucratic inertia" in updating a city's 9-1-1 system to make it accessible to the hearing-disabled, coupled with "some lack of knowledge and understanding" about regulatory requirements, did not amount to deliberate indifference.").
[158] 562 F.2d at 1224-25.
[159] Id., at 1225.
[160] Id., at 1225-26.
[161] Id., at 1227.
[162] Id.
[163] Id.
[164] Id., at 1229-30.

manner."[165] Finally, "the mere fact that the DMV did not accept Marcia Barber's suggested resolution does not establish a deliberate indifference to her situation or her rights."[166]

*Cropp v. Laramie County, Colo*. is also instructive. There, Cropp, a man with Alzheimer's and dementia, was picked up by the police and taken to jail.[167] Cropp and his wife were told he could be released if he would sign a form.[168] Cropp's wife requested that the jail allow her to set next to her husband to explain the form.[169] The jail denied this request, but offered other options, including a visitation booth, the assistance of staff members, and the assistance of a nurse.[170] There was some additional discussion with Ms. Cropp about her request, but the jail still denied her request to sit next to her husband citing jail policy prohibiting physical contact.[171] Mr. Cropp eventually signed the form on his own and was released, but it took 11 hours.[172] Cropp and his wife sued under Title II, seeking relief including injunctive relief and damages.[173] The Circuit held that the request for injunctive relief became moot or Cropp lacked standing when Cropp was released from jail, citing that past events did not support injunctive relief.[174] The Circuit affirmed the district court's denial of damages, finding no evidence of intentional discrimination or deliberate indifference in the jail's actions.[175] In the process, the Circuit discussed the effective communication requirement stated in the regulations, rejecting the Cropps' argument that they were entitled to their preferred means of

---

[165] *Id.,* at 1231 (citing *Smith v. Midland Brake, Inc.,*180 F.3d 1154, 1172 (10th Cir. 1999)).
[166] *Id.,* at 1232.
[167] No. 18-1262, 793 Fed. Appx. 771, 773 (10th Cir. 2019).
[168] Id., at 774.
[169] *Id.*
[170] Id.
[171] *Id.,*
[172] *Id.*
[173] *Id.*, at 775.
[174] *Id. (citing City of Los Angeles v. Lyons,* 461 U.S. 95, 104-05 (1983)).
[175] *Id.*, at 778.

effective communication and the denial of it meant that the Cropps had been intentionally discriminated against.[176]

The district court found that the Cropps failed to show that the requested physical contact was necessary, finding that the jail had offered reasonable accommodations and that the Cropps were not entitled to their preferred accommodation.[177] The Circuit agreed, stating: "we reject Mr. Cropp's suggestion that the County's mere failure to provide him with the precise auxiliary aid he requested necessarily amounts to discrimination—let alone to intentional discrimination via deliberate indifference."[178] The Circuit noted that the Cropps' interpretation would rewrite the regulation, 28 CFR Pt. 35.160(b)(1), from a duty to provide appropriate aids to a duty to provide the aid demanded by the disabled individual.[179]  The Court also noted that even if the accommodations offered by the jail were not effective, the damage claim failed because the Cropps could not show that the jail knew that there was a substantial likelihood that the offered accommodations were not effective and made the deliberate choice not to offer the requested accommodation.[180] The Court noted that the ADA did not require perfect communication.[181]  The Circuit found that even if the Cropps could show that the accommodations offered by the jail were

---

[176] *Id.*, at 777-85.

[177] *Id.*, at 777-78 (*Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1263 (10th Cir. 2001) ("[T]he ADA requires an employer to provide a 'reasonable accommodation, not the accommodation [the disabled individual] would prefer.' " (quoting *Rehling v. City of Chi.*, 207 F.3d 1009, 1014 (7th Cir. 2000))).

[178] *Id.* at 780.

[179] *Id.*, at 781 (citing *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) (noting that regulations require public entities to furnish auxiliary aids when such aids are *necessary* and "*appropriate*," not when they are "desired" or "demanded" (quoting § 35.160(b)(1))).

[180] *Id.*, at 782 (citing *McCullum,* at 1147).

[181] *Id.*, at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7  (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)).

less effective than the physical contact visit, the Cropps could now show that the jail knew that the offered accommodations would be "*wholly ineffective"* for ADA purposes."[182]

Similar to the Cropps, Haulmark is not substantially likely to prevail on his claim of discrimination or damages merely because Day did not give him exactly what he requested. Haulmark is not entitled to "100% accurate" captioning or "errorless" transcripts. Haulmark will not be able to show that Day knew what he offered would be wholly ineffective as an accommodation and deliberately made the choice not to offer an effective accommodation. While the Cropps made some effort to explain to the jail why the physical contact visit was necessary for an effective accommodation Haulmark never explained why his preferred accommodation (professional production of transcripts for each and every single legislative proceeding with 100% accuracy with no spelling, capitalization or grammar errors) was the only means to achieve meaningful access so that he could follow specific bills of interest.[183]

*Dobard v. San Francisco Bart Area Rapid Transit Dist.*[184] is another case on point. In that case, Dobard alleged the ADA was violated because Dobard did not receive the computer aided transcription aid which he requested to access the Board meetings.[185] The Court dismissed Dobard's Complaint for failure to state a claim and also held that the request for injunctive relief was moot because the Board was providing Dobard with a means to access the Board meetings in question.[186] In so holding, the Court found that

---

[182] *Id.*, at 784-85  (emphasis in original)(citing § 35.160(a)(1), (b)(1); *cf. Barber*, 562 F.3d at 1230–31 (holding that defendant did not act with deliberate indifference when it refused to provide plaintiff with requested accommodation, in part because defendant offered plaintiff "another objectively reasonable alternative")).

[183] *Id.,* at 777, 783.

[184] No. C-92-3563-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993).

[185] 1993 WL 372256, at * 1.

[186] *Id.*, at ** 3-4.

the ADA required nondiscrimination, 42 U.S.C. § 12182(a), but did not require an identical result be achieved, citing to the ADA regulations.[187] The Court noted that the issue turned on Dobard's argument was that he was entitled to receive his choice of accommodation or means used, while BART argued that it need only provide some means of assuring effective communication.[188] The Court held that the law was consistent with Defendant BART's position, finding that BART had provided aids and services, including interpreters, and that BART had discretion in how to meet the goal.[189] The Court expressly held that, "[t]he use of the most advanced technology is not required."[190]

Here Haulmark received accommodations: qualified interpreters, offers of specific transcripts of interest, "surprisingly accurate"[191] auto-generated captioning on the YouTube postings and now real-time closed captioning. That is all the ADA requires – reasonable accommodation. Further, on this record where Day was trying to work with Haulmark, there is no plausible claim for deliberate indifference. Haulmark cannot show that he is substantially likely to prevail on his ADA claim for damages or injunctive relief.

Although relief under *Ex parte Young* cannot be based upon a state law claim in any event,[192] Haulmark's reference to and reliance upon unpled Kansas statutes is inapposite.[193] The Kansas statutes cited are not "torts." By its terms, K.S.A. 75-4351(d) only provides a right to appointment of a qualified interpreter in "proceedings before a

---

[187] *Id.*, at * 3 (citing 28 CFR App. B 36.201(a) (1992)).
[188] *Id.*
[189] *Id.*
[190] *Id.* (citing 28 CFR Pt. 36.303(c), App. B.)
[191] Weis Declaration, at ₱ 7.
[192] *Johns,* at 1553 (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104-06 (1984)).

[193] Haulmark admits that this is a new theory, not pled in his Complaint. If Haulmark wants to proceed with a new claim, he will need to proceed to amend his Complaint as per Fed. R. Civ. P. 15, something he has not done to date.  Defendants object to proceeding on the basis of an unpled claim or theory.

board, commission, agency, or licensing authority of the state or any of its political *subdivisions* when [the person needing an interpreter] *is the principal party in interest*."[194] The Kansas Legislature is not a "board, commission, agency, or licensing authority of the state" or a "political subdivision;" it is a branch.[195] Haulmark is not a "principal party in interest" in proceedings before the Legislature. While K.S.A. 75-4355(d) provides its provisions are enforceable in state district court, there is nothing saying this is enforceable in federal court. Or that the Legislature has waived its Eleventh Amendment immunity to such a claim.[196]

### E.  Haulmark's Motion Fails to Demonstrate the Other Required Elements for Preliminary Injunctive Relief

As the Court found in *Heritage Family Church,* when the Plaintiff fails to make the required showing that he is substantially likely to prevail on the merits, the Court need not consider the other elements of the test for preliminary injunction.[197]  In any event, Haulmark's Motion fails to demonstrate those required elements either.  *First,* Haulmark has not demonstrated irreparable injury:

> A showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction, [and therefore] the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.". . .To obtain a preliminary injunction, a movant 'must establish . . . that he is likely to suffer irreparable harm in the absence of  preliminary relief.' . . . That harm 'must be both certain and great,' and not 'merely serious or substantial.'"[198]

Here, although the Motion and Affidavit are vague and conclusory as to precisely

---

[194] Emphasis added.

[195] Kan. Const., art. 1, 2, 3.

[196] The State of Kansas has not waived its Eleventh Amendment immunity to suit in federal court. *Jones v. Courtney,* No. 11-3272, 466 Fed. Appx. 696, 700-01, 2012 WL 505837, * 4 (10th Cir. Feb. 16, 2012) (citing K.S.A. 75-6116(a)); other citations omitted).

[197] *Heritage Family Church, Inc.,* at * 5.

[198] *New Mexico Dep't of Game & Fish v. United States Dept. of Interior,* 854 F.3d 1236, 1249-50 (10th Cir. 2017) (citations omitted).

how Haulmark has been injured, how he missed out on any time-critical information during January 11-15,[199]  Plaintiff's delay also weighs against the finding of irreparable harm. According to the Complaint and the Motion, Haulmark has delayed for years in seeking the extraordinary remedy of preliminary injunction for any alleged harms.[200] A plaintiff seeking a preliminary injunction "must proceed with reasonable diligence."[201] "Delay in seeking preliminary relief cuts against finding irreparable injury."[202] A "delay in filing... vitiates much of the force of . . . allegations of irreparable harm."[203] The present request may be denied on grounds of lack of showing of irreparable harm and based upon delay.[204]

In addition, as the Tenth Circuit stated the matter, the courts "will not consider a self-inflicted harm to be irreparable."[205] It is undisputed that Chris Haulmark received a qualified interpreter whenever he gave prior notice of such a request. Day has repeatedly offered to produce transcripts for specific proceedings of interest to Haulmark, an offer to which Haulmark has never responded. If Haulmark had made a request for accommodation relating to any particular bills he was following, there is no reason on this record to believe that would not have been accommodated. Haulmark's harm, if any, is

---

[199] *See generally, Loye v. County of Dakota,* 625 F.3d 494 (8ᵗʰ Cir. 2010)

[200] *See, e.g.,* Doc. 1, at ¶ 7 (reciting a delay of two years).

[201] *Benisek v. Lamone,* 138 S. Ct. 1942, 1944 (2018).

[202] *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social & Rehab. Serv.*, 31 F.3d 1536, 1543-44 (10ᵗʰ Cir. 1994) (citation omitted); *RoDa Drilling v. Siegal,* 552 F.3d 1203, 1211 (10ᵗʰ Cir. 2009); *See, e.g., GTE Corp. v. Williams,* 731 F.2d 676, 679 (10ᵗʰ Cir. 1984) (preliminary injunction not justified when plaintiffs delayed three years before filing suit).

[203] *Beame v. Friends of Earth,* 434 U.S. 1310, 1313 (1997).

[204] *See Weight Watchers Int'l v. Luiguino's,* 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.") (citation omitted); *Tough Traveler, Ltd. v. Outboard Prod.*, 60 F.3d 964, 968 (2ⁿᵈ Cir. 1995); *Lucas County Democratic Party v. Blackwell,* 341 F. Supp. 2d 861, 864 (N.D. Ohio 2004); *Taylor v. Angarano,* 652 F. Supp. 827, 828-29 (S.D.N.Y. 1986) (finding "plaintiffs' delay in bringing suit and in making this motion is evidence weighing against a finding of irreparable harm.").

[205] *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10ᵗʰ Cir. 2003).

self-inflicted. Going forward, the real-time accurate captioning will be provided and soon.

Haulmark cannot meet his considerable burden of showing that the injury to him outweighs the injury the opposing party would suffer from the injunction. Tom Day is trying to do his job of assisting the 165 duly-elected members of the Kansas Legislature in conducting legislative activities in the midst of an unprecedented Global Pandemic. Given COVID, legislators are participating remotely. What used to be a luxury is now a necessity to the legislative process. Haulmark cites no authority that would allow this Court to interfere in the state legislative process. While the requested injunction is unclear, any order that might interfere with the contract currently underway, potentially injuring the State, the contractors, and the taxpayer, must be avoided.[206]

The injunction is not in the public interest. Shutting down or interfering with how a State Legislature conducts state business, particularly in a time of Pandemic, is not in the public interest. Shutting off public Internet access is not in the public interest. Requiring duly-elected state legislators, their staff and others to suffer an increased risk of COVID-19 infection, contrary to public health guidelines, as suggested by Haulmark in paragraph 30 of his Motion, is not in the public interest. As the Justice Department has recognized, the ADA does not provide a blanket exemption from COVID-related restrictions.[207]

---

[206] If granted, Haulmark will be required to post security as per Fed. R. Civ. P. 65(c). Given the requested injunction may  interfere with a $2.74 million contract, the security would be considerable.
[207] June 30, 2020 Department of Justice Civil Rights Division Press Release 20-603, https://www.justice.gov/opa/pr/department-justice-warns-inaccurate-flyers-and-postings-regarding-use-face-masks-and, subject to judicial notice as per Fed. R. Evid. 201.

## Conclusion

Haulmark has failed to show a clear and unequivocal right to relief and has failed to meet the heightened standard applicable to the disfavored mandatory injunction sought. The request may and should be summarily denied.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s M.J. Willoughby
M.J. Willoughby, KS 14059
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: MJ.Willoughby@ag.ks.gov
*Attorney for State of Kansas, Legislative*
*Administrative Services*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all participants, and a copy served upon Plaintiff by first-class mail postage prepaid addressed to:

Chris Haulmark, 600 S. Harrison St., Apt. # 11, Olathe, KS 66061, Plaintiff pro se.

/s M.J. Willoughby
M.J. Willoughby
Assistant Attorney General