IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,                          )
                Plaintiff,            )
                                      )
v.                                       )          Case. No. 20-cv-4084-EFM-TJJ
                                      )
STATE OF KANSAS, et al.,                  )
                Defendants.          )
_____)

## DECLARATION OF DONNA WELLS

I, Donna Wells, declare under penalty of perjury the following facts, of which I have personal knowledge:

1. I am employed as a Legal Assistant in the Civil Litigation Division of the Office of Attorney General Derek Schmidt.

2. As a Legal Assistant in the Civil Litigation Division, my duties include processing incoming mail received by the Division, including any summons received in the mail.

3. On December 18, 2020, I was in the Office of Attorney General when an envelope was received at the Office of Attorney General via certified mail from Chris Haulmark. I opened the envelope and scanned everything in that was in the envelope. I did not leave anything out of the scanning process. A copy of the contents of the envelope is attached as Exhibit 1.

4. Since I did not know to whom in the Division to give the received document, I sent out an email, a copy of which is attached as Exhibit 2.

Exhibit B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2021.

> _s/Donna Wells_
> Donna Wells
> Legal Assistant
> Civil Litigation Division
> Office of Attorney General Derek Schmidt
> Memorial Hall
> 120 SW 10th
> Topeka, KS 66612

Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **CHRIS HAULMARK,** | ) | |
| Plaintiff, | ) | |
| V. | ) | |
| **STATE OF KANSAS,** | ) | |
| **LEGISLATIVE ADMINISTRATIVE** | ) | |
| **SERVICES,** | ) | |
| and | ) | Civil Action No. **5:20-cv-04084-EFM-TJJ** |
| **TOM DAY**, in his official capacity as | ) | |
| Director of Legislative Administrative | ) | |
| Services, | ) | |
| Defendants. | ) | |
| | ) | |

## SUMMONS IN A CIVIL ACTION

To:   Legislative Administrative Services
300 SW 10th Ave., Ste 551-S
Topeka, KS 66612

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

1

Exhibit 1

Chris Haulmark
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

If you fail to respond, judgment by default will be entered against you for the

relief demanded in the complaint. You also must file your answer or motion with

the court.

*CLERK OF COURT*

Date: **12/16/2020**

**/s/ J. Hokanson, Deputy Clerk**

*Signature of Clerk or Deputy Clerk*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRIS HAULMARK, | ) |
| Plaintiff, | ) |
| V. | ) |
| STATE OF KANSAS, | ) |
| LEGISLATIVE ADMINISTRATIVE | ) |
| SERVICES, | ) |
| and | ) Civil Action No. **5:20-cv-04084-EFM-TJJ** |
| TOM DAY, in his official capacity as | ) |
| Director of Legislative Administrative | ) |
| Services, | ) |
| Defendants. | ) |
| | ) |

## SUMMONS IN A CIVIL ACTION

To:   The State of Kansas
      300 SW 10th Ave.
      Topeka, KS 66612

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Chris Haulmark
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

If you fail to respond, judgment by default will be entered against you for the

relief demanded in the complaint. You also must file your answer or motion with

the court.

*CLERK OF COURT*

Date: **12/16/2020**

/s/ **J. Hokanson, Deputy Clerk**

*Signature of Clerk or Deputy Clerk*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK,** | ) |
| Plaintiff, | ) |
| V. | ) |
| **STATE OF KANSAS,** | ) |
| **THE KANSAS SENATE,** | ) |
| **SUSAN WAGLE,** in her official capacity as | ) |
| President of the Kansas Senate,[1] | )   Civil Action No.   20-cv-4033-SAC-TJJ |
| **KANSAS HOUSE OF** | ) |
| **REPRESENTATIVES,** | ) |
| and | ) |
| **RON RYCKMAN,** in his official capacity as | ) |
| Speaker of the Kansas House of | ) |
| Representatives,[2] | ) |
| Defendants. | ) |
| ——————————————— | ) |

## MOTION FOR EXTENSION OF TIME FOR SERVICE OF PROCESS

Plaintiff Chris Haulmark, appearing *pro se*, files this Motion to extend the time for service of process against Defendant State of Kansas, Defendant Kansas Senate, and Kansas House of Representatives, in accordance with Rule 4(m) of the Federal Rules of Civil Procedure and in support thereof, which shows the Court the following:

---

[1] Dismissed with Prejudice. [Docket Entry #15 and ¶ 10 in this Motion]
[2] Dismissed with Prejudice. [Docket Entry #15 and ¶ 10 in this Motion]

1.      The Complaint in the above captioned matter was filed on June 15, 2020 to seek damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and expenses of court against the five Defendants, alleging ongoing and repeating violations of Title II of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12131-12134 *et seq.* and violations of Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504"), as amended, 29 U.S.C. § 794 *et seq.*

2.      Two signed, sealed, and dated Summonses were issued against Defendant Susan Wagle and Defendant Ron Ryckman on June 15, 2020.

3.      On the same day, the copies of Complaint and Summonses were mailed by return receipt delivery to the offices of Defendant Susan Wagle and Defendant Ron Ryckman located in the Kansas State Capitol at 300 SW 10th Ave located in Topeka, Kansas.

4.      The Proof of Service for Defendant Susan Wagle and Defendant Ron Ryckman filed with this Court on June 23, 2020 [Docket Entry #3 and #4] establishes that service for Defendant Susan Wagle and Defendant Ron Ryckman was proper pursuant to Rule 5 of the Federal Rules of Civil Procedure.

5.      At the time of filing the Complaint, Plaintiff Haulmark had good faith when applying Rule 4(j)(2)(B) as to how both the Kansas Senate and the Kansas House of Representatives are to be served, as interpreted in *State Ex. Rel. Stephan v. Kan. House of Representatives*, 236 Kan. 45, 50 (Kan. 1984).

6.     Plaintiff Haulmark began to have doubts of the service of process on July 10, 2020, the day of the deadline for an answer to be due from the Defendants.

7.     To dispel his doubts on his understanding of Rule 4(j)(2)(B) and *State Ex. Rel. Stephan v. Kan. House of Representatives* to possibly being improper, Plaintiff Haulmark mailed a copy of the Complaint and Summonses of Defendant Susan Wagle and Defendant Ron Ryckman to the office of the Kansas Attorney General at 120 SW 10th Ave. in Topeka, Kansas on July 10, 2020 to meet the requirement of K.S.A. § 60-304(d)(5).

8.     Assistant Attorney General M.J. Willoughby appeared on July 10, 2020 to answer or otherwise plead for Defendant Susan Wagle and Defendant Ron Ryckman. This appearance shows the office of the Kansas Attorney General being aware of Plaintiff Haulmark's Complaint.

9.     On the same day, a clerk's extension for Defendant Susan Wagle and Defendant Ron Ryckman was granted to extend time for fourteen additional days until July 24, 2020. [Docket Entry #5]

10.    After the individual Defendants filed a Motion to Dismiss [Docket Entry #8] on August 24, 2020, this Court dismissed Defendant Susan Wagle and Defendant Ron Ryckman with prejudice on September 30, 2020. [Docket Entry #15]

11.    Only three Defendants remain: State of Kansas, Kansas Senate, and Kansas House of Representatives.

12.    As instructed by the docket text for Docket #14, Plaintiff Haulmark contacted the clerk of the undersigned Magistrate Judge to request for a scheduling

conference to be set. Plaintiff Haulmark learned from M.J. Willoughby's response that those three remaining Defendants were not properly served before September 13, 2020 pursuant to Federal Rule of Civil Procedure 4(m).

13.    Plaintiff Haulmark researched and recognizes the Proof of Service for Attorney General Derek Schmidt on behalf of State of Kansas, Kansas Senate, and Kansas House of Representatives filed with this Court on October 7, 2020 [Docket Entry #16] may not be proper pursuant to the Rule 5 of the Federal Rules of the Civil Procedure. This service of process is improper because three Summonses for the remaining Defendants were not issued and included with the copy of the Complaint when mailed to the office of the Kansas Attorney General on July 10, 2020.

14.    The applicable time limit for the service of process for the three remaining Defendants expired on September 13, 2020.


WHEREFORE, Plaintiff Haulmark respectfully requests that this Court, pursuant to Federal Rule of Civil Procedure 4(m), grant this Motion to extend the time of service to correctly serve the Defendant State of Kansas, Defendant Kansas Senate, and Defendant Kansas House of Representatives.

---------------------------------------------------------------

Respectfully submitted this 15th of
October

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CHRIS HAULMARK,**

       Plaintiff,            )

       V.                 )

**STATE OF KANSAS,**         )

**THE KANSAS SENATE,**     )

**SUSAN WAGLE**, in her official capacity   )

as President of the Kansas Senate,   )  Civil Action No. 20-cv-4033-SAC-TJJ

**KANSAS HOUSE OF**        )

**REPRESENTATIVES,**       )

     and               )

**RON RYCKMAN**, in his official capacity  )

as Speaker of the Kansas House of   )

Representatives,           )

       Defendants.      )

_____ )

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th of October, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and a copy with postage prepaid was placed in mail of the U.S. Mail to each of the following:

Derek Schmidt            M.J. Willoughby
Attorney General          Assistant Attorney General
120 SW 10th Ave., 2nd Floor   120 S.W. 10th Ave., 2nd Floor
Topeka, KS 66612          Topeka, KS 66612

/s/ChrisHaulmark
PLAINTIFF, *pro se*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 2 0 - c v

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   Derek Schmidt, Kansas Attorney General

was received by me on *(date)*          07/13/2020              .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)*   Derek Schmidt, Kansas Attorney General          , who is

designated by law to accept service of process on behalf of *(name of organization)*  State of Kansas, Kansas

Senate, and Kansas House of Representatives          on *(date)*      07/13/2020       ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date:      10/07/2020                         _____
                                                              *Server's signature*

                                                              Chris Haulmark
                                                         _____
                                                              *Printed name and title*

                                                              600 S. Harrison St., Apt #11
                                                              Olathe, KS 66061
                                                         _____
                                                              *Server's address*

Additional information regarding attempted service, etc:



**This report provided free of charge by:**
Carport Enterprise
5729 NE Compton Ave, Kansas City, MO 64119

(816) 359-8130

 History-Based Value Report

# History events affecting this vehicle's value



**Service History**



**Personal Vehicle**



**Minor Damage**

## $4,090 Retail Value

 Vehicle History Report™

US $39.99

### 2007 FORD FOCUS ZX4/S/SE/SES
VIN: 1FAHP34N87W353167
SEDAN 4 DR
2.0L I4 F DOHC
GASOLINE
FRONT WHEEL DRIVE

 Accident reported: minor damage

 **2** Previous owners

 **17** Service history records

 Personal vehicle

 Last owned in Iowa

 **120,315** Last reported odometer reading

 CARFAX HAS THE MOST ACCIDENT & DAMAGE INFORMATION

 CAR FOX

This CARFAX Report Provided by:
**Carport Enterprise**

This CARFAX Vehicle History Report is based only on information supplied to CARFAX and available as of 10/19/20 at 4:09:16 PM (CDT). Other information about this vehicle, including problems, may not have been reported to CARFAX. Use this report as one important tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.



**CARFAX** Ownership History

The number of owners is estimated.

| | | |
|---|---|---|
| Year purchased | 2007 | 2020 |
| Type of owner | Personal | Personal |
| Estimated length of ownership | 12 yrs. 6 mo. | 7 months |
| Owned in the following states/provinces | Iowa | Iowa |
| Estimated miles driven per year | 9,563/yr | --- |
| Last reported odometer reading | 120,315 | --- |

**CARFAX** Title History

CARFAX guarantees the information in this section.

| | Owner 1 | Owner 2 |
|---|---|---|
| Salvage \| Junk \| Rebuilt \| Fire \| Flood \| Hail \| Lemon | ☑ Guaranteed No Problem | ☑ Guaranteed No Problem |
| Not Actual Mileage \| Exceeds Mechanical Limits | ☑ Guaranteed No Problem | ☑ Guaranteed No Problem |



**GUARANTEED** - None of these major title problems were reported by a state Department of Motor Vehicles (DMV). If you find that any of these title problems were reported by a DMV and not included in this report, CARFAX will buy this vehicle back.
Register | View Terms | View Certificate

**CARFAX** Additional History

Not all accidents / issues are reported to CARFAX.

| | Owner 1 | Owner 2 |
|---|---|---|
| Total Loss No total loss reported to CARFAX. | ☑ No Issues Reported | ☑ No Issues Reported |
| Structural Damage CARFAX recommends that you have this vehicle inspected by a collision repair specialist. | ☑ No Issues Reported | ☑ No Issues Reported |
| Airbag Deployment No airbag deployment reported to CARFAX. | ☑ No Issues Reported | ☑ No Issues Reported |
| Odometer Check No indication of an odometer rollback. | ☑ No Issues Indicated | ☑ No Issues Indicated |
| Accident / Damage Accident reported on 10/31/2013. | Minor Damage | No New Issues Reported |
| Manufacturer Recall A current list of recalls is available at Ford Motor Company. | ☑ No Recalls Reported | ☑ No Recalls Reported |
| Basic Warranty Original warranty estimated to have expired. | Warranty Expired | Warranty Expired |

**CARFAX** Detailed History

| **Owner 1** Purchased: 2007  | **Low mileage!** This owner drove less than the industry average of 15,000 miles per year. | Personal Vehicle 9,563 mi/yr |
|---|---|---|

| Mileage | Source | Comments |
|---|---|---|
| 06/26/2007 | NICB | Vehicle manufactured and shipped to original dealer |

| 08/23/2007 | 9 | Iowa<br>Motor Vehicle Dept.<br>Williamsburg, IA<br>Title #48AA16655 | **Title or registration issued**<br>- First owner reported<br>- Titled or registered as personal vehicle<br>- Loan or lien reported<br>- Vehicle color noted as Silver |
|---|---|---|---|
| 09/03/2008 | | Iowa<br>Motor Vehicle Dept.<br>Williamsburg, IA<br>Title #48AA16655 | **Registration issued or renewed**<br>- Loan or lien reported<br>- Vehicle color noted as Silver |
| 12/03/2008 | 21,847 | Sears Auto Center | **Vehicle serviced** |
| 09/16/2009 | | Iowa<br>Motor Vehicle Dept.<br>Coralville, IA<br>Title #48AA16655 | **Registration issued or renewed**<br>- Registration updated when owner moved the<br>  vehicle to a new location<br>- Vehicle color noted as Silver |
| 11/04/2009 | | Sears Auto Center | **Vehicle serviced**<br>- Maintenance inspection completed<br>- Oil and filter changed |
| 07/16/2010 | 30,731 | Sears Auto Center | **Vehicle serviced**<br>- Tires rotated<br>- Oil and filter changed |
| 01/12/2011 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA16655 | **Registration issued or renewed**<br>- Registration updated when owner moved the<br>  vehicle to a new location<br>- Vehicle color noted as Silver |
| 01/20/2011 | 34,866 | Sears Auto Center | **Vehicle serviced**<br>- Oil and filter changed |
| 06/15/2011 | 38,322 | Sears Auto Center | **Vehicle serviced**<br>- Oil and filter changed |
| 07/06/2011 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 01/23/2012 | 44,300 | Sears Auto Center | **Vehicle serviced**<br>- Oil and filter changed |
| 06/29/2012 | 47,981 | Sears Auto Center | **Vehicle serviced**<br>- Tire(s) replaced<br>- Maintenance inspection completed<br>- Oil and filter changed<br>- Alignment performed<br>- Tire(s) balanced |
| 07/13/2012 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 07/10/2013 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 10/31/2013 | | Iowa<br>Damage Report | **Accident reported: minor damage**<br>- Vehicle involved in a side impact collision with<br>  another motor vehicle<br>- Damage to left front<br>- Airbags did not deploy |

**Damage Severity Scale** (i)



MINOR      MODERATE      SEVERE

# CARFAX HAS THE MOST ACCIDENT & DAMAGE INFORMATION



**Damage Location**

FRONT

LEFT                RIGHT

REAR



Minor damage is usually cosmetic, including dents or scratches to the vehicle body.

| | | | |
|---|---|---|---|
| 07/11/2014 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 07/20/2015 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 08/22/2016 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 05/19/2017 | 97,032 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>☆ 5.0 / 5.0<br>16 Verified Reviews 🏅<br>♥ 22  Customer Favorites | ✂ **Vehicle serviced**<br>- Oil and filter changed |
| 07/31/2017 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | **Registration issued or renewed**<br>- Vehicle color noted as Silver |
| 11/06/2017 | 101,108 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>☆ 5.0 / 5.0<br>16 Verified Reviews 🏅<br>♥ 22  Customer Favorites | ✂ **Vehicle serviced**<br>- Oil and filter changed |

| 06/29/2018 | 106,452 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced<br>- Oil and filter changed |
|---|---|---|---|
| 07/09/2018 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | Registration issued or renewed<br>- Vehicle color noted as Silver |
| 02/06/2019 | 111,424 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced<br>- Oil and filter changed |
| 07/08/2019 | | Iowa<br>Motor Vehicle Dept.<br>North Liberty, IA<br>Title #48AA36191 | Registration issued or renewed<br>- Vehicle color noted as Silver |
| 07/15/2019 | 114,573 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced<br>- Oil and filter changed |
| 12/18/2019 | 117,953 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced<br>- Antifreeze/coolant flushed/changed<br>- Oil and filter changed |
| 01/08/2020 | 118,633 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced |
| 01/20/2020 | 118,802 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced |
| 02/12/2020 | 119,239 | Linder Tire Service<br>North Liberty, IA<br>319-626-8980<br>ww.lindertire.com<br>5.0 / 5.0<br>16 Verified Reviews<br>22 Customer Favorites | Vehicle serviced |
| 03/11/2020 | 120,314 | Dealer Inventory | Vehicle offered for sale |

| 03/16/2020 | 120,315 | Carousel Nissan<br>Iowa City, IA<br>319-337-5000<br>carouselautogroup.com |  4.8 / 5.0<br>44 Verified Reviews<br> 461 Customer Favorites | Vehicle serviced<br>- Oil and filter changed |

## Owner 2
Purchased: 2020                                                    Personal Vehicle

| | Mileage | Source | | Comments |
|---|---|---|---|---|
| 03/19/2020 | | Iowa<br>Motor Vehicle Dept.<br>Walker, IA<br>Title #57AL30156 | | **Title or registration issued**<br>- New owner reported<br>- Vehicle color noted as Silver |

Have Questions? Consumers, please visit our Help Center at www.carfax.com. Dealers or Subscribers, please visit our Help Center at www.carfaxonline.com.

---

  Glossary

**Accident Indicator**
CARFAX receives information about accidents in all 50 states, the District of Columbia and Canada.

Not every accident is reported to CARFAX. As details about the accident become available, those additional details are added to the CARFAX Vehicle History Report. CARFAX recommends that you have this vehicle inspected by a qualified mechanic.

- According to the National Safety Council, Injury Facts, 2015 edition, 8% of the 254 million registered vehicles in the U.S. were involved in an accident in 2013. Over 74% of these were considered minor or moderate.
- This CARFAX Vehicle History Report is based only on information supplied to CARFAX and available as of 10/19/20 at 4:09:16 PM (CDT). Other information about this vehicle, including problems, may not have been reported to CARFAX. Use this report as one important tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.

**Damage Severity**
Damage events result in one of the following severity levels:

- Minor: Generally, minor damage is cosmetic (including dents or scratches), may only require reconditioning, and typically does not compromise a vehicle's operation and/or safety.
- Moderate: Moderate damage may affect multiple components of the vehicle and may impair the vehicle's operation and/or safety.
- Severe: Severe damage usually affects multiple components of the vehicle and is likely to compromise the vehicle's operation and/or safety.

CARFAX recommends getting a pre-purchase inspection at a certified collision repair facility.

**First Owner**
When the first owner(s) obtains a title from a Department of Motor Vehicles as proof of ownership.

**Ford or Lincoln Mercury Recall**
The Ford Motor Company provides Carfax with Field Service Action and recall information regarding safety, compliance and emissions programs announced since 2000 for a specific vehicle. For complete information regarding programs or concerns about this vehicle, please contact a local Ford or Lincoln Mercury Dealer.

**New Owner Reported**
When a vehicle is sold to a new owner, the Title must be transferred to the new owner(s) at a Department of Motor Vehicles.

**Ownership History**
CARFAX defines an owner as an individual or business that possesses and uses a vehicle. Not all title transactions represent changes in ownership. To provide estimated number of owners, CARFAX proprietary technology analyzes all the events in a vehicle history. Estimated ownership is available for vehicles manufactured after 1991 and titled solely in the US including Puerto Rico. Dealers sometimes opt to take ownership of a vehicle and are required to in the following states: Maine, Massachusetts, New Jersey, Ohio, Oklahoma, Pennsylvania and South Dakota. Please consider this as you review a vehicle's estimated ownership history.

**Follow Us:**  facebook.com/CARFAX    @CARFAXinc    About CARFAX

CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION. THEREFORE, NO RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR ERRORS OR OMISSIONS IN THIS REPORT. CARFAX FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

© 2020 CARFAX, Inc., a unit of IHS Markit Ltd. All rights reserved.
10/19/20 4:09:16 PM (CDT)

I have reviewed and received a copy of the CARFAX Vehicle History Report for this 2007 FORD FOCUS vehicle (VIN: 1FAHP34N87W353167), which is based on information supplied to CARFAX and available as of 10/19/20 at 5:09 PM (EDT).

| Customer Signature | Date | Dealer Signature | Date |

CARFAX VEHICLE HISTORY REPORT COURTESY OF CARPORT ENTERPRISE



# CARFAX BUYBACK GUARANTEE

## CARFAX Buyback Coverage for:

**Guarantee Coverage:** 10/19/2020 - 10/19/2021

**CARFAX Vehicle Description:** 2007 FORD FOCUS ZX4/S/SE/SES

**VIN:** 1FAHP34N87W353167          **Body Style:** SEDAN 4 DR

**Driveline:** FRONT WHEEL DRIVE          **Engine:** 2.0L I4 F DOHC

## CARFAX will buy this vehicle back if
you find that any of these severe problems were reported by a
Department of Motor Vehicles and were not included in this report.



**SEVERE DAMAGE**
Salvage/Junk
Rebuilt/Reconstructed
Dismantled
Fire/Flood/Hail



**ODOMETER PROBLEMS**
Exceeds Mechanical Limits
Not Actual Mileage



**LEMON HISTORY**
Manufacturer Buyback

**Terms and Conditions Apply**
View Terms and Conditions for CARFAX Buyback Guarantee coverage

© 2020 CARFAX, Inc., an IHS company. All rights reserved. Patents pending. 10/19/2020 16:09:39

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHRIS HAULMARK, | ) | |
| Plaintiff, | ) | |
| V. | ) | |
| STATE OF KANSAS, | ) | |
| LEGISLATIVE ADMINISTRATIVE | ) | |
| SERVICES, | ) | |
| and | ) | Civil Action No.  5:20-cv-04084-EFM-TJJ |
| TOM DAY, in his official capacity as | ) | |
| Director of Legislative Administrative | ) | |
| Services, | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Frustrated with being denied access to the online broadcasting services and unable to persuade them to provide equally effective communication and other legally-required accommodations for him, Plaintiff Chris Haulmark, appearing *pro se*, brings this action against the Defendants-- State of Kansas, Legislative Administrative Services, and Tom Day in his official capacity as Director of Legislative Administrative Services-- alleging violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA"). He alleges as follows:

## I.    INTRODUCTION

1.    This is an action, for compensatory damages and equitable relief, including declaratory and injunctive relief, award of attorney fees only if counsel is ever retained

by Plaintiff Haulmark, and expenses of court, to remedy ongoing and repeating violations of the ADA.

2.      The activities of the legislative proceedings by the Kansas Legislature are conducted in the chambers of the Senate and House and the public spaces of the political committees and subcommittees. These spaces are open to the public and free of charge. Anyone is able to physically attend, observe, and participate in the activities of those legislative proceedings. Anyone is able to physically visit the offices of the elected legislators and participate by engaging, interacting, and communicating with the elected legislators and staff members in a wide array of constitutionally protected activity.

3.      According to the ADA accessibility information on the state legislature's website, which is administered by the Defendants, any individual with a disability may request accommodations for any committee or legislative sessions with a two working day advance notice prior to the event.

4.      The Defendants control, maintain, and administer a website made available to the general public, free of charge, and publish official content in the form of live audio streams produced by the in-house online broadcasting equipment, consisting of the activities including the legislative proceedings in the committee rooms within the Kansas State Capitol. Included within the website as online content are at least hundreds of archived audio files, which communicate only audible information.

5.      The Defendants control, maintain, administer, and present on a YouTube channel[1] (hereinafter "Youtube Channel"), a third party platform made available to the

_____

[1] KS Legislature, ("YouTube Channel"), https://www.youtube.com/channel/UC_0NO-Pb96CFABvxDwXAq8A

general public, free of charge, as official content. The official content is in the form of live audiovisual streams which are produced by in-house online broadcasting equipment and consist of the legislative proceedings in the chambers of the Kansas State Capitol. Many video Zoom sessions were and are live streaming to this YouTube Channel as a response to the global public health crisis related to the novel coronavirus (COVID-19). Included within the online content on this YouTube Channel are hundreds of archived audiovisual files, which communicate only the aural and show visual activities of the legislature chambers within the Kansas State Capitol, and of those video remote-meetings via Zoom.

6.     Plaintiff Chris Haulmark is among the estimated 50,000,000 Deaf and Hard of Hearing Americans who qualify as individuals with hearing disabilities under the ADA. The ability of individuals with hearing disabilities to access information about the legislative actions of the elected legislators of the Kansas Legislature during the legislative proceedings in real time, like other individuals without a hearing disability do, is a right to participation in the political process. In order for Plaintiff Haulmark to exercise his constitutionally protected right, Plaintiff Haulmark requires from the Defendants the effective communication, auxiliary aids, and equal participation in the form of, but not limited to, real-time captions, transcripts, and sign language interpreters for Plaintiff Haulmark to participate in and enjoy the benefits of the services, programs, and activities offered by the Defendants, as required by the ADA and as outlined on the state legislature's website.

7.     In January 2019, Plaintiff Haulmark repeatedly requested thereafter the necessary accommodations from the Defendants to participate in protected First

Amendment activities in order to pursue his Fourteenth Amendment protected rights.
The Defendants have been repeatedly notified, over nearly two years, of Plaintiff
Haulmark's repeated requests for the necessary accommodations. The Defendants have
blatantly disregarded and refused to furnish the necessary effective communication,
auxiliary aids, and equal participation, and continue doing so today.

8.      The Defendants are educating the public with the phrase "Audio Only"
invidiously displayed on their online broadcasting services that it is permissible to shut
Deaf and Hard of Hearing individuals out from participating in the political process.
Because of this being against the public interest, Plaintiff Haulmark is placed into
political and societal isolation to experience noneconomic losses such as irreparable
damage to reputation, inconvenience, loss of enjoyment of life, mental anguish and
distress, pain and suffering, humiliation, and anxiety.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction of this action under Title II of the ADA, 42
U.S.C. § 12131-12132, and 28 U.S.C. § 1331 and 1345. This Court may grant the relief
sought in this action pursuant to 28 U.S.C. § 2201 and 2202.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a
substantial portion of the acts and omissions giving rise to this action occurred in the
District of Kansas. 28 U.S.C. § 1391(b).

## III.      PARTIES

11.     Plaintiff Chris Haulmark is a citizen of the United States of America. At
all times relevant, Plaintiff Haulmark is a resident of Olathe, Johnson County, Kansas.
Plaintiff Haulmark has been an active political community leader since 2017. Plaintiff

Haulmark is a qualified individual with a hearing disability. Plaintiff Haulmark has been deaf since he was one year old. Plaintiff Haulmark is substantially limited in this ability to hear and speak aurally. An audio headset does not provide Plaintiff Haulmark effective communication access. Plaintiff Haulmark's preferred method of communication is through American Sign Language (ASL). Plaintiff Haulmark also uses auxiliary aids such as video conferencing and electronic devices to communicate. Plaintiff Haulmark watches videos with the assistance of captioning.

12.     Defendant State of Kansas is a public entity as defined in 42 U.S.C. § 12131(1)(A).

13.     The Defendant Legislative Administrative Services (hereinafter "LAS") is a public entity as defined in 42 U.S.C. § 12131(1)(B). LAS runs the facilities including the online broadcasting services which stream audio and audiovisual content of the legislative proceedings within the legislative chambers and the committee rooms. "LAS controls the legislative chambers and committee rooms, the 3rd through 5th floors of the Statehouse, and other areas managed by the state legislature. " *Cole v. Goossen*, 402 F. Supp. 3d 992, 1000 (D. Kan. 2019) (Quoting Jan. 2018 *"Policy for Usage of the Statehouse and Capitol Complex"*)[2]

14.     Defendant Tom Day serves as the Director of Legislative Administrative Services. He reviews to make decisions as the final authority on the requests for ADA accommodations sent to his office.

## IV.   STATEMENT OF FACTS

---

[2] *"Policy for Usage of the Statehouse and Capitol Complex"*, January 2018, https://admin.ks.gov/docs/default-source/default-document-library/statehouse-and-capitol-complex-usage-policy7e98def78 25e6a5d8792ff000032666d.pdf

15.     For at least eight years as it is shown on the ADA page of the website administered by the Kansas Legislature: "Any individual with a disablility [sic] may request accommodations for any committee or legislative session." Furthermore on this webpage: "Requests should be made at least two (2) working days in advance of the meeting by contacting Legislative Adminstrative Services..." On the same ADA webpage, it is shown that two audio headsets are readily available for committee rooms within the Kansas State Capitol building. [See Exhibit #1]

16.     To show how long the online broadcasting services has been available, the Topeka Capital-Journal published an article, *"Kansas Legislature set to begin streaming live audio of committee hearings"* on Jan. 3, 2017. This article shares: "The Kansas Legislature will soon begin streaming live audio of committee hearings over the internet." Furthermore: "Residents have been able to listen to Kansas Senate or House sessions in real time on the internet for several years." [See Exhibit #2]

17.     The live audio streams of the committee hearings are available on the website administered by the Defendants. The Defendants use the software platform of Sliq Media Technologies to digitally record, stream, and publish audio content.  Each of the pages with the audio content for each legislative meeting shows the phrase "Audio Only" in large font size. [See Exhibit #3]

18.     Several state legislatures such as the Virginia House of Delegates and the Arkansas House of Representatives use the software platform of Sliq Media Technologies to record, stream, and publish their legislative proceedings while providing effective communication with the displaying of accurate real-time captioning.

19.     The Defendants fail to enable captioning on its software platform of Sliq Media Technologies when it is readily available to do so.

20.     The Kansas Senate and House legislative proceedings are available on the YouTube Channel as live audiovisual streams. Some of the recorded audiovisual content uses automatic machine-generated captioning, created at least a day after being streamed and published. The automatic machine-generated captioning does not provide effective communication for Plaintiff Haulmark and other individuals with hearing disabilities, due to lack of the following: errorless accuracy, uniformity in style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and including speaker identification and non-speech audio information with clarity. Other audiovisual content on the same YouTube Channel does not include captioning or transcripts at all.

21.     As of March 12, 2020, Governor Laura Kelly of Kansas proclaimed a State of Disaster Emergency within Kansas relating to COVID-19. Since this proclamation, many committees and subcommittees of the Kansas Legislature use the software platform Zoom to record, stream, and/or publish their legislative proceedings on the YouTube Channel. The automatic machine-generated captioning is sometimes accommodated with audiovisual content that still fails to provide effective communication for Plaintiff Haulmark.

22.     Plaintiff Haulmark has lived in Kansas since November, 2014. Plaintiff Haulmark is bilingual. American Sign Language (ASL) is his natural and primary language, and written English is his second language. Plaintiff Haulmark does not audibly hear nor verbally speak in the English language.

23.     Plaintiff Haulmark has been involved with the civic system in America for at least two decades by participating in some of the most important privileges and duties this country asks of its citizens. His privileges and duties include, but are not limited to being a registered voter, and improving local communities by participating in numerous political and legislative activities.

24.     The City of Olathe City Council, the Board of Education for Olathe Public Schools, the Johnson County Board of County Commissioners, the Johnson County Community College, and other local governmental entities provide effective communication when Plaintiff Haulmark participates in their legislative and policy-making meetings. They produce and publish online streaming audiovisual content of their proceedings, with live sign language interpreting, and live captioning. Some of these entities' audiovisual contents include a sign language interpreting team in the frame of the videos.

25.     Plaintiff Haulmark was a congressional candidate, and then a state representative candidate, between June 2017 and November 2018.

26.     During the 2017-2018 Legislative Sessions, on and after the campaign trail, Plaintiff Haulmark attempted to demonstrate his political leadership by sharing information on legislative bills. All legislative activity fundamentally transforms the lives of community leaders and constituents.

27.     Plaintiff Haulmark is limited in his political functions as a community leader in the state of Kansas and the local neighborhood of Olathe because he is intentionally denied by the Defendants from participating in the political process. With the openly discriminatory nature of the Defendants excluding Plaintiff Haulmark from

legislative activities, relationships between Plaintiff Haulmark, community leaders, and constituents, have deteriorated significantly. As a result, Plaintiff Haulmark suffers blatant and irreparable damage to his reputation.

28.     On January 14, 2019, the Kansas State House of Representatives began its new legislative session. Plaintiff Haulmark was not able to participate in the legislative proceedings as an observer in the chamber of the Kansas House of Representatives, because there were not any auditory aids readily available.

29.     On that day, Plaintiff Haulmark reached out to a few of the elected members of the Kansas Legislature, and asked how to obtain communication access to the legislative session of the Kansas House of Representatives that day. He was told by an elected legislator the Defendants would not provide a sign language interpreter for the day.

30.     During the next hour on that day, Plaintiff Haulmark visited the office of LAS to request for a sign language interpreter or any other available auditory aids for access to the legislature proceeding in the chamber of the Kansas House.

31.     Plaintiff Haulmark was told by a staff member of LAS that a two business days notice is required for auditory aids to be furnished. Plaintiff Haulmark also was told that there were not any other auditory aids readily available on that day.

32.     Plaintiff Haulmark attempted to use his smartphone to watch the live video, being produced and streamed by the Defendants' online broadcasting services, of legislative proceedings in the Kansas House chamber, published on the YouTube Channel. There were not any captioning or any other accommodations being provided with this live video on that day.

33.     Plaintiff Haulmark sent a letter, dated February 18, 2019, addressed to House Speaker Ron Ryckman and carbon copied to Defendant Tom Day and other officers. [See Exhibit #4] This letter includes a request for the online broadcasting services, provided by LAS, to be available to the public, free of charge, to be readily accessible, and to be in compliance with some Kansas statutes, and Section 504 of the Rehabilitation Act. The ADA does not require a citation of itself when requesting for accommodations to gain the protection under itself.

34.     Plaintiff Haulmark did not receive a response to the February, 2019 letter.

35.     On February 20, 2019, an email, with the subject of *"HB 2219 & Existing IT Accessibility Policy"*, was circulated by Courtney A. Fitzgerald, the Communications Director & Legislative Liaison in the Office of Information Technology Services, throughout the Kansas government with a clarification from Cole Robison, Director of IT Accessibility in the same office, on the 2019 House Bill 2219 with the importance on how the Information Technology Executive Council (ITEC) Policy 1210 "requires all State of Kansas government entity content, made available through information technology, to be accessible to and usable by individuals with disabilities, and outlines specific technical criteria (adopted from federal law and industry standards) by which such accessibility is to be achieved."

36.     The Kansas City Star published an article, *"Kansas transparency advocates push video streaming for statehouse committee hearings"* on Feb. 20, 2019. This article shares, "Currently, the House and Senate sessions are the only meetings broadcasted via YouTube. Over the past two years, the legislature has equipped the 13 committee rooms to stream audio." This article adds, "Thomas Day, director of

Legislative Administrative Services (LAS), the entity that would be responsible for outfitting committee rooms for broadcast, said one of his main concerns is the cost of closed captioning, which runs around $3 per minute." [See Exhibit #5]

37.     When sharing the cost of captioning, Defendant Tom Day showed that he has been aware that the captioning of online broadcasting services is required for the Deaf and Hard of Hearing individuals to participate in this political process. In addition, the public has learned that Defendant Tom Day is a state official who at a minimum has the authority to address the possibility of discrimination and to institute corrective measures on the Kansas Legislature's behalf. Furthermore, Defendant Tom Day uses the budget concerns as a justification to delay the following of the ADA law until at least 2021.

38.     After it became clear Defendant Tom Day would not respond to Plaintiff Haulmark's February letter, Plaintiff Haulmark filed a petition for Writ of Mandamus as the first legal action on June 4, 2019 with the Kansas Supreme Court to request the compelling of the Defendants' online broadcasting services to be in compliance with several state laws by being readily accessible with effective communication. (Kansas Supreme Court, Appellate Case No. 19-121312-S[3]). Plaintiff Haulmark received a letter, dated September 27, 2019, from Kansas Supreme Court with the dismissal and the reason, "The court has considered and dismisses the petition for writ of mandamus for failure to state a cause of action over which this court has original subject matter jurisdiction. This dismissal is not a decision on the merits of any allegations raised in the petition..."

---

[3] Kansas Supreme Court, *Appellate Case No. 19-121312-S*, http://sigd.net/Haulmark-KSC-19-121312-S.pdf

39.     As his next legal strategy, on the day of November 1, 2019, Plaintiff Haulmark submitted a Kansas Open Records Act, K.S.A. § 45-215 *et seq.*, (hereinafter "KORA") request addressed to Defendant Tom Day, and carbon copied to House Speaker Ron Ryckman, Senate President Susan Wagle, Anthony Fadale as State ADA Coordinator, and Robert Cooper as Executive Director of Kansas Commission for the Deaf and Hard of Hearing (hereinafter "KCDHH") with requests for those public records of the audio streamings and videos on the YouTube Channel to be fully accessible for Plaintiff Haulmark under the Title II of the Americans with Disability Act and Section 504 of the Rehabilitation Act. Included in this request is a list of hundreds audio-only recordings on the committee proceedings that occurred during the 2019 Legislative Session. [See Exhibit #6]

40.     On the day of November 15, 2019 approximately nine months later, Defendant Tom Day responded to Plaintiff Haulmark's KORA request, with the cost being in the estimated amount of $153,194 to produce the transcripts of the listed audio recordings. [See Exhibit #7]

41.     In this same letter, Defendant Tom Day cited in pursuant to the KORA, K.S.A. § 45-218(e), to intentionally deny Plaintiff Haulmark's request for the production of the transcripts for the audio-only recordings because "[t]his is a significant cost." While segregating Plaintiff Haulmark based on his hearing disability, Defendant Tom Day offers to create transcripts for limited numbers of specific committee meetings of Plaintiff Haulmark's choosing, while not applying the same restriction to any other individuals without a hearing disability. In this same response, Defendant Tom Day invited Plaintiff Haulmark for a meeting with him.

42.     The annual budgets since 2016 of the Kansas Legislature have been more than $15,000,000 per year which includes covering the costs for the Kansas Legislative Information Services System (KLISS).

43.     The Governor's Budget Report for Fiscal Year 2019, "Also included in this budget are the costs to run the Kansas Legislative Information Services System (KLISS), which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2019, the Governor recommends expenditures totaling $19.5 million, all from the State General Fund" for the Kansas Legislature. [See Exhibit #8]

44.     The Governor's Budget Report for Fiscal Year 2020, "Also included in this budget are the costs to run the Kansas Legislative Information Services System, which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2019, the Governor recommends expenditures totaling $20,866,530, all from the State General Fund. For FY 2020, expenditures totaling $20,347,809 are recommended, all from the State General Fund" and "will fund 48.00 FTE positions each year" for the Kansas Legislature. [See Exhibit #9]

45.     The Governor's Budget Report for Fiscal Year 2021, "Also included in this budget are the costs to run the Kansas Legislative Information Services System, which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2020 and FY 2021, the Governor recommends expenditures totaling $23,861,524 and $20,846,842, all from the State General Fund" and "will fund 48.00 FTE positions each year" for the Kansas Legislature. [See Exhibit #10]

46.     On December 5, 2019, there was a meeting held in the Kansas State Capitol building hosted by Defendant Tom Day with Gordon Self, Revisor of Statutes, MJ Willoughby, Assistant Attorney General, Anthony Fadale, ADA Coordinator for the State of Kansas, Robert Cooper, Executive Director of KCDHH, Chriz Dally, Chair of KCDHH, and Kim Anderson, President of Kansas Association of the Deaf. A sign language interpreter was provided as coordinated with KCDHH for this meeting.

47.     During this December 5 meeting, Defendant Tom Day stated that he and LAS have been working on providing accessibility to the legislative proceedings for at least two years prior to the day of this meeting. Defendant Tom Day shared that he understood that as long as the audio streaming content and audiovisual content are continued to be produced and published without the accommodations, this act is repeatedly violating the ADA and Section 504 of the Rehabilitation Act, by discriminating against Plaintiff Haulmark and other individuals with hearing disabilities. Defendant Tom Day shared that he understood the requests of the accommodations to ensure that the online broadcasting services are providing content readily accessible to individuals with hearing disabilities. Defendant Tom Day stated that the budget is a higher priority over the accessibility of the individuals with hearing disabilities. Defendant Tom Day shared that the office of LAS has at least a $7 million dollar budget with 16 members of his staff working on the online broadcasting system to stream the video and audio of the legislative proceedings. Defendant Tom Day stated that he will contact KCDHH to work with the current vendor(s) to provide accessibility with the current streaming and online broadcasting equipment. Defendant Tom Day assured Plaintiff Haulmark that he will provide a report on the progress to provide

access to the online broadcasting services. Defendant Tom Day shared during this meeting that he will provide "something before the beginning" of the 2020 Legislative Session.  There had been an agreement that if the 2020 Legislative Session became fully accessible for Plaintiff Haulmark, the request for transcripts from the 2019 Legislative Session would no longer be necessary to be met.

48.     Defendant Tom Day and Anthony Fadale, ADA Coordinator for the State of Kansas, appeared at the commission meeting of KCDHH on January 10, 2020 to share how Defendant Tom Day has a responsibility to implement plans and directives of the Legislative Coordinating Council of the Kansas Legislature. Defendant Tom Day shared that "The Legislative Coordinating Council is fully behind us in developing a plan to make the legislature inclusive for the Deaf and Hard of Hearing community."  It has been clear that Defendant Tom Day has always had the full authority to furnish the captioning with the online broadcasting services for at least two years.

49.     The Kansas Legislature had their first day of session held on January 13, 2020. Those committee proceedings, streamed as audio-only by the online broadcasting services, continued to be completely inaccessible to Plaintiff Haulmark. The audiovisual content of the Kansas Senate and Kansas House of Representatives proceedings still do not provide effective communication, with the provided automatic-generated captioning being inaccurate and unintelligible.

50.     On January 14, 2020, Plaintiff Haulmark emailed Defendant Tom Day to share that Day One of the 2020 Legislative Session has videos that are inaccessible to him. In the email, Plaintiff Haulmark submitted a request: "Because of the inaccessible information with the current videos, I am including a request in this email for me to

obtain a complete and accurate transcriptions for those published videos and the future videos, planned to be published on this YouTube channel." [See Exhibit #11]

51.     Defendant Tom Day issued a response via email on January 16, 2020 to deny Plaintiff Haulmark the production of the transcripts with the citation to KORA for the exemption. In the same response, Defendant Tom Day applied an impediment, not faced by individuals without a hearing disability, based on Plaintiff Haulmark's disability: "While KORA does not require production of these transcripts, and as we have previously stated, we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills. Please feel free to let me know if there are specific bills of interest to you such as were referred to generally in your correspondence." [See Exhibit #12]

52.     Plaintiff Haulmark sent an email to Defendant Tom Day on March 2, 2020 to request "transcripts to be produced and published with all of the content produced since the beginning of the 2020 legislature session. This includes the audio streams covering the legislative proceedings during the committee and subcommittee meetings." [See Page 1 of Exhibit #13]

53.     Legislative Coordinating Council posted a notice stating that the Legislative Coordinating Council will meet on April 8, 2020 as called to review an executive order issued by the Kansas Governor. In this same notice, it is stated: "If you do not have internet access, contact Tom Day at Tom.Day@las.ks.gov for an alternative medium for interactive communication to access the meeting as such communication allows." Furthermore, "Any individual with a disability may request accommodation in order to participate in Legislative Coordinating Council meetings. Requests for

accommodation should be made by contacting Legislative Administrative Services at 785-296-2391 (TTY: 711) or at LegServ@las.ks.gov and will be granted as available." [See Exhibit #14]

54.     After following up twice, one on March 23, 2020 and the next one on April 8, 2020 as per to the instructions in the notice of the Legislative Coordinating Council, Plaintiff Haulmark sent a request: "I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today." [See Page 2 of Exhibit #13]

55.     Defendant Tom Day provided a response on April 10, 2020 as the final authority to deny Plaintiff Haulmark, based on his disability: "Previously, I had responded to your KORA request, including in a letter dated November 15, 2019. In that letter, I responded to your request for transcripts of proceedings for legislative chamber sessions and committee meetings by stating no transcripts exist and therefore, need not be produced pursuant to KORA. To the extent that you are requesting these transcriptions again pursuant to KORA, the transcriptions need not be provided under KORA for the reasons stated in my previous letter to you of November 15, 2019, incorporated by reference as though fully restated herein." Furthermore, "In terms of your request for the April 8, 2020 meeting of the Legislative Coordinating Council, no transcript currently exists and therefore, under KORA, need not be produced under KORA. However, I am looking into that request further. If the transcript becomes available, I will provide it to you." [See Exhibit #15] Three days later after receiving this response from Defendant Tom Day, Plaintiff Haulmark sent a response via email to "reiterate that [his] request is for transcripts to be produced for those [requested] audio

recordings to be in compliance with the Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Those two federal laws are what requires the production of those transcripts." [See Page 2 and Page 3 of Exhibit #13] There is not any evidence of response from Defendant Tom Day to Plaintiff Haulmark's last email up until this day of filing this Complaint.

56.     Plaintiff Haulmark filed a Complaint against five Defendants with this Court on June 15, 2020 [Case ID: 20-cv-04033-SAC-TJJ]. The five Defendants are the State of Kansas, the Kansas Senate, Susan Wagle in her official capacity as the President of the Kansas Senate, the Kansas House of Representatives, and Ron Ryckman in his official capacity as the Speaker of the House of Representatives. As of December 15, Notice for Voluntarily Dismissal for this case has been submitted by the Plaintiff Haulmark, due to the fact that he learned who the appropriate parties are responsible for the online broadcast services.

57.     Defendant Tom Day and Alan Weis, the Legislative Chief Information Technology Officer, created Kansas Virtual Statehouse on July 15, 2020 as a plan to be reported to the Legislative Budget Committee of the Kansas Legislature. This plan was not created as a response to Plaintiff Haulmark's repeated requests for compliance with the ADA. It was created as a response to the COVID-19 public health emergency. This plan is designed to provide full remote access to the legislative proceedings held in the chambers, the committee rooms, and spaces where computers with microphones and webcam technology are utilized. Within this plan, the captioning services are being only considered optional, not mandatory as required to be in full compliance with the ADA. [See Exhibit #16]

58.    Defendant Tom Day has known that it is necessary for captioning to be provided with the online broadcasting services for at least two years. When implementing the online broadcasting services, Defendant Tom Day failed to make reasonable modifications to avoid discrimination against individuals with hearing disabilities. While being on notice of the lawful requirement to furnish transcripts, Defendant Tom Day's "habit" is to cite state law to justify the denial of access to the online broadcasting services for individuals with hearing disabilities.

59.    Defendant Tom did not offer any other reasonable accommodations and is repeatedly denying Plaintiff Haulmark, based on his hearing disabilities, access to the online broadcasting services, freely and openly available on the Kansas Legislature website and the YouTube Channel.

60.    The intentional discrimination by the Defendants to prevent Plaintiff Haulmark from exercising his right to participation in the political process puts Plaintiff Haulmark at a severe disadvantage. Plaintiff Haulmark is experiencing social isolation when his political colleagues do not want to explain to Plaintiff Haulmark what he has missed out from the legislative proceedings that are only accessible to individuals without hearing disabilities.

61.    For over two years, Plaintiff Haulmark has suffered, and continues to suffer irreparable harm, with experiences of tremendous mental and emotional suffering including feelings of pain, rejection, isolation, indignity, humiliation, stigmatization, and emotional distress of being prohibited, on the basis of his disability, to equal participation in the political process. Plaintiff Haulmark would like to

participate in the political process equally to pursue his passions as a political community leader.

### III.    CAUSE OF ACTION

### Americans With Disabilities Act – Title II

### (42 U.S.C. § 12131-12134 *et seq.*)

62.    Plaintiff Chris Haulmark incorporates the allegations in the preceding paragraphs, as if alleged herein.

63.    Title II of the ADA, 42 U.S.C. § 12131-12134, *et seq.*, and 28 C.F.R. § 35 guarantees equal access for qualified individuals to the benefits of the services, programs and activities of a public entity.

64.    Title II of the ADA mandates, *inter alia*, that "*no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.*" 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

65.    In addition, a public entity may not, on the basis of disability, "*[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[.]*" 28 C.F.R. § 35.130(b)(1)(i).

66.    In addition, a public entity may not, on the basis of disability, "*[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]*" 28 C.F.R. § 35.130(b)(1)(iii).

67.     In addition, a public entity may not, on the basis of disability, *"[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]"* 28 C.F.R § 35.130(b)(1)(v).

68.     A public entity is required to *"make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."* 28 C.F.R § 35.130(b)(7)(i).

69.     In addition, *"A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."* 28 C.F.R § 35.160(a)(1).

70.     Such a public entity *"shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."* 28 C.F.R § 35.160(b)(1).

71.     Title II of the ADA prohibits the unjustified isolation of persons with disabilities and requires public entities to *"administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."* 28 C.F.R. § 35.130(d).

72.     Title II of the ADA *"does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them."* 28 C.F.R. 35.103(b).

73.     It is unlawful for any public entity to *"coerce, intimidate, threaten, or interfere with"* an individual on the basis of his exercise of any right granted under Title II, including the protected rights to reasonable accommodations and effective communication. 28 C.F.R § 35.134(b).

74.     Defendants are a department, agency, or other instrumentality of a State or State government; accordingly, Defendants are public entities as defined in 42 U.S.C. § 12131(1).

75.     Plaintiff Chris Haulmark is a qualified individual with a disability as that term is defined in 42 U.S.C. § 12131(2). Plaintiff Haulmark is Deaf. Plaintiff Haulmark meets the eligibility requirements for participation in the programs, services, and activities of the LAS which he sought.

76.     At all relevant times, the Defendants were aware of Plaintiff Haulmark's physical disability, namely that Plaintiff Haulmark is an individual with hearing disabilities. The Defendants had notice that an auxiliary aid was necessary for individuals with hearing disabilities, including Plaintiff Haulmark, to effectively communicate and participate in the services, programs, and activities of the LAS.

77.     Defendant Tom Day acts as an individual in his official capacity in all activities with the services, programs, and activities offered by LAS.

78.     The Defendants have failed and continue to fail to meet their obligations to provide Plaintiff Haulmark with opportunities that are equal to those provided to the individuals without a hearing disability.

79.     The Defendants have excluded Plaintiff Haulmark from participation in and denied Plaintiff Haulmark the benefits of their services, programs, or activities. The Defendants have denied Plaintiff Haulmark the right to participation in the political process.

80.     The ignorance of the Defendants subjects Plaintiff Haulmark to encounter various forms of discrimination including outright intentional exclusion, segregation, communication barriers, and relegation to lesser services, programs, activities, benefits, and other opportunities offered by the Defendants.

81.     The Defendants have failed to provide auxiliary aids and services to ensure equally effective communication with Plaintiff Haulmark with all due speed and have failed to reasonably modify their policies, practices, and procedures as necessary to accommodate Plaintiff Haulmark.

82.     The Defendants are violating 42 U.S.C. § 12132 and its accompanying regulations by committing the following intentional discriminatory acts or practices on the basis of disability:

A.     failed to maintain policies and procedures to ensure compliance with ADA Title II, specifically policies that provide equal access and effective communication to individuals with hearing disabilities;

B.      failed to ensure that communications with Plaintiff Haulmark were as effective as communications with individuals without a hearing disability and to provide auxiliary aids and services necessary for effective communication;

C.      failed to provide reasonable modifications of policies, practices, and procedures to prevent discrimination;

D.      failed to provide opportunities and information in a manner that is timely, equally effective, and equally integrated;

E.      otherwise discriminated and retaliated against Plaintiff Haulmark by excluding him from the participation of the online broadcasting services by refusing to provide equally accurate real-time captions and transcripts for all of the audio content streamed on their website; and

F.      refusing to provide equally accurate real-time captions and transcripts for all of the audiovisual content streamed on the YouTube Channel, administered by the Defendants.

83.     In the absence of declaratory and injunctive relief, Plaintiff Haulmark has and will continue to suffer irreparable harm from the Defendants' failure to comply with the law.

## IV.    CLAIMS FOR RELIEF

84.     WHEREFORE, Plaintiff Chris Haulmark demands judgement against the Defendants as follows:

A.      Enter a declaratory judgement, in accordance with 28 U.S.C. § 2201:

i.      declaring that the Defendants' actions and failures have violated and continue to repeatedly violate Title II of the ADA by subjecting Plaintiff Haulmark to discrimination;

ii.     declaring that all of the public records obtained under the Kansas Open Records Act, K.S.A. § 45-215 *et seq.*, are subject to the Title II of the ADA to be made equally accessible for individuals with disabilities; and

iii.    declaring that all public meetings in pursuant to the Kansas Open Meeting Act, K.S.A. 75-4317 *et seq.*, are subject to the Title II of the ADA to be made equally accessible for individuals with disabilities;

B.      A mandatory preliminary and thereafter permanent injunction relief, pursuant to 28 U.S.C. § 2202, requiring the Defendants to:

i.      to make reasonable modifications in policies, practices, or procedures, which such modifications are necessary to afford all offered services, facilities, privileges, advantages, or accommodations to Plaintiff Haulmark and other individuals with hearing disabilities;

ii.     to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff Haulmark or other individuals with hearing disabilities by failing to provide effective communication to ensure that no individual with a hearing disability is excluded, denied services, segregated or otherwise treated differently than other individuals without a hearing disability because of the absence of auxiliary aids and services;

iii.    to develop, implement, promulgate, and comply with a policy requiring the existing facilities including the, but not limited to, online broadcasting equipment, streaming audio and audiovisual content to be readily accessible with accurate captioning provided to provide effective communication for Plaintiff Haulmark and other individuals with hearing disabilities;

iv.    to develop, implement, promulgate, and comply with a policy requiring that prompt remedial measures are made to cure past violations of the Defendants' requirements to produce and publish the accurate transcripts to provide effective communication for all of the archived and future audio-only content published on the website administered by the Defendants;

v.    to develop, implement, promulgate, and comply with a policy requiring that prompt remedial measures are made to cure past violations of the Defendants' requirements to produce and publish with the accurate captioning to provide effective communication to Plaintiff Haulmark and individuals with hearing disabilities for all of the archived and future videos on the YouTube Channel or any other video hosting platforms administered by the Defendants;

vi.    to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals with hearing disabilities of their right to effective communication. This notification will include posting explicit and clearly worded notices that the Defendants will provide sign language interpreters, transcripts, captioning services, and other services to ensure effective communication with individuals with hearing disabilities to participate in Defendants' services, programs, and activities; and

vii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendants will provide training for all of their employees, staffs, and other agents on a regular basis about the rights of the individuals with hearing disabilities under the ADA.

85.    Retain jurisdiction over this action to ensure the Defendants' compliance with the mandates of the ADA;

86.    An award of Plaintiff Haulmark's compensatory damages, not expected to exceed more than $5,000,000 depending on findings of the evidence;

87.    An award of attorney fees and costs if counsel has ever been retained by Plaintiff Haulmark during the duration of this action;

88.    An award of reasonable expenses of court to Plaintiff Haulmark; and

89.    Such other further relief as deemed just and proper.

## V.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

-------------------------------------------------------------------

DESIGNATION OF PLACE OF TRIAL

Plaintiff Haulmark designates Topeka, Kansas as the location for the trial in this matter.

Respectfully submitted this 16th day of December 2020

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHRIS HAULMARK,** | ) | |
| Plaintiff, | ) | |
| V. | ) | |
| **STATE OF KANSAS,** | ) | |
| **LEGISLATIVE ADMINISTRATIVE** | ) | |
| **SERVICES,** | ) | |
| and | ) | Civil Action No.  5:20-cv-04084-EFM-TJJ |
| **TOM DAY**, in his official capacity as | ) | |
| Director of Legislative Administrative | ) | |
| Services, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INDEX OF EXHIBITS

Exhibit #1:  ADA Accommodations, Legislative Administrative Services

Exhibit #2:  January 3, 2017 Article of The Topeka Capital-Journal

Exhibit #3:  April 8, 2020 Meeting of Legislative Coordinating Council

Exhibit #4:  February 18, 2019 Letter to Defendant Tom Day and other officers.

Exhibit #5:  February 20, 2019 Article of The Kansas City Star.

Exhibit #6:  November 1, 2019 Kansas Open Records Request from Chris Haulmark to Tom Day (excluding attached list of legislative proceedings available in content of audio stream)

Exhibit #7:  November 15, 2019 Response from Tom Day to the Kansas Open Records Act request.

Exhibit #8:  The Governor's Budget Report for Fiscal Year 2019

Exhibit #9:  The Governor's Budget Report for Fiscal Year 2020

Exhibit #10: The Governor's Budget Report for Fiscal Year 2021

Exhibit #11: January 14, 2020 Accessibility for the 2020 Legislative Sessions

<u>Exhibit #12</u>: January 16, 2020 Response from Tom Day to Chris Haulmark's Request

<u>Exhibit #13</u>: March to April 2020 Email Discussion between Chris Haulmark and Tom Day

<u>Exhibit #14</u>: April 8, 2020 Notice for Legislative Coordinating Council Meeting

<u>Exhibit #15</u>: April 10, 2020 Response from Tom Day to Chris Haulmark

<u>Exhibit #16</u>: Kansas Virtual Statehouse

# Exhibit #1

ADA Accommodation
http://www.kslegislature.org/las/Pages/ada.html



Home

**ADA ACCOMMODATIONS**

Any individual with a disability may request accommodations for any committee or legislative session.

Requests should be made at least two (2) working days in advance of the meeting by contacting Legislative Adminstrative Services at:

(785) 296-2391
TTY: 711, or
Email: LegServ@las.ks.gov

Note: Each committee room in the Capitol building is equipped with two (2) head sets for hearing assistance.



Copyright ©2012 Kansas Legislative Office of Information Services. All rights reserved.

**Exhibit #2**
The Topeka Capital-Journal: *Kansas Legislature set to begin
streaming live audio of committee hearings*

https://www.cjonline.com/news/state-government/2017-01-03/kansas-legislature-set-
begin-streaming-live-audio-committee

# Kansas Legislature set to begin streaming live audio of committee hearings

**By The Associated Press**

 

The Kansas Legislature will soon begin streaming live audio of committee hearings over the internet.

The three rooms that host the most high-profile committees will have live audio starting this month. The other 10 rooms used for hearings are expected to have live audio before the end of the 2017 session, the Lawrence Journal-World (http://bit.ly/2hLQIoo ) reported.

Advocates for open government in Kansas                    , which was                          that lawmakers passed last year. The program is funded by a three-year, $199,000 grant from the Information Network of Kansas, which helps public entities launch e-government services.

Residents have been able to listen to Kansas Senate or House sessions in real time on the internet for several years. Adding audio for committee hearings is a good step, though more still needs to be done, said Kansas Sunshine Coalition for Open Government President Ron Keefover.

"That's a very easy way to make more transparency at the Kansas Legislature," he said. "It's a good move in the right direction, but we would prefer to have all of the meetings video streamed if possible."

State officials said there aren't immediate plans to begin streaming video because it would be too expensive.

"Based on current funding, the answer to your question about video is definitely not," Legislature chief information technology officer James Miller said. "Video is literally a quantum leap, both in terms of the technology required and the amount of bandwidth required."

Keefover, a retired Kansas Supreme Court spokesman, directed the effort to launch live video streaming of Supreme Court hearings. He said the system was installed for less than $15,000, and included two cameras and a control board to switch between the two.

Miller said there is one in the Old Supreme Courtroom set up a few years ago, "but it's an as-requested kind of thing at this point."

People will be able to access the audio streams by going to the                          , clicking on the "Committees" tab and looking up the particular committee they are interested in.

## Exhibit #3

April 8, 2020 Meeting of Legislative Coordinating Council

http://sg001-harmony.sliq.net/00287/Harmony/en/PowerBrowser/PowerBrowserV2/2
0200408/-1/9503



# Exhibit #4

Page 1 of 2

Feb. 18, 2020 Letter requesting for accommodations



Chris Haulmark
600 S. Harrison St.
Apt #11
Olathe, KS 66061
(512) 366-3981

February 18, 2019

Rep. Ron Ryckman, House Speaker
Kansas State Capitol
300 SW 10th Street
Topeka, KS 66612

CC: Senate President Susan Wagle
CC: Governor Laura Kelly
CC: Director Thomas Day, Legislative Administrative Services
CC: Director Robert Cooper, Kansas Commission for Deaf and Hard of Hearing

Dear House Speaker Ron Ryckman,

I am Chris Haulmark, a Deaf and disabled citizen who is a resident of Olathe, Kansas. As a bilinguist with American Sign Language (ASL) as my native and primary language and written English as my second language, I do not hear nor speak in any languages including English.

This letter is an expectation for Legislative Administrative Services, authorized to provide administrative and technical support for the Kansas Legislature and general public, to meet the satisfactions of the state law protected disability accommodations for the "audio stream" channels available to the public via the Kansas Legislature website.

K.S.A. 75-4351 provides context of when and how a qualified sign language interpreter is to be appointed. All of the committees, under Kansas Legislative, are within the scope of "licensing authority of the state or any of its political subdivisions" as per Subsection (d) of K.S.A. 75-4351.

Subsection (e) of K.S.A. 75-4355b allows a Deaf or Hard of Hearing person to prefer a different mode of communication to substitute the use of a sign language interpreter.

K.S.A. 75-5391 establishes and provides the state-level authority for the Kansas Commission for the Deaf and Hard of Hearing (KCDHH) to oversee the availability and coordination of services, including access of communication for the Deaf and Hard of Hearing people.

# Exhibit #4
### Page 2 of 2

KCDHH is established to obtain and provide the resources to meet the accessibility requirements for the Deaf and Hard of Hearing people including me, who may wish to participate in the governmental process.

Specifically, my disabilities require and prefer the following accommodations be provided: a qualified American Sign Language interpreting team as a video feed or real-time English captions to provide the accessibility to the aurally delivered streams open to the public on the Kansas Legislature website. I believe the method of live captions would provide more benefits as it will benefit everyone else.

If these statutes of the Kansas state law are not applicable for legal requirements to be conducted in order to provide accessibility of communication for the Deaf community, then within this letter, I formally request that the Kansas Legislature meets the Section 504 of the Rehabilitation Act of 1973 protected disability accommodations to provide the requirements listed in the previous paragraph.

Section 504 of the Rehabilitation Act of 1973 (Section 504) forbids public and private entities that receive financial assistance from any federal department or agency ("covered entities") from excluding qualified individuals with disabilities or denying them an equal opportunity to receive program benefits and services.

Thank you for your time and consideration.

Chris Haulmark
chris@haulmarkforkansas.com
Deaf Kansan, Political Figure and Community Activist

## Exhibit #5

Page 1 of 2

The Kansas City Star: *Kansas transparency advocates push video streaming for statehouse committee hearings*

https://www.kansascity.com/news/politics-government/article226514475.html

≡   ▭   ☁                    THE KANSAS CITY STAR                    **SUBSCRIBE**   ●

GOVERNMENT & POLITICS

# Kansas transparency advocates push video streaming for statehouse committee hearings

🐦 f ✉ ➤

*TOPEKA*

For those who can't visit the statehouse every day, keeping an eye on the Kansas Legislature isn't easy. A number of lawmakers, including Gov. Laura Kelly, have been pushing for more transparency, but blind spots still remain.

One of the most notable is the lack of live video streams. Only the House of Representatives and the Senate are carried live via YouTube. Committee hearings, on the other hand, are available only through online audio.

Which is not always audible.

The latest attempt to bring the legislative process out of the shadows came this week with introduction of a measure to put video and audio broadcasts in every Kansas committee room, not just the two chambers.

Rep. Stephanie Clayton, the Overland Park Democrat who has introduced various versions of the bill since 2014, said this might be the time.

"Right now we've got a very transparency-supportive leadership. That might not always be the case," she said. "We don't know who our speaker is going to be or who our senate president is going to be in the future."

Kansas government has been widely criticized for lack of disclosure, particularly around the troubled Department for Children and Families. A 2017 _____ _____ documented Kansas's culture of secrecy. In 2015, the Center for Public Integrity gave the state a flunking grade in transparency and accountability.

While proponents say it's a critical step, others are worried about the price tag: an estimated $564,650 for video broadcast equipment. The biggest items are $182,000 for closed-captioning and $200,000 for rewiring committee rooms.

Thomas Day, director of Legislative Administrative Services (LAS), the entity that would be responsible for outfitting committee rooms for broadcast, said one of his main concerns is the cost of closed captioning, which runs around $3 per minute.

# Exhibit #5
## Page 2 of 2

"That's a huge amount," Day said. "Consider the House of Representatives in session from 9 a.m. to 2 a.m. when we get down to the end of the session. That will be closed captioning that entire time."

Day suggested an alternative phase-in program that would give LAS more time to allocate the money and set up the technology. Right now, the bill has a start date of Jan. 1, 2020. Even delaying until 2021 would be helpful, he said.

Clayton said budget concerns don't worry her.

"Often times, if someone wants to do something, they do it, and if they don't want to do it, then they put a big fiscal note on it," she said.

Currently, the House and Senate sessions are the only meetings broadcasted on video. Over the past two years, the legislature has equipped the 13 committee rooms to stream audio.

But proponents of the bill, which include media associations and open government advocates, said audio broadcasts can be unreliable and don't give a complete picture of legislative proceedings.

Some lawmakers even pointed out that the audio stream suddenly drops during discussion of a bill.

"Technology has advanced and become far more affordable, providing us with the capability to have a vast number of our citizens right there in the room with legislators as they debate the business of Kansas," said Doug Anstaett of the Kansas Press Association. "To not take advantage of that technology when it would serve to keep Kansans informed would be a lost opportunity to increase transparency in government."

It's unclear if the bill will get a vote soon. The Federal and State Affairs committee chairman, Rep. John Barker, said he wants to further explore options to phase in transparency measures.

Clayton said she open to "any little bit" of progress.

"People are watching, they are definitely paying attention," she said. "So I think there is no question that the citizens are watching us and they do have the desire for that transparency."

**RELATED STORIES FROM KANSAS CITY STAR**

POLITICS-GOVERNMENT

'One of the most secretive, dark states': What is Kansas trying to hide?





Lara Korte helps cover Kansas politics for the Kansas City Star. She is a senior at the University of Kansas majoring in journalism and political science.

# **Exhibit #6**
Page 1 of 7
November 1, 2019 Kansas Open Records Request from Chris Haulmark to Tom Day
(excluding attached list with links to each legislative proceedings available in
content of audio stream)

Chris Haulmark
600 S. Harrison St.
Apt #11
Olathe, KS 66061
(512) 366-3981

November 1, 2019

Thomas A. Day
Director
Legislative Administrative Services
300 SW 10th Ave, Ste 551-S
Topeka, KS 66612-1504

CC: Senate President Susan Wagle
CC: House Speaker Ron Ryckman
CC: Anthony Fadale, State ADA Coordinator
CC: Director Robert Cooper, Kansas Commission for Deaf and Hard of Hearing

RE: KORA request with required accessible accommodations under Section 504 of
the Rehabilitation Act, Title II of the Americans with Disabilities Act, and Kansas
statutes.

Thomas A. Day:

This letter contains a request in pursuant to Kansas Open Records Act, K.S.A.
45-215 - 223, to obtain access to the archived Audio-only streams, which are public
records and are completely inaccessible to Deaf individuals such as me. There are
additional requests enclosed in this letter to bring those archived Audio-only
streams, future real-time Audio-only streams, and real-time Video/Audio Streams,
produced by the Kansas Legislature, into compliance with Section 504 of the
Rehabilitation Act, Title II of the Americans with Disabilities Act, K.S.A. §
75-4355b(a), and K.S.A. § 75-4355b(e).

Page 1 of 7

# Exhibit #6
### Page 2 of 7

This letter contains the requests from Legislative Administrative Services and Kansas Legislature:

1)   I am to obtain the Audio-only streams as public records under KORA on the list of the enclosed 13 pages;

2)   Those KORA-requested Audio-only streams are to be fully and effectively accessible with professional and accurate transcriptions provided for the Deaf individuals under Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(c);

3)   The future real-time Audio-only streams are to be accessible for Deaf individuals under Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(c) with provided real-time captions beginning with the 2020 Legislative sessions for both Kansas House of Representatives and Kansas Senate;

4)   And for the Kansas Legislature to coordinate with Kansas Commission of the Deaf and Hard of Hearing to meet the current requests and the future requests with feasible accommodations under the Americans with Disabilities Act, in pursuant to 28 C.F.R § 35.105(b), and in pursuant to K.S.A. § 75-5391, *et seq.*, to satisfy the requirements including the guarantee on the preventation of discrimination onto Deaf individuals.

The intention of this letter is to provide directions for the Kansas Legislature and its political subdivisions, including Legislative Administrative Services, to provide meaningful access of the legislative proceedings, held in legislative chambers and governmental committees, and other legislative meetings open to the public to the Deaf individuals.

The Legislative Administrative Services, as directed by the Legislative Coordinating Council of Kansas Legislature, maintains and oversees the availability of content open to the public of all of the legislative proceedings, including those held in legislative chambers and the governmental committees. Many of those legislative and council proceedings are available to the public via Audio-only streams. The proceedings in the Kansas Legislative chambers are shown with real-time Video-Audio streams on a Youtube channel with captions that are automatically generated, grammatically incorrect, and often unintelligible at a later time.

Page 2 of 7

# Exhibit #6
## Page 3 of 7

The law in pursuant to the Kansas Open Records Act, open meetings, recorded into audio or video format and published for access by the public, are "public records". The public records are not provided as paper documents pursuant to K.S.A. § 45-217(g)(1), therefore, "public records" include audio and video recordings created by the Legislative Administrative Services under the directions of the Legislative Coordinating Council and the Kansas Legislature. In pursuant to K.S.A. § 45-220 *et seq.*, access to those audio "recordings", published on the website operated and maintained by Legislative Administrative Services, must be provided as "public records".

Section 504 of the Rehabilitation Act prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities". 29 U.S.C. § 794 *et seq.* requires that no otherwise qualified individual with a disability, on the basis of that disability, is to be excluded from participation in or be denied the benefits of the services, programs, activities, or to otherwise be discriminated against solely on the basis of disability. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. The Kansas Legislature is a state government and/or an agency of a state government. See 29 U.S.C. § 794(b)(1)(A).

With the 1990 Americans with Disabilities Act, 42 U.S.C. §§ 12131 12134 and 28 C.F.R. § 35, the Kansas Legislature is a "public entity" within the meaning of the Americans with Disabilities Act, under 42 U.S.C. § 12131(1), and is, therefore, subject to Title II of the Americans with Disabilities Act, and its implementing regulation. The streaming of audio and video content by the Kansas Legislature is a service, program or activity within the definition of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2).

As a public entity, the Kansas Legislature must take appropriate steps to ensure that their communications with Deaf individuals and Hard of Hearing individuals are as effective as communications with others, and furnish the appropriate auxiliary aids and services (such as real-time captioning and transcription) to afford individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of their services, programs, or activities; 28 C.F.R. § 35.160 (auxiliary aids and services mandate); id. § 35.104 (defining auxiliary aids and services to include real-time captioning and transcription).

28 C.F.R. § 35.103(b) guarantees that the Americans with Disabilities Act "does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them."

# Exhibit #6
## Page 4 of 7

There is one Kansas statute enacted in 1982. There are two Kansas statutes enacted three years [1993] after the effective date of the Americans with Disabilities Act [July 26, 1990]. These two recent statutes carry the clear intention of the Kansas legislators: those two statutes are to provide greater protections for the rights of the Deaf and Hard of Hearing individuals in Kansas in conjunction with the 1990 Americans with Disabilities Act.

The State ADA Coordinator office, under 28 C.F.R § 35.105(b), is responsible to collect comments from individuals with disabilities or organizations representing individuals with disabilities and to investigate any complaints on any violations of the American with Disabilities Act.

With this letter, the scope is to focus on those three specific Kansas statutes, K.S.A. § 75-5391, *et seq.*, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(e) as the greater protection after the effective date of the Americans with Disabilities Act for the Deaf individuals and the Hard of Hearing individuals.

K.S.A. § 75-5391, *et seq.* [Kansas commission for the deaf and hard of hearing; establishment; duties; management functions.] enacted during 1982 to be the legislative link between the state of Kansas and the Deaf people of Kansas. Bestowed with this statute, Kansas Commission for the Deaf and Hard of Hearing lawfully represents and provides resources for the Deaf individuals and the Hard of Hearing individuals with the additional guarantee under the 1990 Americans with Disabilites Act for the "public entities" being the Kansas government and its political subdivisions to stop discrimination against those same individuals. In pursuant to 28 C.F.R. § 35.103(b) with the effective date of the Americans with Disabilities Act [July 26, 1990], this Kansas statute, the establishment of Kansas Commission for the Deaf and Hard of Hearing, provides a greater protection for the Deaf individuals and Hard of Hearing individuals in Kansas with the responsibilities to "advocate services affecting the deaf and hard of hearing in the areas of public services, health care, educational, vocational and employment opportunity", "act as a bureau of information for the deaf and hard of hearing to state agencies and public institutions providing general health and mental health care, employment, vocational, and educational services, and to local agencies and programs", "collect facts and statistics and other special studies of conditions affecting the health and welfare of the deaf and hard of hearing in this state", "provide for a mutual exchange of ideas and information on the national, state and local levels", "encourage and assist local governments in the development of programs for the deaf and hard of hearing", "cooperate with public and private agencies and units of local, state and federal governments in promoting coordination in programs for the deaf and hard of hearing", "provide for the social, emotional, educational and vocational needs of the deaf and hard of hearing and their families", and "make recommendations for needed improvements, and serve as an advisory board in regard to new legislation affecting the deaf and hard of hearing".

Page 4 of 7

# Exhibit #6
## Page 5 of 7

In recent history, the lack of actions by the Kansas Legislature is the reason for the failure to comply with lawful requirements to provide communication access of their online Audio-only streams for the Deaf individuals and the Hard of Hearing individuals. This Kansas statute of 1982 as the lawful legislative link is deliberately limited with the direction of the Kansas State ADA Coordinator office. The direction of the ADA Coordinator office reduces the protection of the Deaf individuals and Hard of Hearing individuals. In pursuant to 28 C.F.R § 35.105(b), 28 C.F.R. § 35.103(b), and K.S.A. § 75-5391. *et seq.* the office of Kansas Commission for the Deaf and Hard of Hearing is to lawfully with greater protection to meet the legal requirements to collect comments from Deaf individuals and Hard of Hearing individuals or the organizations representing those individuals and to investigate any complaints on any violations of the American with Disabilities Act.

Under the 1990 Americans with Disabilities Act, there is not a specification on who is responsible to provide effective communication access for the Deaf individuals and Hard of Hearing individuals. In pursuant to K.S.A. § 75-4355b(a) [1993], this state statute provides the greater protection with the identification of who "is responsible for assuring the procurement of the interpreter".

In pursuant to 28 C.F.R § 35.106(b)(2) of the Americans with Disabilities Act, the public entity shall make the determinations by giving primary consideration to the requests of individuals with disabilities. In pursuant to K.S.A. § 75-4355b(e), this provides the greater protection by bestowing the Deaf individual, the Hard of Hearing individual, or the Speech Impaired individual the ability to determine the individual's preference for the mode of communication to be used in place of a sign language interpreter. With this specific Kansas statute, the government of Kansas as a "public entity" must give primary consideration to the expressed preference for a particular communication mode by an individual who is Deaf, Hard of Hearing, or Speech Impaired.

The word "reasonable" is used within the Americans with Disabilities Act. 28 C.F.R § 35.130(b)(7)(i) - (ii), for when making modifications. Merriam-Webster defines "reasonable" as, "being in accordance with reason; not extreme or excessive; moderate, fair; inexpensive." K.S.A. § 75-4355b(e) provides a greater protection with the use of the word "feasible" when making modifications. In the same dictionary of Merriam-Webster, the definition of "feasible" is, "capable of being done or carried out; capable of being used or dealt with successfully, suitable; reasonable, likely." Compared to "reasonable", the use of "feasible" provides the greater protection of the Deaf individuals and Hard of Hearing individuals in Kansas when making modifications. With this Kansas statute, modifications must be made if a technology solution is "capable of being done or carried out; capable of being used or dealt with successfully, suitable; reasonable, likely" for the government of Kansas as a "public entity" to stop discrimination onto Deaf individuals such as myself.

# Exhibit #6
Page 6 of 7

At the date of this letter and my previous requests starting with a letter dated Feb. 18, 2019, none of the archived Audio-only content is captioned and the transcriptions are not openly available for the Deaf and Hard of Hearing individuals on the Kansas Legislature website. The automatic generated captions on the Youtube channel do not provide the same professional accuracy of the audio information as equally as what is audibly provided to the people, who are not the Deaf individuals or the Hard of Hearing individuals, such as correct capitalization and punctuation, speaker identification with multiple people, proper names of people, places, businesses, products, and sound effects (applause, music playing, gravel pounding, laughing).

I am substantially limited in the major life activity of hearing and am therefore Deaf and an individual with a disability. I am eligible to participate in and to benefit from the audio content provided by the Kansas Legislature as a resident of Olathe in Kansas. Those are my qualifications to obtain the protection of Section 504 of the Rehabilitation Act, 28 C.F.R. § 35.104, the 1990 Americans with Disabilities Act, 42 U.S.C. §§ 12131 – 12134 and 28 C.F.R. § 35, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(e).

Under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(e), I am requesting that the Kansas Legislature provide auxiliary aids and services which are the captioning and the transcriptions to ensure that the live and archived audios/videos of legislative proceedings are effectively and fully accessible for me. This request includes the Kansas Commission for the Deaf and Hard of Hearing to be the coordinating office to bring the Kansas Legislature into compliance with Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, K.S.A. § 75-4355b(a), and K.S.A. § 75-4355b(e).

With the K.S.A. § 75-4355b(a) establishing your position to be responsible with "assuring the procurement of the interpreter" which means arranging and paying for the expenses of a sign language interpreting team.

The K.S.A. § 75-4355b(e) lawfully bestows the Deaf individual, whom is me, the ability to choose a feasible mode of communication to be in place of a sign language interpreting team. However, I believe the mode of the professional sign language interpreting team would be infeasible to meet the requirements to provide effective communication access for the recorded archives of the Audio-Only streams. Instead, I believe that it is feasible for anyone, who is trained to listen and type down the entire audial information, to create transcriptions.

Therefore, I am enclosing 13 pages with a list of the archived Audio-Only streams, currently available to the public on the Kansas Legislative website, with this letter of request. Those listed on the enclosed pages are to be requested under KORA to be available for inspection while those "public records" are to be equally and fully

# Exhibit #6

Page 7 of 7

accessible for me as directed with this letter. It will be sufficient to meet my KORA request for me to obtain just the copies of the transcriptions, covering each of those requested audio recordings, in a format of PDF to be sent to my email address. Please omit the actual audio recordings. The transcriptions must contain the errorless accuracy, uniformity in style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and includes speaker identification and non-speech audio information with clarity.

My next and last request is for the future live Audio-only streams and the videos on Youtube channel, operated by the Kansas Legislature, to have the feasible real-time captioning provided beginning with the 2020 Legislative sessions for both the Kansas House of Representatives and Kansas Senate.

If you have any questions, please do not hesitate to contact me at chris@sigd.net promptly. Thank you for your time and attention to this.

Sincerely,


Chris Haulmark

# Exhibit #7

Page 1 of 2
November 15, 2019 Response from Tom Day to
the Kansas Open Records Act request

 **State of Kansas**
# Legislative Administrative Services

300 SW 10th Ave   Suite 551-S   Topeka, Kansas 66612   Telephone: (785) 296 2391   Fax: (785) 296 1153   TTY: 711   Email: LegServ@las.ks.gov

Thomas A. Day
Director

November 15, 2019

**BY ELECTRONIC MAIL:** chris@rijd.net
Chris Haulmark
600 S. Harrison St., Apt. #11
Olathe, Kansas  66061

Mr. Haulmark,

This letter is a follow-up to the November 6, 2019 response to you regarding your Kansas Open Records Act ("KORA") request dated November 1, 2019.  In your request, you wish to obtain the audio-only streams on the 13-page, single-spaced list that was provided in your request. You also request professional transcription of those streams.

As to your request, KORA does not require copies of these streams to be produced as stated in K.S.A. 45-219(a).  The second part of your request, to provide professional transcriptions of hundreds of committee meetings at an approximate minimum cost of $2.45 per minute, for approximately 62,528 minutes of recording, totals at least $153,194. This is a significant cost.  In relevant part, K.S.A. 45-218(e) states: "The custodian may refuse to provide access to a public record, or to permit inspection, if a request places an unreasonable burden in producing public records or if the custodian has reason to believe that repeated requests are intended to disrupt other essential functions of the public agency." I respectfully request that you clarify if indeed you want all meetings listed or if you can specify meetings from the list of particular interest to you which you would like transcribed so that we may consider that request.

While the November 1, 2019, request for hundreds of committee meeting transcriptions under KORA is denied, we would be happy to consider a narrowed request for committee meetings of particular interest to you.  We will continue to evaluate and review your request under the auspices of Title II of the Americans with Disabilities Act.

Your November 1, 2019 letter also requests captioning of future live streams beginning with the 2020 Legislative sessions for both Kansas House of Representatives and the Kansas Senate and committees. We did not interpret this portion of your request to be pursuant to the KORA. This matter was under evaluation and review prior to our receipt of your November 1, 2019 letter. That process of evaluation and review will continue, with the assistance of State ADA Coordinator Anthony Fadale.  It is anticipated that input will be invited from the Kansas Commission for the Deaf and Hard of Hearing, as well as the public.

# Exhibit #7
Page 2 of 2

We would like to meet with you to further discuss your concerns if mutually agreeable arrangements can be made. We will reach out to you in the near future to discuss this matter further.

We look forward to working with you on this matter.

Sincerely,

Thomas A. Day

# Exhibit #8

The Governor's Budget Report for Fiscal Year 2019
https://budget.kansas.gov/wp-content/uploads/FY2019_GBR_-Vol.1-1-18-2018.pdf
(Page #78)

## Legislative Branch Agencies



The Legislative Branch agencies include the Legislature, the Legislative Coordinating Council, Legislative Research Department, the Legislative Division of Post Audit, and the Office of the Revisor. The Governor has recommended each Legislative agency request as approved by the Legislative Coordinating Council. For FY 2018, the Governor recommends expenditures of $30.0 million, all from the State General Fund. For FY 2019, the Governor recommends expenditures of $29.3 million, all from the State General Fund.

### Legislative Coordinating Council

The Legislative Coordinating Council manages the delivery of administrative services on behalf of the Legislature. Members of the Council receive reimbursement for travel expenses when attending The Legislative Coordinating Council meetings. The primary expense in this budget is for Legislative Administrative Services, with salaries and operating expenses for 8.00 FTE positions. The Governor recommends expenditures totaling $789,643 in FY 2018 and $563,976 for FY 2019, all from the State General Fund. To implement the budget recommendation for FY 2019, a supplemental appropriation of $12,273 from the State General Fund is required and included in the Governor's recommendations.

### Legislature

The Legislature's budget finances legislators' compensation, as well as temporary legislative session staff. Also included in this budget are the costs to run the Kansas Legislative Information Services System (KLISS), which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2019, the Governor recommends expenditures totaling $19.5 million, all from the State General Fund. This recommendation will require a supplemental appropriation from the State General Fund totaling $400,000, and is included in the Governor's recommendations. The additional funding would be used for financing a K-12 cost study, as well as attorney costs for the Legislature in association with the current school finance litigation. For FY 2019, expenditures totaling $19.4 million are recommended, all from the State General Fund and is equal to the approved budget.

### Legislative Research Department

The Legislative Research Department provides research and fiscal analysis for the Kansas Legislature. The Governor recommends expenditures totaling $3.7 million in FY 2018. This recommendation will require a supplemental appropriation totaling $3,084, all from the State General Fund and would finance additional salaries and wages costs for the agency totaling $1,584, as well as redistricting costs totaling $1,500. For FY 2019, the Governor recommends expenditures totaling $3.6 million, all from the State General Fund. This recommendation would require a supplemental State General Fund appropriation totaling $7,584, including $1,584 for salaries and wages expenditures and $6,000 for redistricting expenditures.

78

# Exhibit #9

The Governor's Budget Report for Fiscal Year 2020
https://budget.kansas.gov/wp-content/uploads/FY2020_GBR_Vol1-4-9-2019.pdf
(Page #88)

## Legislative Branch Agencies



The Legislative Branch agencies include the Legislature, the Legislative Coordinating Council, the Legislative Research Department, the Legislative Division of Post Audit, and the Office of the Revisor. The Governor has recommended each Legislative agency request as approved by the Legislative Coordinating Council. For FY 2019, the Governor recommends total expenditures of $32,353,342, all from the State General Fund. For FY 2020, the Governor recommends total expenditures of $31,426,627, all from the State General Fund.

### Legislative Coordinating Council

The Legislative Coordinating Council (LCC) manages the delivery of administrative services on behalf of the Legislature. Members of the Council receive reimbursement for travel expenses when attending LCC meetings. The primary expense in this budget is for Legislative Administrative Services, with salaries and operating expenses for 9.00 FTE positions. The Governor recommends expenditures totaling $829,854 in FY 2019 and $599,702 for FY 2020, all from the State General Fund.

### Legislature

The Legislature's budget finances legislators' compensation, as well as temporary legislative session staff. Also included in this budget are the costs to run the Kansas Legislative Information Services System, which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2019, the Governor recommends expenditures totaling $20,866,530, all from the State General Fund. For FY 2020, expenditures totaling $20,347,809 are recommended, all from the State General Fund. These recommendations will finance 48.00 FTE positions each year.

### Legislative Research Department

The Legislative Research Department provides research and fiscal analysis for the Kansas Legislature. The Governor recommends expenditures totaling $3,959,574 in FY 2019. For FY 2020, the Governor recommends expenditures totaling $3,913,474, all from the State General Fund. These recommendations will fund 40.00 FTE positions each year.

### Legislative Division of Post Audit

The Legislative Division of Post Audit is the audit agency of Kansas government. For FY 2019, the Governor recommends expenditures totaling $2,758,490 from the State General Fund. This recommendation will require a State General Fund appropriation lapse totaling $244,600 in the current year. For FY 2020, expenditures totaling $2,589,522 are recommended from the State General Fund. Each year, these recommendations will fund 25.00 FTE positions.

88

# Exhibit #10

The Governor's Budget Report for Fiscal Year 2021
https://budget.kansas.gov/wp-content/uploads/FY2021_GBR_Vol1-UPDATED_2-24-2020.pdf
(Page #85)

---

### Legislative Branch Agencies



The Legislative Branch agencies include the Legislature, the Legislative Coordinating Council, the Legislative Research Department, the Legislative Division of Post Audit, and the Office of the Revisor. The Governor has recommended each Legislative agency request as approved by the Legislative Coordinating Council. For FY 2020, the Governor recommends total expenditures of $35,582,480, all from the State General Fund. For FY 2021, the Governor recommends total expenditures of $33,223,389, all from the State General Fund. This amount includes enhanced funding for a 10.0 percent salary increase merit pool.

### Legislative Coordinating Council

The Legislative Coordinating Council (LCC) manages the delivery of administrative services on behalf of the Legislature. Members of the Council receive reimbursement for travel expenses when attending LCC meetings. The primary expense in this budget is for Legislative Administrative Services, with salaries and operating expenses for 9.00 FTE positions. The Governor recommends expenditures totaling $661,431 in FY 2020 and $745.22 for FY 2021.

### Legislature

The Legislature's budget finances legislators' compensation, as well as temporary legislative session staff. Also included in this budget are the costs to run the Kansas Legislative Information Services System, which includes the website for the Legislature and the streaming of legislative meetings on the web. For FY 2020 and FY 2021, the Governor recommends expenditures totaling $23,861,524 and $20,846,842, all from the

State General Fund. These recommendations will finance 48.00 FTE positions each year.

### Legislative Research Department

The Legislative Research Department provides research and fiscal analysis for the Kansas Legislature. The Governor recommends expenditures totaling $4,166,693 in FY 2020. For FY 2021, the Governor recommends expenditures totaling $4,380,604, all from the State General Fund. These recommendations will fund 40.00 FTE positions each year.

### Legislative Division of Post Audit

The Legislative Division of Post Audit is the audit agency of the Kansas Legislature. The Governor recommends expenditures totaling $2,916,781 from the State General Fund for FY 2020. This recommendation will fund 24.00 FTE positions. For FY 2021, expenditures totaling $2,916,781 are recommended from the State General Fund. For FY 2021, this recommendation will fund 26.00 FTE positions.

### Revisor of Statutes

The Revisor of Statutes provides bill drafting services for the Legislature and publishes annual supplements and replacement volumes for the Kansas Statutes Annotated. For FY 2020, a total of $3,976,051 from the State General Fund is recommended. This recommendation will require a State General Fund appropriation lapse totaling $348,898 in the current year. For FY 2021, $4,121,497 in expenditures from the State General Fund is recommended. Each year, these recommendations will fund 31.50 FTE positions.

85

# Exhibit #11
## Page 1 of 2
## Jan. 14, 2020 Accessibility for the 2020 Legislative Sessions

12/15/2020                          Sigd.net Mail - Accessibility for the 2020 Legislative Sessions

Chris Haulmark <chris@sigd.net>

## Accessibility for the 2020 Legislative Sessions
3 messages

**Chris Haulmark** <chris@sigd.net>                               Tue, Jan 14, 2020 at 3:10 PM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, anthony.fadale@ks.gov, Kim Anderson KAD President
<president@deafkansas.org>, Chriz Dally <chrizdally@gmail.com>

Mr. Tom Day,

I would like to thank you for arranging the meeting on December 5th, 2019 at the State Capitol. I feel that it has been
understood that the current federal and state laws are making it clear that there must be accommodations to be provided
for the KS Legislature to be accessible for the Deaf community, that I am a member of.

I would also like to thank you and Mr. Anthony Fadale for attending the KCDHH meeting on January 10th, 2020. With
your statement during this KCDHH meeting, I have seen that there has been some progress on bringing KS Legislature
into compliance with the federal and state laws.

As I stated with my public comment, it is very important that I am to have full access to the current 2020 legislature
proceeding as everyone else does

This afternoon, I checked the Youtube channel operated by KS Legislature.  I see that there are four current videos
published with the recordings of the proceedings conducted this year.

1. 01/13/2020 House Session Live-Stream HD
2. 01/13/2020 Senate Session Live-Stream HD
3. 01/13/2020 Senate Session Live-Stream HD (Part 2)
4. 01/14/2020 House Session Live-Stream HD
5. 01/15/2020 House Session Live-Stream HD

#1 video, #2 video, and #3 video only have automatic generated captions being provided. It is understood that the #4
video does not provide captions because the captions have not been automatically generated. #5 seems to be a test
video with a date stamped in a day's advance which in this case will be irrelevant to be discussed about.

Because of the inaccurate and incorrect information provided as the automatic generated captions in #1 video, #2 video,
and #3 video, the spoken information is being conveyed into being malformed and unintelligible. Because I am Deaf, I am
not able to obtain information from the legislators as equal as everyone else who can hear.  I have no way of identifying
who is speaking. I am not getting the complete information because the captions are not following the proper rules of the
English which includes correct spelling, punctuation, and grammar structure.

Because of the inaccessible information with the current videos, I am including a request in this email for me to obtain a
complete and accurate transcriptions for those published videos and the future videos, planned to be published on this
Youtube channel. I would like the transcriptions either as PDF format sent to this email address or to be posted on the KS
Legislature website which would be available for anyone else.

This above request is to fulfill the requirements of my accessibility until the proper and accurate captionings are being
provided with the future published videos. Again, those captions are to be providing accurate and complete information
by following the proper rules of the English which includes correct spelling, punctuation, and grammar structure.

Please let me know if you have any questions in fulfilling my above request.

Chris Haulmark

**Chris Haulmark** <chris@sigd.net>                               Thu, Jan 16, 2020 at 9:42 AM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, anthony.fadale@ks.gov, Kim Anderson KAD President
<president@deafkansas.org>, Chriz Dally <chrizdally@gmail.com>

https://mail.google.com/mail/u/0/?ik=b5e392fa43&view=pt&search=all&permthid=thread-a%3Ar8929751273000320086%xsm.plmsg-a%3Ar22710.06031087540... 1/2

# Exhibit #11

## Page 2 of 2

Mr. Tom Day,

I have not gotten a response from you regarding the transcription request for those Youtube videos. I do not know if you are working on meeting my accessibility request or not.

I am requesting in a gentle way for the transcriptions of all of the committee meetings starting on last Jan. 13.  I would appreciate that I am able to get them as soon as possible as some progress on bills I am monitoring are moving very quickly and I need to stay on top of those.

If I do not get a response within a reasonable time on how I am able to access those information being provided in those videos on the Youtube channel and audio streaming on the KS Legislature website, I believe that I have no choice but to start pushing in a legal way to ensure that the Kansas Legislature is no longer discriminating against me based on my disability.

Everyone else that is CC'ed is welcome to provide a response to this email conversation.

Chris Haulmark
[Quoted text hidden]

**Tom Day** <Tom.Day@las.ks.gov>                                                              Thu, Jan 16, 2020 at 5:48 PM
To: Chris Haulmark <chris@sigd.net>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>, Kim Anderson
KAD President <president@deafkansas.org>, Chriz Dally <chrizdally@gmail.com>

Chris,

My reply to your emails of January 14, 2020 and January 16 is attached.

Tom

**From:** Chris Haulmark <chris@sigd.net>
**Sent:** Thursday, January 16, 2020 9:42 AM
**To:** Tom Day <Tom.Day@las.ks.gov>
**Cc:** Robert Cooper [DCF] <Robert.Cooper@ks.gov>; anthony.fadale@ks.gov; Kim Anderson KAD President
<president@deafkansas.org>; Chriz Dally <chrizdally@gmail.com>
**Subject:** Re: Accessibility for the 2020 Legislative Sessions

EXTERNAL: This email originated from outside the organization. Do not click any links or open any attachments
unless you trust the sender and know the content is safe.

[Quoted text hidden]

📄 **LASResponse_Haulmark_01162020.pdf**
192K

## <u>Exhibit #12</u>
Page 1 of 2
Jan. 16, 2020 Response from Tom Day to Chris Haulmark's Request



State of Kansas
# Legislative Administrative Services

300 SW 10th Ave   Suite 551-S   Topeka, Kansas 66612   Telephone: (785) 296-2391   Fax: (785) 296-1153   TTY: 711   Email: LegServ@las.ks.gov

Thomas A. Day
Director

January 16, 2020

**BY ELECTRONIC MAIL:** ⠁⠃⠉⠙⠑⠋⠛
Chris Haulmark
600 S. Harrison St., Apt. #11
Olathe, Kansas   66061

Chris,

On January 14, 2020, you sent an email thanking me and Anthony Fadale for attending the KCDHH on January 10th, and also thanking me for arranging a meeting held on December 5, 2019.

In the January 14, 2020 email, you acknowledge that the live stream videos of legislative proceedings you mention contain captioning.

However, you request "complete and accurate transcriptions for those published videos and for future videos." Additionally, in your email dated January 16, 2020, you are requesting the transcriptions of all of the committee meetings starting on January 13, 2020.

Your request does not mention or refer to the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq.* Currently, the proceedings for legislative chamber sessions or committee meetings are not transcribed and do not exist. However, to the extent that you are requesting these transcriptions pursuant to the Act, they need not be provided under KORA for the reasons stated in my previous letter to you of November 15, 2019.

While KORA does not require production of these transcripts, and as we have previously stated, we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills. Please feel free to let me know if there are specific bills of interest to you such as were referred to generally in your correspondence.

As you know from the meetings we have had to date and from my correspondence to you, the Legislature is reviewing and evaluating your requests and the best way to implement any changes for the benefit of all Kansans. In that regard, the Legislative Coordinating Council adopted a motion on December 19, 2019, to direct me to develop "a plan of implementation of the full video and audio streaming of Senate and House of Representative chamber session meetings and all legislative committee meetings over a reasonable period of time with regard to acceptable hardware and software options and reasonable costs associated with such implementation, including reasonable services for the deaf and hard of hearing segment of our citizenry." The Motion also provides: "Mr. Day shall consult with the ⠁⠃⠉⠙⠑⠋ ⠁⠃⠉⠙⠑⠋⠛⠓⠊⠚ (including appearing before a meeting of the commission) and Mr. Anthony Fadale, State ADA Coordinator for the State of Kansas as he proposes such plan. For any necessary revisions to LCC Policies, Mr. Day shall consult with Mr. Gordon Self,

### Exhibit #12
Page 2 of 2

Revisor of Statutes for assistance and drafting resources. Mr. Day shall present such plan at a subsequent meeting of the LCC."

We are moving forward with this process.  As I stated in both the meeting of December 5, 2019 and January 14, 2020, the planning and coordination, of accessibility to everyone, will take considerable review.  In particular, consultation, and proper planning, takes time, as we have discussed, including the involvement of the KCDHH, as you have urged.

In the meantime, we will evaluate your recent requests of January 14 and January 16, 2020 and work with you on an appropriate resolution.

Sincerely,

Thomas A. Day

# Exhibit #13
### Page 1 of 3
### March to April 2020 Email Discussion between
### Chris Haulmark and Tom Day

12/13/2020                                 Sigd.net Mail - Request for transcriptions for the audio streams of committee meetings..

Chris Haulmark <chris@sigd.net>

## Request for transcriptions for the audio streams of committee meetings..
8 messages

**Chris Haulmark** <chris@sigd.net>                                          Mon, Mar 2, 2020 at 12:17 PM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President
<president@deafkansas.org>, anthony.fadale@ks.gov

Tom,

I am writing this email to request for transcripts to be produced and published with all of the content produced since the
beginning of the 2020 legislature session. This includes the audio streams covering the legislative proceedings during the
committee and subcommittee meetings.

I have been as patient as long as I could be for the accurate and intelligible captions to be available and accommodated
with those archived audio streams. I feel that I cannot wait any further for accessibility to be provided. I really need
accessibility to those audio streams now.

While Kansas Legislature is continuing to be producing and publishing the content, this act is continuance of intentional
discrimination against the Deaf people including me.

Please respond with when those transcriptions to be available.

If you need a list of those archived audio streams, I will be glad to produce a list upon request.

Chris Haulmark

**Tom Day** <Tom.Day@las.ks.gov>                                            Tue, Mar 3, 2020 at 1:33 PM
To: Chris Haulmark <chris@sigd.net>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President
<president@deafkansas.org>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>

Chris,

I have received your email and will review your request.  Sorry I did not reply yesterday but my office was closed due to
the break for the Legislature.

I will be getting back with you.

Tom

**From:** Chris Haulmark <chris@sigd.net>
**Sent:** Monday, March 2, 2020 12:17 PM
**To:** Tom Day <Tom.Day@las.ks.gov>
**Cc:** Robert Cooper [DCF] <Robert.Cooper@ks.gov>; Chriz Dally <chrizdally@gmail.com>; Kim Anderson KAD President
<president@deafkansas.org>; anthony.fadale@ks.gov
**Subject:** Request for transcriptions for the audio streams of committee meetings..

EXTERNAL: This email originated from outside the organization. Do not click any links or open any attachments
unless you trust the sender and know the content is safe.

[Quoted text hidden]

http://mail.google.com/mail/u/0/?ik=b6c892fe43&view=pt&search=all&permthid=thread-f...3Ar1291723272497s9931&simpl=msg-a%3Ar-83-611b849743c3108...   1/3

# Exhibit #13
## Page 2 of 3

**Chris Haulmark** <chris@sigd.net>          Mon, Mar 23, 2020 at 11:07 AM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President <president@deafkansas.org>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>

Tom,

I have not heard from you since March 3rd on this KORA request including the requested accessibility for those transcriptions for all the committee meetings.  I am extending this request to cover the rest of the legislative proceedings that are streamed as audio-only content that were produced and published after my request sent on March 2nd.

I'm waiting on your response with when those transcriptions are to be available.

Chris Haulmark

[Quoted text hidden]

**Chris Haulmark** <chris@sigd.net>          Wed, Apr 8, 2020 at 4:39 PM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President <president@deafkansas.org>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>

Tom,

I still have not heard from you since March 3rd about the requested transcriptions for the committee meetings.  Because of no response, this is a further continuation of denying me, based on my disability, access to those legislative proceedings.

I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today.

Please respond as soon as possible for when all of those transcriptions will be available.

Chris Haulmark
[Quoted text hidden]

**Tom Day** <Tom.Day@las.ks.gov>          Fri, Apr 10, 2020 at 4:05 PM
To: Chris Haulmark <chris@sigd.net>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President <president@deafkansas.org>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>

Chris,

I apologize for no response, but conditions within the state and nation have made work life not of normal conditions.  I have attached my response to you.

[Quoted text hidden]

📄 **LASResponse_Haulmark_04102020.pdf**
194K

**Chris Haulmark** <chris@sigd.net>          Mon, Apr 13, 2020 at 2:12 PM
To: Tom Day <Tom.Day@las.ks.gov>
Cc: "Robert Cooper [DCF]" <Robert.Cooper@ks.gov>, Chriz Dally <chrizdally@gmail.com>, Kim Anderson KAD President <president@deafkansas.org>, "anthony.fadale@ks.gov" <anthony.fadale@ks.gov>

Mr. Tom Day,

In your letter dated, April 10, 2020, you stated, "While KORA does not require production of these transcripts, and as we

# Exhibit #13

## Page 3 of 3

have previously stated, we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills."

This claim under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act is very clear: 1) I am a qualified individual with a disability 2) I am excluded from participating in the services, program, and activities proviced by the Kansas Legislature (a public entity) and 3) I am discriminated against because of my disability.

I must reiterate that my request is for transcripts to be produced for those listed audio recordings to be in compliance with the Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Those two federal laws are what requires the production of those transcripts.

The KORA request still stands because the ability to access records concerning activities of public agencies is essential for the transparency of the Kansas State government. The Kansas Legislature and your office are fully aware that because of my disability I am unable to access the information contained in those audio recordings.

Under the ADA and Section 504, this denial by your office would be seen as intentional discrimination by the Kansas Legislature.

So I am requesting under KORA, ADA, and Section 504 for the transcripts to be produced for those audio recordings that were produced and published by the Kansas Legislature and then for the future streamings of the legislative proceedings, which resume on April 27th, to be accessible with live captions being provided.

Chris Hauptmank

[Quoted text hidden]

# Exhibit #14

April 8, 2020 Notice for Legislative Coordinating Council Meeting
http://www.kslegislature.org/li/b2019_20/committees/ctte_lcc_1/documents/agenda/weekly/20200408.pdf



State of Kansas

Legislative Coordinating Council

### NOTICE

In accordance with K.S.A. 46-1201 and House Concurrent Resolution No. 5025, you are hereby given notice that the Legislative Coordinating Council (LCC) will meet at 2 p.m. on Wednesday, April 8, 2020, in Room 548-S, Statehouse. This meeting of the LCC is being called to review EO 20-18, temporarily prohibiting mass gatherings of more than 10 people to limit the spread of COVID-19 and rescinding EO 20-14. The legislature unanimously tasked the LCC with reviewing executive orders and members must meet to fulfill this responsibility.

Due to health and safety concerns, members of the public are not in attendance at this meeting but full access can be reached by:
http://sg001-harmony.sliq.net/00287/Harmony/en/View/Calendar/

If you do not have internet access, contact Tom Day at Tom.Day@las.ks.gov for an alternative medium for interactive communication to access the meeting as such communication allows.

The agenda is attached and will be posted on http://www.kslegislature.org

Speaker Ron Ryckman
Chairperson

By Gordon L. Self
Revisor of Statutes
as Secretary

Any individual with a disability may request accommodation in order to participate in Legislative Coordinating Council meetings. Requests for accommodation should be made by contacting Legislative Administrative Services at 785-296-2391 (TTY: 711) or at LegServ@las.ks.gov and will be granted as available.

Page 29

# Exhibit #15

Page 1 of 2
April 10, 2020 Response from Tom Day to Chris Haulmark



State of Kansas
## Legislative Administrative Services

300 SW 10th Ave   Suite 551-S   Topeka, Kansas 66612   Telephone: (785) 296-2391   Fax: (785) 296-1153   TTY: 711   Email: LegServ@las.ks.gov

Thomas A. Day
Director

April 10, 2020

**BY ELECTRONIC MAIL:**
Chris Haulmark
600 S. Harrison St., Apt. #11
Olathe, Kansas   66061

Re: Your April 8, 2020 Email

Dear Chris,

This is response to your April 8, 2020 email, which referenced a March 2, 2020 email request.

On March 2, 2020, you sent an email, requesting "transcripts to be produced and published with all of the content produced since the beginning of the 2020 legislature session [to include] audio streams covering the legislative proceedings during the committee and subcommittee meetings." On March 3, 2020, I responded to you stating that I had received your request and would get back to you.
At times, your requests reference the Kansas Open Records Act ("KORA"), as the basis for the requests.

Previously, I had responded to your KORA request, including in a letter dated November 15, 2019.  In that letter, I responded to your request for transcripts of proceedings for legislative chamber sessions and committee meetings by stating no transcripts exist and therefore, need not be produced pursuant to KORA. To the extent that you are requesting these transcriptions again pursuant to KORA, the transcriptions  need not be provided under KORA for the reasons stated in my previous letter to you of November 15, 2019, incorporated by reference as though fully restated herein.

While KORA does not require production of these transcripts, and as we have previously stated, we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills. Please feel free to let me know if there are specific bills of interest to you such as were referred to generally in your correspondence. Specific bills, such as Senate Bill 230, which I know you have an interest in, were heard in the House and Senate Education committees.  Accommodations were made during those meetings, as well as in the Senate chambers, at the request of other individuals, for interpreters to be on-site, which you were also in attendance.

In terms of your request for the April 8, 2020 meeting of the Legislative Coordinating Council, no transcript currently exists and therefore, under KORA, need not be produced under KORA. However, I am looking into that request further.  If the transcript becomes available, I will provide it to you.

As you know from the meetings we have had to date and from my correspondence to you the Legislative Coordinating Council adopted a motion on December 19, 2019,  directing me to develop "a plan of implementation of the full video and audio streaming of Senate and House of Representative chamber session meetings and all legislative committee meetings over a reasonable period of time with

# Exhibit #15

Page 2 of 2

regard to acceptable hardware and software options and reasonable costs associated with such implementation, including reasonable services for the deaf and hard of hearing segment of our citizenry." The Motion also provides: "Mr. Day shall consult with the Kansas Compliance for the Deaf and Hard of hearing (including appearing before a meeting of the commission) and Mr. Anthony Fadale, State ADA Coordinator for the State of Kansas as he proposes such plan. For any necessary revisions to LCC Policies, Mr. Day shall consult with Mr. Gordon Self, Revisor of Statutes for assistance and drafting resources. Mr. Day shall present such plan at a subsequent meeting of the LCC."

We are continuing to move forward with this process. As I stated in both the meeting of December 5, 2019 and January 14, 2020, the planning and coordination of this process will take considerable review. In particular, consultation and proper planning takes time, as we have discussed, including the involvement of the KCDHH, as you have urged. We want all individuals to be satisfied with both the process and its implementation. As was noted at our December 5, 2019, meeting, piecemeal work, or a band-aid approach, will not serve the needs of all individuals.

As you know, on March 11, 2020, the World Health Organization declared COVID-19 a pandemic. On March 12, 2020, Kansas Governor Laura Kelly declared a state of disaster emergency. On March 13, 2020, President Donald Trump declared a national emergency. Since then, we have been operating on an emergency basis. Events in the state, the nation, and the world have severely hampered our ability to move forward at the pace in which you desire. However, we are proceeding as per the December 19, 2019, directive of the LCC. As per that process, I will offer status reports and confer with the Kansas Commission for the Deaf and Hard of Hearing and Mr. Anthony Fadale as we proceed. Please stay safe during these very difficult and unprecedented times.

Sincerely,

Thomas A. Day

# Exhibit #16

Page 1 of 3
Kansas Virtual Statehouse
http://www.kslegislature.org/li/b2019_20/committees/ctte_leg_budget_1/documents/t
estimony/20200715_01.pdf

**Report to Kansas Legislature – Legislative Budget Committee**
**Kansas Virtual Statehouse**
**by Tom Day, Director of Legislative Administrative Services**
**and**
**Alan Weis, Legislative Chief Information Technology Officer**
**July 15, 2020**

**Background:**
This report is intended to outline the current state and possible future of virtual technologies used to allow for remote access to the Kansas Statehouse and the proceedings of the Kansas Legislature. Remote access has the potential to allow citizens to hear, view, and interact with members of the Kansas Legislature from anywhere in the state of Kansas. The Kansas Legislature has implemented and used audio and video technologies for over a decade now to allow some virtual access. However the efforts have been limited due to immature technologies, pilot projects, funding, and limited support.

In March of 2020, the COVID-19 pandemic changed things quickly. The need to implement remote meetings and remote work environments with members, staff, and citizens was thrust upon us immediately. We had little time to plan for implementation of technologies and systems. The good news is the Legislature was in a good position to allow for remote work and meetings. This was due to our implementation of laptops for staff and members that have integrated video cameras and microphones and VPN to access the statehouse network which has been in use for several years.

**Status from March 2020 to July 2020:**
In March of this year we knew the need for remote meetings would be immediate. Some legislative staff had been using the Zoom video conferencing system and it was known to be fairly easy to use. There were some security issues when the Zoom system was not configured properly for secure conferences but we saw those issues being address by the company. In March our Kansas Legislative Office of Information Services (KLOIS) department purchased user licenses for Zoom. We sent out notices to staff and members on how to configure security and to install updates. Zoom was used through late March, April and May for legislative committee meetings where all participants were remote on the video conference and the committee rooms were not used. The Zoom system allowed the streaming of the video conference meetings to the Legislature's YouTube channel for public viewing. We also were able to stream the audio to our website audio archive system. These meetings worked fairly well considering the short time we had to prepare and implement the technologies. Legislators and staff seemed to adopt the use of the Zoom system without much trouble.

In June we started having committee meetings in the statehouse committee rooms with some participants in the room and some on video conference. There have been some issues with this set up. The issues are:
- No integration with the room audio systems to the video conferencing system.
- Some room acoustics make hearing on the video conferences difficult.
- Limited video cameras – no room cameras, using cameras on laptops.
- Placement of large monitors on stands in the rooms.

We are currently working to resolve the issues with integration to the room audio systems and adding additional cameras.

# Exhibit #16
Page 2 of 3

**Virtual Statehouse Planning:**
Below are items that should be considered in planning to implement a full Kansas Virtual Statehouse.

Committee Room audio system improvements:
- There may be updates required to the systems to interface into the video conference systems.
- Train KLOIS staff to configure and adjust room audio systems as required.

Committee Room video cameras:
- Implementation of wall mounted Pan-Tilt-Zoom (PTZ) cameras should be considered.
- Multiple cameras may be needed in each room to video members and the podiums.

Committee Room video monitors:
- Implementation of wall mounted video monitors should be considered.
- There are issue with using monitors mounted on roll-around stands.
  - Monitors and stands can block views of members and audience.
  - Monitors and stands can block walk ways.
  - Monitor cables across the floor create a safety hazard.
  - There is significant set up time for technical staff to prepare a room needing monitors.

Audio and video streaming:
- Implementation of full video and audio streaming from all 13 committee rooms should be considered.

Video conferencing:
- Video conferencing allows remote interactive participation in meetings for members and the public.
- Dedicated room video conference systems should be considered.

Closed Captioning:
- Closed Captioning (audio to text conversion) should be considered.
- Closed Captioning can be done either in real-time during the meeting or the conversion can be done later after the meeting.
- There can be significant costs associated with the accurate conversion of the meeting audio to text.
- Real-time Closed Captioning may require transcriptionist personnel to be hired or contracted to convert audio to text.
- Real-time Closed Captioning could also be accomplished through automated speech recognition software.
- We are working closely with the Kansas Commission for the Deaf and Hard of Hearing and the ADA Coordinator for the State of Kansas to ensure accessibility is achieved.

Statehouse Network:
- Possible updates and enhancements to the Statehouse network may be required to handle the increased bandwidth requirements.

Report to the Legislative Budget Committee – Tom Day & Alan Weis - 7/15/2020          Page 2 of 3

# Exhibit #16
Page 3 of 3

Staffing:
- Currently setting up screens, projectors, monitors, and computers, configuring meetings in systems, and monitor the technology for meetings has been a add-on function of a few KLOIS staff members.  During the Legislative Session temporary staff are contracted to provide additional help.
- When implementing a full virtual statehouse we need to ensure there is a proper amount technical staff to handle the configuration and monitoring of the audio and video systems.

**Zamora, Chelsea**

| | |
|---|---|
| **From:** | Wells, Donna |
| **Sent:** | Friday, December 18, 2020 1:15 PM |
| **To:** | Depew, Dennis; Willoughby, M J. |
| **Cc:** | Zamora, Chelsea |
| **Subject:** | Summons |
| **Attachments:** | 20201218124913748.pdf |

We received the attached summons by certified mail today from Chris Haulmark.  Haulmark v St of KS USDC 20-4084 – not sure where it should go.

Donna

*Donna Wells*
Legal Assistant
Civil Litigation Division
Office of Kansas Attorney General Derek Schmidt
120 SW 10th Ave, 2nd Floor
Topeka, Kansas 66612
785-368-8428  phone
785-291-3767  fax
donna.wells@ag.ks.gov
www.ag.ks.gov

*This communication, and any attachments, is private and confidential and for the exclusive use of the intended recipient. The information contained herein as well as any attachments is confidential and privileged under the joint prosecution or investigation privilege, attorney-client privilege, work product privilege, joint defense privilege, or any other applicable privilege or immunity. If you are not the intended recipient and have received this communication in error, please notify the sender immediately and destroy the original message and all copies. Any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this communication is strictly prohibited. Receipt by anyone other than the intended recipient is not a waiver of any protection, privilege, or immunity. Please note also that the Kansas Open Records Act provides that public records, including correspondence to me via email, may be subject to disclosure unless otherwise protected by law.*

Exhibit 2