IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,                         )
                    Plaintiff,          )
v.                                      )          Case. No. 20-cv-4084-EFM-TJJ
                                        )
STATE OF KANSAS, et al.,                )
                    Defendants.         )
_____ )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The State of Kansas and Legislative Administrative Services ("LAS") move the

Court for an Order dismissing this lawsuit, pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6) or, in the alternative, for summary judgment as per Fed. R. Civ. P. 56.

### *Nature of the Matter Before the Court*

The Kansas Legislature is committed to offering reasonable and appropriate

accommodations as per the Americans with Disabilities Act and has offered reasonable

accommodations to Plaintiff Chris Haulmark. Based upon the contention that the ADA

entitles the requestor to whatever he or she requests and that perfection is the applicable

standard, Haulmark seeks mandatory prospective injunctive relief that this Court order

the State and LAS to adopt policies of non-discrimination against the hearing impaired

(policies already in existence), declaratory relief that the Kansas Open Records and

Meetings Acts are subject to the ADA, and $5 million in compensatory damages.

Haulmark's Complaint misstates the applicable standard under the ADA and fails to state

a plausible Title II claim for any of the relief requested. The Complaint is also barred for

lack of jurisdiction, failing to present a justiciable case or controversy. Dismissal is

appropriate under Fed. R. Civ. P. 12(b)(1) or (b)(6), or, alternatively, summary judgment

if the Court were to find resolution requires facts going beyond jurisdictional facts.

## STATEMENT OF MATERIAL FACTS REGARDING WHICH THERE IS NO GENUINE DISPUTE

1. The Legislature has a published ADA Notice, offering accommodations upon two working days-notice. Doc. 1, at ¶ 15; Pltf's Exh.1.

2. The State of Kansas has a policy under which all State technology projects are to be ADA-compliant, ITEC 12.0. Doc. 1, at ¶ 35. A copy of ITEC 12.0 is attached hereto and incorporated herein as per Fed. R. Civ. P. 10(c), submitted as Exhibit B to the Declaration of Alan Weis, attached hereto.

3. The committee agendas for legislative meetings bear an ADA notice on how to request accommodations. Declaration of Thomas Day, ¶ 17, attached hereto; Day Exhibit K.

4. The State of Kansas has a posted ADA policy, available on the Internet at https://admin.ks.gov/offices/personnel-services/policies-and-programs/ada, subject to judicial notice as per Fed. R Evid. 201.

5. Plaintiff Chris Haulmark is deaf. Doc. 1, at ¶ 11.

6. The Complaint does not allege any occasion upon which Plaintiff Chris Haulmark was denied a qualified interpreter by LAS when he had given prior notice as per the Legislature's ADA Policy. Doc. 1.

7. Haulmark was provided a qualified interpreter by LAS whenever prior notice of the request was given. Day Dec. at ¶ 19.

8. On a single day, January 14, 2019, Haulmark was not provided an interpreter when he requested an interpreter without giving prior notice as required by the published ADA policy. Doc. 1, at ⁋ 31.

9. On November 1, 2019, Haulmark sent a letter to Tom Day at LAS pursuant to the Kansas Open Records Act, K.S.A. 45-215, *et seq.,* requesting professional, "errorless" transcriptions of 13-pages of legislative committee meetings, nearly 900 in number.  Doc. 1, at ⁋ 39. A complete copy of the letter and the 13-page attachment is attached hereto and incorporated herein as per Fed. R Civ. P. 10(c), Exhibit L to Day's Declaration.

10. Tom Day responded to the letter on behalf of LAS, denying the request under the KORA, but offering to produce specific transcripts of Haulmark's choosing. Doc. 1, at ⁋⁋ 40-41. A copy of Day's letters referred to in the Complaint are attached hereto and incorporated herein as per Fed. R. Civ. P. 10(c), included in Exhibit L to the Day Declaration.

11. Day offered to meet with Haulmark. Doc. 1, at ⁋ 41.

12. The Complaint does not reflect that Haulmark responded to Day's offer to produce specific transcripts of interest to him; Haulmark did not respond to Day's offer to produce specific transcripts of interest to him. *See* Doc. 1; Day Dec. at ⁋ 22.

13. On December 5, 2019 Day met with Haulmark, a meeting which included the State ADA Coordinator and representatives of the Kansas Commission on Deaf and Hard of Hearing.  Day explained he had been working on improving accessibility for legislative proceedings and that he would continue in those efforts and provide a progress report. Doc. 1, at ⁋⁋ 46-47.

14. On December 19, 2019, the Legislative Coordinating Council ("LCC"), met and

adopted a resolution:

**Motion Regarding Audio/Video Streaming and Related Accessibility Requirements**

**Item #6, LCC Agenda, December 19, 2019**

I move that the Legislative Coordinating Council direct Mr. Tom Day, Director of Legislative Administrative Services, to develop a plan of implementation of the full video and audio streaming of Senate and House of Representative chamber session meetings and all legislative committee meetings over a reasonable period of time with regard to acceptable hardware and software options and reasonable costs associated with such implementation, including reasonable services for the deaf and hard of hearing segment of our citizenry. Mr. Day shall consult with the <u>Kansas Commission for the Deaf and Hard of Hearing</u> (including appearing before a meeting of the commission) and Mr. Anthony Fadale, State ADA Coordinator for the State of Kansas as he proposes such plan.  For any necessary revisions to LCC Policies, Mr. Day shall consult with Mr. Gordon Self, Revisor of Statutes for assistance and drafting resources. Mr. Day shall present such plan at a subsequent meeting of the LCC.

The resolution is generally referred to in the Complaint and is attached hereto

as per Fed. R. Civ. P. 10(c). Day Declaration, at ¶ 3, Exhibit A.

15. On January 10, 2020, Day and Fadale met with the Kansas Commission on

Deaf and Hard of Hearing, indicating he was they were working on improving

the accessibility of the streaming of legislative proceedings referring to the

LCC being "fully behind" the effort, referring to the December 2019

resolution.  Doc. 1, at ¶ 48.

16. On January 14, 2020, Haulmark emailed Tom Day noting that legislative

proceedings were posted to the YouTube channel but complaining that the

captions on the YouTube Channel "are not following the proper rules of the

[sic] English which includes correct spelling, capitalization, and grammar

4

structure."  The email requested "complete and accurate" transcriptions of all

YouTube videos. Doc. 1, at ⁋ 50; Pltf's Exh.11.

17.  On January 16, 2020, Day responded to Haulmark, stating "[w]hile KORA
does not require production of these transcripts, and as we have previously
stated, we are willing to consider requests for specific proceedings of interest
to you, such as portions of proceedings regarding specific bills. Please feel free
to let me know if there are specific bills of interest to you such as were
referred to generally in your correspondence." Doc. 1, at ⁋ 51; Pltf's Exh. 12.

18. Day's January 16, 2020 letter reiterated to Haulmark that he was moving
forward with the LCC's December 19, 2019 resolution. Pltf's Exh.12.

19. The Complaint does not reflect that Haulmark responded to Day's offer to
produce transcripts of specific proceedings of interest to him; in fact,
Haulmark did not respond to Day's offer. Doc. 1; Day Dec., at ⁋ 22.

20. On January 31, 2020, Haulmark sent an email to Day insisting that all
captioning be "100% accurate." Day Dec., at ⁋ 24; Day Exhibit M.

21. On March 2, 2020, Haulmark sent an email to Day demanding "transcripts to
be produced and published with all of the content produced since the streams
covering the legislative proceedings during the committee and subcommittee
meetings." Doc. 1, at ⁋ 52; Pltf's Exh.13.

22. In March 2020, the World Health Organization declared a worldwide
Pandemic. For Kansas, emergency declarations were issued, including by
Governor Kelly on March 12, 2020. Doc. 1, at ⁋ 21; *see, e.g.,* Kansas Supreme
Court Administrative Orders relating to the COVID-19 Pandemic available at
kscourts.org, subject to judicial notice as per Fed. R. Evid. 201.

23. The 2020 Legislative Session ended early due to COVID.  Day Dec., at ¶ 25.

24. Legislation does not carry over from the 2020 Session. Kan. Const. art. 2, § 8; Day Dec., at ¶¶ 16, 25.

25. On April 10, 2020, Day responded to Haulmark's March email, again stating that while KORA does not require production of these transcripts, "we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills." The April 10, 2020, letter, referred to in the Complaint, is attached hereto as per Fed. R. Civ. P. 10(c).

26. In an April 13, 2020, email to Day, Haulmark recounted Day's offer but did not ask Day for transcripts or other assistance with specific proceedings of interest, demanding transcripts be produced of every single proceeding, citing KORA, the ADA and the Rehabilitation Act. Pltf's Exh.13.

27.  On July 15, 2020, Tom Day and Legislative Chief Information Technology Officer Alan Weis made the first of several presentations to the Legislative Joint Budget Committee regarding the Virtual Statehouse Project ("VSP"), including the statement, ""[w]e are working . . . to ensure accessibility is achieved."  Doc. 1, at ¶ 57; Pltf's Exh.16; Day Dec., at ¶ 5; Day Exh. B.

28. On September 16, 2020, the LCC met and approved proceeding with the Kansas Virtual Statehouse Project. Day Dec., at ¶ 7, Day Exh. D.

29. In September 2020, the VSP was reviewed by the Legislative CITO as per ITEC policy 12.0 and state statute, K.S.A. 75-7208(a), and submitted to the State Information Technology Council. Weis Dec., at ¶ 3; Weis Exh. A.

30. On September 25, 2020, upon LCC approval, a request for proposals was issued regarding the VSP, including a deliverable of ADA accessibility. Day Dec., at ¶ 8; Day Exh. E.

31. In October 2020, vendors did demonstrations for the VSP. Robert Cooper of the Kansas Commission on Deaf and Hard of Hearing was invited and offered input. Day Dec., at ¶ 9.

32. On November 19, 2020, the LCC approved the VSP. The contract for the VSP was signed by Ron Ryckman for the LCC. Day Dec., at ¶ 11-12; Day Exh. G,H.

33. On November 19, 2020, installation of the VSP began. Weis Dec., at ¶ 2.

34. The contract calls for the VSP installation to be completed by February 28, 2021. Weis Dec., at ¶ 6; Day Exh. H.

35. After the VSP is fully implemented, there will be no audio only streams of legislative activities and the VSP will offer real-time closed captioning with the streaming through Sliq rather than through YouTube. Weis Dec. at ¶¶ 6, 8.

36. Haulmark has not made a request for accommodation to Day in the 2021 Legislative Session. Day Dec., at ¶ 18.

37. Prior to the VSP, audio streams were carried over to the Legislature's YouTube channel where auto-generated captions were applied, generally within about 24 hours.  Weis Dec., at ¶ 7.

38. Haulmark does not identify specific proceedings that he missed out on due to any alleged deficiencies in the YouTube captioning. Doc. 1.

39. Legislative Administrative Services ("LAS") is an administrative office established by statute, acting at the direction of the LCC. K.S.A. 46-1212a.

40. Haulmark seeks a mandatory injunction requiring "Defendants" to adopt policies of non-discrimination toward the hearing disabled, $5 million in compensatory damages, and declaratory relief that KORA and KOMA are subject to the ADA. Doc. 1, at pp. 25-27.

## Questions Presented

1. Does the Complaint present a justiciable case or controversy or does Haulmark demonstrate standing for purposes of the mandatory injunctive and declaratory relief sought?

2. Does the Complaint present a plausible claim for discrimination or damages under Title II of the ADA?

## ARGUMENTS AND AUTHORITIES

### I.    Legal Standards

### A.  Failure to State a Claim

Under Rule 12(b)(6), a defendant may move for dismissal of any claim which the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which the claim rests.[1]

"[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." . . . In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense. All well-pleaded facts in the complaint are assumed to be true and are construed in

---

[1] *Day v. University of Kan. Hosp. Auth.,* No. 19-02788-EFM, 2020 WL 3412479, at ** 1-2 (D. Kan. June 23, 2020).

the light most favorable to Plaintiffs. Allegations that merely state legal conclusions, however, need not be accepted as true.[2]

## B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.[3] A presumption exists against jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[4]

Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to actual facts upon which subject matter jurisdiction is based.' If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the district court must accept all factual allegations as true.[5]

"[A] motion under Rule 12(b)(1) "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[6] The Court "has wide discretion to allow affidavits, other documents . . . to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion for summary judgment."[7]

Facts that are subject to judicial notice may be considered without converting the matter to summary judgment.[8]

A Rule 12(b)(1) motion to dismiss need not be converted unless resolution of the jurisdictional issue "requires resolution of an aspect of the substantive claim."[9]

## C. Pro Se Standard

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." A pro se litigant is entitled to a liberal construction of his pleadings. If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority ... confusion of various legal theories ... or [Plaintiff's]

---

[2] *Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1141–42 (D. Kan. 2018).

[3] *Day*, at * 2 (citing *Kakkonen v Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994) (further citation omitted)).

[4] *Id.*

[5] *Day*, at * 2 (citations omitted).

[6] *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1295 (10th Cir 2003) (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (internal quotation marks excluded).

[7] *Id., at 1296* (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (internal quotation marks excluded).

[8] *Tal v. Hogan,*45 F.3d 1244, 1264-65, n.24 (10th Cir. 2006).

[9] *Davis,* at 1296 (citation omitted).

unfamiliarity with the pleading requirements." However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant." As it relates to motions to dismiss generally, "the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff." "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inferences that the defendant is liable for the misconduct alleged."[10]

### D. Motion for Summary Judgment

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. If the movant carries its initial burden, the nonmovant may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment. The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[11]

## II.    This Action Should Be Dismissed for Lack of Jurisdiction

Under Article III, this Court's jurisdiction is limited to cases or controversies.[12] "The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'"[13] Standing requires three elements: injury in fact, causation and redressability.[14] "Standing has been rejected . . . because the alleged injury is not 'concrete and particularized.'"[15] Speculation does not support standing.[16] "[A] plaintiff

---

[10] *Day v. University of Kansas Hosp. Auth.,* 2020 WL at *2 (citations omitted).

[11] *Balmer,* at 1141-42.

[12] U.S. Const., art. III, § 2 (the judicial power is limited to cases or controversies).

[13] *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

[14] *Goico v. U.S.F.D.A.,* 20-1248-JAR-KGG, 2020 WL 7078731, at * 6 (D. Kan. Dec. 3, 2020) (citing *Lujan,* at 560-61).

[15] *Cuno,* at 344 (quoting *Lujan,* at 560).

[16] *Id.*

must demonstrate standing separately for each form of relief sought."[17] "[S]tanding is not dispensed in gross."[18] Self-inflicted injury does not support standing as the alleged injury is not "fairly traceable" to a defendant's unlawful conduct.[19]  A plaintiff may assert only his own rights, not those of third parties.[20]  A pro se individual may represent himself, but not others.[21]  As the party seeking jurisdiction, the Plaintiff has the burden of establishing standing.[22]  The Plaintiff "must 'clearly . . . allege facts demonstrating' each element of standing."[23]  This Court has discretion in reviewing jurisdictional facts under 12(b)(1).[24]

Standing is generally determined at the time the case is filed.[25] Mootness concerns changes after the filing of the lawsuit.[26]  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[27]  A defendant's voluntary compliance with a plaintiff's demands will moot a case if the defendant shows that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[28]

From LAS' point of view the Kansas VSP has been actively in the works since the LCC's December 2019, resolution, nearly a year before this lawsuit was filed. The contract was signed and installation begun in November 2020, again about a month before this

---

[17] *Id.*, at 352 (citing *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 185 (2000); *Lyons,* at 109).

[18] *Id.*, at 353 (quoting *Lewis v. Casey,* 518 U.S. 343, 358, n.6 (1996)).

[19] *Clapper v. Amnesty Int'l, USA,* 568 U.S. 398, 418 (2013).

[20] *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

[21] *See, e.g.*, Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000).

[22]. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

[23] *Goico,* at * 6 (citing *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)).

[24] *Davis,* at 1295-96.

[25] *Brown v. Buhman,* 822 F.3d 1151, 1164 (10th Cir. 2016).

[26] *Id.*

[27] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (internal quotation marks omitted)).

[28] *Id. (quoting Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 190 (2000)).

lawsuit was filed. Haulmark lacks standing to complain of a non-existent injury. A request for an order that LAS provide real-time closed captioning is not redressable as this is already being done. Haulmark fails to meet his burden of showing a justiciable case or controversy.[29]

Haulmark's Complaint fails to "clearly allege facts demonstrating standing."[30] The allegations of injury are vague and conclusory. It is unclear exactly what he is claiming was discriminatory or what accommodations he is claiming were not reasonable and why. It is unclear how he was injured, if at all, and what specific bills he missed out on participating in due to any alleged failure to accommodate.[31] It is unclear how the mandatory injunction he is requesting that "Defendants" develop "policy" toward the hearing disabled redresses any alleged injury. Based on the facts, Haulmark caused his own injuries by either failing to request accommodation as per the policy (*e.g.*, the January 14, 2019, interpreter incident or any alleged failure to accommodate as to specific bills which he never identified), or by failing to engage in an interactive process with LAS regarding any alleged need for accommodation regarding specific bills, Haulmark was not injured by any lack of ADA policy; rather, his alleged injuries are self-inflicted and not fairly traceable to LAS' actions or inactions.[32] Or redressable by the orders sought.

---

[29] *Davis v. Morris-Walker, LTD,* 922 F.3d 868, 870 (8th Cir. 2019) (affirming district court dismissal of Title II action complaining about lack of ADA designated parking spaces at a restaurant where spaces were added); *Crews v. Sawyer,* No. 19-2541-JWB, 2020 WL 1528502, at ** 3-4 (D. Kan. Mar. 31, 2020) (dismissing a prisoner's lawsuit seeking medical treatment where the Bureau of Prisons had already agreed to provide the requested treatment) (citing *Jordan v. Sosa,* 654 F.3d 1012, 1029 (10th Cir. 2011)).
[30] *Goico,* at * 6 .
[31] *Loye v. County of Dakota,* 625 F.3d 494, 499-501 (8th Cir. 2010) (affirming the district court's rejection of plaintiff's claims that the county had failed to provide effective communication in a series of meetings utilizing various auxiliary aids and methods, stating that the information was not time-sensitive and plaintiff identified no information missed or any harm suffered as a result of any alleged failure, nothing that an effective communication does not require an identical result).
[32] *Clapper v. Amnesty Int'l, USA,* 568 U.S. 398, 418 (2013).

More specifically, Haulmark has not demonstrated standing or an ongoing case or controversy for the mandatory injunctive relief sought. While unclear and failing to meet the specificity requirements of Fed. R. Civ. P. 65, the requested mandatory injunction at page 26, (iii), appears to be a request for captioning on streaming content, a request that is addressed in the KS VSP,[33] which was initially authorized by LCC resolution in December 2019.[34]  The requested mandatory injunction, pp. 25-27, (i), (ii) and (vi), is for LAS to develop a policy of ADA compliance and to have a posted ADA notice, which the State and LAS already have.[35]  "There is no point in ordering an action that has already taken place."[36]  Haulmark's requested mandatory injunctions would have no effect in the real world.[37] An order to "follow the law" is not an order this Court can or should grant.[38] The mandatory injunction requested in paragraphs (iv) and (v) at page 26 as to "alleged past violations" is not the proper subject of future prospective injunctive or declaratory relief under *City of Los Angeles v. Lyons*[39] and its progeny.

Given the Kansas VSP which will provide real-time closed captioning on legislative proceedings streamed on the Internet similar to what Haulmark has acknowledged is effective in other states,[40] Haulmark cannot show the injury required for standing for

---

[33] Weis Dec., at ⁋ 8; Weis Exh. B, ITEC Policy 12.0; Doc. 1, at ⁋ 35.

[34] SOF # 16 (citing Day Exh. A, Day Dec., ⁋ 3).

[35] Doc. 1 at ⁋ 15; Pltf's Exh.1; ⁋ 35; Statement of Facts ⁋⁋ 1-4.

[36] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111-12 (10th Cir. 2010) (citing *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 728 (10th Cir. 1997)).

[37] *Crews v. Sawyer*, No. 19-2541-JWB, 2020 WL 1528502, at ** 3-4 (D. Kan. Mar. 31, 2020) (dismissing a prisoner's lawsuit seeking medical treatment where the Bureau of Prisons had already agreed to provide the requested treatment) (citing *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)).

[38] *Shook v. Board of County Comm'rs of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("injunctions merely requiring defendant to obey the law are too vague to satisfy Rule 65")(citation omitted); *Keyes v. School Dist. No. 1, Denver, CO*, 895 F.2d 659, 668 (10th Cir. 1990).

[39] 461 U.S. 95, 104-05 (1983); *see Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) ("A plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future") (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)).

[40] *Compare Weis Dec.* at ⁋⁋ 6, 8, *with* Doc. 1, ⁋ 18.

injunctive relief. Another Title II ADA case from this District is instructive. In *Tyler v. Kansas Lottery,*[41] Judge Richard Rogers of this District dismissed Tyler's ADA lawsuit seeking injunctive relief against the Lottery for lack of standing, noting the different requirement for standing for injunctive relief, stating the law as follows: "to satisfy the requirements for standing for injunctive relief, plaintiff must demonstrate: 1) that he will suffer an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that the conduct complained of will cause the injury alleged; and 3) that it is likely, not speculative, that the injury will be prevented by a favorable decision."[42] The Court also cited *City of Los Angeles v. Lyons* for the proposition that "plaintiff must demonstrate that he himself faces a real and immediate threat of future harm, not a conjectural or hypothetical threat," and a more extensive showing is required to maintain standing for injunctive relief.[43]

In finding Tyler's ADA case should be dismissed, the Court noted that Plaintiff had not shown sufficient likelihood of future injury, both because he had moved out of state but also because the Lottery had made changes in the direction of enhanced ADA compliance (although still 50% of lottery retailers were still not fully ADA-compliant). Like Tyler, Haulmark has no standing for the mandatory injunctive relief sought.[44]

While unclear, the request for a declaration that records subject to KORA and meetings subject to the KOMA are subject to the ADA is not within the jurisdiction of this

---

[41] 14 F. Supp. 2d 1220 (D. Kan. 1998).

[42] *Id.,* at 1224 (citing *See State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir.1998) *quoting Bennett v. Spear*, 520 U.S. 154, ––––, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997)).

[43] *Id.* (citing 461 U.S. at 105).  *See also* O'Shea v. *Littleton,* 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.")).

[44] *See Shotz v. Cates,* 256 F.3d 1077, 1082 (11th Cir. 2001) (affirming dismissal of an ADA complaint seeking changes in accessibility to a courthouse where the Plaintiffs did not show a likelihood of future injury, finding allegations of past injury insufficient).

Court. A present controversy is lacking as required by 28 U.S.C. § 2201 and the Court lacks jurisdiction to render such a declaratory judgment regarding past actions.[45] Further, this request fails to present a federal question. 28 U.S.C. § 2201 "does not extend the jurisdiction of the federal courts;" an underlying federal question must still be presented.[46] It is unclear what Haulmark is asking for and why as the state and federal statutory schemes are separate. Haulmark's Complaint acknowledges that his requests for records under KORA were responded to and under KORA, denied. Haulmark also admits that Day responded to Haulmark's requests by offering to produce specific transcripts of interest as per the ADA. The KOMA is not referenced in the Complaint.[47]

## III. The Complaint Should be Dismissed or Summary Judgment Granted

### A. The Complaint Fails to State a Plausible Claim against "the State"

The Complaint alleges no specific acts of discrimination or denials of accommodation by the State of Kansas itself vis-à-vis Haulmark. Under general pleading rules, a reference to "defendants" is insufficient to state a claim as a matter of law; a Complaint must "make clear exactly *who* is alleged to have done *what* to *whom*."[48]

Nor is the State the "public entity" whose activities are at issue here. Title II provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[49] The Complaint makes it clear that the activities of interest to Haulmark were legislative activities, not

---

[45] *Id.*
[46] *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 197 (2014) (citation omitted).
[47] Doc. 1
[48] *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2018).
[49] 42 U.S.C. § 12132.

activities of the State in general. The letters and emails referred to in the Complaint by Haulmark were addressed to legislative officials.[50] The Legislature is but one of the three branches of State government. [51] The "State" is not the public entity at issue for purposes of Title II. With regard to similar claims under the Rehabilitation Act, courts have held that the State itself is not a proper defendant when only a department or agency of the State is at issue, a conclusion that makes sense here as well.[52]  In a not dissimilar situation, the Fourth Circuit held it could not order relief against the City of Richmond as a matter of equity or under Title II based upon alleged violations by another governmental entity, a school board, because the city was not the public entity at issue and had not wronged the Plaintiffs.[53] The claims against the State of Kansas are insufficient to state a plausible claim under Title II and should be dismissed.

### B.  The Complaint Fails to State a Plausible Claim against LAS

Haulmark has sued LAS. However, the programs complained of by Haulmark are not those of LAS, but rather of the Legislature itself. Further, LAS is simply an administrative office. It acts at the direction of the LCC.[54] It lacks the capacity to sue or be sued at law.[55] It has no authority to act on its own.[56]  It has no authority to adopt policy on its own even if ordered to do so, as requested by the Complaint.

While the Complaint generally recites that LAS "runs facilities" and "controls

---

[50] Plaintiffs' Exhibits 4, 6, 11, 13.

[51] Kan Const., art. 1-3.

[52] *Schroeder v. City of Chicago,* 927 F.2d 957, 962 (7th Cir. 1991) (Congress did not intend "to sweep the whole of state or local government" within the prohibition if one part of the entity is alleged to have discriminated); *Phillips ex rel. Toole v. State of Georgia,* No. Civ. A. 1:05-cv-02158, 2006 WL 2918938, at ** 4-5 (ND. Ga. Oct. 10 2006) (State of Georgia was not a proper defendant, citing cases).

[53] *Bacon v. City of Richmond,* 475 F.3d 633, 645 (4th Cir. 2007).

[54] K.S.A. 46-1212a.

[55] *Id.*

[56] *Id.*

rooms,"[57] the authority cited does not support the proposition that LAS itself makes policy. For example, Plaintiff's cited authority is the "Policy for Usage of the Statehouse and Capitol Complex,"[58] which merely provides that LAS controls "the use of" certain rooms in the Capitol in that applications for use of rooms is to be made to LAS. The Policy itself was approved by the Secretary of the Kansas Department of Administration, not by LAS.[59] The Complaint fails to state a plausible Title II claim against LAS.

### C. Any Complaint About the Prior Notice Requirement Fails to State a Plausible Claim for Relief under Title II of the ADA.

It is unclear whether Haulmark is claiming that Title II was violated when LAS was unable to provide an interpreter on January 14, 2019 when Haulmark had given no advance notice as required by the published ADA notice.[60] If Haulmark is making such a claim, it lacks support in the law. The Complaint acknowledges that the Legislature has a posted ADA notice asking for two working days-notice of requests for accommodation for legislative proceedings.[61] The Notice requirement is based upon federal regulation, 29 CFR § 35.106. The Complaint does not allege any instance where the Legislature denied Haulmark an interpreter where he had given prior notice of a request.[62] Rather, the Complaint recites a single instance where Haulmark failed to give any advance notice of the request.[63] If Haulmark is claiming that Title II was violated on January 14, 2019, that claim fails to state a plausible claim under the ADA.

The ADA does not require a public entity to provide an interpreter on the spot,

---

[57] Doc. 1, at ¶ 13.
[58] Doc. 1, at ¶ 13, n.2.
[59] *Id.*
[60] Doc. 1, at ¶¶30-31; Pltf's Exh.# 1.
[61] Doc. 1, at ¶ 15; Pltf's Exh.# 1.
[62] Doc. 1.
[63] Doc. 1 at ¶¶ 28-31,

without any prior notice; rather, it requires reasonable and appropriate accommodations to provide "meaningful access."[64]   Having to provide a qualified interpreter without a notice is not reasonable or appropriate. If Plaintiff's position were correct, each and every public entity in the United States would be legally required to maintain a qualified interpreter on staff at all times "just in case." This is not practical. It is also not the law.

To the contrary, instead of requiring all state and local governmental units in the United States to maintain qualified interpreters on staff at all times, the scheme calls for the entity to provide a Notice so that qualified individuals know how to request accommodations when needed and to allow the public entity the opportunity to  Notice requirements are common and accepted.[65] The U.S. Department of Justice, charged with enforcing Title II of the ADA, prepares a primer for state and local governments. In that effort, it has provided a sample ADA Notice to be used by state and local governments which includes a 48-hour-notice requirement. The DOJ-provided sample Notice provides:

> Anyone who requires an auxiliary aid or service for effective communication, or a modification of policies or procedures to participate in a program, service, or activity of [name of public entity], should contact the office of [name and contact information for ADA Coordinator] **as soon as possible but no later than 48 hours before the scheduled event."**
>
> https://www.ada.gov/regs2010/titleII_2010/title_ii_primer.html#communicating  (emphasis supplied), subject to judicial notice as per Fed. R. Evid. 201.

---

[64] *Alexander v. Choate,* 469 U.S. 287, 301 (1985); 28 CFR §. 35.130(b)(7). Judicial interpretations regarding the Rehabilitation Act may be applied to the ADA as appropriate. *Havens v. Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).
[65] Although Congress has exempted most of the federal government from the ADA, this Court's Website for example states that requests for accommodation "must be made as far in advance as possible of the court proceeding involved. At least a 24-hour notice is preferred." http://ksd.uscourts.gov/index.php/services-to-persons-with-communications-disabilities/

The DOJ would not be advising state and local governments to adopt a prior notice requirement if such a requirement were unlawful under the ADA.[66]

Further, the public entity is not required to provide qualified interpreters in every situation, but rather has the choice of providing an appropriate "auxiliary aid" which is broadly defined in the regulations.[67] The choice of how to reasonably modify the program to allow access is that of the public entity in the first instance.

Courts have also held that a disabled person must utilize appropriate procedures for requesting accommodation.[68] This is something Haulmark obviously and admittedly failed to do on January 14, 2019. If Haulmark is claiming that Title II was violated on January 14, 2019, there is no basis in law or fact for that claim, which should be dismissed.

### D. Haulmark's Complaint Fails to State a Plausible Title II Claim; Alternatively, Summary Judgment for Defendants is Appropriate

Haulmark's lawsuit is premised upon the assumption that the ADA is violated whenever a disabled individual does not receive exactly what he or she wants.  Or when the accommodations offered by the public entity are not "perfect" or "errorless." However, that is not the law and the Tenth Circuit has repeatedly rejected these contentions. Here, even as pled in the Complaint, the facts demonstrate that LAS has offered reasonable accommodations to Haulmark. Haulmark cannot meet his burden of showing that the

---

[66] The reasonable interpretation of an agency charged with enforcing a statute may be considered as persuasive. *Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 395 (2008) (citing *Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 843-45 (1985)).

[67] 28 C.F.R. § 35.104

[68] *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (citing and quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001)) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.'"); *see, e.g., Baker v. State of Louisiana through Guste,* Civ. A. No. 91-1784, 1992 WL 510773, at * 4 (W.D. La. Sept. 8, 1992), *aff'd,* 9 F.2d 103 (5th Cir. 1993) (rejecting ADA and RA claim against the State and state court judge for failure to provide an interpreter where plaintiff failed to request an interpreter in advance, holding that the plaintiff could not make such a claim where she had failed to avail herself of the specified procedure for making such a request).

accommodations offered were not reasonable or appropriate.[69]   Or that LAS acted with "deliberate indifference," particularly in that LAS has been working with him and on the captioning issue all along.

Title II provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[70]   In relevant part, "public entity" means (A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government."[71] A public entity is asked to make reasonable or appropriate modifications and accommodations to allow the disabled to participate in its programs but is not required to make fundamental or substantial modifications to its programs or to incur an undue burden.[72] The public entity is to take "appropriate steps" to provide for effective communication[73]  and "and shall furnish appropriate auxiliary aids and services were necessary to afford individuals with disabilities ...an equal opportunity to participate in . . . a service, program or activity of a public entity."[74]   While the disabled person's preference is considered, the type of auxiliary aid which is appropriate will vary with the situation.[75]  The regulation contains a non-exhaustive list of options for appropriate auxiliary aids.[76] The disabled person is not entitled to the accommodation he

[69] *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).
[70] 42 U.S.C. § 12132.
[71] 42 U.S.C. § 12131.
[72] *Alexander v. Choate,* 469 U.S. 287, 300 (1985); 28 CFR § 35.130(b)(7).
[73] 28 CFR §35.160(a)(1).
[74] 28 CFR § 35.160(b)(1).
[75] 28 CFR §35.160(b)(2); *Cropp v. Laramie County,* No. 18-1262, 793 Fed. Appx. 771, 777-78 (10th Cir. 2019).
[76] 28 CFR §35.104.

or she prefers.[77]  The  ADA does not require "equal results."[78] The ADA does not require perfection.[79] The standard is one of "meaningful access"[80] or whether the accommodation offered  by  the  public  entity  was  objectively  reasonable.[81]  "[T]the  ADA's  reasonable accommodation requirement usually does not apply unless 'triggered by a request.'"[82] A plaintiff  bears  the  burden  of  showing  discrimination  and  that  the  accommodations offered were not reasonable.[83]  Request for mandatory injunctive relief  are subject to an even  higher  standard  and  are  granted  only  "under  compelling  circumstances;"[84]  even where the Court is of the view that the law has been violated, if a public entity is making "dutiful progress," the Court should "exercise restraint" and withhold injunctive relief.[85]

Haulmark will not meet his burden of demonstrating that what LAS and Tom Day offered to him was not in fact reasonable or appropriate. Haulmark has been provided qualified  interpreters  upon  prior  request.[86]  Haulmark's  demand  for  nearly  900 professional and "errorless" transcripts for each and every legislative proceeding is not a

---

[77] 28 CFR § 35.160(a), (b)(1); *Cropp*, at 777-85; *Havens v. Colorado Dept. of Corrections*, 897 F.3d 1250, 1265 (10th Cir. 2018) (citing *Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1232 (10th Cir. 2009)*; Nunes v. Mass. Dept. of Corrections*, 766 F.3d 136, 146 (1st Cir. 2014) (a disabled person is "entitled to reasonable accommodation, not to optimal ones fine-tuned to his preferences," citing *JD ex rel. JD v. Pawlet School Dist.*, 224 F.3d 60, 71-72 (2d Cir. 2000) (disabled child's parent's request for an accommodation for the "best" education failed to state a claim)); *Barber*, 562 F.3d  at 1228-32; *Memmer v. Marin County Courts*, 169 F.3d 630, 633-34 (9th Cir. 1999).
[78] *Alexander v. Choate*, 469 U.S. at 304; *Havens*, 897 F.3d at 1263.
[79] *Cropp*,  at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7  (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs*, No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva*).
[80] *Alexander v Choate*, 469 U.S. at 301; *Havens*, at 1263.
[81] *Barber v. State of Colorado Dept. of Revenue*, 562 F.2d 1222, 1229-30 (10th Cir. 2009).
[82] *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (citing and quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir.2001)).
[83] *Havens*, at 1263; *Memmer*, at 634.
[84] *Tyler v. City of Manhattan*, 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).
[85] *Id.* (citation omitted).
[86] Doc. 1, at ¶¶ 28-31, referring only to a single instance upon which an interpreter was not provided when no prior request was made as per the Notice. Day Declaration, at ¶ 19.

reasonable request.[87] More than once, Day offered to provide transcripts for specific proceedings of interest to Haulmark.[88] Haulmark never responded to Day's offer.[89] Haulmark failed to engage in an interactive process with LAS or Day.  He simply repeated the same unreasonable demands for professional "errorless" transcripts of every single legislative proceeding without showing why those requested transcripts were necessary to provide effective communication as to any particular bills he may have been following, bills which were never identified.  Haulmark never explained why any alleged imperfection in the YouTube captioning would have enabled him entirely unable to understand what was occurring as to a specific bill of interest, and if that were the case, why he didn't follow up with Day about a specific proceeding of interest. His complaints about the existence of audio-only files and the lack of real-time captioning are being addressed through the KS VSP. Haulmark's Complaint fails to meet his burden of demonstrating why Day's responses were not reasonable or appropriate accommodations under the ADA.[90] Under the facts even as pled by Haulmark, Haulmark's Complaint fails to state a claim for deliberate indifference for damages because LAS and Day were admittedly responding to him and working on improvements.[91] There is also no basis for mandatory injunctive relief under the high standard applicable to such claims as stated in *Tyler.*[92]

---

[87] Day Declaration, at ⁋ 21; Exhibit L.

[88] Day Declaration, at ⁋⁋ 21-22; Exhibit L; *accord* Doc. 1

[89] *Id.*

[90] *Barber,* at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir. 1999) (Plaintiff "must establish the existence of specific reasonable accommodations" that the public entity failed to provide).

[91] *McCulley v University of Kansas School of Medicine,* 591 Fed. Appx. 648, 651 (10th Cir. 2014) (citing *Barber)* (affirming the medical school's denial of accommodations requested by the medical student and finding compensatory damages were "inappropriate,"stating,"KUSOM was hardly indifferent to" the requests for accommodation where it engaged in an interactive process with the student and allowed her ample opportunity to make requests).

[92] *Tyler v. City of Manhattan,* 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).

Haulmark's demands for "errorless" transcripts in perfect English with "100% accurate" captions also fail to state a claim under Title II as perfection is not the standard. Rather, the accommodation need only be objectively reasonable, offering the opportunity for meaningful access.[93] Accordingly, demands similar to Haulmark's were dismissed in *Makeen v. Colorado.*[94] There, the Plaintiff requested a notetaker to assist him in state court proceedings. A notetaker was provided, but Plaintiff complained that the notetaker was insufficient for reasons such as on one occasion, purple paper was used. Plaintiff also complained that the notetaker's notes were shorter than the court's transcript, not word for word. After finding no basis for injunctive relief, the District Court held that Plaintiff had failed to plead a claim for damages, noting that the courts had accommodated plaintiff, and that reasonable accommodation did not require perfection, or even that Plaintiff's preferred accommodation be granted. Even if "less than perfect," the Court found that the notetaker captured significant information even though not every single word was captured. The District Court also noted that Plaintiff had not shown that any defects in the notetaking process denied him effective or meaningful access to the courts.

*Dobard v. San Francisco Bart Area Rapid Transit Dist.*[95] is another case on point. In that case, Dobard alleged the ADA was violated because Dobard did not receive the computer aided transcription aid which he requested to access the Board meetings.[96] The Court dismissed Dobard's Complaint for failure to state a claim and also held that the request for injunctive relief was moot because the Board was providing Dobard with a

---

[93] *Barber v. State of Colorado Dept. of Motor Vehicles,* 562 F.3d 1222, 1229-30 (10th Cir. 2009); *see Alexander v Choate,* 469 U.S. at 301; *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).
[94] No. 14-cv-3452-WJM-CBS, 2016 WL 8470186, at ** 9-10 (D. Colo. Sept. 16, 2016).
[95] No. C-92-3563-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993).
[96] Id., at * 1.

means to access the Board meetings in question.[97] In so holding, the Court found that the ADA required nondiscrimination, 42 U.S.C. § 12182(a), but did not require an identical result be achieved, citing to the ADA regulations.[98] The Court noted that the issue turned on Dobard's argument was that he was entitled to receive his choice of accommodation or means used, while BART argued that it need only provide some means of assuring effective communication.[99] The Court held that the law was consistent with Defendant BART's position, finding that BART had provided aids and services, including interpreters, and that BART had discretion in how to meet the goal.[100] The Court expressly held that, "[t]he use of the most advanced technology is not required."[101]

*Havens*[102] is another recent example of a Tenth Circuit case rejecting a Title II claim similar to Haulmark's. In *Havens,* the Tenth Circuit affirmed the district court's ruling that the prison was not deliberately indifferent to the disabled prisoner's rights so as to support a Title II claim for damages where the prison had offered accommodations and where the plaintiff had the opportunity for meaningful participation in prison programs, affirming the district court's finding that the prisoner was not discriminated against in violation of Title II even though the prisoner was not placed exactly where he wanted to be placed and was not given everything he wanted, having been placed in a less accessible facility with fewer programs. The Circuit rejected the idea that failure to give Plaintiff what he wanted constituted discrimination or justified damages.[103] The Court found that when a defendant provides accommodations or offers to, or engages in an

---

[97] *Id.*, at ** 3-4.
[98] *Id.*, at * 3 (citing 28 CFR App. B 36.201(a) (1992)).
[99] *Id.*
[100] *Id.*
[101] *Id.* (citing 28 CFR Pt. 36.303(c), App. B.)
[102] *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250 (10th Cir. 2018).
[103] *Id.*(citing *Barber v. State of Colorado, Dept. of Rev.,* 562 F.3d 1222, 1232 (10th Cir. 2009)).

interactive process with a plaintiff, *that is the opposite of deliberate indifference*.[104]   The Court noted that alleged negligence is insufficient,[105] and that delay that could be termed, "not uncommon bureaucratic inertia" or "slippage" in updating systems does not amount to deliberate indifference.[106]

Barber, cited in *Havens,* is another useful example of how the Tenth Circuit has analyzed reasonable accommodation requirements and has similarities to what occurred here. There state law required that a minor driver practice driving with a licensed driver who had to be a "parent, step parent, or guardian."[107] The minor's mother was disabled and was not a licensed driver; the mother asked DMV for an accommodation, namely that another licensed driver such as the girl's  grandfather be allowed to serve in that role.[108] DMV responded that the mother's preferred option was not allowed by current state law but made suggestions as to options.[109] The statute was eventually amended.[110] The minor's mother sued, claiming DMV had violated the ADA and the Rehabilitation Act.[111] The district court found that the claims for injunctive relief were moot and granted judgment for DMV on the damage claims.[112]  The Circuit affirmed, finding that DMV was not deliberately indifferent where it offered objectively reasonable alternatives.[113]  The Circuit also pointed to the mother's refusal to engage in any sort of interactive process

---

[104] *Id.*, at 1265 (citing *McCulley v. Univ. of Kan. School of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014) (unpublished)); *id.*, at 1267-68.

[105] *Id.* (citing *Barber,* 562 F.3d at 1229).

[106] *Id.* (citing cases including *Ferguson v. City of Phoenix,* 157 F.3d 668, 675 (9th Cir. 1998) (holding that "not uncommon bureaucratic inertia" in updating a city's 9-1-1 system to make it accessible to the hearing-disabled, coupled with "some lack of knowledge and understanding" about regulatory requirements, did not amount to deliberate indifference.").

[107] 562 F.2d at 1224-25.

[108] *Id.*, at 1225.

[109] *Id.*, at 1225-26.

[110] *Id.*, at 1227.

[111] *Id.*

[112] *Id.*

[113] *Id.*, at 1229-30.

with DMV and her insistence that her requested accommodation was the only accommodation worthy of consideration, finding that the mother had failed in her "obligation to proceed in a reasonably interactive manner."[114] Finally, "the mere fact that the DMV did not accept Marcia Barber's suggested resolution does not establish a deliberate indifference to her situation or her rights."[115]

The recent Tenth Circuit case of *Cropp v. Laramie County, Colo.* is also instructive. There, Cropp, a man with Alzheimer's and dementia, was picked up by the police and taken to jail.[116] Cropp and his wife were told he could be released if he would sign a form.[117] Cropp's wife requested that the jail allow her to set next to her husband to explain the form.[118] The jail denied this request, but offered other options, including a visitation booth, the assistance of staff members, and the assistance of a nurse.[119] There was some additional discussion with Ms. Cropp about her request, but the jail still denied her request to sit next to her husband citing jail policy prohibiting physical contact.[120] Mr. Cropp eventually signed the form on his own and was released, but it took 11 hours.[121] Cropp and his wife sued under Title II, seeking relief including injunctive relief and damages.[122] The Circuit held that the request for injunctive relief became moot or Cropp lacked standing when Cropp was released from jail, citing that past events did not support injunctive relief.[123] The Circuit affirmed the district court's

---

[114] *Id.,* at 1231 (citing *Smith v. Midland Brake, Inc.,*180 F.3d 1154, 1172 (10th Cir. 1999)).
[115] *Id.,* at 1232.
[116] No. 18-1262, 793 Fed. Appx. 771, 773 (10th Cir. 2019).
[117] Id., at 774.
[118] *Id.*
[119] Id.
[120] *Id.,*
[121] *Id.*
[122] *Id.,* at 775.
[123] *Id. (citing City of Los Angeles v. Lyons,* 461 U.S. 95, 104-05 (1983)).

denial of damages, finding no evidence of intentional discrimination or deliberate indifference in the jail's actions.[124] In the process, the Circuit discussed the effective communication requirement stated in the regulations, rejecting the Cropps' argument that they were entitled to their preferred means of effective communication and the denial of it meant that the Cropps had been intentionally discriminated against.[125]

The district court found that the Cropps failed to show that the requested physical contact was necessary, finding that the jail had offered reasonable accommodations and that the Cropps were not entitled to their preferred accommodation.[126] The Circuit agreed, stating: "we reject Mr. Cropp's suggestion that the County's mere failure to provide him with the precise auxiliary aid he requested necessarily amounts to discrimination—let alone to intentional discrimination via deliberate indifference."[127] The Circuit noted that the Cropps' interpretation would rewrite the regulation, 28 CFR Pt. 35.160(b)(1), from a duty to provide appropriate aids to a duty to provide the aid demanded by the disabled individual.[128]  The Court also noted that even if the accommodations offered by the jail were not effective, the damage claim failed because the Cropps could not show that the jail knew that there was a substantial likelihood that the offered accommodations were not effective and made the deliberate choice not to offer the requested accommodation.[129] The Court noted that the ADA did not require perfect communication.[130]  The Circuit

---

[124] *Id.*, at 778.

[125] *Id.*, at 777-85.

[126] *Id.*, at 777-78 (*Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1263 (10th Cir. 2001) ("[T]he ADA requires an employer to provide a 'reasonable accommodation, not the accommodation [the disabled individual] would prefer.' " (quoting *Rehling v. City of Chi.*, 207 F.3d 1009, 1014 (7th Cir. 2000))).

[127] *Id.* at 780.

[128] *Id.*, at 781 (citing *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) (noting that regulations require public entities to furnish auxiliary aids when such aids are "*necessary*" and "*appropriate*," not when they are "desired" or "demanded" (quoting § 35.160(b)(1))).

[129] *Id.*, at 782 (citing *McCullum,* at 1147).

[130]  *Id.*, at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7 (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only

found that even if the Cropps could show that the accommodations offered by the jail were less effective than the physical contact visit, the Cropps could now show that the jail knew that the offered accommodations would be "*wholly ineffective"* for ADA purposes."[131]

Similar to the Cropps, Marcia Barber, and the prisoner in *Havens,* Haulmark cannot show discrimination or damages merely because he did not receive exactly what he requested –*e.g.*, the nearly 900 "100% accurate" captioning or "errorless" transcripts. More to the point, Haulmark will not be able to show that Day knew that offering Haulmark specific transcripts of interest to him would be wholly ineffective as an accommodation and deliberately made the choice not to offer an effective accommodation as required for a damage claim. While Mrs. Cropp made some effort to explain to the jail why the physical contact visit was necessary for an effective accommodation, Haulmark never explained why his preferred accommodation (professional production of transcripts for each and every single legislative proceeding with 100% accuracy with no spelling, capitalization or grammar errors) was the only means to achieve meaningful access so that he could follow specific bills of interest.[132]

Here Haulmark received accommodations: qualified interpreters, offers of specific transcripts of interest, auto-generated captioning on the YouTube postings and now real-time closed captioning through the Kansas Virtual Statehouse Project.  That is all the ADA requires – reasonable accommodation. Like Marcia Barber, criticized by the Circuit in her case with DMV, Haulmark refused to engage in any interactive process with Day and

---

required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)).

[131] *Id.*, at 784-85  (emphasis in original)(citing § 35.160(a)(1), (b)(1); *cf. Barber*, 562 F.3d at 1230–31 (holding that defendant did not act with deliberate indifference when it refused to provide plaintiff with requested accommodation, in part because defendant offered plaintiff "another objectively reasonable alternative")).

[132] *Id.,* at 777, 783.

never conveyed to Day why the offered accommodations were not sufficient. Further, on this record where LAS and Day were trying to work with Haulmark, responding to him and having met with him twice, there is no plausible claim for deliberate indifference or damages. As the Circuit has held, what Day has done – providing interpreters, responding to Haulmark's requests, offering accommodations, offering to meet with him regarding his concerns and working to improve accessibility -- is the opposite of deliberate indifference. Haulmark's Complaint against the State and LAS should be dismissed for failure to state a plausible claim, or in the alternative, summary judgment should be granted in defendants' favor.

## Conclusion

Haulmark's vaguely worded requests for various mandatory injunction orders fail to state a claim (particularly given the high standard for such orders which are granted only in compelling circumstances), and are barred for lack of jurisdiction, failing to present a justiciable case or controversy. The State and LAS already have policies of nondiscrimination and accommodation. The Kansas VSP eliminate the complained of audio-only files, providing real-time closed captioning.[133] Assuming jurisdiction, Haulmark's Complaint fails to state a plausible claim for discrimination or damages because Day and LAS offered reasonable accommodations upon request; the Complaint itself negates the kind of intentional discrimination and deliberate indifference required for damages against a public entity under the ADA.

---

[133] Doc. 1, at ₱ 18 (stating a similar system in Arkansas and Virginia provided effective communication under the ADA).

Plaintiff's Complaint should be dismissed for lack of jurisdiction or failure to state a claim. Alternatively, the State and LAS request that the Court grant summary judgment in favor of defendants.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s M.J. Willoughby
M.J. Willoughby, KS 14059
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215l Fax: (785) 291-3767
Email: MJ.Willoughby@ag.ks.gov
*Attorney for State of Kansas, Legislative Administrative Services*

## CERTIFICATE OF SERVICE

I certify that on February 22, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all participants, and a copy served upon Plaintiff by first-class mail postage prepaid addressed to:

Chris Haulmark, 600 S. Harrison St., Apt. # 11, Olathe, KS 66061, Plaintiff pro se.

/s M.J. Willoughby
M.J. Willoughby
Assistant Attorney General