IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHRIS HAULMARK, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case. No. 20-cv-4084-EFM-TJJ |
| | ) | |
| STATE OF KANSAS, et al., | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Tom Day, Director of the Office of Legislative Administrative Services ("LAS"), sued in his official capacity, moves the Court for an Order dismissing this lawsuit, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

As to Tom Day, this action should be dismissed for the reasons stated in the Motion to Dismiss filed by the State of Kansas and LAS (Docs. 18-19). In addition, as Judge Sam Crow of this District found in dismissing Haulmark's similar claims against two other individuals, Senate President Susan Wagle and House Speaker Ron Ryckman, Haulmark's claims are barred for lack of standing and redressability and do not state a proper claim under *Ex parte Young*. For these reasons and others stated herein, dismissal of the action against Tom Day is proper.

### *Nature of the Matter Before the Court*

The Kansas Legislature is committed to offering reasonable and appropriate accommodations as per the Americans with Disabilities Act and has offered reasonable accommodations to Plaintiff Chris Haulmark. Based upon the contention that the ADA

1

entitles the requestor to whatever he or she requests and that perfection is the applicable standard, Haulmark seeks mandatory prospective injunctive relief that this Court order the State,  the Legislature's Administrative Office ("LAS"), and its Director Day to adopt policies of non-discrimination against the hearing impaired (policies already in existence), declaratory relief that the Kansas Open Records and Meetings Acts are subject to the ADA, and $5 million in compensatory damages. Haulmark's Complaint misstates the applicable standard under the ADA and fails to state a plausible Title II claim for any of the relief requested, particularly as to Tom Day, an individual.  The Complaint is also barred for lack of jurisdiction, failing to present a justiciable case or controversy. Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) or (b)(6).

## STATEMENT OF FACTS[1]

1.  The Legislature has a published ADA Notice, offering accommodations upon two working days-notice. Doc. 1, at ¶ 15; Pltf's Exh.1.

2.  The State of Kansas has a policy under which all State technology projects are to be ADA-compliant, ITEC 1210.0. Doc. 1, at ¶ 35. A copy of ITEC 1210 is attached hereto and incorporated herein as per Fed. R. Civ. P. 10(c), submitted as Exhibit B to the Declaration of Alan Weis, attached hereto.[2]

3.  Plaintiff Chris Haulmark is deaf. Doc. 1, at ¶ 11.

4.  Tom Day is the Director of Legislative Administrative Services. Doc. 1, at ¶ 14.

---

[1] The facts referred to herein are either stated in the Complaint or are jurisdictional facts upon which the Court has wide discretion to consider affidavits or other evidence without converting the matter to summary judgment. *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir 2003) (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995)).

[2] The State and LAS' Memorandum contains an error on the Policy number, corrected herein. The undersigned apologizes for the error.

5. Legislative Administrative Services ("LAS") is an administrative office established by statute, acting at the direction of the LCC. K.S.A. 46-1212a.

6. The Complaint does not allege that Day is a "public entity" as defined in the Americans with Disabilities Act. Doc. 1, at ¶ 14.

7. The Complaint does not allege any occasion upon which Plaintiff Chris Haulmark was denied a qualified interpreter by LAS when he had given prior notice as per the Legislature's ADA Policy. Doc. 1.

8. On a single day, January 14, 2019, Haulmark was not provided an interpreter when he requested an interpreter without giving prior notice as required by the published ADA policy. Doc. 1, at ¶ 31.

9. On November 1, 2019, Haulmark sent a letter to Tom Day at LAS pursuant to the Kansas Open Records Act, K.S.A. 45-215, *et seq.,* requesting professional, "errorless" transcriptions of 13-pages of legislative committee meetings, nearly 900 in number.  Doc. 1, at ¶ 39. A complete copy of the letter and the 13-page attachment is attached hereto and incorporated herein as per Fed. R Civ. P. 10(c), Exhibit L to Day's Declaration; Declaration of Tom Day, ¶ 16, Exhibit 1 hereto.

10. Tom Day responded to the letter on behalf of LAS, denying the request under the KORA, but offering to produce specific transcripts of Haulmark's choosing. Doc. 1, at ¶¶ 40-41. A copy of Day's letters referred to in the Complaint are attached hereto and incorporated herein as per Fed. R. Civ. P. 10(c), included in Exhibit L to the Day Declaration; Day Dec. ¶ 16.

11. Day offered to meet with Haulmark. Doc. 1, at ¶ 41.

12. The Complaint does not reflect that Haulmark responded to Day's offer to produce specific transcripts of interest to him. *See* Doc. 1.

13. On December 5, 2019 Day met with Haulmark, a meeting which included the State ADA Coordinator and representatives of the Kansas Commission on Deaf and Hard of Hearing.  Day explained he had been working on improving accessibility for legislative proceedings and that he would continue in those efforts and provide a progress report. Doc. 1, at ⁋⁋ 46-47.

14. On December 19, 2019, the Legislative Coordinating Council ("LCC"), met and adopted a resolution:

**Motion Regarding Audio/Video Streaming and Related Accessibility Requirements**

**Item #6, LCC Agenda, December 19, 2019**

I move that the Legislative Coordinating Council direct Mr. Tom Day, Director of Legislative Administrative Services, to develop a plan of implementation of the full video and audio streaming of Senate and House of Representative chamber session meetings and all legislative committee meetings over a reasonable period of time with regard to acceptable hardware and software options and reasonable costs associated with such implementation, including reasonable services for the deaf and hard of hearing segment of our citizenry. Mr. Day shall consult with the Kansas Commission for the Deaf and Hard of Hearing (including appearing before a meeting of the commission) and Mr. Anthony Fadale, State ADA Coordinator for the State of Kansas as he proposes such plan.  For any necessary revisions to LCC Policies, Mr. Day shall consult with Mr. Gordon Self, Revisor of Statutes for assistance and drafting resources. Mr. Day shall present such plan at a subsequent meeting of the LCC.

The resolution is generally referred to in the Complaint and is attached hereto as per Fed. R. Civ. P. 10(c). Day Declaration, at ⁋ 3, Exhibit A.

15. On January 10, 2020, Day and Fadale met with the Kansas Commission on Deaf and Hard of Hearing, indicating he was they were working on improving

4

the accessibility of the streaming of legislative proceedings referring to the LCC being "fully behind" the effort, referring to the December 2019 resolution.  Doc. 1, at ⁋ 48.

16. On January 14, 2020, Haulmark emailed Tom Day noting that legislative proceedings were posted to the YouTube channel but complaining that the captions on the YouTube Channel "are not following the proper rules of the [sic] English which includes correct spelling, capitalization, and grammar structure."  The email requested "complete and accurate" transcriptions of all YouTube videos. Doc. 1, at ⁋ 50; Pltf's Exh.11.

17.  On January 16, 2020, Day responded to Haulmark, stating "[w]hile KORA does not require production of these transcripts, and as we have previously stated, we are willing to consider requests for specific proceedings of interest to you, such as portions of proceedings regarding specific bills. Please feel free to let me know if there are specific bills of interest to you such as were referred to generally in your correspondence." Doc. 1, at ⁋ 51; Pltf's Exh. 12.

18. Day's January 16, 2020 letter reiterated to Haulmark that he was moving forward with the LCC's December 19, 2019 resolution. Pltf's Exh.12.

19. The Complaint does not reflect that Haulmark responded to Day's offer to produce transcripts of specific proceedings of interest to him Doc. 1.

20. On March 2, 2020, Haulmark sent an email to Day demanding "transcripts to be produced and published with all of the content produced since the streams covering the legislative proceedings during the committee and subcommittee meetings." Doc. 1, at ⁋ 52; Pltf's Exh.13.

21. In March 2020, the World Health Organization declared a worldwide Pandemic. For Kansas, emergency declarations were issued, including by Governor Kelly on March 12, 2020. Doc. 1, at ₱ 21; *see, e.g.,* Kansas Supreme Court Administrative Orders relating to the COVID-19 Pandemic available at kscourts.org, subject to judicial notice as per Fed. R. Evid. 201.

22. Legislation does not carry over from the 2020 Session. Kan. Const. art. 2, § 8.

23. In an April 10, 2020, letter, Day responded to the KORA request, again offering to produce transcripts of specific proceedings of interest. Pltf's # 15.

24. In an April 13, 2020, email to Day, Haulmark recounted Day's April 10, 2020, offer to produce specific transcripts of specific proceedings of interest, but did not ask Day for transcripts or other assistance with specific proceedings of interest, demanding transcripts be produced of every single proceeding, citing KORA, the ADA and the Rehabilitation Act. Pltf's Exh.13.

25. On July 15, 2020, Tom Day and Legislative Chief Information Technology Officer Alan Weis made the first of several presentations to the Legislative Joint Budget Committee regarding the Virtual Statehouse Project ("VSP"), including the statement, ""[w]e are working . . . to ensure accessibility is achieved."  Doc. 1, at ₱ 57.

26. On September 16, 2020, the LCC met and approved proceeding with the Kansas Virtual Statehouse Project. Day Dec., at ₱ 7, Day Exh. D.

27. In September 2020, the VSP was reviewed by the Legislative CITO as per ITEC policy 1210 and state statute, K.S.A. 75-7208(a), and submitted to the State Information Technology Council. Weis Dec., at ₱ 3; Weis Exh. A.

28. On September 25, 2020, upon LCC approval, a request for proposals was issued regarding the VSP, including a deliverable of ADA accessibility. Day Dec., at ❡ 8; Day Exh. E.

29. On November 19, 2020, the LCC approved the VSP. The contract for the VSP was signed by Ron Ryckman for the LCC. Day Dec., at ❡ 11-12; Day Exh. G,H.

30. On November 19, 2020, installation of the VSP began. Weis Dec., at ❡ 2.

31. The contract calls for the VSP installation to be completed by February 28, 2021. Weis Dec., at ❡ 6; Day Exh. H.

32. After the VSP is fully implemented, there will be no audio only streams of legislative activities and the VSP will offer real-time closed captioning with the streaming through Sliq rather than through YouTube. Weis Dec. at ❡❡ 6, 8.

33. The Complaint does not allege that Haulmark made a request for accommodation to Day in the 2021 Legislative Session. Doc. 1.

34. Prior to the VSP, audio streams were carried over to the Legislature's YouTube channel where auto-generated captions were applied, generally within about 24 hours.  Weis Dec., at ❡ 7.

35. Haulmark does not identify specific proceedings that he missed out on due to any alleged deficiencies in the YouTube captioning. Doc. 1.

36. The Complaint does not reflect that Haulmark made a request for accommodation to Day with regard to any specific legislation, or during the 2021 Legislative Session. Doc. 1.

37. Haulmark seeks a mandatory injunction requiring "Defendants" to adopt policies of non-discrimination toward the hearing disabled, $5 million in

compensatory damages, and declaratory relief that KORA and KOMA are subject to the ADA. Doc. 1, at pp. 25-27.

## Questions Presented

1. Should this Complaint be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) where the Complaint fails to present a justiciable case or controversy and the Complaint fails to demonstrate standing or a proper *Ex parte Young* claim as to Tom Day?

2. Does the Complaint state a plausible claim for relief against Tom Day?

## ARGUMENTS AND AUTHORITIES

### I.   Legal Standards

#### A.  Failure to State a Claim

Under Rule 12(b)(6), a defendant may move for dismissal of any claim which the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which the claim rests.[3]

"[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." . . . In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense. All well-pleaded facts in the complaint are assumed to be true and are construed in the light most favorable to Plaintiffs. Allegations that merely state legal conclusions, however, need not be accepted as true.[4]

---

[3] *Day v. University of Kan. Hosp. Auth.,* No. 19-02788-EFM, 2020 WL 3412479, at ** 1-2 (D. Kan. June 23, 2020).

[4] *Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1141–42 (D. Kan. 2018).

## B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.[5] A presumption exists against jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[6]

Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to actual facts upon which subject matter jurisdiction is based.' If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the district court must accept all factual allegations as true.[7]

"[A] motion under Rule 12(b)(1) "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[8] The Court "has wide discretion to allow affidavits, other documents . . . to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion for summary judgment."[9]

Facts that are subject to judicial notice may be considered without converting the matter to summary judgment.[10]

A Rule 12(b)(1) motion to dismiss need not be converted unless resolution of the jurisdictional issue "requires resolution of an aspect of the substantive claim."[11]

## C. Pro Se Standard

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." A pro se litigant is entitled to a liberal construction of his pleadings. If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority ... confusion of various legal theories ... or [Plaintiff's] unfamiliarity with the pleading requirements." However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant." As it relates to motions to dismiss generally, "the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff." "Well-pleaded" allegations are those that are facially plausible

---

[5] *Day,* at * 2 (citing *Kakkonen v Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994) (further citation omitted)).
[6] *Id.*
[7] *Day*, at * 2 (citations omitted).
[8] *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1295 (10th Cir 2003) (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (internal quotation marks excluded)).
[9] *Id., at 1296* (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (internal quotation marks excluded)).
[10] *Tal v. Hogan,* 45 F.3d 1244, 1264-65, n.24 (10th Cir. 2006).
[11] *Davis,* at 1296 (citation omitted).

such that "the court [can] draw the reasonable inferences that the defendant is liable for the misconduct alleged."[12]

## II.   This Action Should Be Dismissed for Lack of Jurisdiction

Day joins in the jurisdictional argument made in the State's and LAS' motion to dismiss, Docs. 19 at 10-15, including the argument that jurisdiction is lacking for the requested declaratory judgment regarding state law (KORA, KOMA).[13]   For the Court's convenience, the argument is briefly reiterated herein.

### A.  Legal Standard for Standing/Case or Controversy

Under Article III, this Court's jurisdiction is limited to cases or controversies.[14] "The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III." [15] Standing requires three elements: injury in fact, causation and redressability.[16] "Standing has been rejected . . . because the alleged injury is not 'concrete and particularized.'"[17] Speculation does not support standing.[18] "[A] plaintiff must demonstrate standing separately for each form of relief sought."[19] "[S]tanding is not dispensed in gross."[20] Self-inflicted injury does not support standing as the alleged injury is not "fairly traceable" to a defendant's unlawful conduct.[21]   As the party seeking

---

[12] *Day v. University of Kansas Hosp. Auth.,* 2020 WL at *2 (citations omitted).

[13] 28 U.S.C. § 2201 "does not extend the jurisdiction of the federal courts;" an underlying federal question must still be presented. *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 197 (2014) (citation omitted).

[14] U.S. Const., art. III, § 2 (the judicial power is limited to cases or controversies).

[15] *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

[16] *Goico v. U.S.F.D.A.,* 20-1248-JAR-KGG, 2020 WL 7078731, at * 6 (D. Kan. Dec. 3, 2020) (citing *Lujan,* at 560-61).

[17] *Cuno,* at 344 (quoting *Lujan,*at 560).

[18] *Id.*

[19] *Id.*, at 352 (citing *Friends of the Earth, Inc. v. Laidlaw,*528 U.S. 167, 185 (2000); *Lyons,* at 109).

[20] *Id.*, at 353 (quoting *Lewis v. Casey,* 518 U.S. 343, 358, n.6 (1996)).

[21] *Clapper v. Amnesty Int'l, USA,* 568 U.S. 398, 418 (2013).

jurisdiction, the Plaintiff has the burden of establishing standing.[22] The Plaintiff "must 'clearly . . . allege facts demonstrating' each element of standing."[23] This Court has discretion in reviewing jurisdictional facts under 12(b)(1).[24]

Standing is generally determined at the time the case is filed.[25] Mootness concerns changes after the filing of the lawsuit.[26] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[27]

**B. Legal Standard of Eleventh Amendment Immunity/Ex Parte Young**

The applicable law was set forth in another Title II case by the Honorable Sam Crow of this District. In *Sanders v. Kansas Dept. of Social and Rehab. Serv.,*[28] a case where Plaintiff claimed SRS' failure to provide a vest violated the ADA, the Rehabilitation Act, and Section 1983, this Court stated the law regarding Eleventh Amendment immunity as follows:

> The Eleventh Amendment grants the states absolute immunity from suits brought by individuals in federal court. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974). It guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Uni. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). When the state itself is a named defendant, the Eleventh Amendment bar operates regardless of the legal or equitable nature of the relief sought. *Hensel v. Office of Chief Administrative Hearing Officer,* 38 F.3d 505, 509 (10th Cir.1994). The same is true for suits against a state agency, regardless of the form of relief sought. *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1187 (10th Cir.1998), *cert. denied,* 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999). Thus the Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in their official capacities. *See Kentucky v.*

---

[22]. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

[23] *Goico,* 2020 WL 7078731, at * 6 (citing *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)).

[24] *Davis,* at 1295-96.

[25] *Brown v. Buhman,* 822 F.3d 1151, 1164 (10th Cir. 2016).

[26] *Id.*

[27] *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (internal quotation marks omitted)).

[28] 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004),

*Graham,* 473 U.S. 159, 165–167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 994 (10th Cir.1993)

The Eleventh Amendment bars Haulmark's claim for $5 million in damages as to Tom Day sued in his official capacity, and any damage claims against him must be dismissed.[29]

Assuming for the sake of argument *Ex parte Young* applies, the facts don't support its application here. Judge Crow discussed the exception in *Sanders* as follows:

> Under this doctrine, "the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune." *Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior,* 160 F.3d 602, 607 (10th Cir.), *cert. denied,* 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The reasoning behind the *Ex Parte Young* exception is that if an official has performed his duties in a way that contravenes either the Constitution or a federal law, he does so outside the cloak of state authority, thus a suit against him does not impact the State in its sovereign or governmental capacity. *Chaffin,* 348 F.3d at 866.
>
> **The *Ex parte Young* doctrine is narrow, applies only to prospective relief, and "does not permit judgments against state officers declaring that they violated federal law in the past."** *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). *See Roe No. 2 v. Ogden,* 253 F.3d 1225, 1233 (10th Cir.2001); *Clark v. Stovall,* 158 F.Supp.2d 1215 (D.Kan.2001), *aff'd* 2002 WL 798259 (10th Cir. Apr.30, 2002) (Table), *cert. denied,* 537 U.S. 948, 123 S.Ct. 412, 154 L.Ed.2d 292 (2002).

*Four-part test*

The Tenth Circuit follows a four-part test to determine whether the *Ex Parte Young* doctrine should be applied:

First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the

---

[29] *Id.  See Sinapi v. Rhode Island Bd. of Bar Examiners,* 910 F.3d 544, 554 (1st Cir. 2018) (dismissing Title II ADA based damage claims against members of the Board in their official capacities as barred by the Eleventh Amendment, citing *Guttman v. Khalsa,* 669 F.3d 1101, 1113 (10th Cir. 2012)). *See also Turner v. National Council of State Boards of Nursing, Inc.,* 561 F. App'x 661, 665 (10th Cir. 2014) (citing *Peterson v. Martinez,*707 F.3d 1197, 1205 (10th Cir. 2013))

state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."

*Chaffin,* 348 F.3d at 866, quoting *Robinson v. Kansas,* 295 F.3d 1183, 1191 (10th Cir.2002). *See ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1187–90 (10th Cir.1998) (analyzing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) and *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The court finds it necessary to address only two related factors: the nature of the alleged violation, and the nature of the relief sought.

**This doctrine requires that there "be an ongoing violation of federal law" and that it apply "only to prospective relief" and not "to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past."** *Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 495 (10th Cir.1998). The requirement that the relief sought be permissible prospective relief not analogous to a retroactive award of damages impacting the state treasury is "not a game in semantics"; rather, the "overriding question is ... whether the relief will remedy future rather than past wrongs." *Chaffin,* 348 F.3d at 867, quoting *Elephant Butte,* 160 F.3d at 611.[30]

After looking at the law, the claims, and the facts, Judge Crow in *Sanders* found that *Ex parte Young* was inapplicable, dismissing the Title II, Rehabilitation Act and 1983 claims against the state officials as barred by the Eleventh Amendment, finding that the Amended Complaint failed to state sufficient facts showing that any alleged misconduct by SRS officials was ongoing and finding it unlikely that the past circumstances giving rise to the Complaint would "reoccur with any level of frequency."[31] The Court found that Plaintiff's claims that the past has a continuing effect was insufficient to warrant prospective injunctive relief.[32]

### C. Judge Crow's Similar Order and Analysis

In a September 30, 2020, Order in Haulmark's previous case on this subject, 20-

---

[30] *Sanders,* at 1243-44 (emphasis supplied).
[31] *Id.,* at 1243-44.
[32] *Id.,* at 1244 (citing *V-1 Oil Co. v. Utah State Dept. of Pub. Safety,* 131 F.3d 1415, 1422 (10th Cir. 1997); *Calderon v. Kansas Dept. of Soc. & Rehab. Serv.,* 181 F.3d 1180, 1184-85 (10th Cir. 1989)).

4033-SAC, attached as Exhibit 3 hereto and subject to judicial notice herein as per Fed. R. Civ. P. 201, Judge Crow of this District dismissed Haulmark's ADA lawsuit against individuals Senate President Susan Wagle and House Speaker Ron Ryckman for lack of standing/redressability and for failure to state a claim under *Ex parte Young*, finding that the Complaint "does not allege that Wagle in her official capacity . . . will take an action or actions to cause injury to plaintiff or has the power as Senate President . .. to enact the accommodations he seeks. . ..Therefore, plaintiff has failed to adequately allege a future injury  fairly traceable to their actions or that a favorable decision against Wagle or Ryckman would redress the injuries he claims. The court concludes that plaintiff does not have standing to bring this action against Wagle and Ryckman and that he has failed to properly allege a claim for prospective relief under *Ex parte Young*."[33]  The same is true as to Haulmark's similar claim against Tom Day.

Specifically, while the Complaint refers to past events, the Complaint does not clearly allege facts demonstrating that Day "will take an action or actions to cause injury to plaintiff" in the future. As was true in Haulmark's prior case against Senate President Wagle and House Speaker Ryckman, standing and redressability are lacking, as well as a viable *Ex parte Young*  claim. Applying the test from *Sanders*, as in *Sanders* and Haulmark's prior suit, Haulmark's lawsuit is against the entity, here the State Legislature itself. Haulmark's Complaint that he is entitled to interpreters without prior request and captioning that is 100% accurate and in perfect English fails to state a claim under the ADA, which provides a public entity need only take appropriate steps to provide effective

---

[33] Order, *Haulmark v. State of Kansas,* 20-4033-SAC (D. Kan. Sept. 30, 2020), at 7, attached as Exhibit 3 hereto.

communication[34] and meaningful access.[35] Further, with the Kansas VSP, the audio only files complained of will be eliminated and replaced by real-time closed captioning that is ADA-compliant. There is no "ongoing violation of federal law" and nothing to order Day to do. Although the requested injunctive relief is vague, any requested order that would interfere with how the Legislature functions would implicate special sovereign interests of the State and would be an order that should not issue.[36]  Similar to *Sanders* and Haulmark's prior action, this action against Day should be dismissed.

As pointed out with the State and LAS, there is no existing case or controversy, particularly for mandatory prospective injunctive relief or declaratory relief.[37] The requested mandatory injunction at page 26, (iii), appears to be a request for captioning on streaming content, a request that is addressed in the KS VSP,[38] which was initially authorized by LCC resolution in December 2019.[39]  The policy of ADA compliance and ADA notice which are the subject of the requested mandatory injunction, pp. 25-27, (i), (ii) and (vi),  already exist.[40]  "There is no point in ordering an action that has already taken place."[41]  Haulmark's requested mandatory injunctions would have no effect in the real world.[42] The mandatory injunction requested in paragraphs (iv) and (v) at page 26 as

---

[34] 28 CFR § 35.160(a)(1).

[35] *Alexander v. Choate,* 469 U.S. 287, 301 (1985).

[36] *See* Doc. 14, at notes 110-11.

[37] *Davis v. Morris-Walker, LTD,* 922 F.3d 868, 870 (8ᵗʰ Cir. 2019) (affirming district court dismissal of Title II action complaining about lack of ADA designated parking spaces at a restaurant where spaces were added); *Crews v. Sawyer,* No. 19-2541-JWB, 2020 WL 1528502, at ** 3-4 (D. Kan. Mar. 31, 2020) (dismissing a prisoner's lawsuit seeking medical treatment where the Bureau of Prisons had already agreed to provide the requested treatment) (citing *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)).

[38] Weis Dec., at ⁋ 8; Weis Exh. B, ITEC Policy 1210; Doc. 1, at ⁋ 35.

[39] Day Exh. A, Day Dec., ⁋ 3.

[40] Doc. 1 at ⁋ 15; Pltf's Exh.1; ⁋ 35.

[41] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111-12 (10th Cir. 2010) (citing *S. Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 728 (10th Cir. 1997)).

[42] *Crews v. Sawyer,* No. 19-2541-JWB, 2020 WL 1528502, at ** 3-4 (D. Kan. Mar. 31, 2020) (dismissing a prisoner's lawsuit seeking medical treatment where the Bureau of Prisons had already agreed to provide the requested treatment) (citing *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)).

to "alleged past violations" is not the proper subject of future prospective injunctive or declaratory relief under *City of Los Angeles v. Lyons*[43] and progeny.

The capacity issue relied upon by Judge Crow in Haulmark's previous case also holds true as to the claim against Tom Day. As Judge Crow recognized in dismissing similar claims against Senate President Wagle and House Speaker Ryckman, to attempt to seek prospective injunctive relief against a state official for alleged ongoing violations of federal law, where otherwise actionable, the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment.[44]

Throughout the Complaint as was true with his prior Complaint, Haulmark refers to the actions complained of as being those of "the Legislature."  The Legislature has not been named or served here; nor is it established that the Legislature is subject to suit.[45] Day is the Director of an Administrative Office, merely acting at the direction of the Legislative Coordinating Council as per Kansas statute.[46] Although the Complaint alleges that Day makes decisions as to ADA requests submitted to his office,[47] the Complaint does not allege that Day is anything other than an administrator and does not allege that Day has the power to change legislative policies, spend large amounts of money, or otherwise

---

[43] 461 U.S. 95, 104-05 (1983); *see Barney v. Pulsipher,* 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) ("A plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future") (quoting *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991)); *Tyler v. Kansas Lottery,* 14 F. Supp. 2d 1220, 1224 (D. Kan. 1998) (dismissing a Title II case seeking injunctive relief against the Kansas Lottery for lack of standing (citing *Lyons,* 461 U.S. at 105). *See also* O'Shea v. *Littleton,* 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.")).
[44] *Klein v. University of Kan. Medical Center,* 975 F. Supp. 1408, 1417 (D. Kan. 1997) (citing *Ex parte Young*).
[45] *Kelly v. Legislative Coordinating Council,* 311 Kan. 339, 345, 460 P.3d 832, 848 (2020); *State ex rel. Schmidt v. Kelly,* 309 Kan. 887, 891-93, 441 P.3d 67 (2019).
[46] K.S.A. 46-1212a.
[47] Doc. 1 at ¶ 14.

perform the acts requested in the Complaint. While the Complaint generally recites that Day or LAS "runs facilities" and "controls rooms,"[48] the authority cited does not support the proposition that Day or LAS itself make policy. For example, Haulmark's cited authority is the "Policy for Usage of the Statehouse and Capitol Complex,"[49] which merely provides that LAS controls "the use of" certain rooms in the Capitol in that applications for use of rooms is to be made to LAS. The Policy itself was approved by the Secretary of the Kansas Department of Administration, not by LAS or Day.[50] As an administrative officer, Day lacks the capacity to perform the acts requested even if ordered to do so. Capacity is an issue of state law as per Fed. R. Civ. P. 17(c).

In a decision cited by Judge Crow, the Honorable Daniel Crabtree of this District reached a similar conclusion as to a lawsuit seeking relief against the Kansas State Board of Nursing by merely suing the Board President, an individual, finding that the lawsuit against the Board President was barred by Eleventh Amendment immunity.[51] The Court first recited the law of Eleventh Amendment immunity, noting that the doctrine of *Ex parte Young* would not allow relief as to the Board itself.[52] Since no *Ex parte Young* claim could be made against the Board itself as an entity of the State of Kansas, the Court considered whether Plaintiffs could assert such a claim against the Board President herself. The Court noted that *Ex parte Young* allows only prospective injunctive relief against continuing violations of federal law, and does not allow an action based upon

---

[48] Doc. 1, at ¶ 13.
[49] Doc. 1, at ¶ 13, n.2.
[50] *Id.*
[51] *Gorenc v. Klaassen,* 421 F. Supp. 3d 1131, 1149 (D. Kan. 2019).
[52] *Id.*, at 1146 (citing *Turner,* 561 F. App'x at 663).

alleged violations of the law in the past.[53] The Court noted that without an ongoing violation of federal law, the lawsuit is deemed barred by State sovereign immunity.[54] The Court also noted that the state official must have the power to perform the act required to escape the jurisdictional bar of the Eleventh Amendment.[55]

After referring to *Barrett v. University of New Mexico Board of Regents*,[56] the Court in *Gorenc* found that the Complaint referred to the Board itself as the entity whose actions were complained of.[57]  The Court found the Complaint did not allege that the Board President had the ability to act alone.[58]  The Court found that the relief requested by the Complaint would require action by the entire Board as a body.[59] The Court concluded that the Plaintiff's claims against the individual defendant were barred by Eleventh Amendment immunity, stating:

> So applying the *Barrett* analysis, defendant Klaassen alone does not have the necessary power to perform the act required in order to overcome the jurisdictional power of the Eleventh Amendment. Plaintiff's claims could be asserted against the [Board] itself, but not in federal court as the board is entitled to sovereign immunity.  So plaintiffs' Complaint does not meet the *Ex parte Young* requirements to overcome the sovereign immunity bar and assert their Count II claims against Klaassen."[60]

Similarly here, the Complaint complains of acts by "the Legislature," and in essence seeks relief from the Legislature, but only names Tom Day, an administrative officer acting at the discretion of the LCC.[61] Under the clear ruling of *Barrett*, as also construed in *Gorenc v. Klaassen*  and by Judge Crow in Haulmark's previous action,  *Ex*

---

[53] *Id.*, at 1147.
[54] *Id.* (citing *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir. 1995)).
[55] *Id.*
[56] No. 13-2139, 562 Fed. Appx. 692 (10th Cir. 2014),
[57] *Id.*, at 1149.
[58] *Id.*
[59] *Id.*
[60] *Id.*, at 1149-50.
[61] K.S.A. 46-1212a.

*parte Young* does not apply to allow a suit against Day in this instance where he lacks the capacity to "redress" Haulmark's alleged injury.

### III.    The Complaint Should Be Dismissed for Failure to State a Claim

In addition to the jurisdiction issues, Haulmark's Complaint fails to state a plausible claim for relief as to Day.

*First,* the Complaint does not allege that Day constitutes a "public entity" within the meaning of Title II of the ADA.[62] Failure to allege a defendant is a public entity is itself cause for dismissal.[63] The statutory language does not include individuals; rather, it speaks only in terms of entities. Title II of the ADA provides: "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[64] 42 U.S.C. § 12131(1) states: "'public entity' means – (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government, and (C) the National Railroad Passenger Corporation . . .."[65] If Congress had intended to include individuals or individual officials within the definition of "public entity" it easily could have so provided but did not. Based upon the statutory language alone, Day is not a "public entity" subject to suit under Title II of the ADA.[66]   Nor are the activities

---

[62] *Compare* Doc. 1, at ¶¶ 12-13, *with* 14 (alleging that the State and LAS are "public entities" but not making a similar allegation as to Tom Day).

[63] *See Thurston v. U.S. Behav. Health,* No. 96-3205, 124 F.3d 312, 1997 WL 577429, * 1 (9th Cir. Sept. 12, 1997) (affirming dismissal of ADA complaint where it failed to allege that defendant was a public entity).

[64] 42 U.S.C. § 12132.

[65] *Accord* 28 C.F.R. § 35.104.

[66] Sc*hiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289, 1292-93 (11th Cir. 2005) (court-appointed individual guardian was not a "public entity" for purposes of the  ADA and also was not acting under color of state law); *Alsbrook v. City of Maumelle,* 184 F.3d 999, n.8 (8th Cir. 1999) (citing cases including *Butler v. City*

complained of in the Complaint Day's activities; rather, they are those of the Legislature itself.[67]  Day is not the Title II "public entity" for purposes of Haulmark's claims.

Admittedly, Courts have tended to avoid the statutory language issue, simply applying the mantra of "*Ex parte Young*" as to official capacity claims, which of course only allows prospective injunctive relief, not damages. Even under that argument as stated above, *Ex parte Young* does not allow even prospective injunctive relief in this instance where there is nothing ongoing to be enjoined (even if Day had the capacity to redress Haulmark's various issues, which he does not). Haulmark's complaints about the existence of audio-only files and the lack of real-time captioning are being addressed through the KS VSP. The Complaint does not even reflect that Haulmark has made a request for accommodation since the start of the 2021 Legislative Session. As shown in the response to Haulmark's Motion for Temporary Restraining Order,[68] incorporated by reference herein to the extent applicable, there is no basis for mandatory injunctive relief, and certainly not under the high standard applicable to such claims as stated in *Tyler*.[69]

*Second,* if Haulmark is claiming that the prior notice requirement violates Title II, Day adopts and incorporates by reference the argument made in the State's and LAS' Motion to Dismiss that a complaint about a prior notice requirement for accommodation requests fails to state a plausible claim for relief under Title II.[70]

---

*of Prairie Village,* 172 F.3d 736, 744 (10th Cir. 1999) (individual defendants may not be liable for alleged violations of the ADA)).
[67] *See* Doc. 1.
[68] Doc. 14.
[69] *Tyler v. City of Manhattan,* 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).
[70] Doc. 19, at 17-19.

*Third,* Haulmark's contention that the ADA is violated whenever a disabled individual does not receive exactly what he or she requests or when the accommodations offered by the public entity are not "perfect" or "errorless" fails to state a claim.

A public entity is asked to make reasonable or appropriate modifications and accommodations to allow the disabled to participate in its programs but is not required to make fundamental or substantial modifications to its programs or to incur an undue burden.[71] The public entity is to take "appropriate steps" to provide for effective communication[72] and "and shall furnish appropriate auxiliary aids and services were necessary to afford individuals with disabilities . . . an equal opportunity to participate in . . . a service, program or activity of a public entity."[73] While the disabled person's preference is considered, the type of auxiliary aid which is appropriate will vary with the situation.[74] The regulation contains a non-exhaustive list of options for appropriate auxiliary aids.[75] The disabled person is not entitled to the accommodation he or she prefers.[76] The ADA does not require "equal results."[77] The ADA does not require

---

[71] *Alexander v. Choate,* 469 U.S. 287, 300 (1985); 28 CFR § 35.130(b)(7).

[72] 28 CFR §35.160(a)(1).

[73] 28 CFR § 35.160(b)(1).

[74] 28 CFR §35.160(b)(2); *Cropp v. Laramie County,* No. 18-1262, 793 Fed. Appx. 771, 777-78 (10th Cir. 2019).

[75] 28 CFR §35.104.

[76] 28 CFR § 35.160(a), (b)(1); *Cropp,* at 777-85; *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1265 (10th Cir. 2018) (citing *Barber v. Colorado Dept. of Revenue,* 562 F.3d 1222, 1232 (10th Cir. 2009); *Nunes v. Mass. Dept. of Corrections,* 766 F.3d 136, 146 (1st Cir. 2014) (a disabled person is "entitled to reasonable accommodation, not to optimal ones fine-tuned to his preferences," citing *JD ex rel. JD v. Pawlet School Dist.,* 224 F.3d 60, 71-72 (2d Cir. 2000) (disabled child's parent's request for an accommodation for the "best" education failed to state a claim)); *Barber,* 562 F.3d at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633-34 (9th Cir. 1999).

[77] *Alexander v. Choate,* 469 U.S. at 304; *Havens v. Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).

perfection.[78] The standard is one of "meaningful access"[79] or whether the accommodation offered by the public entity was objectively reasonable.[80] "[T]the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.'"[81] A plaintiff bears the burden of showing discrimination and that the accommodations offered were not reasonable.[82]  Requests for mandatory injunctive relief are subject to an even higher standard and are granted only "under compelling circumstances"[83]  such that even where the Court may be of the view that the law has been violated, if a public entity is making "dutiful progress," the Court should "exercise restraint" and withhold injunctive relief.[84]

Haulmark cannot meet his burden of demonstrating that what Tom Day offered to him was not reasonable or appropriate.[85] The Complaint recites only a single instance where a qualified interpreter was not provided but admits Haulmark gave no prior notice of the request as per LAS' ADA policy.[86] Haulmark's demand for hundreds of professional and "errorless" transcripts for each and every legislative proceeding is not a reasonable request.[87] More than once, Day offered to provide transcripts for specific proceedings of

---

[78] *Cropp,* at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7 (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication … substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs,* No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva).*
[79] *Alexander v Choate,* 469 U.S. at 301; *Havens,* at 1263.
[80] *Barber v. State of Colorado Dept. of Revenue,* 562 F.2d 1222, 1229-30 (10th Cir. 2009).
[81] *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (citing and quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001)).
[82] *Havens,* at 1263; *Memmer,* at 634.
[83] *Tyler v. City of Manhattan,* 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).
[84] *Id.* (citation omitted).
[85] *Barber,* at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir. 1999) (Plaintiff "must establish the existence of specific reasonable accommodations" that the public entity failed to provide).
[86] Doc. 1, at ¶¶ 28-31, referring only to a single instance upon which an interpreter was not provided when no prior request was made as per the Notice.
[87] Day Declaration, Exhibit L, a complete copy with attachments of Plaintiff's Exhibit # 6.

interest to Haulmark.[88] The Complaint does not show that Haulmark engaged in an interactive process with Day; or that Day refused to engage with Haulmark (quite the opposite). The Complaint and attached exhibits do not demonstrate that Haulmark made Day aware why the hundreds of errorless transcripts of every single legislative proceeding were necessary to provide effective communication as to any particular bills he may have been following; the Complaint does not allege that Haulmark told Day he was following certain bills and asked for information as to specific bills, as that certainly would have been provided. The Complaint does not reflect that Haulmark explained why any alleged imperfection in the YouTube captioning enabled him entirely unable to understand the substance of what was occurring as to any specific bill of interest.

Haulmark's demands for "errorless" transcripts in perfect English with "100% accurate" captions also fail to state a claim under Title II as perfection is not the standard. Rather, the accommodation need only be objectively reasonable, offering the opportunity for meaningful access.[89] Demands similar to Haulmark's were dismissed in *Makeen v. Colorado*,[90] *Hans v. Shawnee County Board of Commissioners*[91] and *Dobard v. San Francisco Bart Area Rapid Transit Dist.*[92]

In *Makeen,* Plaintiff argued that his rights under Title II were violated because his disability was inadequately accommodated at various state court hearings.[93] To accommodate a disability, Makeen requested a notetaker be provided for hearings in five

---

[88] Plaintiff's Exhibits ## 7, 12, 15.
[89] *Barber v. State of Colorado Dept. of Motor Vehicles,* 562 F.3d 1222, 1229-30 (10th Cir. 2009); *see Alexander v Choate,* 469 U.S. at 301; *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).
[90] No. 14-cv-3452-WJM-CBS, 2016 WL 8470186, at ** 9-10 (D. Colo. Sept. 16, 2016) (dismissing a Title II claim where Plaintiff alleged the ADA was violated because the notetaker wrote on purple paper and the notes were not verbatim, finding the notes sufficient as an accommodation).
[91] No. 16-4117-DDC, 2018 WL 1638503 (D. Kan. April 5, 2018), *aff'd*, 775 Fed. Appx. 953 (10th Cir. 2019).
[92] No. C-92-3563-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993).
[93] 2016 WL 8470186, at * 1.

separate civil court matters, but specifically requested that the court hire his wife or an attorney to serve as notetaker (and pay the attorney the attorney's hourly rate for this service).[94]  In two of the five proceedings, there was an issue with the notetaker appearing.[95]  In the three other cases, Plaintiff complained that the notetaker was incompetent for various reasons, including that the notetaker did not take down the proceedings "word for word," used an iPad to take notes, or wrote on purple paper.[96] Defendants moved to dismiss. The Court found that Plaintiff had failed to state a claim under the ADA or the Rehabilitation Act. The Court found that Plaintiff requested a notetaker and was provided a notetaker.[97]  The Court noted that "[a] reasonable accommodation need not be 'perfect,' nor the 'one most strongly preferred' by the plaintiff."[98] The Court stated: "Plaintiff's allegations, even taken as true, at most show that he was provided less-than-perfect accommodations, since his note takers captured significant information but less than every word, and in one case the color of the paper prevented him from reading the notes as they were being taken down, but he does not allege that he was unable to read the notes shortly thereafter. Moreover Plaintiff does not allege the limitation in his participation . . . denied him effective access to the court overall, nor how any limitations in the effectiveness of his note takers ultimately denied him a meaningful opportunity to appear and be heard in the courts."[99] The Court also found that Plaintiff had not shown the State intentionally discriminated against him for purposes of damages.[100]

---

[94] *Id.*, at * 2.
[95] *Id.*
[96] *Id.*, at * 3.
[97] *Id.*, at * 9.
[98] *Id.* (citation omitted).
[99] *Id.*
[100] *Id.*, at * 10.

In *Hans v. Board of Shawnee County Commissioners,* Judge Crabtree of this District granted summary judgment to defendants on Plaintiff's Title II claim for damages based upon an alleged failure to accommodate her deafness at the jail by providing a sign language interpreter, finding that Plaintiff had failed to show intentional discrimination by the jail and that the jail had communicated with plaintiff "using a combination of written notes, gestures, and verbal utterances," which , although not perfect, was effective under the circumstances.[101]

In Dobard's case he alleged the ADA was violated because he did not receive the computer-aided transcription aid which he requested to access the Board meetings.[102] The Court dismissed the Complaint for failure to state a claim and also held that the request for injunctive relief was moot because the Board was providing Dobard a means to access the Board meetings in question.[103] The Court found that the ADA required nondiscrimination, but did not require an identical result be achieved, citing to the ADA regulations.[104] The Court noted that the issue turned on Dobard's argument was that he was entitled to receive his choice of accommodation or means used, while BART argued that it need only provide some means of assuring effective communication.[105] The Court held that the law was consistent with BART's position, finding that BART had provided aids and services, including interpreters, and that BART had discretion in how to meet the goal.[106] "The use of the most advanced technology is not required."[107]

---

[101] No. 16-4117-DDC, 2018 WL 1638503, at ** 19-20 (D. Kan. April 5, 2018), *aff'd*, 775 Fed. Appx. 953 (10th Cir. 2019).
[102] Id., at * 1.
[103] *Id.*, at ** 3-4.
[104] *Id.*, at * 3 (citing 28 CFR App. B 36.201(a) (1992)).
[105] *Id.*
[106] *Id.*
[107] *Id.* (citing 28 CFR § 36.303(c), App. B.)

*Havens v. Colorado Dept. of Corrections*[108] rejected a Title II claim similar to Haulmark's. In *Havens,* the Tenth Circuit affirmed the district court's ruling that the prison was not deliberately indifferent to the disabled prisoner's rights so as to support a Title II claim for damages where the prison had offered accommodations and where the plaintiff had the opportunity for meaningful participation in prison programs, affirming the district court's finding that the prisoner was not discriminated against in violation of Title II even though the prisoner was not placed exactly where he wanted to be placed and was not given everything he wanted, having been placed in a less accessible facility with fewer programs.[109]

*Barber,*[110] cited in *Havens,* is another useful example. There, the disabled mother of a minor driver sued the Department of Revenue, claiming the Department violated Title II by not agreeing to what the mother wanted – *i.e.*, that the minor's grandfather be allowed to supervise the minor's driving.  State law required that a minor driver practice driving with a licensed driver who had to be a "parent, step parent, or guardian."[111] The district court found that the claims for injunctive relief were moot and granted judgment for DMV on the damage claims.[112]  The Circuit affirmed, finding that DMV was not deliberately indifferent where it offered objectively reasonable alternatives.[113]  The Circuit also pointed to the mother's refusal to engage in any sort of interactive process with DMV and her insistence that her requested accommodation was the only accommodation worthy of consideration, finding that the mother had failed in her "obligation to proceed

---

[108] 897 F.3d 1250 (10th Cir. 2018).
[109] *Id.*(citing *Barber v. State of Colorado, Dept. of Rev.,* 562 F.3d 1222, 1232 (10th Cir. 2009)).
[110] *Barber v. Colorado Dept. of Revenue,* 562 F.3d 1222 (10th Cir. 2009).
[111] 562 F.2d at 1224-25.
[112] *Id.*
[113] *Id.,* at 1229-30.

in a reasonably interactive manner."[114] Finally, the Circuit stated, "the mere fact that the DMV did not accept Marcia Barber's suggested resolution does not establish a deliberate indifference to her situation or her rights."[115]

In *Cropp v. Laramie County, Colo.,* the Tenth Circuit rejected Plaintiffs' claim that the ADA entitled them to the precise accommodation they requested – *i.e.*, physical contact in a jail as a means to effective communication due to Mr. Cropp's Alzheimer's and dementia. The Circuit held that the request for injunctive relief became moot or Cropp lacked standing when Cropp was released from jail, citing that past events did not support injunctive relief.[116] The Circuit affirmed the district court's denial of damages, finding no evidence of intentional discrimination or deliberate indifference in the jail's actions.[117] In the process, the Circuit discussed the effective communication requirement stated in the regulations, rejecting the Cropps' argument that they were entitled to their preferred means of effective communication and the denial of it meant that the Cropps had been intentionally discriminated against.[118]

The district court found that the Cropps failed to show that the requested physical contact was necessary, finding that the jail had offered reasonable accommodations and that the Cropps were not entitled to their preferred accommodation.[119] The Circuit agreed, stating: "we reject Mr. Cropp's suggestion that the County's mere failure to provide him with the precise auxiliary aid he requested necessarily amounts to discrimination—let

---

[114] *Id.,* at 1231 (citing *Smith v. Midland Brake, Inc.,*180 F.3d 1154, 1172 (10th Cir. 1999)).
[115] *Id.,* at 1232.
[116] *Id. (citing City of Los Angeles v. Lyons,* 461 U.S. 95, 104-05 (1983)).
[117] *Id.,* at 778.
[118] *Id.,* at 777-85.
[119] *Id.,* at 777-78 (*Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1263 (10th Cir. 2001) ("[T]he ADA requires an employer to provide a 'reasonable accommodation, not the accommodation [the disabled individual] would prefer.' " (quoting *Rehling v. City of Chi.,* 207 F.3d 1009, 1014 (7th Cir. 2000))).

alone to intentional discrimination via deliberate indifference."[120] The Circuit noted that the Cropps' interpretation would rewrite the regulation, 28 CFR § 35.160(b)(1), from a duty to provide appropriate aids to a duty to provide the aid demanded by the disabled individual.[121] The Court also noted that even if the accommodations offered by the jail were not effective, the damage claim failed because the Cropps could not show that the jail *knew* that there was a substantial likelihood that the offered accommodations were not effective and made the deliberate choice not to offer the requested accommodation.[122] The Court noted that the ADA did not require perfect communication.[123]  The Circuit found that even if the Cropps could show that the accommodations offered by the jail were less effective than the physical contact visit, the Cropps could now show that the jail knew that the offered accommodations would be "*wholly ineffective"* for ADA purposes.[124]

Similar to the Cropps, Marcia Barber, and the prisoner in *Havens,* Haulmark cannot show discrimination or damages merely because he did not receive exactly what he requested –*e.g*., "100% accurate" captioning in perfect English, or hundreds of "errorless" transcripts. Haulmark never explained why his preferred accommodation (professional production of transcripts for each and every single legislative proceeding with 100% accuracy with no spelling, capitalization or grammar errors) was the only

---

[120] *Id.* at 780.

[121] *Id.*, at 781 (citing *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) (noting that regulations require public entities to furnish auxiliary aids when such aids are "*necessary*" and "*appropriate*," not when they are "desired" or "demanded" (quoting § 35.160(b)(1))).

[122] *Id.*, at 782 (citing *McCullum,* at 1147).

[123] *Id.*, at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7 (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)).

[124] *Id.*, at 784-85   (emphasis in original)(citing § 35.160(a)(1), (b)(1); *cf. Barber*, 562 F.3d at 1230–31 (holding that defendant did not act with deliberate indifference when it refused to provide plaintiff with requested accommodation, in part because defendant offered plaintiff "another objectively reasonable alternative")).

means to achieve meaningful access so that he could follow specific bills of interest, bills which were never identified.[125]

Here Haulmark received qualified interpreters, offers of specific transcripts of interest, auto-generated captioning on the YouTube postings and now real-time closed captioning through the Kansas Virtual Statehouse Project.  That is all the ADA requires – objectively reasonable accommodation. There is no plausible claim for discrimination as to Tom Day.

## Conclusion

Haulmark's Complaint fails to present a justiciable case or controversy or a basis for standing, particularly as to the mandatory prospective injunctive relief requested as to Day. There is no ongoing violation of federal law for purposes of *Ex parte Young*. Assuming jurisdiction, Haulmark's Complaint fails to state a plausible claim for discrimination because the ADA does not entitle the requestor to whatever he or she requests and a demand for perfection fails to state a plausible claim under the ADA. Day offered reasonable accommodations upon request, even assuming Day were a "public entity" under Title II, which has not been sufficiently pled.  The Complaint against Tom Day should be dismissed for lack of jurisdiction and/or failure to state a claim.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s M.J. Willoughby
M.J. Willoughby, KS 14059
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215l Fax: (785) 291-3767

---

[125] *See Cropp,* at 777, 783.

Email: MJ.Willoughby@ag.ks.gov
*Attorney for Tom Day, Director of Legislative*
*Administrative Services, sued in his Official*
*Capacity*

## CERTIFICATE OF SERVICE

I certify that on March 10, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all participants, and a copy served upon Plaintiff by first-class mail postage prepaid addressed to:

Chris Haulmark, 600 S. Harrison St., Apt. # 11, Olathe, KS 66061, Plaintiff pro se.

/s M.J. Willoughby
M.J. Willoughby
Assistant Attorney General