# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **STATE OF KANSAS**, | ) |
| **LEGISLATIVE ADMINISTRATIVE** | ) |
| **SERVICES**, | ) |
| and | ) Civil Action No.  5:20-cv-04084-EFM-TJJ  |
| **TOM DAY**, in his official capacity as | ) |
| Director of Legislative Administrative | ) |
| Services, | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF HAULMARK'S OPPOSITION TO DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT**

COMES NOW Plaintiff Chris Haulmark, appearing *pro se*, hereby respectfully requests the Court to fully deny the Motion to Dismiss, or in the alternative, for Summary Judgment submitted by two Defendants-- State of Kansas and Legislative Administrative Services (hereinafter collectively referred to as "Movants")-- filed on February 22, 2021. (See Defendants' Motion to Dismiss) (Docket No. 18) This Opposition against Movants' Memorandum in Support of Motion (Docket No. 19) (hereinafter "Movants' Memo.) is based on the Complaint (Docket No. 1), Reply to Response to Motion (Docket No. 27), the attached affidavit of Plaintiff Haulmark (Exhibit #1), and the following statements, references to evidence, and authorities:

# I. INTRODUCTION

The Complaint in the above captioned matter was filed on December 16, 2020 to seek damages, including compensatory damages, equitable relief, including declaratory and injunctive relief, award of attorney fees if counsel is ever retained by Plaintiff Haulmark, and expenses of court against the named Defendants, alleging ongoing and repeating violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA") (See Complaint)

Defendants Legislative Administrative Services and State of Kansas filed their motion, seeking for the dismissal of Plaintiff Haulmark's claim and/or to obtain a summary judgment. Within the Movants' Memo., the Movants assert that Plaintiff Haulmark has failed to state a claim and this Court does not have the proper jurisdiction over Plaintiff Haulmark's claim.

The Movants fully admit in the Movents' Memo. that they are intentionally denying access for Plaintiff Haulmark to the services, programs, and activities by withholding the legally-required auxiliary aids and services, yet they are demanding for more specific and smaller requests before complying with Title II of the ADA. While other individuals without a hearing disability are not subjected to the same treatment, Plaintiff Haulmark is intentionally being excluded in their programs, activities, and services because of his hearing disability.

Plaintiff Haulmark has gone through the exhausting steps to persuade the Movants and Defendant Tom Day to bring their services, programs, and activities into compliance with Title II of the ADA. Many of these steps include making numerous requests for at least two years for the real-time captioning to be activated for the online

broadcasting services and transcripts to be produced for all of their audio and audiovisual content that consist of legislative proceedings. Plaintiff Haulmark has not been successful in persuading them to comply with Title II of the ADA and therefore needs the Court to order them to do so.

## II. RESPONSES OF PLAINTIFF TO MOVANTS' "STATEMENT OF MATERIAL FACTS"

1.      Plaintiff Haulmark admits.

2.      Plaintiff Haulmark admits.

3.      Plaintiff Haulmark admits.

4.      Plaintiff Haulmark admits.

5.      Plaintiff Haulmark admits.

6.      Plaintiff Haulmark admits.

7.      Plaintiff Haulmark admits.

8.      Plaintiff Haulmark admits.

9.      Plaintiff Haulmark admits.

10.     Plaintiff Haulmark admits.

11.     Plaintiff Haulmark admits.

12.     Plaintiff Haulmark denies. (See ¶ 53 in Complaint) (Docket No. 1) ("Legislative Coordinating Council posted a notice stating that the Legislative Coordinating Council will meet on April 8, 2020 as called to review an executive order issued by the Kansas Governor."); (See ¶ 54 in Complaint) ("Plaintiff Haulmark sent a request: 'I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today.'") (Internal quotation marks retained); (See ¶ 55 in Complaint) (Defendant Tom Day responded, "In terms of your request for the April 8,

2020 meeting of the Legislative Coordinating Council, no transcript currently exists and therefore, under [Kansas Open Records Act], need not be produced under [Kansas Open Records Act]. However, I am looking into that request further. If the transcript becomes available, I will provide it to you."). In violation of Title II of the Americans with Disabilities Act, Defendant Tom Day has failed to produce and furnish the transcription of this specific meeting to Plaintiff Haulmark, on behalf of the Defendant LAS (hereinafter "LAS"). Defendant Tom Day uses the Kansas Open Records Act (hereinafter "KORA") as the reason. (See ¶¶ 67-75 below)

13.     Plaintiff Haulmark admits.

14.     Plaintiff Haulmark admits.

15.     Plaintiff Haulmark admits.

16.     Plaintiff Haulmark admits.

17.     Plaintiff Haulmark admits.

18.     Plaintiff Haulmark admits.

19.     Duplicative statement as ¶ 12. Plaintiff Haulmark denies. (See ¶ 53 in Complaint) ("Legislative Coordinating Council posted a notice stating that the Legislative Coordinating Council will meet on April 8, 2020 as called to review an executive order issued by the Kansas Governor."); (See ¶ 54 in Complaint) ("Plaintiff Haulmark sent a request: 'I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today.'") (Internal quotation marks retained); (See ¶ 55 in Complaint) (Defendant Tom Day responded, "In terms of your request for the April 8, 2020 meeting of the Legislative Coordinating Council, no transcript currently exists and therefore, under KORA, need not be produced under

KORA. However, I am looking into that request further. If the transcript becomes available, I will provide it to you."). In violation of Title II of the Americans with Disabilities Act (hereinafter "ADA"), Defendant Tom Day has failed to produce and furnish the transcription of this specific meeting to Plaintiff Haulmark, on behalf of the Defendant Legislative Administrative Services. As shown here, Defendant Tom Day uses the KORA as the reason. (See ¶¶ 67-75 below)

20.    Plaintiff Haulmark admits.

21.    Plaintiff Haulmark admits.

22.    Plaintiff Haulmark admits.

23.    Plaintiff Haulmark admits and reiterates that just because the 2020 Legislative Session is adjourned for the year on March 19, 2020 does not mean that there were no longer legislative proceedings for the rest of the year. Consider this instance, the general public has free access to the archived audio files of the meetings held by the Legislative Coordinating Council (hereinafter "LCC") on March 24, March 27, March 29, April 2, April 8, April 22, May 6, and so on for the year 2020. (See Exhibit #14 in Docket No. 1-1 for the April 8 meeting (Page 29 of 34)) Many other committees of the legislature continued to hold many public meetings for the rest of the time until the 2021 Legislative Session commenced. The ADA defines these archived audio files, being freely available to the public, as services, programs, or activities. Additionally, the ADA requires these services, programs, and activities to be accessible with effective communication and equal participation for individuals with a hearing disability.

24.    Plaintiff Haulmark admits.

25.    Plaintiff Haulmark admits.

26.     Plaintiff Haulmark admits.

27.     Plaintiff Haulmark cannot admit or deny this fact if the requirement of the accessibility is an unambiguous objective.

28.     Plaintiff Haulmark cannot admit or deny this fact because the meeting held by the LCC on September 16, 2020 was held without any auxiliary aids or services to allow Plaintiff Haulmark and other persons with a hearing disability to be aware of the details being discussed via the online broadcasting services. Exhibit D contains no details regarding the requirement to comply with the ADA for all of the services, programs, and activities provided by the Movants. (Docket No. 19-2) (Page 22-25 of 198)

29.     Plaintiff Haulmark cannot admit or deny this fact whether Alan Weis is qualified to ensure that the Virtual Statehouse Project is compliant with the ITEC policy 12.0 and Title II of the ADA in pursuant to K.S.A. § 75-7208(a). To date, the Movants have not provided any evidence to support this fact.

30.     Plaintiff Haulmark acknowledges and emphasizes that a small portion of the project is devoted to accessibility, whereas the rest of the project is dedicated to other purposes. (See Exhibit E) (Docket No. 19-2) (Page 41 of 198)

31.     Plaintiff Haulmark cannot admit or deny this fact as he was not part of this. The question should be whether the Movants acted upon what Robert Cooper had shared as valuable information to ensure compliance with the ADA. This Movants' fact is disputed with relevant discovery in its early stages – and with an inadequate policy less than four months old.

32.     Plaintiff Haulmark admits.

33.     Plaintiff Haulmark admits.

34.     Plaintiff Haulmark admits.

35.     Plaintiff Haulmark cannot admit to or deny this fact because videos are still being posted to Movants' YouTube Channel[1] (hereinafter "Youtube Channel") as of this date. There is still no real-time captioning available and the content of the legislative proceedings continues to be published as audio-only on the Kansas Legislature's website.

36.     Plaintiff Haulmark denies this fact as Plaintiff Haulmark's Complaint was filed on December 16, 2020. This Complaint is a request in pursuant to the ADA for effective communication access to the entire collection of the audio and video recording including those to be produced and published in the future.

37.     Plaintiff Haulmark admits this fact.

38.     Plaintiff Haulmark admits this fact and reiterates that he stated  the automatic machine-generated captioning does not provide effective communication for him. (See ¶ 20 in Complaint)

39.     Plaintiff Haulmark admits.

40.     Plaintiff denies in part to this fact because the Movants used the word "adopt" on what Plaintiff Haulmark seeks for. Plaintiff Haulmark is seeking an order for the Movants "to develop, implement, promulgate, and *comply* with a policy prohibiting future discrimination against Plaintiff Haulmark or other individuals with hearing disabilities[.]" (See ¶ 84(B)ii-vii in Complaint) (Emphasis added) Plaintiff Haulmark admits to the rest of this fact.

### III. PLAINTIFF'S STATEMENT OF MATERIAL FACTS

41.     Plaintiff Haulmark is not employed with or under the care of the Movants.

_____

[1] KS Legislature, ("YouTube Channel"), https://www.youtube.com/channel/UC_0NO-Pb96CFABvxDwXAq8A

42.     Plaintiff Haulmark lives in Olathe, Kansas.

43.     Plaintiff Haulmark is a qualified member of the public to participate in the services, programs, and activities offered by the Movants.

44.     Plaintiff Haulmark has sought ADA accommodations numerous times since January 2019 for the real-time captioning and transcripts.

45.     The Movants want to know why Plaintiff Haulmark do not want to be excluded from their services, programs, and activities.

46.     The Movants demand Plaintiff Haulmark to furnish smaller and specific ADA requests with a list of specific bills, committee meetings and other legislative elements to benefit from their services, programs, and activities offered to the public.

47.     The Movants and Defendant Tom Day knew that they needed to make reasonable modifications in their services, programs, and activities for individuals with a hearing disability before they were contacted by Plaintiff Haulmark in January 2019.

48.     Defendant LAS is liable based on the actions of its director, Defendant Thomas Day.

49.     The first audio-only recording of legislative proceedings was streamed and published on the Kansas Legislature's website on January 9, 2017.

50.     Since January 9, 2017, there are thousands of audio-only recordings archived on the Kansas Legislature's website freely available to the public.

51.     On the Kansas Legislature's website[2] for the archived audio-only recordings, there are not any auxiliary aids or services being available or provided upon request to ensure effective communication and equal participation for Plaintiff Haulmark.

---

[2] Kansas Legislature website, http://sg001-harmony.sliq.net/00287/Harmony/en/View/Calendar/

52.     Due to Plaintiff Haulmark's hearing disability and the lack of auxiliary aids or services, Plaintiff Haulmark is unable to have communication access to archived audio-only content available on the Kansas Legislature's website.

53.     The policy as part of the Kansas Virtual Statehouse Project is facially inadequate as they do not require affirmative steps by the Movants to ensure compliance with Title II of the ADA.

54.     Currently, YouTube Channel does not provide real-time captioning for their streaming or published videos to provide effective communication and equal participation for Plaintiff Haulmark.

55.     These archived audio-only recordings and published videos are the services, programs, and activities offered to the public that the Movants have full control over.

56.     Defendants Legislative Administrative Services and Tom Day have the administrative duties to oversee the services, programs, and activities of the Kansas Legislature at the direction of the LCC.

57.     Among the administrative duties consists of the Defendants LAS and Tom Day handling requests for accommodation under the ADA and to act upon those requests.

58.     While Defendant Tom Day demands to know the specific bills, committees, or any kind of legislative elements that Plaintiff Haulmark is following, Defendant Tom Day does not impose the same restrictions on any individuals without a hearing disability.

## IV. NATURE OF THE MATTER

59.     In his Complaint, Plaintiff Haulmark brings to this Court the issue of being excluded from participating in the services, programs, and activities offered by the Movants.

60.     Plaintiff Haulmark is Deaf[3], a qualified individual with a disability under the ADA, and had repeatedly requested for reasonable modifications from the Movants and Defendant Tom Day. The Movants do not dispute these facts. (See ¶¶ 5, 9, 16, 20, 21, and 26 in Movants' Memo.)

61.     The online broadcasting services and each of the individual audio and video recordings, under control of the Movants and Defendant Tom Day, are the services, programs, and activities freely offered to the public.

62.     In their Movants' Memo., they demand Plaintiff Haulmark to provide more specific and narrowed requests of their entire online broadcasting system and the audio recordings and videos to specific certain bills, committee meetings, or other specific pieces of legislation so that they no longer exclude Plaintiff Haulmark from their programs, activities, and services. (See ¶¶ 17, 25); (See Page 12, First Paragraph in Movants' Memo.) ("Based on the facts, Haulmark caused his own injuries by either failing to request accommodation as per the policy (e.g., the January 14, 2019, interpreter incident or any alleged failure to accommodate as to specific bills which he never identified), or by failing to engage in an interactive process with LAS regarding any alleged need for accommodation regarding specific bills, Haulmark was not injured by any lack of ADA policy"); (See Page 20, First Continuing Paragraph in Movants'

_____

[3]This label is contrary to the term "hearing impaired" which is generally applied in a demeaning tone to obliterate the personal history, background, cultural abundance, and visual language of this particular member of the Deaf community. The Kansas Legislature has accepted this by lawfully legislating the name change from <u>Kansas Commission for the Deaf and Hearing Impaired</u> to <u>Kansas Commission for the Deaf and Hard of Hearing</u>. K.S.A. § 75-5397b (1992).

Memo.) ("He simply repeated the same unreasonable demands for professional errorless transcripts of every single legislative proceeding without showing why those requested transcripts were necessary to provide effective communication as to any particular bills he may have been following, bills which were never identified.") (Internal quotation marks omitted); (See Page 28, First Paragraph in Movants' Memo.) ("[]Haulmark never explained why his preferred accommodation [ ... ] was the only means to achieve meaningful access so that he could follow specific bills of interest.")

63.    Plaintiff Haulmark went through exhausting steps to persuade the Movants to bring their services, programs, and activities into compliance with Title II of the ADA. This has been a humiliating, dehumanizing, and unnecessary experience. Had the Movants been readily accessible to provide Plaintiff Haulmark with the requested auxiliary aids and services, as legally required under Title II of the ADA, he would not have sustained the injuries and be forced to bring this matter to this Court.

"Summary judgment is proper if the movant demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing Rule 56(c) of the Federal Rules of Civil Procedure) (Internal quotation marks omitted)

## V. ONLINE BROADCASTING SERVICES

64.    As discussed in the section entitled "The Structure Of The Kansas Legislative Information Services System" of the Plaintiff Haulmark's Reply To Opposition, there are several components to the system, one of which includes the ability to provide public access to observe legislative proceedings remotely. (See ¶¶ 16-24 in the Reply to Response to Motion) (Docket No. 27)

65.     The Movants' $2.47 million dollar project, the Kansas Virtual Statehouse Project, is a response to the COVID-19 public health emergency. The Movants show the unambiguous goal of this project is to enable the elected legislators and staff to actively participate online in an environment where physical presence is no longer necessary.

66.     Even though the Movants admit that the online broadcasting services and the archived audio and audiovisual content are non-compliant with the ADA, they have not provided any evidence to prove that this new project has brought the original online broadcasting services to full compliance with the ADA. The Movants spent a significant amount of money on expensive sound and video equipment and, unsurprisingly, nothing indicates that even one cent of the new $2.74 million project or the annual budget of the KLISS averaging $20 million dollars was used to provide effective communication for Plaintiff Haulmark and other individuals with a hearing disability.

## VI.     AS AN INSTANCE, PLAINTIFF HAULMARK HAS PROPERLY ALLEGED AND PROVED VIOLATION OF TITLE II OF THE ADA

67.     The Movants misconstructs the demand for the smaller requests as an offered reasonable accommodation. (See Page 19, Third Paragraph in Movants' Memo.) ("Here, even as pled in the Complaint, the facts demonstrate that LAS has offered reasonable accommodations to Haulmark.") The Movants and Defendant Tom Day asserts that Plaintiff Haulmark never made a smaller request for effective communication access. (See ¶¶ 12 and 19 in Movants' Memo.) (See ¶ 22 in Declaration of Thomas A. Day of the Docket No. 19-2 (Page 4 of 198))

68.     While this is a blatantly false statement by Defendant Tom Day, Plaintiff Haulmark requested for a transcript to a meeting held by the LCC on April 8, 2020. (See ¶ 53 in Complaint) Plaintiff Haulmark sent a follow-up email to Defendant Tom Day

containing a request for the transcript of this same meeting held by the LCC. (See ¶ 54 in Complaint)

69.     This meeting held by the LCC lasted 1 hour and 22 minutes. (See Exhibit #3 of the Docket No. 1-2) After Plaintiff Haulmark sent a follow up email, Defendant Tom Day flatly refused to produce and provide a transcript for this specific meeting held by the LCC. (See ¶ 55 in Complaint)

70.     The Kansas Open Meetings Act (hereinafter "KOMA"), K.S.A. 75-4317 *et seq.*, does not require a general notice to be provided unless requested to be received by someone. When this notice is provided, it must provide the time, place, and date of the proposed meeting. On April 8, 2020 and following the KOMA, the LCC announced with a formal notice on the same date. (See Exhibit #14 in Docket No. 1-1 (Page 29 of 34))

71.     The Movants' current policy covering requests for ADA accommodations requires a two working days' notice. (See Exhibit #1 in Docket No. 1-1 (Page 3 of 34)) (See ¶ 15 in Declaration of Thomas A. Day of the Docket No. 19-2 (Page 2 of 198)) (See Day Exhibit I in Docket No. 19-2 (Page 139 of 198))

72.     This refusal to produce the transcript of the meeting is due to Plaintiff Haulmark's inability to abide by this policy, which requires the request to be submitted at least two working days prior to the April 2020 meeting of this LCC.

73.     As of the date presented, the Movants and Defendant Tom Day fail to provide and furnish a transcript of this meeting held in April 2020 by LCC. Because of this failure, Plaintiff Haulmark is intentionally excluded from participating in and benefiting from this LCC meeting as a service, program, or activity pursuant to Title II of the ADA.

74.     Thirty years ago, the U.S. "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001) "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Martin* at 675 (citing 42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12131-12165; 42 U.S.C. §§ 12181-12189)

75.     Title II, at issue here, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132

## VII. STATE OF KANSAS IS A PROPER AND NECESSARY PARTY IN THIS CASE AND CAN BE HELD LIABLE FOR DAMAGES

76.     The Movants assert that the State of Kansas is not a proper defendant in this case. (See Page 15, First Paragraph in Movants' Memo.) ("The Complaint alleges no specific acts of discrimination or denials of accommodation by the State of Kansas itself vis-à-vis Haulmark."); (See Page 15, Second Paragraph in Movants' Memo.) ("Nor is the State the public entity whose activities are at issue here.") (Internal quotation marks omitted); ("The State is not the public entity at issue for purposes of Title II") (Internal quotation marks omitted)

77.     "Defendant State of Kansas is a public entity as defined in 42 U.S.C. § 12131(1)(A)." (See ¶ 12 in Complaint) The Defendant State of Kansas falls squarely within the statutory definition of "public entity."

78.    Here are two state laws, the Kansas Open Records Act (herein "KORA") and the Kansas Open Meetings Act (herein "KOMA"). (K.S.A. § 45-215 *et seq.* and K.S.A. 75-4317 *et seq.*)

79.    In accordance with the KORA, a requestor may be charged or required to pay an advance fee in order to gain access to or copies of public records. (K.S.A. § 45-218(f)) Title II of the ADA requires that transcription services cannot be charged to Plaintiff Haulmark as an auxiliary aid or service. (28 CFR § 35.130(f)) ("A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.")

80.    By citing KORA, K.S.A. § 45-218(e), to deny Plaintiff Haulmark's request for these transcripts, Defendant Tom Day intentionally imposed a discriminatory restriction on access to the archived audio files, the public records that consist of legislative proceedings, in violation of federal law. (See ¶ 41 in Complaint) (See Exhibit #7 in Docket No. 1-1) ("The second part of your request, to provide professional transcriptions of hundreds of committee meetings at an approximate minimum cost of $2.45 per minute, for approximately 62,528 minutes of recordings, totals at least $153,194. This is a significant cost."); (See Exhibit #12 in Docket No. 1-1) ("Currently, the proceedings for legislative chamber sessions or committee meetings are not transcribed and do not exist. However, to the extent that you are requesting these transcriptions pursuant to the [KORA], they need not be provided under KORA for the reasons stated in my previous letter to you of November 15, 2019."); (See Page 13, Continuing First Paragraph in

Movants' Memo.) ("Haulmark's Complaint acknowledges that his requests under KORA were responded to and *under KORA, denied*.") (Emphasis added)

81.     All meetings, conducted by a public body or a state agency, are subject to the KOMA, a state law which guarantees anyone trying to observe policy makers to have full access. (K.S.A. 75-4317 *et seq.*) While KOMA does not specify a specific notification time for a public meeting, individuals with a hearing disability cannot not be able to request accommodations in a timely manner in order to receive the needed auxiliary aids or services. The Movants assert that the "ADA does not require a public entity to provide an [auxiliary aid or service] on the spot, *without any prior notice*[.]" (See Page 17, Last Paragraph in Movants' Memo.) (Emphasis added) The Movants admit that the Kansas "Legislature has a published ADA Notice, offering accommodations upon two working days-notice." (See ¶ 1 in Movants' Memo.) This shows how individuals with a hearing disability are unable to receive the necessary auxiliary aids and services as accommodations they request within two days of a public meeting when the meeting is announced less than two days in advance. With the pattern of the Movants demanding for smaller and specific requests, this state law is the reason why real-time captioning is unavailable for the entire audio and audiovisual content on both two streaming platforms. Moreover, transcripts are never produced and published after public meetings because notices for ADA accommodations must be submitted at least two working days in advance. Not after these meetings.

82.     When a state enacts laws that force individuals and entities within its jurisdiction to choose between violating federal civil rights laws or face state enforcement, that state is committing unlawful discrimination and breaking federal law.

Although the threat of state enforcement action may not ever materialize, it causes individuals and organizations to pause their efforts to comply with the ADA. Under such circumstances, the public entity will often conclude that its chances of avoiding legal action are better if it abides by state law, even if that means violating federal discrimination laws.

83.     It is also sufficient to hold a state responsible for monetary damages as well as other corrective relief due to the fact that state statutes of this type were used to discriminate against individuals who have a hearing disability.

84.     Without citing any authority to the contrary, the Movants cite two cases that discuss dismissal of a city or a state under *only* the Section 504 of the Rehabilitation Act. In both *Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991) and *Phillips ex rel. Toole v. State of Georgia*, No. Civ. A. 1:05-cv-02158, 2006 WL 2918938, (ND. Ga. Oct. 10 2006), they discuss how a state or a local government is not held responsible when another agency or department receives federal funds.

85.     Plaintiff Haulmark alleges then proves that the Movants and Defendant Tom Day violate the ADA law. Not Section 504 of the Rehabilitation Act.

86.     However, the Movants cite a case to argue that a city was not held liable for the action of a school board. This decision was how "the City played no part in depriving any plaintiff of the rights guaranteed by the ADA." *Bacon v. City of Richmond*, 475 F.3d 633, 639 (4th Cir. 2007) Additionally, the Title II of the ADA "cannot be read to impose strict liability on public entities that neither caused plaintiffs to be excluded nor discriminated against them." *Bacon* at 639-40

87.     As discussed above, the ADA permits any state to be sued for violating the law regardless of any actions taken or defenses raised by another defendant. The fact that Defendants LAS and Tom Day were following state law when they unlawfully discriminated against Plaintiff Haulmark underscores the propriety of bringing the State into this case as a third defendant. Even though Defendants LAS and Tom Day are still separately liable for their own violations of the federal statute, the Defendant State of Kansas is at least responsible for its illegal conduct in enacting discriminatory laws.

88.     In this case, the State is not only the proper defendant, but also qualifies as an essential party under the joinder rule. Under Rule 19(a) of the Federal Rules of Civil Procedure, a party must be joined if "in the person's absence complete relief cannot be accorded among those already parties." Additionally, the Defendant State of Kansas also qualifies as a permissive party under the Rule 20(a) of the Federal Rules of Civil Procedure, which states that a party may be joined with other defendants if "any right to relief is asserted against [the Defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and if any question of law or fact common to all defendants will arise in the action."

89.     The Plaintiff Haulmark's Complaint seeks injunctive, declaratory and monetary relief from Defendant State of Kansas with respect to his claim that it has violated the ADA. Plaintiff Haulmark will not be able to obtain complete relief with respect to all of his claims unless the Defendant State of Kansas is joined as a defendant in this case. The Defendant State of Kansas cannot argue that Plaintiff Haulmark should be prohibited from pursuing all of its claims and seeking all available relief.

90.     The Defendant State of Kansas's preemptive motion to prevent it from being named as a defendant in the case and to limit Plaintiff Haulmark's claims is improper and should be denied.

## VIII. LEGISLATIVE ADMINISTRATIVE SERVICES
## IS A PROPER DEFENDANT

91.     The Movants assert that Defendant LAS "is simply an administrative office[, acting] at the direction of the [LCC,] lacks the capacity to sue or be sued at law[, and] has no authority to act on its own." (See Page 16, Last Paragraph in Movants' Memo.)

92.     In pursuant to K.S.A. § 46-1212a, Defendant LAS is created by the state as a division within the LCC. As explained below and under direction of the LCC, the Defendant LAS has the ultimate authority to oversee ADA requests and to grant auxiliary aids and services to comply with Title II of the ADA. Therefore, the Defendant LAS is a public entity or an instrumentality of a state within the meaning of 42 U.S.C. § 12131(1)(B).

93.     "Defendant Tom Day serves as the Director of Legislative Administrative Services. He reviews to make decisions as the final authority on the requests for ADA accommodations sent to his office." (See ¶ 14 in Complaint) In the Movants' Motion, the Movants do not provide any other alternative persons or entities to whom the ADA requests should be sent to so that any requested modifications or accommodations can be granted to individuals with disabilities. Furthermore, there is no grievance procedure shown to be in place for when an accommodation request has been denied. In the Movants' Memo., the Movants make clear that they do not dispute that the final decision on ADA requests will rest with Defendant Tom Day.

94.     As a public officer and the director of Defendant LAS, Defendant Tom Day has the authority to "appoint such assistants and employees [ … ] as are authorized by the legislative coordinating council" necessary to satisfy the requirements of Title II of the ADA, in order to provide the requested auxiliary aids and services. (See K.S.A. § 46-1212a); *Durflinger v. Artiles*, 234 Kan. 484, 503 P.2d 86 (Kan. 1983) ("Essential elements to establish public position as public office are: position must be created by constitution, legislature, or through authority conferred by legislature, portion of sovereign power of government must be delegated to position, duties and powers must be defined, directly or impliedly, by legislature or through legislative authority, duties must be performed independently without control of superior power other than law, and position must have some permanency and continuity.") (Internal quotations omitted)

95.     The Movants acknowledge that there are ADA notices with LAS and Tom Day as the authorized responsible persons for obtaining and acting on the ADA requests on behalf of the Kansas Legislature. (See ¶¶ 1, 3, and 4 in Defendants' Memo.)

96.     There are numerous instances where the Movants' Memo. refers to Defendant Tom Day's requests to obtain more specific and smaller ADA requests from Plaintiff Haulmark in order to act on them. (See ¶¶ 12, 17, 19, 25, 26 in Movants' Memo.); (See Page 15, First Continuing Paragraph in Movants' Memo.) ("Haulmark also admits that Day responded to Haulmark's requests by offering to produce specific transcripts of interest as per the ADA")

97.     As such, Defendants LAS and Day are able to rely on their own ultimate authority in accordance with ADA requests. In the Complaint, Plaintiff Haulmark provided instances in which Defendant Tom Day used his authority to demand for

smaller and specific requests after refusing to produce and furnish transcripts as a means of to intentionally exclude Plaintiff Haulmark from receiving benefits from services, programs, and activities of the Movants.

98.     Despite not disputing these instances, the Movants admit that Defendant Tom Day failed to provide Plaintiff Haulmark legally--required auxiliary aids and services necessary for effective communication, had the authority to provide those auxiliary aids and services, and was deliberately indifferent to that failure. According to Title II of the ADA, Defendants LAS and Tom Day can be ordered to provide the necessary auxiliary aids and services so that Plaintiff Haulmark may participate in the services, programs, and activities over which they have the ultimate authority. These services, programs, and activities include the online broadcasting services and the archived audio and audiovisual recordings, being available on the Kansas Legislature's website and on the Youtube Channel.

99.     If the Movants dispute this fact, the discovery process must be conducted in order to trace the original legislative authority coming from the LCC or the Kansas Legislature for how the Defendants LAS and Tom Day are legislated with the administrative duties to ensure the Movants' services, programs, and activities to be in compliance with Title II of the ADA.

## IX. PLAINTIFF HAULMARK HAS ALLEGED A PRIMA FACIE CASE  OF DISCRIMINATION

100.    Here, the elements of this ADA claim are: 1)  Plaintiff Haulmark is a qualified individual with a disability, 2) Plaintiff has been excluded from participation in or denied the benefits of the public entity's services, programs, and activities, or was otherwise discriminated against by the public entity, and 3) that such exclusion, denied

the benefits of, or discrimination was by reason of Plaintiff Haulmark's disability. *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016)

101.    The Movants 1) agree that Plaintiff Haulmark is a qualified individual with a disability (See ¶ 5 in Movants' Memo.), 2) admit that they exclude Plaintiff Haulmark from their online broadcasting services and all of these archived video and audio recordings by withholding the necessary auxiliary aids and services that Plaintiff Haulmark requires until he meets their demands for specific and smaller ADA requests (See ¶¶ 8, 10, 12, 17, 19, 25, 26, 36, and 38 in Movants' Memo.), 3) and acknowledge this discriminatory exclusion of their services, programs, and activities is because of Plaintiff Haulmark's disability.

102.    The Movants rest their argument for dismissal on the second element. They assert that their requests for specific and limited ADA accommodations are considered as reasonable accommodation offers under Title II of the ADA. They argue that Plaintiff Haulmark was not injured because he did not submit these specific and smaller requests for ADA accommodations. Additionally, they assert that Plaintiff Haulmark is required to participate in an interactive process with the Movants. The Movants' citation of a variety of authority undermines the well-established law of the Tenth Circuit that deals with Title II requirements. As one of these instances, the Movants emphasized with *Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006) in order to argue that a request was necessary to trigger the application of the ADA to a prison system. (See Page 21, Continuing Paragraph in Movants' Memo.) ("The ADA's reasonable accommodation requirement usually does not apply unless triggered by a request.") (Internal quotations omitted) Accordingly, Plaintiff Haulmark filed numerous ADA requests for access to the

online broadcasting services and the archived audio-only content over the past two years. All the requests were turned down by the Defendants.

## X. THE TENTH CIRCUIT HAS REJECTED DEFENDANTS' ARGUMENTS REGARDING REQUIREMENTS FOR SMALLER AND SPECIFIC REQUESTS

103.    While withholding the auxiliary aids and services to intentionally exclude Plaintiff Haulmark from their services, programs, and activities, the Movants demand to know the specific bills, committees, or any kind of legislative elements that Plaintiff Haulmark is following. They also inquire as to what Plaintiff Haulmark wishes to achieve by participating in their services, programs, and activities. (See above at ¶ 62 to support this paragraph)

104.    The Movants argue Plaintiff Haulmark is responsible for his own injuries because he did not meet the Movants' demands, such as providing specific requests at least two days before a meeting, and to engage in an interactive process with the Defendants LAS or Tom Day. (See Page 12, Last Paragraph in Movants' Memo.) ("Based on the facts, Haulmark caused his own injuries by [ … ] failing to engage in an interactive process with LAS regarding any alleged need for accommodation regarding specific bills[.]"); (See Page 22, First Continuing Paragraph in Movants' Memo.) ("Haulmark failed to engage in an interactive process with LAS or Day.")

105.    Defendant Tom Day has shown that he has been aware about the obvious need of captioning for the online broadcasting services during the month of February 2019. (See ¶ 36 in Complaint) While not disputed, Defendant Tom Day has shared since February 2019 that it has always been possible for captioning to be enabled for the online broadcasting services and that transcripts can be produced and provided. In other words, if it were not possible to provide captioning or produce and publish transcripts, it would

be impossible to determine how much these services cost. (See Exhibit #5 of Docket No. 1-1 (Page 8-9 of 34)) ("The biggest items are $182,000 for closed-captioning and $200,000 for rewiring committee rooms." "Thomas Day, director of Legislative Administrative Services (LAS), the entity that would be responsible for outfitting committee rooms for broadcast, said one of his main concerns is the cost of closed captioning, which runs around $3 per minute."); (See First Page, Second Paragraph in Exhibit #7, Docket No. 1-1 (Page 17 of 34)) ("The second part of your request, to provide professional transcriptions of hundreds of committee meetings at an approximate minimum cost of $2.45 per minute, for approximately 62,528 minutes of recording, totals at least $15,194.") It is evident that Defendant Tom Day completed the fact specific investigations to determine an appropriate aid or service for Plaintiff Haulmark and other individuals with a hearing disability. Due to his parsimonious nature, Defendant Tom Day has refused to enable the captioning services or to produce transcripts despite numerous requests from Plaintiff Haulmark.

106.    The 10th Circuit has answered this question: "[D]oes a public entity violate Title II [ … ] repeatedly until it affirmatively acts to remedy the non-compliant service, program, or activity?" *Hamer v. City of Trinidad*, 924 F.3d 1093, 1097 (10th Cir. 2019) In this case, the plaintiff is an individual with a physical disability, who relied upon a motorized wheelchair, and who wished to benefit from the City created sidewalks as an entire service, program, or activity. "[E]ach time a qualified individual with a disability encounters or actually becomes aware of a non-compliant service, program, or activity and is thereby deterred from utilizing that service, program, or activity, he or she suffers

discrimination and a cognizable injury." *Id*. at 1107 (Internal quotation marks omitted) (citations omitted)

107.   Prior to the decision of the Tenth Circuit on the statute of limitations, the rulings in the court for the district of Colorado discussed how thousands of the curb ramps and curb cuts all over the city must be fully accessible for this plaintiff to gain the benefit of utilizing that service, program, or activity. *Hamer v. City of Trinidad*, Civil Action No. 16-cv-02545-NYW, 12-3 (D. Colo. Dec. 1, 2017)

108.   While Plaintiff Haulmark is deferred from benefiting from the services, programs, and activities, the Movants have an affirmative obligation under Title II to ensure that all audio and audiovisual content made available through their online broadcasting services are accessible to Plaintiff Haulmark and others with a hearing disability. "Title II therefore imposes an affirmative obligation to accommodate persons with disabilities." *Hamer,* 924 F.3d, 1104-5 (Quoting *Tennessee v. Lane*, 541 U.S. 509, 533 (2004)) (Internal quotation marks omitted)

109.   Several of the cases within the Tenth Circuit came to the same conclusion as this summary from the U.S. District Court for the District of Columbia, rejecting the argument that accommodation is not necessary unless it is explicitly requested. *Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) ("[N]othing in the disability discrimination statutes even remotely suggests that covered entities have the option of being passive in their approach to disabled individuals as far as the provision of accommodations is concerned. Title II [mandates] that entities act *affirmatively* to evaluate the programs and services they offer and to ensure that people with disabilities will have meaningful access to those services.") (Emphasis retained) (citations omitted);

*Hamer*, 924 F.3d at 1106 (mentioning "Congress's goal[] of full participation" in enacting the ADA and "[w]hat matters is whether the individual can fully participate *now* in the service, program, or activity." (Emphasis retained))

110.    Because Defendant Tom Day has not taken affirmative actions to ensure that the audio and audiovisual content available through the online broadcasting services are in compliance with Title II of the ADA, Plaintiff Haulmark has been prevented from accessing those audio and audiovisual content by using the online broadcasting services since its implementation because of his hearing disability. Despite the fact that it has been obvious to Defendant Tom Day for captioning for the online broadcast services to be required, it has been necessary for Plaintiff Haulmark to go through exhausting steps to persuade the Movants to bring their services, programs, and activities into compliance with Title II of the ADA and for the real-time captioning to be activated. (See ¶ 33 in Complaint) (See Exhibit #4 of Docket No. 1-1 (Page 6-7 of 34)) (See Exhibit D of the Writ of the Mandamus, Kansas Supreme Court, Appellate Case No. 19-121312-S[4]) (See Page 6 of 7, First Paragraph in Exhibit #6 of Docket No. 1-1 (Page 15 of 34)) ("At the date of this letter and my previous requests starting with a letter dated Feb. 18, 2019, none of the archived Audio-only content is captioned and the transcriptions are not openly available for the Deaf and Hard of Hearing individuals on the Kansas Legislature website.") As repeated requests and before he commenced this federal lawsuit, Plaintiff Haulmark filed for a Writ of Mandamus, made a Kansas Open Records Act request asking for compliance with the ADA, and sent an email for the final

---

[4] Kansas Supreme Court, *Appellate Case No. 19-121312-S*, http://sigd.net/Haulmark-KSC-19-121312-S.pdf

time to Defendant Tom Day on April 10, 2020, three days after being turned down for production of the requested transcripts. (See Complaint at ¶¶ 33, 38, 39, and 55)

111.    The Movants have known for a long time in regards to the shortcomings of online broadcasting services, as well as the need for real-time captioning and transcripts. Additionally, Defendant Tom Day has shared the needs for captioning services. ("[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016) (quoting *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197-98 (10th Cir. 2007) ("When a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim.") (Internal quotations retained))

112.    Because Plaintiff Haulmark was denied access to the transcripts requested, the Movants have failed the interactive process. Moveover, the Movants argue that a requirement of interactive process is to be applied to Plaintiff Haulmark under Title II.

113.    The Movants misapplies *Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220, 1224 (D. Kan. 1998) to this case. The Movants do not provide evidence of how Plaintiff Haulmark has moved out of Kansas or no longer wish to participate in their services, programs, and activities. Regardless, Tyler is instructive for this case as Plaintiff Haulmark "demonstrate[s] that he himself faces a real and immediate threat of future harm, not a conjectural or hypothetical threat." *Tyler* at 1224 Plaintiff Haulmark is still a resident in Kansas and participates in the local government services, programs, and

activities while being denied from the Movants' services, programs, and activities. (See ¶ 42 above); (See ¶ 3 in the attached affidavit of Plaintiff Haulmark) (Exhibit #1)

## XI. KANSAS VIRTUAL STATEHOUSE PROJECT DOES NOT MEET TITLE II OF THE ADA REQUIREMENTS

114.    The Movants cannot meet the tremendous burden of voluntary cessation as discussed here. The Movants have not unambiguously ended their discriminatory policies, practices, and policies of refusing and failing to ensure effective communication and equal participation for Plaintiff Haulmark. While not currently complying with the ITEC 12.0 policy and the Title II of the ADA, the Movants continue to intentionally exclude Plaintiff Haulmark from their services, programs, and activities.

115.    The Movants assert that Plaintiff "Haulmark lacks standing to complain of a non-existent injury." (See Page 12, First Continuing Paragraph in Movants' Memo.) The Movants continue their assertion, Plaintiff "Haulmark's Complaint fails to clearly allege facts demonstrating standing." (See Page 12, First Paragraph in Movants' Memo.) (Internal quotations omitted) The Movants assert that Plaintiff Haulmark did not sufficiently explain the discriminatory nature of their actions and that their accommodation requests were not reasonable. (See Page 12, First Paragraph in Movants' Memo.) The Movants seem to only focus on Plaintiff's request of the policies to be *developed*. (See Page 12, First Paragraph in Movants' Memo.) ("It is unclear how the mandatory injunction he is requesting that Defendants develop policy toward the hearing disabled redresses any alleged injury.") (Internal quotations omitted); (See Page 13, First Paragraph in Movants' Memo.) ("While unclear and failing to meet the specificity requirements of Fed. R. Civ. P. 65, the requested mandatory injunction at page 26, (iii), appears to be a request for captioning on streaming content, a request that is addressed

in the KS VSP, which was initially authorized by LCC resolution in December 2019. [ … ] The requested mandatory injunction, pp. 25-27, (i), (ii) and (vi), is for LAS to develop a policy of ADA compliance and to have a posted ADA notice, which the State and LAS already have.")

116.    The Movants are arguing that Plaintiff Haulmark was not clear enough to claim what was discriminatory or what accommodations Plaintiff Haulmark was claiming were not reasonable and why. Nevertheless, the Movants have not proven with their burden of proof that they made reasonable modifications to ensure effective communication and equal participation to Plaintiff Haulmark for *all* of their services, programs, and activities.

117.    The Movants assert that Plaintiff "Haulmark received accommodations: qualified interpreters, offers of specific transcripts of interest, auto-generated captioning on the Youtube postings and now real-time closed captioning through the Kansas Virtual Statehouse Project." (See Page 28, Last Paragraph in Movants' Memo.) Plaintiff Haulmark did not mention the need for sign language interpreters in his complaint, since a request for sign language interpreters would not have been necessary if at that time real-time captioning was available. An "offer of specific transcripts of interest" is neither one of the auxiliary aids and services under the ADA as an effective method nor an appropriate action to achieve effective communication or equal participation. The "auto-generated captioning on the Youtube postings" do not achieve effective communication and provide equal participation for Plaintiff Haulmark. Currently, there is not any "real-time captioning" made available for Plaintiff Haulmark for their

audio-only and video content. The free Youtube automatic captioning services are not advertised to be intended to be ADA compliant.

118. In light of the Movants' facts, it is evident that Plaintiff Haulmark is intentionally excluded from their programs, services, and activities as a result since Plaintiff Haulmark will not meet the Movant's demands regarding these smaller specific ADA requests. Also, the Movants are demanding to know why Plaintiff Haulmark wishes to benefit from their services, programs, and activities.

119. If the Movants had been in full compliance with their own policies including the ITEC policy and Title II of the ADA, the online broadcasting services would be made readily accessible with accurate real-time captioning and the transcripts of the archived recordings being available before Plaintiff Haulmark became involved in these legislative proceedings during January 2019. Then, Plaintiff Haulmark would not have been required to submit a small and specific ADA request to Movants or that their two-day notice for ADA requests would not have been a major discriminatory obstacle.

120. In the Movants' Memo. in regards to Kansas Virtual Statehouse Project as their new $2.47 million project, there are multiple expressions of futurity, with promises of real-time captioning when in fact, real-time captioning is not activated currently on this day. Additionally, the Movants have not submitted any evidence of real-time captioning being furnished with their streaming content of the entire legislative proceedings. (See ¶ 35 in Movants' Memo.) ("After the [Virtual Statehouse Project] is fully implemented, there will be no audio only streams of legislative activities and the [Virtual Statehouse Project] will offer real-time closed captioning with the streaming through Sliq rather than through YouTube."); (See Page 12, First Continuing Paragraph

in Movants' Memo.) ("A request for an order that LAS provide real-time closed captioning is not redressable as this is already being done."); (See Page 13, Last Paragraph in Movants' Memo.) ("Given the Kansas VSP which will provide real-time closed captioning on legislative proceedings streamed on the Internet similar to what Haulmark has acknowledged is effective in other states, Haulmark cannot show the injury required for standing for injunctive relief."); (See Page 22, First Continuing Paragraph in Movants' Memo.) ("His complaints about the existence of audio-only files and the lack of real-time captioning are being addressed through the KS [Virtual Statehouse Project]."); (See Page 28, Last Paragraph in Movants' Memo.) ("Here Haulmark received accommodations: [ … ] now realtime closed captioning through the Kansas Virtual Statehouse Project."); (See Last Paragraph in Movants' Memo.) ("The Kansas [Virtual Statehouse Project] eliminate [sic] the complained of audio-only files, providing real-time closed captioning."

121.   The Movants have an affirmative obligation under Title II of the ADA to ensure that all audio and audiovisual content made available through their online broadcasting services are readily accessible to Plaintiff Haulmark and others with a hearing disability. "Title II therefore imposes an affirmative obligation to accommodate persons with disabilities." *Hamer*, 924 F.3d 1093, 1104-5 (Quoting *Tennessee*) (Internal quotation marks omitted)

122.   While the Movants refuse to take affirmative actions as required under Title II of the ADA to ensure Plaintiff Haulmark is no longer excluded from the services, programs, and activities that Plaintiff Haulmark wishes to benefit from, Plaintiff Haulmark suffers cognizable injury as a result of their actions or inactions.

123.     Having the policies in place is not the same thing as complying with them. The Movants and Defendant Tom Day have refused to comply with the ITEC policy long before Plaintiff Haulmark requested that the ADA non-compliant online broadcast services be readily accessible for Plaintiff Haulmark and others with hearing disabilities. Again, the Movants argue that they have policies in place, but do not provide evidence of how they are currently complying with the requirements of the ADA law. Additionally, if they had adhered to this ITEC policy, the online broadcasting services would have been readily accessible to individuals who have a hearing disability and Plaintiff Haulmark would not have needed to submit a request for accessibility under the ADA. Additionally, Kansas Virtual Statehouse, created only in response to COVID-19, would have been compliant with both the ITEC policy and Title II of the ADA.

124.     Because the Movants and Defendant Tom Day have not taken affirmative actions to ensure that the audio and audiovisual content available through the online broadcasting services are in compliance with Title II of the ADA, Plaintiff Haulmark has been prevented from accessing those audio and audiovisual content by using the online broadcasting services since its implementation because of his hearing disability.

125.     Despite the fact it has been obvious to the Movants and Defendant Tom Day that captioning for the online broadcast services is required, it has been necessary for Plaintiff Haulmark to go through exhausting steps to persuade the Movants and Defendant Tom Day to bring their services, programs, and activities into compliance with Title II of the ADA and for the real-time captioning to be activated. (See ¶ 33 in Complaint) (See Exhibit #4 of Docket No. 1-1 (Page 6-7 of 34)) (See Exhibit D of the Writ

of the Mandamus, Kansas Supreme Court, Appellate Case No. 19-121312-S[5]) (See Page 6 of 7, First Paragraph in Exhibit #6 of Docket No. 1-1 (Page 15 of 34)) ("At the date of this letter and my previous requests starting with a letter dated Feb. 18, 2019, none of the archived Audio-only content is captioned and the transcriptions are not openly available for the Deaf and Hard of Hearing individuals on the Kansas Legislature website.") As repeated requests and before he commenced this federal lawsuit, Plaintiff Haulmark filed for a Writ of Mandamus, made a Kansas Open Records Act request asking for compliance with the ADA, and sent an email for the final time to Defendant Tom Day on April 10, 2020, three days after being turned down for production of the requested transcripts. (See Complaint at ¶¶ 33, 38, 39, and 55)

126.   Plaintiff Haulmark is requesting for the Movants to not only develop but to "implement, promulgate, and comply" with the existing policies such as ITEC 12 and with Title II of the ADA. (See ¶¶ 84(B)(ii)-(vii) in Complaint)

127.   In addition to this assortment of evidence, Kansas House Speaker Ron Ryckman revealed on the first day of the 2021 Legislature about the KLISS, "If there's a silver lining in all this for the Legislature, [ ] it's that we were able to jumpstart many of things we've wanted to do to increase online access to the process." (See Day Exhibit N in Docket No. 19-2 (Page 197 of 198)) Rather than *jumpstarting* in 2019 for Plaintiff Haulmark and other individuals with hearing disabilities, the Movants ignored Plaintiff Haulmark and other individuals with hearing disabilities to intentionally exclude them from legislative proceedings to this day. As a result, Plaintiff Haulmark continues to suffer injury in the same manner as he has been for years.

---

[5] Kansas Supreme Court, *Appellate Case No. 19-121312-S*, http://sigd.net/Haulmark-KSC-19-121312-S.pdf

128.    Plaintiff Haulmark has standing to pursue the claim in this action for all of the services, programs, and activities to be in compliance with Title II of the ADA. Plaintiff Haulmark is continuing to face the denial and threatened denial of effective communication and equal participation in the services, programs, and activities offered by the Movants. The new policy incorporated somewhere in the Kansas Virtual Statehouse Project is facially inadequate as it does not require affirmative steps by the Movants. The Movant's new policy in the Kansas Virtual Statehouse Project does not moot Plaintiff Haulmark's claim.

129.    *Equal Emp't Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173-74 (10th Cir. 2017) discussed a special rule applicable to this case. ("A special rule applies when the defendant voluntarily stops the challenged conduct. When the conduct stops, the claim will be deemed moot only if two conditions exist: 1) It is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. 2) Interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (Internal quotation marks, citations, and modifications omitted)

130.    Since Kansas Virtual Statehouse Project was completed on February 28, 2021, this project has proven fruitless so far in terms of providing real-time captioning and transcript services for audio and audiovisual content available on both the Kansas Legislature's website as well as its Youtube Channel. Since the requested modifications have not been made, the policies, procedures, and practices relating to captioning and transcript requirements still are the same as they were before Plaintiff Haulmark contacted Defendants LAS and Tom Day in January, 2019.

131.   These injuries directly resulted from the unlawful acts of the Movants and Defendant Thomas Day, and the reliefs sought by Plaintiff Haulmark are to redress these injuries.

## XII. PLAINTIFF'S REQUESTED MODIFICATION TO MOVANTS' POLICIES, PROCEDURES, AND PRACTICES WOULD NOT RESULT IN A FUNDAMENTAL ALTERNATION OR UNDUE BURDEN.

132.   It is unclear if the Movants are presenting a defense of fundamental alteration or undue burden. This must be discussed here.

133.   There is an exception under 28 C.F.R. § 35.164 that a public entity need not take any action that would result in an undue administrative burden. The public entity has the burden to prove that a proposed action would result in undue burden or fundamental alteration, and the decision "must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164

134.   But even if an action would result in an undue administrative burden, "the public entity must take any *other* action that would not result in such burdens but would nevertheless ensure that, *to the maximum extent possible*, individuals with disabilities receive the benefits or services provided by the public entity." *Robertson* at 1199 (quoting 28 C.F.R. § 35.164) (Emphases retained)

135.   Here, the Movants took no *other* action in response to Plaintiff Haulmark's requests to provide effective communication access to the online broadcasting services. Instead of complying with the ADA and their own ITEC policy, they conducted discriminatory acts by demanding for more specific requests from Plaintiff Haulmark,

then denying to produce and provide transcripts. Plaintiff Haulmark submitted a smaller ADA request for the April 2020 meeting of the Legislative Coordinating Council, but it was denied. (See ¶¶ 67-75 above)

136.   The Movants' inaction when it comes to modifying their policies, such as their ADA policy to provide the real-time captioning and transcripts disproportionately burdened Plaintiff Haulmark as an individual with a hearing disability. As a result, the Movants prevented him from having effective communication access to all of their services and benefits. "A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1) "A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1)

137.   The ADA "does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens.[ … ]The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 CFR § 35.164

138.   The Movants fail to submit any written statement from Defendant Tom Day as the head of the public entity explaining the reasons why the proposed action amounts

to an undue burden or a fundamental alteration. Here, the Movants cannot disprove Plaintiff Haulmark' allegations while merely asserting fundamental alteration or undue burden, since such claims are affirmative defenses for which the asserting public entity bears the burden of proof. To prevail on this affirmative defense, Movants must adduce sufficient facts to prove that Plaintiff Haulmark's requests for real-time captioning and transcripts would result in a fundamental alteration to the Movants' online broadcasting services or result in an undue burden. The Movants would additionally have to adduce facts sufficient to prove that they took some *other* action to "ensure that, to the maximum extent possible," Plaintiff Haulmark was still able to receive the benefits of their services. 28 C.F.R. § 35.164 The Movants have not done so. Additionally, the Movants do not provide a legitimate, nondiscriminatory reason for defying the federal law after Plaintiff Haulmark has sought ADA accommodations numerous times since January 2019 for the real-time captioning and transcripts.

139.   "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2)

140.   Plaintiff Haulmark specifically requested in his February 2019 letter for "real-time English captions" for the online broadcasting services. (See ¶ 33 in Complaint) (See Exhibit #4 of Docket No. 1-1 (Page 6 of 34)) Later, Plaintiff Haulmark requested transcripts to be produced and furnished to enable effective communication with the archived audio recordings, which are posted on the Legislature's website for public

access. (See ¶ 39 in Complaint) (See Exhibit #6 of Docket No. 1-1 (Page 10-16 of 34)) In violation of Plaintiff Haulmark's privacy and independence and before they are to affirmatively act, the Movants demand that Plaintiff Haulmark provide a list of specific bills, committee meetings and other legislative elements. Additionally, they do not offer any other action to ensure that the Plaintiff Haulmark receives effective communication and equal participation to the online broadcasting services and the archived audio and audiovisual recordings.

141.    It is not disputed that the Movants offer online broadcasting services to anyone interested in remotely watching legislative proceedings. Title II of the ADA requires public entities to furnish auxiliary aids that provide individuals with disabilities "*equal* opportunit[ies]" to avail themselves of the entity's services. 28 C.F.R. § 35.160 (Emphasis added) As such, holding otherwise would contradict the plain language of Title II of the ADA, which specifically lists "real-time captioning" and "real-time computer-assisted transcription services" as auxiliary aids and services. 28 C.F.R § 35.104

142.    Plaintiff Haulmark seeks protection from the ADA to exercise not just his constitutional rights to participate in the democratic process, but also to engage in the political process as equally as those without a hearing disability. (See the attached 2018 Kansas Legislation Tracker) (Exhibit #2) There has been a pattern of the Movants denying Plaintiff Haulmark timely access to observe these crucial legislative activities, leaving Plaintiff Haulmark unable to take part in the democratic political process.

143.   As the Tenth Circuit has stated, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113 (10th Cir. 2016) at 1127 (quoting *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) at 1132)

## XIII. THE MOVANTS' DISCRIMINATION WAS INTENTIONAL OR DELIBERATELY INDIFFERENT

144.   The Movants argue that Plaintiff Haulmark cannot meet his burden of showing that Defendant LAS acted with deliberate indifference because Defendant LAS has been working with Plaintiff Haulmark and on the captioning issue all along. (See Page 19, Last Paragraph in Movants' Memo.) The Movants assert that Plaintiff "Haulmark's Complaint fails to state a claim for deliberate indifference for damages because LAS and Tom Day were admittedly responding to him and working on improvements." (See Page 22, Last Paragraph in Movants' Memo.) The Movants assert that Defendants "LAS and [Tom] Day were trying to work with Haulmark, responding to him and having met with him twice, there is no plausible claim for deliberate indifference or damages." (See Page 29, First Continuing Paragraph in Movants' Memo.) Lastly, the Movants asserts that Plaintiff Haulmark's "Complaint itself negates the kind of intentional discrimination and deliberate indifference required for damages against a public entity under the ADA." (See Page 29, Last Paragraph in Movants' Memo.)

145.   In support of their defense, the Movants cite a few cases involving a wide variety of plaintiffs that were being cared for as prisoners or students of public entities. Unlike these prisoners or students, Plaintiff Haulmark is not in care of the Movants or any other public entities.

146.   The Movants cite *Barber v. Colorado, Department of Revenue*, 562 F.3d 1222 (10th Cir. 2009) to argue that is applicable in this case when it comes to discussing about

whether if intentional discrimination or deliberate indifference had occurred. However, the Movants argue that they have made efforts to ensure that Plaintiff Haulmark was not excluded from their services, programs, and activities and that they should not be held liable as the defendant in *Barber*.

147.   The Movants' defense cannot prevail since Plaintiff Haulmark has had numerous requests refused and ignored by Defendant Tom Day. The Movants and Defendant Tom Day did not offer any other accommodations to ensure that Plaintiff Haulmark is no longer excluded from their programs, services, and activities. Additionally, they did not provide any evidence of the extent to which Plaintiff Haulmark received access to their services, programs, and activities when excluded.

148.   As required, Plaintiff Haulmark alleged that there had been intentional discrimination. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153–54 (10th Cir. 1999)

149.   Plaintiff Haulmark is not required to prove personal animosity or ill will when alleging intentional discrimination. *Barber* at 1228; *Powers* at 1153

150.   Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers* at 1153 In other words, "[t]he test for deliberate indifference in the context of intentional discrimination comprises two prongs: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that . . . likelihood." *Barber* at 1229 (Internal quotation marks omitted)

151.   In order to obtain monetary damages under Title II of the ADA, Plaintiff Haulmark must show that the Movants and Defendant Tom Day acted with intentional

discrimination. *Barber* at 1228 ("To recover compensatory damages under § 504 [of the Rehabilitation Act], a plaintiff must establish that the [public entity's] discrimination was intentional.") (citation omitted); see also *Hamer v. City of Trinidad*, 924 F.3d 1093, 1108–09 (Conclusion: For the ADA to impose compensatory damages, intentional discrimination must have occurred.); *Hans v. Bd. of Shawnee Cty. Comm'rs*, 775 F. App'x 953, 956 (10th Cir. 2019) (Conclusion: Tenth Circuit reviews and agree with other circuit holdings that plaintiff can recover compensatory damages only after establishing intentional discrimination.)

152.    "[F]ailure to act is a result of conduct that is more than negligent, and involves an element of deliberateness." *Barber* at 1229; 28 C.F.R. § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."), (b)(1) ("A public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities ... an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.")

153.    For at least two years, the Movants and Defendant Tom Day have repeatedly failed to provide Plaintiff Haulmark with effective communication and equal participation to benefit from their services, programs, and activities.

## XIV. PLAINTIFF HAULMARK IS ENTITLED TO ALL THE REQUESTED RELIEFS

154.    Plaintiff Haulmark filed this lawsuit against the Movants for violations of Title II of the ADA. Plaintiff Haulmark complains of their ADA non-compliant online broadcasting services and the archived audio and audiovisual recordings. Because of

their discriminatory policies, procedures, and practices failing to correct all of their errors, Plaintiff Haulmark is intentionally excluded from their services, programs, and activities.

155.    Plaintiff Haulmark seeks a declaratory judgment that the Movants' online broadcasting services and the archived audio and audiovisual recordings violate the ADA, declaratory judgment about two Kansas statutes, injunctive relief requiring the state officials of the Movants to remedy the Movants' non-compliant online broadcasting services and the archived audio and audiovisual recordings, monetary damages, award of attorney fees if counsel is ever retained by Plaintiff Haulmark, and costs.

## XV. CONCLUSION

156.    The Movants' Memo. acknowledges that they had received Plaintiff Haulmark's requests, refuse to follow the ADA Title II provision requiring them not to treat Plaintiff Haulmark in a discriminatory manner by making excessive demands for small requests in order to act. In the matter of the small requests from Plaintiff Haulmark, they were denied.

157.    With a permanent injunction, Plaintiff Haulmark is seeking a court order to activate the available real-time captioning feature so that he can equally participate in observing the ongoing legislative proceedings of the 2021 Legislative Session and future sessions through the online broadcasting services while not suffering irreparable harm.

158.    When this litigation comes to a conclusion, the Movants and Defendant Tom Day are to correct all of their errors and ensure that Plaintiff Haulmark is no longer excluded from any of their programs, services, and activities. This includes the production of transcripts for all audio-only recordings, currently available on the Kansas

Legislature website, and all video recordings, currently available on their YouTube Channel. Both two streaming platforms serve as sources of content containing the legislative proceedings.

159.   Plaintiff Haulmark has shown that (1) Plaintiff Haulmark is a qualified individual with a disability; (2) Plaintiff Haulmark is excluded from the Movants' services, programs, and activities because of his hearing disability; (3) the Movants subject Plaintiff Haulmark to discrimination because of his disability; (4) the Movants refuse to make modifications to provide effective communication and equal participation; (5) the Movants are withholding the legally-required auxiliary aids and services from Plaintiff Haulmark; and (6) the discriminatory effect of the Movants' actions are with intent.

WHEREFORE, Plaintiff Haulmark requests that this Court deny the Movants' Motion in full.

------------------------------------------------------------------

Respectfully submitted this 19th of March

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th of March, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and a copy with postage prepaid was placed in mail of the U.S. Mail to the following:

M.J. Willoughby
Assistant Attorney General
120 S.W. 10th, 2nd Floor
Topeka, KS 66612

/s/ChrisHaulmark
PLAINTIFF, *pro se*