# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **STATE OF KANSAS**, | ) |
| **LEGISLATIVE ADMINISTRATIVE** | ) |
| **SERVICES**, | ) |
| and | ) Civil Action No.  5:20-cv-04084-EFM-TJJ  |
| **TOM DAY**, in his official capacity as | ) |
| Director of Legislative Administrative | ) |
| Services, | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF HAULMARK'S OPPOSITION TO DEFENDANT TOM DAY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COMES NOW Plaintiff Chris Haulmark, appearing *pro se*, hereby respectfully requests the Court to fully deny the Motion to Dismiss filed on March 10, 2021 by Defendant Tom Day. (See Motion to Dismiss) (Docket No. 24) This Opposition against Defendant Tom Day's Memorandum in Support of Motion (Docket No. 25) (hereinafter "Tom Day's Memo.") is based on the Complaint (Docket No. 1), Reply to Response to Motion (Docket No. 27), Response to Motion (Docket No. 31), the following statements, and authorities:

## I.    INTRODUCTION

The Complaint in the above captioned matter was filed on December 16, 2020 to seek damages, including compensatory damages, equitable relief, including declaratory and injunctive relief, award of attorney fees if counsel is ever retained by Plaintiff

Haulmark, and expenses of court against the named Defendants, alleging ongoing and repeating violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA") (See Complaint)

Defendant Tom Day filed his motion, seeking for the dismissal of Plaintiff Haulmark's claim against him. Within the Tom Day's Memo., Defendant Tom Day asserts that Plaintiff Haulmark has failed to state a claim and this Court does not have the proper jurisdiction over Plaintiff Haulmark's claim.

Defendant Tom Day fully admits in his memorandum that he and two other Defendants-- State of Kansas and Legislative Administrative Services (hereinafter "LAS")-- are intentionally withholding the legally-required auxiliary aids and services, yet they are demanding for more specific and smaller requests before complying with Title II of the ADA. While other individuals without a hearing disability are not subjected to the same discriminatory treatment, Plaintiff Haulmark is intentionally being excluded in their services, programs, and activities because of his hearing disability.

Plaintiff Haulmark has gone through the exhausting steps to persuade Defendant Tom Day and the two other Defendants to bring their services, programs, and activities into compliance with Title II of the ADA. Many of these steps include making numerous requests for at least two years for real-time captioning to be activated for the online broadcasting services, and for transcripts to be produced for all audio and audiovisual content that consists of legislative proceedings. Plaintiff Haulmark has not been successful in persuading them to comply with Title II of the ADA and therefore needs the Court to order them to do so.

## II.   RESPONSES OF PLAINTIFF TO
## DEFENDANT TOM DAY'S "STATEMENT OF MATERIAL FACTS"

1.     Plaintiff Haulmark admits.

2.     Plaintiff Haulmark admits.

3.     Plaintiff Haulmark admits.

4.     Plaintiff Haulmark admits.

5.     Plaintiff Haulmark admits.

6.     Plaintiff Haulmark admits and reiterates that Defendant Tom Day is sued in official capacity. The Eleventh Amendment immunity exception that the Supreme Court established in *Ex parte Young*, 209 U.S. 123 (1908), applies only in suits against individual defendants in their official capacities.

7.     Plaintiff Haulmark admits.

8.     Plaintiff Haulmark admits.

9.     Plaintiff Haulmark admits.

10.    Plaintiff Haulmark admits.

11.    Plaintiff Haulmark admits.

12.    Plaintiff Haulmark denies. (See ¶ 53 in Complaint) ("Legislative Coordinating Council posted a notice stating that the Legislative Coordinating Council will meet on April 8, 2020 as called to review an executive order issued by the Kansas Governor."); (See ¶ 54 in Complaint) ("Plaintiff Haulmark sent a request: 'I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today.'") (Internal quotation marks retained); (See ¶ 55 in Complaint) (Defendant Tom Day responded, "In terms of your request for the April 8, 2020 meeting of the Legislative Coordinating Council, no transcript currently exists and therefore,

under [Kansas Open Records Act], need not be produced under [Kansas Open Records Act]. However, I am looking into that request further. If the transcript becomes available, I will provide it to you."). In violation of Title II of the Americans with Disabilities Act, Defendant Tom Day has failed to produce and furnish the transcription of this specific meeting to Plaintiff Haulmark. Defendant Tom Day uses the Kansas Open Records Act (hereinafter "KORA") as the reason. (See ¶¶ 67-73 in Response to Motion) (Docket No. 31)

13.     Plaintiff Haulmark admits and reiterates that Defendant Tom Day did not adhere to the agreement by failing to timely communicate with Plaintiff Haulmark then refusing to provide effective communication and equal participation to Plaintiff Haulmark during the 2020 Legislative Session.

14.     Plaintiff Haulmark admits.

15.     Plaintiff Haulmark admits.

16.     Plaintiff Haulmark admits.

17.     Plaintiff Haulmark admits.

18.     Plaintiff Haulmark admits.

19.     Duplicative statement as ¶ 12. Plaintiff Haulmark denies. (See ¶ 53 in Complaint) ("Legislative Coordinating Council posted a notice stating that the Legislative Coordinating Council will meet on April 8, 2020 as called to review an executive order issued by the Kansas Governor."); (See ¶ 54 in Complaint) ("Plaintiff Haulmark sent a request: 'I am requesting for the transcription of the Legislative Coordinating Council meeting that was held during today.'") (Internal quotation marks retained); (See ¶ 55 in Complaint) (Defendant Tom Day responded, "In terms of your request for the April 8, 2020 meeting of the Legislative Coordinating Council, no

transcript currently exists and therefore, under KORA, need not be produced under KORA. However, I am looking into that request further. If the transcript becomes available, I will provide it to you."). In violation of Title II of the Americans with Disabilities Act, Defendant Tom Day has failed to produce and furnish the transcription of this specific meeting to Plaintiff Haulmark. Defendant Tom Day uses the KORA as the reason. (See ¶¶ 67-73 in Response to Motion) (Docket No. 31)

20.     Plaintiff Haulmark admits.

21.     Plaintiff Haulmark admits.

22.     Plaintiff Haulmark admits and reiterates that just because the 2020 Legislative Session is adjourned for the year on March 19, 2020 does not mean that there are no longer legislative proceedings for the rest of the year. Consider this instance, the general public has free access to the archived audio files of the meetings held by the Legislative Coordinating Council (hereinafter "LCC") on March 24, March 27, March 29, April 2, April 8, April 22, May 6, and  so on for the year 2020. (See Exhibit #14 in Docket No. 1-1 for the April 8 meeting (Page 29 of 34)) Many other committees of the legislature continued to hold many public meetings for the rest of the time until the 2021 Legislative Session commenced. The ADA defines these archived audio files, being freely available to the public, as services, programs, or activities. Additionally, the ADA requires these services, programs, and activities to be accessible with effective communication and equal participation for individuals with a hearing disability.

23.     Plaintiff Haulmark admits and reiterates that Defendant Tom Day is refusing to produce transcripts and that any efforts to obtain transcripts have been in vain.

24.     Plaintiff Haulmark admits and reiterates that Plaintiff Haulmark did not receive an email response from Defendant Tom Day following the last futile email.

25.     Plaintiff Haulmark cannot admit or deny this fact if the requirement of the accessibility is an unambiguous objective.

26.     Plaintiff Haulmark cannot admit or deny this fact because the meeting held by the LCC on September 16, 2020 was held without any auxiliary aids or services available to allow Plaintiff Haulmark and other persons with a hearing disability to be aware of the details being discussed via the online broadcasting services. Exhibit D contains no details regarding the requirement to comply with the ADA for all of the services, programs, and activities provided by the Defendants. (Docket No. 19-2) (Page 22-25 of 198)

27.     Plaintiff Haulmark cannot admit or deny this fact whether Alan Weis is qualified to ensure that the Virtual Statehouse Project is compliant with the ITEC policy 12.0 and Title II of the ADA in pursuant to K.S.A. § 75-7208(a). To date, Defendant Tom Day does not provide any evidence to support this fact.

28.     Plaintiff Haulmark acknowledges and emphasizes that a small portion of the $2.47 million project is devoted to accessibility, whereas the rest of the project is dedicated to other purposes. (See Exhibit E) (Docket No. 19-2) (Page 41 of 198)

29.     Plaintiff Haulmark admits.

30.     Plaintiff Haulmark admits.

31.     Plaintiff Haulmark admits.

32.     Plaintiff Haulmark cannot admit to or deny this fact because videos are still being posted to Defendants' YouTube Channel[1] (hereinafter "Youtube Channel") as

---

[1] KS Legislature, ("YouTube Channel"), https://www.youtube.com/channel/UC_0NO-Pb96CFABvxDwXAq8A

of this date. There is still no real-time captioning available and the content of the legislative proceedings continues to be published as audio-only on the Kansas Legislature's website.

33.     Plaintiff Haulmark denies this fact as Plaintiff Haulmark's Complaint was filed on December 16, 2020. This Complaint is a request in pursuant to the ADA for effective communication access to the entire collection of the audio and video recording including those to be produced and published in the future.

34.     Plaintiff Haulmark admits this fact.

35.     Plaintiff Haulmark admits this fact and reiterates that he stated the automatic machine-generated captioning does not provide effective communication for him. (See ¶ 20 in Complaint)

36.     Plaintiff Haulmark denies this fact as there are many instances within the Complaint that indicate Plaintiff Haulmark wants access to future legislative proceedings, freely available to the public on two separate streaming platforms.

37.     Plaintiff denies in part to this fact because Defendant Tom Day uses the word "adopt" on what Plaintiff Haulmark seeks for. Plaintiff Haulmark is seeking an order for the Defendants "to develop, implement, promulgate, and *comply* with a policy prohibiting future discrimination against Plaintiff Haulmark or other individuals with hearing disabilities[.]" (See ¶ 84(B)ii-vii in Complaint) (Emphasis added) Plaintiff Haulmark admits to the rest of this fact.

### III.     PLAINTIFF'S STATEMENT OF MATERIAL FACTS

38.     Plaintiff Haulmark is not employed with or under the care of the Defendants.

39.     Plaintiff Haulmark lives in Olathe, Kansas.

40.     Plaintiff Haulmark is a qualified member of the public to participate in the services, programs, and activities offered by the Defendants.

41.     Plaintiff Haulmark has sought ADA accommodations numerous times since January 2019 for the real-time captioning and transcripts.

42.     Defendant Tom Day wants to know why Plaintiff Haulmark does not want to be excluded from their services, programs, and activities.

43.     Defendant Tom Day demands Plaintiff Haulmark to furnish smaller and specific ADA requests with a list of specific bills, committee meetings and other legislative elements to benefit from their services, programs, and activities offered to the public.

44.     Defendant Tom Day knew that they need to make reasonable modifications in their services, programs, and activities for individuals with a hearing disability before Defendants LAS and Tom Day were contacted by Plaintiff Haulmark in January 2019.

45.     Defendant LAS is liable based on the actions of its director, Defendant Tom Day.

46.     The first audio-only recording of legislative proceedings was streamed and published on the Kansas Legislature's website on January 9, 2017.

47.     Since January 9, 2017, there are thousands of audio-only recordings archived on the Kansas Legislature's website freely available to the public.

48.     On the Kansas Legislature's website[2] for the archived audio-only recordings, there are not any auxiliary aids or services being available or provided upon

---

[2] Kansas Legislature website, http://sg001-harmony.sliq.net/00287/Harmony/en/View/Calendar/

request to ensure effective communication and equal participation for Plaintiff Haulmark.

49.     Due to Plaintiff Haulmark's hearing disability and the lack of auxiliary aids or services, Plaintiff Haulmark is unable to have communication access to archived audio-only content available on the Kansas Legislature's website.

50.     The policy as part of the Kansas Virtual Statehouse Project is facially inadequate as they do not require affirmative steps by the Defendants to ensure compliance with Title II of the ADA.

51.     Currently, YouTube Channel does not provide real-time captioning for their streaming or published videos to provide effective communication and equal participation for Plaintiff Haulmark.

52.     These archived audio-only recordings and published videos are the services, programs, and activities offered to the public that the Defendants have full control over.

53.     Defendants Legislative Administrative Services and Tom Day have the administrative duties to oversee the services, programs, and activities of the Kansas Legislature at the direction of the LCC.

54.     Among the administrative duties consists of the Defendants LAS and Tom Day handling requests for accommodation under the ADA and to act upon those requests.

55.     While Defendant Tom Day demands to know the specific bills, committees, or any kind of legislative elements that Plaintiff Haulmark is following, Defendant Tom Day does not impose the same restrictions on any individuals without a hearing disability.

## IV.    NATURE OF THE MATTER

56.     In his Complaint, Plaintiff Haulmark brings to this Court the issue of being excluded from participating in the services, programs, and activities offered by the Defendants.

57.     Plaintiff Haulmark is Deaf[3], a qualified individual with a disability under the ADA, and had repeatedly requested for reasonable modifications from Defendant Tom Day. Defendant Tom Day does not dispute these facts. (See ¶¶ 3, 9, 16, 20, and 24 in Tom Day's Memo.)

58.     According to the ADA, the online broadcasting services and each of the individual audio and video recordings, under control of Defendant Tom Day, are the services, programs, and activities freely offered to the public.

59.     Plaintiff Haulmark is being excluded from all services, programs, and activities offered by the Defendants because Plaintiff Haulmark would not meet Mr. Day's demands to identify specific bills, committee meetings, or other smaller legislative elements. (See ¶¶ 10, 17, and 23 in Tom Day's Memo.); (See Page 22, Last Paragraph in Tom Day's Memo.) ("More than once, Day offered to provide transcripts for specific proceedings of interest to Haulmark."); (See Page 23, First Continuing Paragraph in Tom Day's Memo.) ("[T]he Complaint does not allege that Haulmark told Day he was following certain bills and asked for information as to specific bills[.]") (Internal quotation marks omitted); (See Page 28, Last Paragraph in Tom Day's Memo.)

---

[3]This label is contrary to the term "hearing impaired" which is generally applied in a demeaning tone to obliterate the personal history, background, cultural abundance, and visual language of this particular member of the Deaf community. The Kansas Legislature has accepted this by lawfully legislating the name change from Kansas Commission for the Deaf and Hearing Impaired to Kansas Commission for the Deaf and Hard of Hearing. K.S.A. § 75-5397b (1992).

("[]Haulmark never explained why his preferred accommodation [ ... ] was the only means to achieve meaningful access so that he could follow specific bills of interest[.]")

60.     Plaintiff Haulmark went through exhausting steps to persuade Defendant Tom Day to bring all of the Defendants' services, programs, and activities into compliance with Title II of the ADA. This has been a humiliating, dehumanizing, and unnecessary experience. Had the Defendants been readily accessible to provide Plaintiff Haulmark with the requested auxiliary aids and services, as legally required under Title II of the ADA, he would not have sustained the injuries and be forced to bring this matter to this Court.

## V.     ONLINE BROADCASTING SERVICES

61.     As discussed in the section entitled "The Structure Of The Kansas Legislative Information Services System" of the Plaintiff Haulmark's Reply to Response to Motion, there are several components to the system, one of which includes the ability to provide public access to observe legislative proceedings remotely. (See ¶¶ 16-24 in the Reply to Response to Motion) (Docket No. 27)

62.     The Defendants' $2.47 million dollar project, the Kansas Virtual Statehouse Project, is a response to the COVID-19 public health emergency. The Defendants show the unambiguous goal of this project is to enable the elected legislators and staff to actively participate online in an environment where physical presence is no longer necessary.

63.     Even though the Defendants admit that the online broadcasting services and the archived audio and audiovisual content are non-compliant with the ADA, they have not provided any evidence to prove that this new project has brought the original online broadcasting services to full compliance with the ADA. The Defendants spent a

significant amount of money on expensive sound and video equipment and, unsurprisingly, nothing indicates that even one cent of the new $2.74 million project or the annual budget of the Kansas Legislative Information Services System (hereinafter "KLISS") averaging at least $20 million dollars is used to provide effective communication for Plaintiff Haulmark and other individuals with a hearing disability.

## VI.    PLAINTIFF HAULMARK HAS ALLEGED A PRIMA FACIE CASE OF DISCRIMINATION UNDER TITLE II OF THE ADA

64.    Here, the elements of this ADA claim are: 1) Plaintiff Haulmark is a qualified individual with a disability, 2) Plaintiff Haulmark has been excluded from participation in or denied the benefits of the public entity's services, programs, and activities, or was otherwise discriminated against by the public entity, and 3) that such exclusion, denied the benefits of, or discrimination was by reason of Plaintiff Haulmark's disability. *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016)

65.    Defendant Tom Day 1) agrees that Plaintiff Haulmark is a qualified individual with a disability (See ¶ 3 in Tom Day's Memo.); 2) admits that he intentionally excludes Plaintiff Haulmark from their online broadcasting services and all of these archived video and audio recordings, by withholding the necessary auxiliary aids and services that Plaintiff Haulmark requires for effective communication, until Plaintiff Haulmark meets Defendant Tom Day's demands for specific and smaller ADA requests (See ¶¶ 8, 10, 12, 17, 19, 23, 24, and 36 in Tom Day's Memo.); 3) and acknowledges this discriminatory exclusion from the Defendants' services, programs, and activities is because of Plaintiff Haulmark's disability.

66.    Defendant Tom Day rests his argument for dismissal on the second element. He asserts that his requests for specific and limited ADA accommodations are considered as reasonable accommodation offers under Title II of the ADA. Defendant Tom Day argues that Plaintiff Haulmark was not injured because he did not submit these specific and smaller requests for ADA accommodations. Simply put, Defendant Tom Day does not want to be held responsible for failing to ensure that online broadcasting services are designed to be compliant with Title II of the ADA.

67.    Defendant Tom Day asserts that during this December 2019 meeting, "he had been working on improving accessibility for legislative proceedings and that he would continue in those efforts and provide a progress report." (See ¶ 13 in Tom Day's Memo.) There is no evidence to show any effort of improvement being made in this regard. It has been over a year since that meeting.

68.    During this December 2019 meeting, an agreement was reached that the Defendant Tom Day would ensure effective communication and equal participation are provided to Plaintiff Haulmark during the 2020 Legislative Session. (See ¶¶ 46-47 in Complaint) However, Defendant Tom Day did not adhere to the agreement by failing to timely communicate with Plaintiff Haulmark then refusing to provide effective communication and equal participation to Plaintiff Haulmark during the 2020 Legislative Session. (See Page 1-3 of the Exhibit #13 in Docket No. 1-1 (Page 26 of 34)) During the ongoing 2020 Legislative Session, Defendant Tom Day delayed Plaintiff Haulmark's transcript requests under the ADA, which Defendant Tom Day then refused to honor. (See Page 1-2 of the Exhibit #15 in Docket No. 1-1 (Page 30 of 34))

69.    Defendant Tom Day then presented the "$2.74 Million Kansas Virtual Statehouse Project," which is specifically designed to allow only for the participation of

elected legislators, staff, and members of the public remotely. (See ¶ 25 in Tom Day's Memo.) Furthermore, this $2.74 million project is attributing lower priority to the requirement that the online broadcasting services comply with the ADA law. In addition, Kansas House Speaker Ron Ryckman revealed on the first day of the 2021 Legislature about the KLISS, "If there's a silver lining in all this for the Legislature, [ ] it's that we were able to jumpstart many of things we've wanted to do to increase online access to the process." (See Day Exhibit N in Docket No. 19-2 (Page 197 of 198)) Rather than *jumpstarting* in December 2019 for Plaintiff Haulmark and other individuals with hearing disabilities, Defendant Tom Day delays the improvements by ignoring and denying requests from Plaintiff Haulmark and other individuals with hearing disabilities throughout the year 2020 and intentionally excludes them from legislative proceedings to this day.

70.     Defendant Tom Day's citation of a variety of authority undermines the well-established law of the Tenth Circuit that deals with Title II requirements. As one of these instances, Defendant Tom Day emphasized with *Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006) in order to argue that a request was necessary to trigger the application of the ADA to a prison system. (See Page 22, Continuing Paragraph in Tom Day's Memo.) ("The ADA's reasonable accommodation requirement usually does not apply unless triggered by a request.") (Internal quotations omitted)

71.     The December 2019 meeting, the December 2019 resolution adopted by the LCC, exchanges of emails between Plaintiff Haulmark and Defendant Tom Day, and the $2.74 Million Kansas Virtual Statehouse Project are futile gestures because there are not any improvements made since before Plaintiff Haulmark's first contact with

Defendant Tom Day. Plaintiff Haulmark continues to be completely excluded from having effective communication access to 100% of the archived audio content that is publicly available on the Kansas Legislature website. There is not any real-time captioning available on the Youtube Channel, and the auto-generated captioning for some videos are not equally and optimally accurate. (See ¶ 54 in Reply to Response to Motion) (Docket No. 27)

72.    Accordingly, Plaintiff Haulmark filed numerous ADA requests for access to the online broadcasting services and the archived audio-only content over the past two years. All the requests were turned down by Defendant Tom Day.

## VII.   REQUESTS FOR ADA ACCOMMODATIONS

73.    In his memorandum, Defendant Tom Day acknowledges that auxiliary aids and services were repeatedly requested from Plaintiff Haulmark during the last two years. (See ¶¶ 9, 16, 20, and 24 in Tom Day's Memo.) Additionally, Defendant Tom Day does not discuss the February 2019 letter in Tom Day's Memo. but admits his awareness of this letter in his earlier "Declaration of Thomas A. Day" filed on February 4, 2021. (See ¶ 20 in Docket No. 14-2) Lastly, Defendant Tom Day shares his awareness of the need of captioning to ensure that individuals without a hearing disability are not to be excluded from the Defendants' services, programs, and activities. (See ¶ 36 in Complaint)

74.    This February 2019 letter requests "real-time English captions" so the online broadcasting services will be readily accessible to Plaintiff Haulmark. (See ¶ 33 in Complaint) (See Exhibit #4 of Docket No. 1-1) If the online broadcasting services had provided real-time and optimally accurate captioning since the implementation, it is unlikely that Plaintiff Haulmark would request transcripts.

75.     Throughout the next two years, Plaintiff Haulmark made numerous requests of transcripts to Defendant Tom Day for all of the archived audio and audiovisual content available on two separate streaming platforms. All requests were denied. (See ¶ 8, 10, 17, and 23 in Tom Day's Memo.)

## VII.   ALLEGED DISCRIMINATION AGAINST PLAINTIFF HAULMARK BY DEFENDANT TOM DAY

76.     Defendant Tom Day shows in his memorandum his reasons for excluding Plaintiff Haulmark from all of the Defendants' services, programs, and activities. Firstly, Plaintiff Haulmark is unjustifiably required to submit a request at least two working days before the day of the service, program, or activity because of a discriminatory policy in place. Secondly, Defendant Tom Day cites the KORA, K.S.A. § 45-215 *et seq.*, as the reason to refuse to produce the transcripts. Thirdly, Plaintiff Haulmark is unnecessarily required to make smaller and more specific ADA requests to Defendant Tom Day while remaining excluded from the rest of the services, programs and activities. Fourthly, Plaintiff Haulmark did not explain to Defendant Tom Day why he wants to participate in Defendants' services, programs, and activities.

77.     Defendant Tom Day does not provide a nondiscriminatory reason to exclude Plaintiff Haulmark from any of the Defendants' activities, programs, or services.

78.     Defendant Tom Day complains about Plaintiff Haulmark's requests for 100% accuracy and perfection of the captioning and transcripts. (See Page 23, First Paragraph in Tom Day's Memo.) Defendant Tom Day fails to provide evidence of Alan Weis's qualifications, despite his nonexpert opinion regarding the captioning being claimed to be accurate. (See ¶ 70 in in Reply to Response to Motion) (Docket No. 27)

While refusing to enable real-time captioning and failing to produce and furnish transcripts, Defendant Tom Day fails to take *other* action, required under Title II of the ADA, in response to Plaintiff Haulmark's requests to provide effective communication access to the online broadcasting services and the content of audio and audiovisual, containing the legislative proceedings.

79.    Defendant Tom Day had known for a long time in regards to the shortcomings of online broadcasting services, as well as the need for real-time captioning and transcripts. Additionally, Defendant Tom Day has shared the needs for captioning services during February 2019. (See ¶ 36 in Complaint) "[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *J.V. v. Albuquerque Pub. Sch.* at 1299 (quoting *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197-98 (10th Cir. 2007) ("When a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim.") (Internal quotations retained))

80.    While it has been obvious to him, Defendant Tom Day has been aware of other Deaf constituents participating in the democratic process prior to Plaintiff Haulmark's first contact with him.

## VIII.   REASONABLE MODIFICATIONS TO AVOID DISCRIMINATION

81.    "To effectuate Title II's mandate, the regulations require public entities to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." *Robertson* at 1195 (quoting 28 C.F.R. § 35.130(b)(7)) (Internal quotation marks omitted)

82.     In addition with this ITEC state policy, Defendant Tom Day has an affirmative obligation under Title II of the ADA to ensure that all audio and audiovisual content made available through the Defendants' online broadcasting services are readily accessible to Plaintiff Haulmark and others with a hearing disability. "Title II therefore imposes an affirmative obligation to accommodate persons with disabilities." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1104–05 (10th Cir. 2019) (Quoting *Tennessee v. Lane*, 541 U.S. 509, 533 (2004)) (Internal quotation marks omitted)

83.     After failing to follow both ITEC state policy and Title II of the ADA, which prohibits discrimination against Plaintiff Haulmark, Plaintiff Haulmark is subjected to discrimination as a result of the four discriminatory reasons stated by Defendant Tom Day. (See ¶ 71 above)

84.     Plaintiff Haulmark and other individuals with a hearing disability are entitled to the following auxiliary aids and services: "[q]ualified interpreters, notetakers, *transcription services*, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, *open and closed captioning*, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods . . . ." 28 C.F.R. § 35.104. (Emphasis added)

85.     In Tom Day's Memo., Defendant Tom Day does not meet his burden of demonstrating that there are real-time captioning and transcripts available for each of the archived audio and video recordings. Instead, Defendant Tom Day complains that Plaintiff Haulmark wants to participate in each of the legislative proceedings. (See Page 22, Last Paragraph in Tom Day's Memo.) ("Haulmark's demand for hundreds of professional and errorless transcripts for each and every legislative proceeding is not a

reasonable request.") (Internal quotations omitted); (See Page 23, First Continuing Paragraph in Tom Day's Memo.) ("The Complaint and attached exhibits do not demonstrate that Haulmark made Day aware why the hundreds of errorless transcripts of every single legislative proceeding were necessary to provide effective communication as to any particular bills he may have been following")

86.     Defendant Tom Day is not following the requirements of Title II of the ADA when he imposes discriminatory standards for Plaintiff Haulmark to participate in and benefit from the services, programs, and activities offered by the Defendants.

87.     Upon numerous requests from Plaintiff Haulmark over the course of two years, Defendant Tom Day fails to furnish the real-time captioning and transcripts upon requests by Plaintiff Haulmark for all of the Defendants' services, programs, and activities. In light of Defendant Tom Day's failure, Plaintiff Haulmark is intentionally discriminated against by being excluded from the Defendants' services, programs, and activities.

88.     During the necessary discovery, Plaintiff Haulmark will be able to obtain evidence that Defendant Tom Day was aware of other Deaf constituents interested in the services, programs, and activities of the Kansas Legislature long before he was first contacted by Plaintiff Haulmark. For example, Plaintiff Haulmark is seeking to depose Defendant Tom Day and other employees of the Defendants. Plaintiff Haulmark will explore whether and how Defendant Tom Day created an intentionally discriminatory pattern of conduct against Plaintiff Haulmark and other individuals with a hearing disability on the behalf of the Defendants.

### IX.     DEFENDANT TOM DAY SERVES WITH THE AUTHORITY ON ALL ISSUES RELATED TO ADA REQUESTS

89.     Defendant Tom Day is attempting to have himself dismissed with the same reason why two others --Senate President Susan Wagle and House Speaker Ron Ryckman-- were dismissed from Plaintiff Haulmark's previous claim. (See Page 14, First Continuing Paragraph in Tom Day's Memo.) ("The court concludes that plaintiff does not have standing to bring this action against Wagle and Ryckman and that he has failed to properly allege a claim for prospective relief under *Ex parte Young*. The same is true as to Haulmark's similar claim against Tom Day.")

90.     At the time of the filing of the complaint against five defendants including Senate President Susan Wagle and House Speaker Ron Ryckman, Plaintiff Haulmark was acting in good faith by applying the Rule 4(j)(2)(B) of the Federal Rules of Civil Procedure regarding the way the Kansas Senate, the Kansas House of Representatives, and the elected legislators are to be served, as interpreted in *State Ex. Rel. Stephan v. Kan. House of Representatives*, 236 Kan. 45, 50 (Kan. 1984).

91.     Plaintiff Haulmark, appearing pro se, without formal legal training and experience, believed this service of process would name every legislator as a defendant by applying the *Stephan* doctrine to the previous complaint. Additionally, it was thought that *Stephan* doctrine established that a presiding officer of a legislative body should appear to answer for itself as well as its elected legislators. However, it was decided that a presiding officer could not do so.

92.     Now, Defendant Tom Day is mistakenly comparing himself with the two defendants– Wagle and Ryckman– in the decision of the Honorable Sam Crow.. (See Page 14, First Continuing Paragraph in Tom Day's Memo.) ("[T]he Complaint does not allege that Wagle in her official capacity [ … ] has the power [ … ] to enact the

accommodations [Plaintiff Haulmark] seeks[.]") (Quoting *Haulmark v. State of Kansas*, 20-4033-SAC (D. Kan. Sept. 30, 2020)) (Cleaned up)

93.     Here, Defendant Tom Day plays a role in depriving Plaintiff Haulmark of his rights guaranteed by the ADA by excluding Plaintiff Haulmark from the Defendants' services, programs, and activities and repeatedly subjecting Plaintiff Haulmark to discrimination. Defendant Tom Day, in his official capacity as the Director of Defendant LAS, has the power to enact the accommodations Plaintiff Haulmark seeks.

94.     However, Defendant Tom Day argues that he does not have the power to perform upon the ADA requests such to "change legislative policies, spend large amounts of money, or otherwise perform the acts requested in the Complaint." (See Page 16, Last Paragraph in Tom Day's Memo.)

95.     Plaintiff Haulmark does not request that Defendant Tom Day change any legislation policy outside the scope of his administrative authority. Defendant Tom Day must comply with the federal laws regardless of the state laws, state policies, and any other regulations that conflict with the federal laws, including Title II of the ADA. While other reliefs are available from them, Defendants State of Kansas and LAS are named in this Complaint to be held liable for these discriminatory statutes and policies that violate Title II of the ADA. (See ¶¶ 76-99 in Response to Motion) (Docket No. 31)

96.     In light of this awareness, Defendant Tom Day was aware that in order to be compliant with ITEC Policy No. 1210, the online broadcasting services should be readily accessible to individuals with hearing disabilities. (See 6.1 of the ITEC Policy in Weis Exhibit B (Docket No. 25-3) (Page 10 of 12)) ("All entity ICT shall be accessible to and usable by individuals with disabilities in accordance with federal and state law.")

Despite the fact that the ITEC policy was developed to be compliant with the ADA, Tom Day had failed to follow this ITEC policy in order to ensure the online broadcast services were readily accessible and usable by individuals with a hearing disability.

97.    Defendant Tom Day follows a discriminatory policy that mandates requests be sent "at least two working days in advance of the meeting[,]" which prevents individuals with hearing disabilities from obtaining accommodations, including transcripts, once these meetings have taken place. (See ¶ 29 in Reply to Response to Motion) (Docket No. 27)

98.    Under Defendant Tom Day's argument that he can not "spend large amounts of money" to comply with Title II of the ADA, it is unclear whether he is using the defense of undue financial burden. This is a vague argument regarding an unspecified amount. Defendant Tom Day discusses the expenses involved in providing real-time captions and to produce transcripts. (See ¶¶ 36 and 40 in Complaint); (See ¶ 42 in Reply to Response to Motion) (Docket No. 27)

99.    It is clear that the operating expenses of the KLISS has averaged at least $20 million annually. (See Exhibit #8, #9, #10 in Docket No. 1-1 (Page 19-21 of 34)). The entire budget and the new $2.74 million dollar project are not being used to provide effective communication and equal participation for Plaintiff Haulmark and other persons with a hearing disability. The Defendants admit that they are using the free auto-captioning services provided by YouTube for some of their audiovisual content, which were not intended to be ADA compliant to provide effective communication. (See ¶ 19, 20, 70, 71, 72, 73, and 79 in Reply to Response to Motion) (Docket No. 27)

100.    The Title II regulations of the ADA make clear that the determination of whether compliance with the statute would result in an undue burden or fundamental

alteration must be made by the head of the public entity or a designee "after considering all resources available for use in funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164 Even in cases in which such a determination is made and the requested auxiliary aid or service is not provided, Title II requires public entities to provide whatever aids or services that do not impose an undue burden on the public entity in order to ensure to the maximum extent possible that individuals with disabilities receive the benefits and services provided by the entity. 28 C.F.R. § 35.164

101.    Here, Tom Day fails to provide Plaintiff Haulmark the transcripts of any of the legislative proceedings for which Plaintiff Haulmark requested, or, in the alternative, to propose another communications means which could allow Plaintiff Haulmark to gain access to the legislative proceedings through the online broadcasting services and the archived audio, being available on the Kansas Legislature's website. Defendant Tom Day has not presented evidence to establish that provision of these transcripts would have resulted in a fundamental alteration in the nature of their services, programs, and activities or an undue burden. Because of this failure, Defendant Tom Day denies Plaintiff Haulmark effective communication and the opportunity to enjoy the benefits of their services, programs, and activities.

102.    In the matters of Defendant Tom Day performing "the acts requested in the Complaint[,]" he has the power to do so. Throughout Tom Day's Memo. and other legal filings by all the three Defendants in this case show that it is undisputed that Defendant Tom Day is legislatively authorized to handle ADA accommodations. (See ¶¶

28-39 in Reply to Response to Motion) (Docket No. 27); (See ¶¶ 92-99 in Response to Motion) (Docket No. 31)

103.    Additionally, Defendant Tom Day admits that he has the power to produce and provide the necessary auxiliary aids and services. (See ¶ 10 in Tom Day's Memo.) ("[ … ] *offering* to produce specific transcripts of Haulmark's choosing."); (See ¶¶ 17, 19, 23, and 24 in Tom Day's Memo.) (Emphasis added); (See Page 22, Last Paragraph in Tom Day's Memo.) ("More than once, Day *offered to provide* transcripts for specific proceedings of interest to Haulmark.") (Emphasis added); (See Page 23, First Continuing Paragraph in Tom Day's Memo.) ("The Complaint and attached exhibits do not demonstrate that Haulmark made Day aware why the hundreds of errorless transcripts of every single legislative proceeding were necessary to provide effective communication as to any particular bills he may have been following; the Complaint does not allege that Haulmark told Day he was following certain bills and asked for information as to specific bills, as *that certainly would have been provided.*") (Emphasis added)

104.    Defendant Tom Day does not admit in this "Declaration of Thomas A. Day," filed on March 10, 2021 to this court, of how he has already used the same power to furnish the auxiliary aids and services to Plaintiff Haulmark in the past. (Exhibit 1 in Docket No. 25-2) Instead, Defendant Tom Day admits using this power as one of his administrative duties to act upon ADA requests in his other declarations. (See ¶ 19 in both two different Declaration of Thomas A. Day) (Exhibit 1 of both Docket No. 14-2 and Docket No. 19-2)

105.    As shown above, Defendant Tom Day fails to use this power to spend less than 1% of the entire annual budget of the KLISS operations to furnish transcripts for

the entire audio-only recordings on the committee proceedings that occurred during the 2019 Legislative Session. (See ¶ 39 in Complaint) In addition, Defendant Tom Day fails to spend a tiny amount to produce and furnish transcript for single legislative proceeding. (See ¶¶ 67-73 in Response to Motion) (Docket No. 31)

106.    As a public officer and the director of Defendant LAS, Defendant Tom Day has the authority to "appoint such assistants and employees [ … ] as are authorized by the legislative coordinating council" necessary to satisfy the requirements of Title II of the ADA, in order to provide the requested auxiliary aids and services. (See K.S.A. § 46-1212a); *Durflinger v. Artiles*, 234 Kan. 484, 503 P.2d 86 (Kan. 1983) ("Essential elements to establish public position as public office are: position must be created by constitution, legislature, or through authority conferred by legislature, portion of sovereign power of government must be delegated to position, duties and powers must be defined, directly or impliedly, by legislature or through legislative authority, duties must be performed independently without control of superior power other than law, and position must have some permanency and continuity.") (Internal quotations omitted)

107.    Plaintiff Haulmark adequately demonstrated intentional discrimination (deliberate indifference) on the part of Defendant Tom Day as an official who, despite having authority to address discrimination and institute corrective measures on the two other Defendants' behalf, also failed to respond to it adequately. Defendant Tom Day has not provided any alternative individuals or entities to whom ADA requests can be sent to so that modifications or accommodations can be provided to individuals with a hearing disability. Furthermore, no grievance procedures are shown to be in place for when an accommodation request is denied.

108.     Defendant Tom Day now stands alone authorized to act on the ADA requests without ever providing any auxiliary aid or service that would facilitate effective communication and equal participation for Plaintiff Haulmark with the Defendants' services, programs, and activities. This means that Plaintiff Haulmark is being denied the opportunity to participate in the legislative proceedings via the online broadcasting services, as well as the opportunity to be a political leader in the midst of this critical moment being informed about the impacts made by the state government. The reason behind this denial is that he is an individual with a hearing disability.

## X.     RELIEF FROM DEFENDANT TOM DAY

109.     The Tenth Circuit has provided three elements necessary for a suit to proceed against a state official. The requirements are: "(1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; and (3) the plaintiffs seek prospective equitable relief, rather than retroactive monetary relief from the state treasury.'" *Lewis v. N. M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001)

110.     While citing a single case outside of the Tenth Circuit, Defendant Tom Day argues that "the Complaint does not allege that Day constitutes a public entity within the meaning of Title II of the ADA. Failure to allege a defendant is a public entity is itself cause for dismissal." (See Page 19, Second Paragraph in Tom Day's Memo.) (Internal quotation marks omitted)

111.     In contrast to the two other Defendants, Defendant Tom Day invokes the Eleventh Amendment or sovereign immunity protection.

112.     Defendant Tom Day is a public official of Kansas named in his official capacity, which makes him liable for prospective injunctive relief under the doctrine of

*Ex parte Young*. Plaintiff Haulmark has requested for a "mandatory preliminary and thereafter permanent injunction relief[.]" (See ¶ 85(B) in Complaint) This is applicable to Defendant Tom Day within the scope of *Ex parte Young*.

113.   Defendant Tom Day controls access to the online broadcasting services and the archived audio and video recordings as services, programs, and activities and is aware that he is breaking the federal law of the ADA by outright excluding Plaintiff Haulmark, based on his hearing disabilities, from these services, programs, and activities. "In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011) "[N]either a state official's absolute immunity nor a state's sovereign immunity bars a plaintiff from bringing an *Ex parte Young* claim for a violation of Title II of the ADA." *Guttman v. Khalsa*, 669 F.3d 1101, 1127 (10th Cir. 2012)

114.   Defendant Tom Day cites a state law to violate federal law by refusing to provide Plaintiff Haulmark transcripts, upon request. (See ¶¶ 41 and 55 in Complaint); (See ¶¶ 10 and 17 in Tom Day's Memo.); (See the section entitled "State of Kansas is a Proper and Necessary Party in This Case and Can Be Held Liable for Damages" of the Response to Motion) (Docket No. 31)

115.   As a state official attempting to dodge liability, Defendant Tom Day misconstrues the current noncompliant online broadcasting services and the archived audio recordings and videos to be past violations while he is being in noncompliance with Title II of the ADA. (See Page 14, Last Paragraph in Tom Day's Memo.) ("Specifically, while the Complaint refers to past events, the Complaint does not clearly

allege facts demonstrating that Day will take an action or actions to cause injury to plaintiff in the future.")

116.    It is indisputable that Plaintiff Haulmark is *now* excluded from the services, programs, and activities because Defendant Tom Day is holding back the legally-required auxiliary aids and services until Plaintiff Haulmark meets Defendant Tom Day's demands to provide smaller and specific requests to certain legislative elements. As a result, the archived audio and audiovisual recordings and current characteristics of the online broadcasting services continue to be non-compliant with Title II of the ADA. *Hamer* at 1104 has described this pattern as the repeated violations doctrine: "neither of [Title II of the ADA or section 504 of the Rehabilitation Act] state outright when or how often a public entity violates them. They simply command that no qualified individual 'may be excluded' from, 'be denied' the benefits of, or 'be subjected' to discrimination under a service, program, or activity. With that said, that language is phrased in the present tense (albeit in the passive voice), which suggests that a qualified individual who *currently* experiences discrimination under Title II or section 504 suffers an injury." (Citing 42 U.S.C. § 12132 and 29 U.S.C. § 794(a)) (Internal quotation marks and emphasis retained); *Hamer* at 1106 (mentioning "Congress's goal[] of full participation" in enacting the ADA and "[w]hat matters is whether the individual can fully participate *now* in the service, program, or activity." (Emphasis retained))

117.    In opposition to Defendant Tom Day's misapplications of several cases, Plaintiff Haulmark alleges of Defendant Tom Day's knowledge of the obvious need of accommodations for individuals with a hearing disability and that Defendant Tom Day has been aware of the harm to Plaintiff Haulmark if these auxiliary aids and services

are not provided to ensure Plaintiff Haulmark can participate in and enjoy the benefits of the Defendants' services, programs, and activities.

## XI.    CONCLUSION

118.    Tom Day's Memo. acknowledges that Defendant Tom Day had received Plaintiff Haulmark's requests, refuses to follow the ADA Title II provision requiring them not to treat Plaintiff Haulmark in a discriminatory manner by making excessive demands for small requests in order to act. In the matter of the small requests from Plaintiff Haulmark, they were denied.

119.    Plaintiff Haulmark's claim meets the *Ex parte Young* exception on Defendant Tom Day and Defendant Tom Day is not immune from suit under the Eleventh Amendment. Plaintiff Haulmark has shown that Defendant Tom Day has the power to bring the online broadcasting services in full compliance with Title II of the ADA and to produce and provide transcripts for all the archived audio and video recordings.

120.    With an injunction, Plaintiff Haulmark is seeking a court order for Defendant Tom Day to activate the available real-time captioning feature so that Plaintiff Haulmark can equally participate in observing the ongoing legislative proceedings of the 2021 Legislative Session and future sessions through the online broadcasting services while not suffering irreparable harm.

121.    When this litigation comes to a conclusion, Defendant Tom Day and the two other named Defendants are to correct all of their errors and ensure that Plaintiff Haulmark is no longer excluded from any of their programs, services, and activities. This includes the production of transcripts for all audio-only recordings, currently available on the Kansas Legislature website, and all video recordings, currently

available on their YouTube Channel. Both two streaming platforms serve as sources of content containing the legislative proceedings.

122.    Plaintiff Haulmark has shown that 1) Plaintiff Haulmark is a qualified individual with a disability; 2) Plaintiff Haulmark is excluded from the Defendants' services, programs, and activities because of his hearing disability; 3) Defendant Tom Day subjects Plaintiff Haulmark to discrimination because of his disability; 4) Defendant Tom Day refuses to make modifications to provide effective communication and equal participation; 5) Defendant Tom Day is withholding the legally-required auxiliary aids and services from Plaintiff Haulmark; and 6) the discriminatory effect of Defendant Tom Day's actions is with intent.

WHEREFORE, Plaintiff Haulmark requests that this Court deny Defendant Tom Day's Motion to Dismiss in full.

------------------------------------------------------------------

Respectfully submitted this 31th of
March

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 31th of March, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and a copy with postage prepaid was placed in mail of the U.S. Mail to the following:

M.J. Willoughby
Assistant Attorney General
120 S.W. 10th, 2nd Floor
Topeka, KS 66612

/s/ChrisHaulmark
PLAINTIFF, *pro se*