IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,                              )
               Plaintiff,              )
v.                                           )          Case. No. 20-cv-4084-EFM-TJJ
                              )
STATE OF KANSAS, et al.,                     )
               Defendants.             )
_____     )

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The State of Kansas and Legislative Administrative Services ("LAS") submit this Reply in support of their Motion for an Order dismissing this lawsuit, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment as per Fed. R. Civ. P. 56. For the reasons previously stated, not effectively controverted in the Response (Doc. 31), the State's and LAS' Motion to Dismiss or, in the alternative, for summary judgment (Doc. 18-19), should be granted by the Court.

### *Nature of the Matter Before the Court*

The Kansas Legislature is committed to offering reasonable and appropriate accommodations as per the Americans with Disabilities Act and has offered reasonable accommodations to Plaintiff Chris Haulmark (hereinafter, "Haulmark"). In his Response to the Motion to Dismiss, Haulmark states he wants the online captioning system "activated,"[1] something currently underway.[2] On the facts, which are essentially

---

[1] Doc. 31, p.2, ¶¶110, 125, 157.

[2] Although Haulmark's Response is insufficient to put any facts at issue and Haulmark's Affidavit contains nothing specific in support of his claims that he is currently being denied access to any legislative activities, in deference to the Court an update as to the Kansas Virtual Statehouse Project's status is given in the attached Declaration of Thomas Day showing that work on the Kansas VSP continues and progress has been

uncontroverted, this action should be dismissed for lack of jurisdiction based upon the lack of a current case or controversy as either constitutionally or prudentially moot. Alternatively, and assuming the Court had jurisdiction to consider them, Haulmark's claims fail to state a plausible claim for relief or in the alternative, summary judgment granted should be granted for the State and LAS.

### The Material Facts Are Undisputed

The facts stated in the State's and LAS' Memorandum are uncontroverted.

Haulmark admits the majority of the stated facts outright:  1-11, 13-18, 20-26, 32-34, 37-39.

As to the few facts Haulmark does not admit outright, Haulmark's Response fails to comply with D. Kan. 56.1, including 56.1(b)(2), 56.1(d), and 56.1(e). With Defendants' filing, Haulmark was provided with a Notice to Pro Se Litigant, informing him of the applicable rules.[3] Further, although Haulmark attached an Affidavit to his Response, it is not tied to any of the stated facts as required by D. Kan. 56.1(b)(1), (b)(2), and accordingly, may be disregarded. Under Fed. R. Civ. P. 56(e)(2) and D. Kan. 56.1(a), Defendants' Statement of Facts may and should be deemed admitted by the Court.

Haulmark attempts to controvert Paragraph 12, but his comment about a separate unrelated request is non-responsive to the particular fact stated. Paragraphs 12 stated that "the Complaint does not reflect that Haulmark responded to Day's offer to produce specific transcripts of interest to him; Haulmark did not respond to Day's offer to produce specific transcripts of interest to him. *See* Doc. 1; Day Dec. at ¶ 22." The context of the

---

in the form of improved captioning within 30-60 minutes of the proceeding's completion through WebEx and real-time further improved captioning to come within the month.
[3] Doc. 20.

stated fact was Day's November 15, 2019, offer in response to Haulmark's November 1, 2019 request (Defendants' Facts 9-11; Plaintiff's Exhibit 17): "[w]hile the November 1, 2019, request for hundreds of committee meeting transcriptions under KORA is denied, we would be happy to consider a narrowed request for committee meetings of particular interest to you." The April 2020 request for the transcript of the LCC meeting was not included in the November 2019 request and is nonresponsive to Fact 12 as per D. Kan. 56.1(e).

Similarly, the reference to a request "for the transcription of" the April 8, 2020 LCC meeting is nonresponsive as per D. Kan. 56.1(e) as to Fact 19, which dealt with Haulmark's January 14, 2020 request (Defendants' Facts 16-18).

Haulmark attempts to controvert paragraphs 27 to 31 about the Kansas VSP, but fails in his duty under D. Kan. 56.1(e) to "fairly meet the substance of the matter asserted," and to "specifically set forth in detail the reasons why" a matter cannot truthfully be admitted or denied as required. Haulmark's Response fails to comply with D. Kan. 56.1. Haulmark presents no evidence that would controvert the facts stated.

For example, paragraph 27 states: "On July 15, 2020, Tom Day and Legislative Chief Information Technology Officer Alan Weis made the first of several presentations to the Legislative Joint Budget Committee regarding the Virtual Statehouse Project ("VSP"), including the statement, ""[w]e are working . . . to ensure accessibility is achieved." Paragraph 27 cites Plaintiff's Exhibit 16, which contains the quoted statement. Haulmark's Response that he "cannot admit or deny" the fact stated (which appears in his own exhibit), is insufficient to meet the requirements of D. Kan. 56.1(e) which provides that responses "must fairly meet the substance of the matter asserted," and a response

"must specifically set forth in detail the reasons why" a matter cannot truthfully be admitted or denied, something the Response fails to do.

Similarly Haulmark's Response that he "cannot admit or deny" the simple statement in Paragraph 28 that: "On September 16, 2020, the LCC met and approved proceeding with the Kansas Virtual Statehouse Project. Day Dec., at ⁋ 7, Day Exh. D," fails to comply with D. Kan. 56.1(e).  Haulmark's statement that no "auxiliary aids" were provided for the meeting is irrelevant and immaterial to the fact stated, but notably, Haulmark does not state that he made a request for accommodation in advance of the meeting as per LAS' accommodations policy. His comment about Exhibit D goes beyond the fact stated in paragraph 28, and is irrelevant and immaterial to the stated fact.

In response to paragraph 29, that "[i]n September 2020, the VSP was reviewed by the Legislative CITO as per ITEC policy 12.0 [sic][4] and state statute, K.S.A. 75-7208(a), and submitted to the State Information Technology Council. Weis Dec., at ⁋ 3; Weis Exh. A.," Haulmark states he "cannot admit or deny this fact whether Alan Weis is qualified to ensure that the Virtual Statehouse Project is compliant with the ITEC policy. . . pursuant to K.S.A. 75-7208(a)."  This response fails to comply with D. Kan. 56.1(e) as Haulmark fails to fairly meet the substance of the matter asserted in the simple statement which was that the Legislative CITO (Alan Weis), reviewed the project as per policy and statute and submitted it to the State Information Technology Council.  Haulmark's Complaint alleges that Weis is the Legislative Chief Information Technology Officer. (Doc. 1, at ⁋ 57). By virtue of holding that position, Weis is the person designated by statute to approve the project, as stated. It is a matter of law, not fact.  Further, Haulmark's reference to being

---

[4] ITEC Policy 1210, Exhibit B to Alan Weis' Declaration, was erroneously referred to as ITEC Policy 12.0 in Defendants' filing. The undersigned apologizes for the error.

unable to admit or deny the simple stated fact is insufficient to comply with D. Kan. 56.1(e) that the response "specifically set forth in detail the reasons why," something the Response fails to do.

Haulmark's Response admits paragraph 30 ("On September 25, 2020, upon LCC approval, a request for proposals was issued regarding the VSP, including a deliverable of ADA accessibility. Day Dec., at ⁋ 8; Day Exh. E"), including an admission that the Kansas VSP "is devoted to accessibility." The additional commentary on the scope of the project is irrelevant and immaterial to the fact stated and may be disregarded.

Haulmark's Response fails to controvert as required by D. Kan. 56.1 and thus admits paragraph 31 that: "In October 2020, vendors did demonstrations for the VSP. Robert Cooper of the Kansas Commission for the Deaf and Hard of Hearing was invited and offered input. Day Dec., at ⁋ 9." Haulmark's Response is insufficient to comply with D. Kan. 56.1(e) requirements, including the duty to fairly meet the substance of the fact asserted and to specifically set forth the reasons why a matter may not be admitted or denied. The fact that Haulmark was not personally present to witness the event stated is insufficient. Haulmark's additional commentary is irrelevant and immaterial to the fact stated. Haulmark's reference to discovery is insufficient to satisfy the requirements of Fed. R. Civ. P. 56(d).

Haulmark's Response fails to controvert the stated fact in paragraph 35 that: [a]fter the VSP is fully implemented, there will be no audio only streams of legislative activities and the VSP will offer real-time closed captioning with the streaming through Sliq rather than through YouTube. Weis Dec. at ⁋⁋ 6, 8." The stated fact refers to the state of affairs, "after the VSP is fully implemented;" Haulmark has been provided with ample documentation about the VSP and its requirements and notably, failed in his duty to come

forward with evidence disputing the fact stated. Haulmark's Response makes assertions of fact but without specific references to the record as required by D. Kan. 56.1(b)(1)-(2), (d); thus, those assertions may and should be disregarded.

Haulmark's Response fails to controvert with evidence Defendants' Fact # 36, which states: "Haulmark has not made a request for accommodation to Day in the 2021 Legislative Session." Haulmark's Response argues that the December 16, 2020 Complaint should be considered a request for accommodation. However, Haulmark admits that the Legislature has an accommodations policy (Defendants' Fact # 1), which provides that requests for accommodation be made directly to Day, which this Complaint obviously was not. It was also not submitted on or after January 11, 2021, the start of the current legislative session.[5]

Haulmark's Response admits Defendants' Fact # 40 but argues that he did not use the word, "adopt," in the cited pages of the Complaint (Doc. 1, at pp. 25-27); however, the difference between "develop" and "adopt" is not material. To the extent it can be understood, the Complaint speaks for itself as to the relief requested.

### Plaintiff's Statement of Facts May Be Disregarded as Unsupported

Haulmark's Response contains a section entitled, "Plaintiff's Statement of Material Facts," at pages 8-9, with numbered paragraphs 41-58. However, paragraphs 41-58 are not supported with references to the record as required D. Kan. 56.1(b)(2). The stated "facts" are irrelevant and immaterial, consisting for the most part of arguments or legal conclusions or paraphrased or reframed statements from the Complaint. Because the

---

[5] Kslegislature.org/li/documents/2021_deadlines.pdf, at 2, subject to judicial notice as per Fed. R. Evid. 201.

proposed additional facts are not supported in the manner required by D. Kan. 56.1(b)(2), the Reply need not respond to the facts as would otherwise be required by D. Kan. 56.1(c).

Haulmark attaches his own Affidavit as Exhibit 1, but does not tie that Affidavit to any of the facts stated in Defendants' Motion or to his own proposed additional facts. The Affidavit consists of conclusory assertions about things Haulmark has already stated in the Complaint,[6] irrelevant and immaterial statements,[7] and statements lacking in personal knowledge contrary to Fed. R. Civ. P. 56(c)(4), D. Kan. 56.1(d), and Fed. R. Evid. 602.[8] The affidavit may and should be disregarded. The same is true of the color-coded chart attached as Exhibit #2 which is not tied to any of Defendants' Stated Facts or to Plaintiff's additional facts. It also lacks foundation. Finally, it is also immaterial to the present motion and Haulmark does not explain its relevance.

### Plaintiff's Argumentative Statement of the Nature of the Matter

At pages 9-11, Haulmark has a series of numbered paragraphs, but if they are intended as facts, the paragraphs don't conform to D. Kan. 56.1, which requires a section regarding facts at the beginning of a memorandum. These paragraphs, which consist of

---

[6] For example, paragraphs 1-5 appear in the Complaint, Doc. 1, page 1 (1, 2), Doc. 1, ⁋ 11 (3-5). Paragraph 7 is a paraphrase of paragraph 20 in the Complaint, referring to the YouTube captioning lacking "errorless accuracy," etc. Paragraphs 18 and 21 consist of an argumentative paraphrase about Haulmark's written requests for records and the responses thereto; both of which speak for themselves regarding their respective contents. Plaintiff's # 9 is irrelevant but not entirely consistent with paragraph 11 of the Complaint which refers to Haulmark's political activities being conducted since 2017; paragraphs 11 and 12 are stated in the Complaint at paragraph 25.

[7] Paragraphs 6, 8, 10, 20, 22-26 are irrelevant and immaterial to Defendants' Motion. Notably as to paragraph 23, Haulmark remains non-specific about the specific legislative activities/bills which were of interest to him in which he was purportedly unable to participate.

[8] Haulmark's Affidavit fails to show any basis in personal knowledge as required for paragraph 19, which states "[t]he Defendants continued to refuse to enable the function of real-time captioning for their audiovisual content." This statement wrongly presumes that this functionality existed, which it did not prior to the Kansas VSP.

argumentative statements for the most part, are also not supported in the manner required by D. Kan. 56.1; therefore, no particular response is required.

As to paragraph 60, Defendants certainly do dispute that Haulmark's requests were "reasonable" or "appropriate."[9] One need only look at Day Exhibit L, which consists of Haulmark's November 1, 2019, letter and the **13-page attachment** (Doc. 19-2, at 171-190), reflecting a request for professional transcriptions that "must contain the *errorless accuracy*, uniformity of style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and includes speaker identification and non-speech audio information with clarity,"[10] for more than 900 separate proceedings. Haulmark's November 1, 2019 request is the opposite of reasonable from any objective point of view.[11]  Haulmark's subsequent similar demands for errorless transcriptions of every other legislative proceeding, transcriptions he insisted by "100% accurate,"[12] is not reasonable, or even possible, but an insistence upon perfection not required by the ADA.[13]

### Plaintiff's Arguments About Online Broadcasting Services

At pages 11-12, Haulmark incorporates by reference arguments made for the first time in a Reply Brief (Doc. 27, paragraphs 16-24) in support of his requested temporary

---

[9] 35 C.F.R. Pt. 35.160(a)(1), (b)(1).

[10] Haulmark November 1, 2019, letter, at page 7, included in Day Exhibit L, Doc. 19-2 at 177 (emphasis added).

[11] *See, e.g., US Airways, Inc. v. Barnett,* 535 U.S. 391, 401 (2002) (the ADA does not "demand action beyond the realm of the reasonable," holding that an accommodation that required an employer to disregard a seniority system was not reasonable).

[12] *See, e.g.,* Day Exhibit M, at 195.

[13] *Cropp v. Laramie County, Colorado,* 793 Fed. Appx. 771, 784-85  (10th Cir. 2019)(citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7  (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication ... substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs,* No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva*).

restraining order/preliminary injunction. Statements about the past are not material to Haulmark's request for mandatory prospective injunctive relief against circumstances Haulmark admits were changed by COVID and by the $2.74 million Kansas Virtual Statehouse Project.  Although not clear in his initial request, Haulmark admits that the only relief he was trying to request in his motion for temporary restraining order/preliminary injunction was that "the available function of the real-time captioning be activated within the online broadcasting."[14] While there is no evidentiary basis for stating that the function was available prior to the Kansas VSP, it is undisputed that when fully implemented, the Kansas VSP will eliminate the audio-only streams complained of by Haulmark and provide real-time closed captioning.[15]

## THE ACTION SHOULD BE DISMISSED FOR LACK OF JURISDICTION

The relevant facts, including jurisdictional facts, are undisputed.  The Kansas Virtual Statehouse Project is designed with the goal of ADA-compliance as per ITEC Policy 1210, the contractual deliverables, the input of the State ADA Coordinator and Robert Cooper of the Kansas Commission for the Deaf and Hard of Hearing, the LCC's December 2019, resolution and the evidence submitted. Haulmark's Response does not controvert these facts.

Haulmark's Response does not directly respond to the State's and LAS' arguments and authorities about why this action should be dismissed for lack of jurisdiction except for a couple of references to the voluntary cessation concept with little analysis to speak

---

[14] Doc. 27, at p.31, ¶ 65.

[15] Although Haulmark at times refers to the old, outdated archived files, any relief as to those files would be retrospective in nature and is not the subject of a mandatory prospective injunction.  Since the 2021 Legislative session began with entirely new legislation, the archived files are not part of any current legislative proceeding in which Haulmark might seek to participate. The Legislature retains the option to remove the outdated archived files from the Internet entirely as opposed to transcribing thousands of files that are not part of any current legislative process.

of and no evidence in support.[16]   The "voluntary cessation" concept does not defeat Defendants' mootness argument which compels dismissal of this action, particularly as to the claims for mandatory prospective injunctive and declaratory relief.

The "voluntary cessation" mootness exception applies to a "defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time."[17] The Tenth Circuit has found the defendant's burden on voluntary cessation is met and a challenge to government policy moot when governmental officials discontinue a challenged practice and the change seems "genuine."[18]   "[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."[19]   Even where a change or promise of change does not support constitutional mootness, it will support prudential mootness; "once the plaintiff has a remedial promise from a coordinate branch in hand, [courts] will generally decline to add the promise of a judicial remedy to the heap."[20]

Haulmark admits that the real-time closed captioning provided through the Kansas VSP will resolve the issues from his point of view once "activated."[21] Given the $2.74 million already expended, the signed contract, the considerable work already performed since November 2020, and the Legislature's stated commitment to enhanced

---

[16] The Response cites *EEOC v. CollegeAmerica Denver, Inc.,* 869 F.3d 1171, 1173-74 (10th Cir. 2017) as stating a general rule regarding mootness. However that case is not on point here for several reasons, including that the defendant, who was not a government actor, essentially reneged on its assertions that its policy at issue had been changed by asserting a claim against the Plaintiff employee, the fact relied upon by the Circuit in finding the case not moot. The case illustrates the factual nature of these determinations. Haulmark's Affidavit provides no evidence in support of a claim that the action is not in fact moot.

[17] *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1115 (10th Cir. 2010) (citing *Chihauahuan Grasslands Alliance v. Kempthorne,* 545 F.3d 884, 892 (10th Cir. 2008)).

[18] *Brown v. Buhman,* 822 F.3d 1151, 1167-68 (10th Cir. 2016); *Silvery Minnow,* 601 F.3d at 1116-18.

[19] *Silvery Minnow,* 601 F.3d at 1117 and n.15 (quotation omitted).

[20] *Winzler v. Toyota Motor Sales, U.S.A., Inc.,* 681 F.3d 1208, 1210 (10th Cir. 2012)

[21] Doc. 31, p.2, ¶¶110, 125, 157.

accessibility which began in December 2019, prior to this action and Plaintiff's previous federal filing,[22] it doesn't make any sense to think that the Legislature would throw all of this work and money out the window now and not proceed to the project's stated goal – enhanced ADA accessibility. Although the Response states the Project has been "fruitless" so far,[23] the Project has not yet been completed;[24] nor does the Response cite any evidence in support of its claim. In fact, since mid-February 2021 the captioning has already been improved in quality and rendered within 30 to 60 minutes via WebEx,[25] a considerable improvement from Haulmark's complaints about YouTube. Further, the Tenth Circuit has emphasized that when government officials promise to act upon concerns, those promises should be taken seriously and accorded due deference.[26]  There are several instructive cases indicating dismissal is appropriate here under either constitutional or prudential mootness doctrines.

In *Winzler,* the Tenth Circuit held that an action seeking an order that Toyota notify all relevant owners of 2006 Corollas and Matrixes of an engine control module defect and then create a fund to pay for the repairs became moot when the automaker announced a nationwide recall of the cars at issue, stating the action was moot "because our plaintiff seeks equitable relief already being provided by coordinated branches of government and she offers no reason why the courts should duplicate those efforts."[27] In the opinion written by Judge now Justice Neil Gorsuch, the Circuit emphasized that in

---

[22] Doc. 1, at ¶ 56 (referring to 20-cv-4033-SAC-TJJ).
[23] Doc. 31, at ¶ 130.
[24] Declaration of Alan Weis, 6 (Doc. 19-3); Declaration of Thomas Day, attached.
[25] Declaration of Thomas Day, attached.
[26] *See, e.g., Winzler,* at 1210 (citing 13 C. Wright, *et al, Federal Practice and Procedure* 3533.1 (3d Cir. 2008)).
[27] *Id.*, at 1209.

such circumstances the Court's efforts lack practical effect or utility.[28] The opinion also noted the serious weight given to governmental promises, not only because they are "generally trustworthy," but also "affording a judicial remedy on top of one already promised by a coordinate branch risks needless interbranch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources," and also "risks. . . the entirely unwanted consequence of discouraging other branches from seeking to resolve disputes pending in court."[29] Although Judge Gorsuch was writing in the context of relief being given by the federal executive branch, his comments are as applicable, or more so, in the context of relief being promised by a branch of state government in our federalist system of dual sovereigns.

In dismissing for lack of jurisdiction a prisoner's case requesting declaratory and injunctive relief regarding medical treatment in a federal prison facility, Judge John W. Broomes of this District recently discussed the mootness doctrine in *Crews v. Sawyer*,[30] as follows:

> Federal court jurisdiction requires a live case or controversy, making mootness a threshold inquiry. *United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015) (quoting *In re L.F. Jennings Oil Co.*, 4 F.3d 887, 889 (10th Cir. 1993)). Litigants must maintain a personal stake in the lawsuit and its outcome, or a case or controversy ceases to exist. A personal stake disappears if a litigant's injury is healed by an event and prospective relief is the only relief sought. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Essentially, the court asks, "[H]ave circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief[?]" *Id.* If yes: the case is moot. *Brown v. Buhman*, 822 F.3d 1151, 1165–66 (10th Cir. 2016). ...
>
> When a defendant voluntarily ceases conduct, dismissal on mootness grounds is only appropriate "if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (citation omitted).

---

[28] *Id.*, at 1210.
[29] *Id.*, at 1211.
[30] No. 19-2541-JWB, 2020 WL 1528502, **3-4 (D. Kan. Mar. 31, 2020)

This limit "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id.* (internal quotation marks omitted). And the party claiming mootness based on cessation of conduct bears a heavy burden to show "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 1116 (citation omitted). When the government is the party engaging in self-correction, however, this burden is lighter. *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) ("[G]overnment 'self-correction provides a secure foundation for mootness so long as it seems genuine.'"); *see also Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("In practice, however, [the] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case.").

In applying the standards to the facts and claims in that case, Judge Broomes found dismissal appropriate based upon mootness, finding that the government defendants were doing things differently, and that the change in directions seemed "genuine."[31] Judge Broomes found that plaintiff's concerns that the federal defendants might not give him the medical treatment he wished in the future too speculative to avoid dismissal.[32] The Court concluded that there was no basis for injunctive or declaratory relief, no case or controversy, and no basis for jurisdiction. It found it could not "accord [plaintiff] prospective relief that would have any effect in the real world."[33]

Similarly here, there is no reason to believe that the Legislature's actions to further accessibility are not "genuine." And no reason to believe the extensive measures undertaken as part of the Kansas VSP were undertaken solely to try to moot Haulmark's lawsuit. For one thing, the LCC adopted its December 2019, resolution to improve ADA

---

[31] *Id.* at *4 (quoting *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017)).

[32] *Id.* (citing *Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("[T]he 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy. A case 'cease[s] to be a live controversy if the possibility of recurrent of the challenged conduct is only a "speculative contingency"'") (citations omitted).

[33] *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)).

accessibility prior to either of Haulmark's federal lawsuits being filed.  Haulmark himself argues that the Kansas VSP is not because of him, but rather has a lot of aspects the Legislature is interested in in addition to improved accessibility. A lot of time, money and effort has been expended on this project. Any concern that the Legislature might not continue with this project is too speculative to avoid dismissal. An order that LAS "activate"[34] the system is not an order that would have effect in the real world, including because the system is already being activated.[35]

*Brown v. Buhman*[36] is instructive. In *Brown,* the Tenth Circuit reviewed a district court decision granting an injunction against a Utah County Attorney and denying the County Attorney's motion to dismiss, holding that the case should have been dismissed as moot when the County Attorney adopted a policy change regarding bigamy prosecutions.[37] The Plaintiffs in the case were a plural family, with Mr. Brown legally married to one wife and "spiritually married" to three other "sister wives."[38] After the airing of a reality television show featuring the Brown family, the local police department opened an investigation pursuant to Utah's bigamy statute.[39] Because the Browns feared prosecution, they moved to Nevada.[40] They then filed suit in Utah federal district court, asserting that the bigamy statute infringed on their First and Fourteenth Amendment rights.[41] In response, the Utah County Attorney adopted a formal policy providing that it would prosecute individuals for bigamy only in certain limited circumstances, which did

---

[34] Doc. 31, p.2, ¶¶110, 125, 157.
[35] *See* Declaration of Thomas Day, Exhibit A hereto.
[36] 822 F.3d 1151, 1166 (10th Cir. 2016))
[37] 822 F.3d at 1155-78.
[38] *Id*. at 1156.
[39] *Id*.
[40] *Id*.
[41] *Id*. at 1155-57.

not apply to the Browns.[42] The district court denied the Utah County Attorney's second motion to dismiss the case as moot, finding that the County Attorney had adopted the new policy strategically just to render the case moot and that the policy could be reversed in the future by a successor County Attorney. The Tenth Circuit reversed the district court's decision, holding that once the Utah County Attorney's Office adopted the new policy, there was no longer a live dispute between the parties.[43]

*Prison Legal News v. Fed. Bureau of Prisons*,[44] is another example. There, the Tenth Circuit held that the plaintiff's constitutional claims challenging the Federal Bureau of Prison's ("BOP") rejection of eleven publications were rendered moot by the BOP's revision of its institutional policies.[45] Plaintiff complained that, among other things, the BOP violated its First Amendment rights by not allowing inmates at the prison to receive certain issues of an inmate publication.[46] After the case was filed, the BOP made several formal revisions to their censorship policies that eliminated the former practice of rejecting publications and ultimately delivered the rejected publications to the inmate subscribers.[47] The BOP moved for summary judgment on all claims, relying on a declaration from a BOP warden attesting that the prior practices were prohibited and the BOP was to continue to abide by the new policy under which the publications would no longer be rejected.[48] The district court granted the BOP's motion, finding that "interim developments had mooted each of [plaintiff's] claims."[49] The Tenth Circuit affirmed the

---

[42] *Id.* at 1155.
[43] *Id.* at 1179.
[44] 944 F.3d 868, 879-80 (10th Cir. 2019),
[45] *Id.* at 873.
[46] *Id.* at 873.
[47] *Id.* at 876-77.
[48] *Id.* at 877.
[49] *Id.*

district court's decision, holding that "significant developments leading up to the parties' cross-motions for summary judgment rendered this case moot," where the Warden declared under penalty of perjury that the former, challenged policy would not be applied going forward.[50] The Circuit rejected Prison News' argument that the case was not moot because of the voluntary cessation exception to mootness, "because these developments satisfy the BOP's "formidable burden" to make "clear the [BOP's] allegedly wrongful behavior could not reasonably be expected to recur."[51]

Here, we now have not only statements of policy by the LCC, including its December 2019, resolution regarding improved accessibility, but considerable actions demonstrating follow-through on the project, culminating in a signed contract and project implementation beginning in November 2020.

*Unified School Dist. No. 259 v. Disability Rights Center of Kansas,[52]* is also instructive. There, the school district filed seeking a declaratory judgment that certain records requested by the Disability Rights Center ("DRC") need not be produced.[53]  On cross motions for summary judgment, the DRC withdrew its record request.[54] The district court dismissed the action as moot, finding that it constituted a request for an advisory opinion.[55] USD 259 appealed.[56] On appeal, USD 259 argued the case was not moot since DRC might make similar records requests in the future.[57] The Circuit held that the case did not fit within the "voluntary cessation" exception to mootness for reasons including

---

[50] *Id.* at 882.
[51] *Id.* (citing *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016)) (internal quotations omitted).
[52] 491 F.3d 1143 (10th Cir. 2007)
[53] 491 F.3d at 1146.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*, at 1147.

that any future instances of "wrongful behavior" might be "quite different than the complained-of example that already has ceased."[58] The Circuit also noted that "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed," and the relief "would have no 'effect in the real world,'" and would "essentially be 'an advisory opinion.'"[59] The Court held USD 259's appeal was properly dismissed as moot "because USD 259 does not need any relief."[60]

Here as in *USD 259*, *Winzler, Crews, Brown* and *Prison Legal News*, Haulmark does not need any relief.  He admits his issues are resolved when the Kansas VSP is "activated."[61] For the Court to order LAS to do what it is already doing has no effect in the real world, as the Circuit has repeatedly held.  Haulmark's claims are constitutionally moot, as argued previously. Even if the Court were to have any questions or feel there is a "flicker of life . . . left"[62] this action is certainly prudentially moot since the matter is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant."[63] The prudential mootness doctrine has "particular applicability . . . where the relief sought is an injunction against the government."[64] Under these circumstances here where the Legislature has accommodated Haulmark's requests for qualified interpreters and engaged in a $2.74 million project to provide real-time closed captioning on

---

[58] *Id.*, at 1150.

[59] *Id.* (citations omitted).

[60] *Id.*

[61] Doc. 31, p.2, ¶¶110, 125, 157.

[62] *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (citing 13B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3533.1 (3d ed. 2008)).

[63] *Silvery Minnow*, 601 F.3d at 1121-22 (quoting *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir.1997)).

[64] *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir.1997).

legislative proceedings streamed on the Internet, dismissal is the only equitable solution.[65]

Given the Kansas VSP which will provide real-time closed captioning on legislative proceedings streamed on the Internet similar to what Haulmark has acknowledged is effective in other states,[66] Haulmark cannot show the injury required for standing for injunctive relief. While Haulmark makes an attempt to distinguish Defendants' cited case of *Tyler v. Kansas Lottery,*[67] on the ground that Haulmark has not yet moved out of Kansas, that case wherein Judge Richard Rogers of this District dismissed Tyler's ADA lawsuit seeking injunctive relief against the Lottery for lack of standing noting the different requirement for standing for injunctive relief, recited that a Plaintiff must demonstrate standing by demonstrating an injury which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that the conduct complained of will cause the injury alleged; and 3) that it is likely, not speculative, that the injury will be prevented by a favorable decision."[68] The Court also cited *City of Los Angeles v. Lyons* for the proposition that "plaintiff must demonstrate that he himself faces a real and immediate threat of future harm, not a conjectural or hypothetical threat," and a more extensive showing is required to maintain standing for injunctive relief.[69] In addition to the fact that Tyler had moved out of State, Judge Rogers also noted that the Lottery had made changes in the direction of enhanced ADA compliance

---

[65] *Winzler,* at 1210.

[66] *Compare Weis Dec.* at ¶¶ 6, 8, *with* Doc. 1, ¶ 18.

[67] 714 F. Supp. 2d 1220 (D. Kan. 1998).

[68] *Id.,* at 1224 (citing *See State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir.1998) *quoting Bennett v. Spear,* 520 U.S. 154, ––––, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997)).

[69] *Id.* (citing 461 U.S. at 105). *See also* O'Shea v. *Littleton,* 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.")).

(although still 50% of lottery retailers were still not fully ADA-compliant). [70] Similarly here, Haulmark's complaints about the past do not create standing for a mandatory prospective injunction. Redressability is also lacking for the reasons set forth in the Motion and briefly revisited above herein.

Because the Court has no jurisdiction, the Court need not address the remaining arguments but may and should dismiss this action for lack of jurisdiction.

## Haulmark's Arguments Fail to Defeat the Motion to Dismiss

Assuming the Court finds it has jurisdiction to consider other arguments, Haulmark's Response, a series of conclusory and argumentative statements, unsupported by facts or law, is insufficient to defeat the State's and LAS' Motion.

In support of his claim that Title II was violated, Haulmark's Response focuses on a single request for "the transcription" of the April 8, 2020 LCC meeting, a request that was sent after the meeting was held. [71]  Haulmark does not include Day's Response within Plaintiff's Exhibit 13, but it is included in Exhibit 15.  Notably, Day did not deny the request for "the transcription," which reads as though it is a request for a document already in existence. [72]   Rather, Day stated there was no transcript, but if a transcript became available, it would be provided. [73] Haulmark did not follow up on this request, [74] which Day noted in his responses came in during a time of unprecedented national and state emergency, early in the days of the COVID shutdown.  While Haulmark argues that

---

[70] *See Shotz v. Cates,* 256 F.3d 1077, 1082 (11th Cir. 2001) (affirming dismissal of an ADA complaint seeking changes in accessibility to a courthouse where the Plaintiffs did not show a likelihood of future injury, finding allegations of past injury insufficient).

[71] Plaintiff's Exhibit 13, at page 27 (April 8, 2020 email sent at 4:39 p.m.).

[72] Plaintiff's Exhibit 13, at 27.

[73] Doc. 1, at ¶ 55; Plaintiff's Exhibit 15.

[74] Haulmark's April 13, 2020 email included in Plaintiff's Exhibit 13 does not specifically refer to the April 8, 2020, LCC meeting, referring to his request for transcripts of every proceeding in the already concluded 2020 Legislative proceeding.

Day should have interpreted the request for the transcript as an ADA accommodation request, it wasn't clear. It also did not make sense as to what exactly was being accommodated as the meeting in question related solely to the COVID emergency, not to other legislation; the minutes are available on the Internet.[75]  At the time Haulmark wrote, the meeting had already been concluded and was no longer at issue.[76] Although Haulmark complains now about how the meeting was noticed, the Complaint does not allege that he requested accommodation for the meeting in advance or even tried to make such a request, which he certainly could have emailed to Day. For example, the Complaint refers to a March 23 email which does not include a request for accommodation.[77] Further, since the Legislature had already adjourned early due to COVID in mid-March, the request did not relate to any pending bills or other ongoing legislative activity.  In the April 10, 2020, letter, Day reiterated the LCC's December 2019, motion, his prior meetings with Haulmark, and that he was continuing to move forward with the process of implementation despite the COVID emergency.[78]

### The Complaint Fails to State a Plausible Claim against "the State"

In response to this section of the Motion to Dismiss, the Response makes several arguments, none of them viable.

First, Haulmark concedes the obvious:  that he has no claim against the State itself. There are no facts in the Complaint showing that "the State" denied Haulmark anything;

---

[75] See attached Exhibit B, available at
ksrevisor.org/docs/LCC_Packet20200916/ItemN01_draft_minutes4-8-2020.pdf subject to judicial notice herein as per Fed. R Evid. 201.
[76] Although immaterial, Haulmark's statement that no advance notice was given of the LCC meeting is incorrect and unsupported by evidence.
[77] Doc. 1, at ¶ 54; Plaintiff's Exhibit 13 (March 23, 2020 email does not contain a request for accommodation or the LCC meeting).
[78] Plaintiff's Exhibit 15.

nor were the activities referred to in the Complaint anything other than legislative activities. The Complaint does not allege that Haulmark ever contacted the State ADA Coordinator, Anthony Fadale, or filed a grievance pursuant to the State's ADA Grievance Policy.[79] Haulmark argues the State is a proper defendant because it enacted the KORA and the KOMA. However, those state statutes are entirely separate from the ADA.[80] The only "Cause of Action" referenced in the Complaint is under Title II;[81] no state law issue was properly pled in the Complaint. Moreover, any claim against the State of Kansas based upon state law cannot proceed in this Court because of the Eleventh Amendment.[82]

Haulmark takes issue with the citation to authorities under Section 504, but the Tenth Circuit has stated that law under the Rehabilitation Act can be considered in construing ADA claims.[83] Although not controlling because the statutory language is somewhat different, the interpretation of the scope of law in this context is instructive and persuasive. The Response does not effectively distinguish Defendants' cited cases nor their rationale. While the State may be *a* public entity, it is not *the* public entity whose activities are at issue in the Complaint. Here, only legislative activities are at issue. Haulmark's interpretation essentially rewrites the statute to eliminate the requirement

---

[79] Publicly available at https://admin.ks.gov/docs/default-source/ops/dofa-personnel/adagrieveance.pdf?sfvrsn=9297cfc7_14 and subject to judicial notice herein as per Fed. R. Evid. 201.

[80] Haulmark continually conflates the KORA with the ADA, as well as engaging in a highly hypothetical discussions in paragraphs 78-87 of the Response. The KORA is separate from the ADA and has different requirements. As an entity subject to both state and federal law, LAS responded as to both laws, denying the request as to KORA, but leaving the door open under the ADA, offering to consider a narrowed request and keeping the door open to continued discussions with Haulmark as to what was needed for effective accommodation under the ADA as shown in Plaintiff's Exhibits 7, 12 and 15. Haulmark was given more favorable treatment than a usual requestor under the KORA, which allows a public agency to recoup its costs as per K.S.A. 45-218(f), 45-219 (2019 Supp.), and 45-220 (2019 Supp.). Day never stated in his Responses that he was charging Haulmark for anything; no "surcharge" was imposed. *See* Plaintiff's Exhibits 7, 12, 15.

[81] Doc. 1, at p.20.

[82] *Pennhurst State School and Hosp. v Haldeman,* 465 U.S. 89, 106 (1984).

[83] *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018) (citing *Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 608 n.7 (10th Cir. 1998)).

that the activities at issue be those of the public entity involved.[84]   Haulmark cites no
authority in support of his claim that "public entity" for purposes of a Title II lawsuit
sweeps beyond the entity whose activities are at issue. Although Haulmark generally
argues that the State is a necessary party, he does not articulate why, factually or legally.

### The Complaint Fails to State a Plausible Claim against LAS

Haulmark's Response concedes the limited authority of LAS as an administrative
office acting at the direction of the LCC by statute. Haulmark argues that because Tom
Day is the person designated to respond to ADA requests on behalf of the Legislature as
per the Notice, that is sufficient. But the question is, does LAS have the authority to grant
the relief sought by Haulmark in Section IV of his Complaint, relief, which although broad
and vague, seeks policy "develop[ment]" not just implementation, and expenditure of
significant amounts of money for the hardware, software and other costs necessary to
achieve real-time closed captioning of legislative proceedings?  Although Haulmark refers
to this project not proceeding quicker because of Day's "parsimonious nature,"[85] there is
nothing to indicate Day or LAS had authority to proceed with significant expenditures
without LCC approval. To the contrary, the record shows that the LCC was the entity that
acted to authorize the $2.74 million Virtual Statehouse Project, beginning with its
resolution in December 2019 authorizing Day to proceed, facts admitted by Haulmark's
Response.[86]

### Haulmark's Complaint Fails to State a Plausible Title II Claim;

---

[84] 42 U.S.C. 12132 (stating "no qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity").

[85] Doc. 31 at ¶ 105.

[86] Defendants' Facts 14, 15, 30 32, uncontroverted in the Response. Although Haulmark refers to discovery,
he has not complied with Fed. R. Civ. P. 56(d), which requires that a party seeking to avoid judgment on
this ground must respond by affidavit specifically pointing out the discovery at issue, a procedure not
complied with in the Response.

**Alternatively, Summary Judgment for Defendants is Appropriate**

Haulmark's Response does not argue that he is entitled to an interpreter without complying with the public entity's prior notice requirements, conceding that he was not discriminated against on January 14, 2019, when he asked for an interpreter on-the-spot, without any advance notice.

The Response does not distinguish the authorities cited in Defendants' Motion to the effect that Haulmark's claim that he was discriminated against because he was not provided exactly what he asked for --- hundreds of professionally produced "errorless" transcripts or captions in perfect English – fails to state a plausible Title II claim. Haulmark cites *Hamer v. City of Trinidad*,[87] for general propositions of law at paragraphs 106-08, but he concedes that case is about a statute of limitations issue and inapposite here. Haulmark's reference to *Pierce v. District of Columbia*,[88] is similarly inapposite for reasons including that it arose in the context of the deaf Plaintiff being held in custody in a prison facility for 51 days, a situation which the D.C. district judge emphasized was a situation of heightened ADA responsibility.[89]  As he acknowledges, Haulmark is not in State custody. While Haulmark asserts it should have been "obvious" to Day "for captioning of the online broadcast services to be required," Haulmark cites nothing in support, factually or legally.[90] Knowing an individual is disabled  is not the same as

---

[87] 924 F.3d 1093, 1097 (10th Cir. 2019)
[88] 128 F. Supp. 3d 250, 269 (D.D.C. 2015).
[89] *Id.*, at 269.
[90] Haulmark's citation to *JV v. Albuquerque Public Schools,* does not help him for reasons including there the Circuit affirmed summary judgment for the schools on a disabled student's claim that the school violated Title II in various respects, rejecting the plaintiff's argument that the need for accommodation was "obvious" which under the Circuit's analysis required showing quite a lot.  813 F.3d 1289, 1299-1300 (10th Cir. 2016).  Haulmark has not shown that Day or LAS had knowledge that Haulmark was denied the ability to participate in legislative activities. For example, the first letter directly to Day was dated November 1, 2019, a letter to which Day responded. Haulmark provides no proof that LAS or Day received any prior letter, including the February 18, 2019, letter which Day stated he never saw at the time.

knowing that a specific individual needs accommodation in order to participate in a public entity's services.[91]

At paragraph 112, Haulmark makes the assertion, "[b]ecause Plaintiff Haulmark was denied access to the transcripts requested, the Movants have failed the interactive process." Haulmark cites no authority in support of this assertion, which is contradicted by the law stated in the State's and LAS' Motion stating that: an ADA requestor is not entitled to the exact accommodation he or she requests or prefers,[92] "equal results,"[93] or perfection.[94] The standard is one of "meaningful access"[95] or whether the accommodation offered by the public entity was objectively reasonable.[96]  Here Haulmark has failed in his burden to show that the accommodations offered by LAS were not objectively reasonable. Haulmark was provided qualified interpreters upon prior request. Haulmark never explained to LAS why an "errorless" professional transcript of each and every legislative proceeding ever held was necessary to enable effective communication or to allow him to participate in legislative proceedings on bills of interest to him. Haulmark never responded to Day's offer to produce specific transcripts from the November or January

---

[91] *JH ex rel. JP v. Bernalillo county,* 806 F.3d 1255, 1261 (10th Cir. 2015).

[92] 28 CFR § 35.160(a), (b)(1); *Cropp,* at 777-85; *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1265 (10th Cir. 2018) (citing *Barber v. Colorado Dept. of Revenue,* 562 F.3d 1222, 1232 (10th Cir. 2009)*; Nunes v. Mass. Dept. of Corrections,* 766 F.3d 136, 146 (1st Cir. 2014) (a disabled person is "entitled to reasonable accommodation, not to optimal ones fine-tuned to his preferences," citing *JD ex rel. JD v. Pawlet School Dist.,* 224 F.3d 60, 71-72 (2d Cir. 2000) (disabled child's parent's request for an accommodation for the "best" education failed to state a claim)); *Barber,* 562 F.3d at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633-34 (9th Cir. 1999).

[93] *Alexander v. Choate,* 469 U.S. 287, 304 (1985); *Havens,* 897 F.3d at 1263.

[94] *Cropp,*  at 784-85 (citing *Silva v Baptist Health of S. Fla., Inc.,* 856 F.3d 824, 834, 835 n.7  (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication … substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs,* No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva). *
[95] *Alexander v Choate,* 469 U.S. at 301; *Havens,* at 1263.

[96] *Barber v. State of Colorado Dept. of Revenue,* 562 F.2d 1222, 1229-30 (10th Cir. 2009).

requests or explained why that accommodation was insufficient. He either did not follow up with LAS or like Marcia Barber, simply kept reasserting the same demand.

Haulmark has failed to meet his burden of showing why the accommodations offered by Day – qualified interpreters upon prior request, specific transcripts upon request, auto-generated captioning on YouTube, the improved WebEx closed captioning currently offered within 30 to 60 minutes of the end of the legislative proceeding and the the real-time closed captioning offered by the Kansas Virtual Statehouse Project are not objectively reasonable or appropriate.[97]   Although Haulmark's Response argues it is Defendants' burden to show that the provided accommodations were reasonable,[98] the Response cites no case law in support and indeed, the law as cited by Defendants is to the contrary.[99]

While Haulmark argues that the offer of specific transcripts of interest is not an appropriate "auxiliary aid,"[100] no authority is cited for that proposition. The regulation makes it clear that  what is an appropriate auxiliary aid depends upon the situation, with the public entity having the option or the choice among appropriate auxiliary aids.[101]   It is not a one-size-fits-all deal which is why the ADA and regulations are written as they are.  Haulmark also does not say why the offer of specific transcripts was not a reasonable or appropriate accommodation.[102] Similarly, although Haulmark never explained why the

---

[97] *Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250, 1263 (10th Cir. 2018).

[98] Doc. 31, at ¶ 116.

[99] *Havens,* at 1263 (citing *Barber,* 562 F.3d at 1233). Plaintiff also has the burden of showing that the defendant had "knowledge that a harm to a federally protected right [was] substantially likely" for purposes of deliberate indifference (intentional discrimination) necessary for damages. *Id*., at 1271 (citing *Barber,* 562 F.3d at 1229)).

[100] Doc. 31, at ¶ 117.

[101] *See, e.g.,* 35 CFR 160(b)(2) ("The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. ").

[102] Doc. 31, at ¶ 117.

YouTube captioning was ineffective,[103] that captioning has been supplanted by the WebEx captioning which is both quicker (being applied within 30 to 60 minutes of the end of the proceeding in question), and of better quality than the complained of YouTube captioning.[104]  Haulmark's Response includes no specific argument that the KS VSP will not be ADA-compliant when fully implemented. $2.74 million and all of the efforts undertaken on the Kansas VSP since December 2019 certainly constitute "affirmative steps;" for Haulmark to suggest that LAS is "refusing to take affirmative steps"[105] is, at best, extremely disingenuous.

What Haulmark admits is that real-time closed captioning will resolve his issues and provide effective communication.[106]  Although Haulmark asserts that there is no showing that the captioning provided by the Kansas VSP will be ADA-compliant,[107] all of the documentation filed of record shows that ADA-compliance is a goal of the Kansas VSP, is required by ITEC Policy 1210, has been certified by the Chief Legislative Information Technology Officer, is contractually required, and will result in a system similar to that operating in other states which Haulmark has indicated provide effective communication.  As per the LCC's December 2019 resolution, the input of Robert Cooper of the Kansas Commission for the Deaf and Hard of Hearing was solicited during the vendor selection process and his assistance will continue to be solicited; the input of the State ADA Coordinator Anthony Fadale is continually being requested. Once installed, the Kansas VSP is subject to testing for ADA compliance.  Haulmark provides no evidence

---

[103] *Id.*
[104] Day Declaration, attached as Exhibit A hereto. As per the Day Declaration, the WebEx captioning became available in February 2021, after the Complaint was filed. It illustrates how circumstances have outstripped the Complaint and continue to as stated in Defendants' mootness argument.
[105] Doc. 31, at ¶122.
[106] Doc. 31, at ¶ 119.
[107] Doc. 31, at ¶ 119.

or argument to show that the Kansas VSP will not be ADA-compliant, and has not controverted Defendants' facts in this regard.

Haulmark's argument boils down to the fact that he believes the online system should have been better sooner. However, this is not an argument for prospective injunctive relief, for standing for injunctive relief, or an argument against mootness. Even as to the claim for $5 million in damages, as the Tenth Circuit has recognized, deliberate indifference requires more than alleged negligence or the not uncommon delays in updating government systems.[108]

Haulmark's Complaint fails to meet his burden of demonstrating why Day's responses were not reasonable or appropriate accommodations under the ADA.[109] Under the facts even as pled by Haulmark, Haulmark's Complaint fails to state a claim for deliberate indifference for damages because LAS and Day were admittedly responding to him and working on improvements.[110] There is also no basis for mandatory injunctive relief under the high standard applicable to such claims as stated in *Tyler*.[111]

---

[108] *Havens,* at 1264-65 (citations omitted). Contrary to Haulmark's arguments, the Legislature was not required to put anything on the Internet at all in the first place. It had the option to take everything down instead of providing captioning or transcripts. With the Kansas VSP, the Legislature has gone in the opposite direction toward greater transparency and access.

[109] *Barber,* at 1228-32; *Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir. 1999) (Plaintiff "must establish the existence of specific reasonable accommodations" that the public entity failed to provide).

[110] *McCulley v University of Kansas School of Medicine,* 591 Fed. Appx. 648, 651 (10th Cir. 2014) (citing *Barber)* (affirming the medical school's denial of accommodations requested by the medical student and finding compensatory damages were "inappropriate,"stating,"KUSOM was hardly indifferent to" the requests for accommodation where it engaged in an interactive process with the student and allowed her ample opportunity to make requests).

[111] *Tyler v. City of Manhattan,* 857 F. Supp. 800, 820 (D. Kan. 1994) (citations omitted).

## Haulmark's Discussion of Undue Burden is Inapposite

Undue burden under the ADA was not argued in the State's Motion to Dismiss as it is an affirmative defense that may be raised later, and will be if this action continues.[112] Haulmark's discussion of this issue now is inapposite.

Haulmark takes the opportunity to reiterate his view that he is entitled to whatever he demands when he demands it.  However, the ADA analysis is not that simple, as set forward in the State's Motion.  Rather, the law contemplates back and forth on what appropriate and reasonable measures will provide meaningful access and effective communication in a given situation – the interactive process and a degree of good faith – a process which is frustrated when a requestor digs in his or her heels on a certain request or result, which was the case in *Barber, Cropp,* and here.

## Haulmark Fails to State a Plausible Claim of Deliberate Indifference

Haulmark attempts to distinguish the State's cited cases on the sole basis that the cases involve prisoners or students. That is not true, but he also does not state why this distinction would make any difference if it were true. If anything, a prisoner may be entitled to more ADA consideration than a person who is not in custody (as per Haulmark's cited case from the D.C. jail where the judge took that view).  Haulmark does not distinguish the cited cases on any other basis, and thus, concedes them.[113]

---

[112] The Complaint is unclear regarding the archived records.While this request would be retrospective in nature and not within the scope of a mandatory prospective injunction, Haulmark stated in the past he would forgo this request in exchange for an improved captioning system. This information is also not part of any current legislative process as the Legislature started over with new legislation on January 11, 2021 as per the Kansas Constitution. As to archived data, the Legislature retains the option to take it off the Internet entirely to avoid any claim that the information is not equally available to everyone.

[113] Haulmark cites the case of *Powers v. MJB Acquisitions[113]* for general propositions of law, but does not say why that case is on point here (and it isn't). *Powers* merely held that the district court committed reversible error by failing to instruct a jury that proof of intentional discrimination was required in a case under the Rehabilitation Act (not ADA).

Haulmark makes the argument that intentional discrimination/deliberate indifference is shown just because Day did not give him exactly what he wanted. Haulmark cites no case law for that proposition. Rather, the law is to the contrary.[114] Further, the record in this case, including the Complaint, roundly contradicts Haulmark's statements in paragraph 147 that Day "ignored" Haulmark or did not offer him anything. What the record shows, including Haulmark's own Complaint and exhibits is that Day offered Haulmark qualified interpreters upon request[115] and repeatedly responded to Haulmark's requests from the time of Haulmark's first letter to Day on November 1, 2019, and made offers of accommodation and to discuss the matter further, including offering to meet with him and meeting with him on December 5, 2019, and January 10, 2020.[116] As the Circuit has held, this is the *opposite of deliberate indifference*. [117]  Any alleged negligence or delay in updating systems does not amount to deliberate indifference.[118]

Other than Haulmark's vague and conclusory allegations, there is nothing to show that Haulmark was excluded from any particular legislative proceeding. Or that "the State" or LAS had the requisite knowledge that what LAS offered would be "wholly ineffective" as an accommodation. Haulmark never made that clear exactly why, how or if that was the case, choosing instead to make repeated, broad and general demands,

---

[114] *See, e.g.,* Cropp, at 780*; Barber,* at 1232. *See generally Havens v. Colorado Dept. of Corrections,* 897 F.3d 1250 (10th Cir. 2018).

[115] Defendant's Fact # 6 (admitted by Plaintiff).

[116] Doc. 1, at ¶¶ 39, 40, 41, 46-48, 55, 57 (referring to Day's efforts on the KS VSP); Plaintiff's Exhibit 7 (referring to a November 6, 2019, response Haulmark chose not to include with the Complaint); Plaintiff's Exhibits 11, 12, 13, 15, 16.

[117] *Havens,* at 1265 (citing *McCulley v. Univ. of Kan. School of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014) (unpublished)).

[118] *Id.*, at 1264 (citing cases including *Ferguson v. City of Phoenix,* 157 F.3d 668, 675 (9th Cir. 1998) (holding that "not uncommon bureaucratic inertia" in updating a city's 9-1-1 system to make it accessible to the hearing-disabled, coupled with "some lack of knowledge and understanding" about regulatory requirements, did not amount to deliberate indifference.").

much like Marcia Barber, Mrs. Cropp, and Mr. Makeen. That doesn't amount to deliberate indifference as a matter of law, as the Circuit has held.

## Conclusion

The Kansas VSP admittedly resolves Haulmark's concerns with audio-only files, providing real-time closed captioning.[119] There is no case or controversy and Haulmark's action should be dismissed for lack of jurisdiction (or prudential mootness). Assuming jurisdiction, Haulmark's Complaint fails to state a plausible claim for discrimination or damages against the State or LAS. Alternatively, the State and LAS request that the Court grant summary judgment in favor of defendants.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s M.J. Willoughby
M.J. Willoughby, KS 14059
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215l Fax: (785) 291-3767
Email: MJ.Willoughby@ag.ks.gov
*Attorney for State of Kansas, Legislative Administrative Services*

## CERTIFICATE OF SERVICE

I certify that on April 2, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all participants, and a copy served upon Plaintiff by first-class mail postage prepaid addressed to:

Chris Haulmark, 600 S. Harrison St., Apt. # 11, Olathe, KS 66061, Plaintiff pro se.

/s M.J. Willoughby
M.J. Willoughby
Assistant Attorney General

---

[119] Doc. 1, at ⁋ 18 (stating a similar system in Arkansas and Virginia provided effective communication under the ADA).