IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,                          )
                Plaintiff,            )
v.                                       )        Case. No. 20-cv-4084-EFM-TJJ
                               )
STATE OF KANSAS, et al.,                  )
                Defendants.           )
_____)

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Tom Day, Director of the Office of Legislative Administrative Services ("LAS") submits this Reply in support of his Motion for an Order dismissing this lawsuit against him pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and in reply to the Response filed by Plaintiff Chris Haulmark ("Haulmark").[1] For the reasons stated in the Motion, not effectively controverted in the Response, Day's Motion to Dismiss[2] should be granted by the Court.

### *Nature of the Matter Before the Court*

Haulmark admits that the only purpose for the requested injunction is a Court order "to activate the available real-time captioning feature so that Plaintiff Haulmark can equally participate in observing the ongoing legislative proceedings of the 2021 Legislative Session and future sessions. . .."[3] The fully implemented Kansas Virtual Statehouse Project provides real-time captioning of legislative proceedings streamed on

---

[1] Doc. 32.
[2] Docs. 24-25.
[3] Doc. 32, at ¶ 120.

the Internet and is moving rapidly toward completion.[4]  Without a basis for prospective injunctive relief, the only relief available against Day as a matter of law under *Ex parte Young,* the action against Day fails for lack of jurisdiction, both for lack of a case or controversy and as barred by the Eleventh Amendment. Haulmark's claim for $5 million in damages as to Day in his official capacity is barred by the Eleventh Amendment. Assuming jurisdiction, dismissal is also appropriate for failure to state a claim.

### The Jurisdictional Facts Are Undisputed

The facts in Day's Motion to Dismiss were either taken from the Complaint or jurisdictional facts. As noted in Day's Motion, the Court has wide discretion to consider evidence, including affidavits, regarding jurisdictional facts without converting the matter to summary judgment.[5]  Haulmark admits the majority of the facts stated in the Motion, namely Facts ## 1-11, 13-18, 20-24, 28-31, and 34-35.

Haulmark attempts to controvert Fact # 12, but his comment about a separate unrelated request for the transcript of a later proceeding is non-responsive to the particular fact stated.[6] The context of the stated fact was Day's November 15, 2019, offer in response to Haulmark's November 1, 2019 request, stating "[w]hile the November 1, 2019, request for hundreds of committee meeting transcriptions under KORA is denied, we would be happy to consider a narrowed request for committee meetings of particular interest to you."[7]  The request for the transcript of the April 8, 2020   Legislative

---

[4] Declaration of Alan Weis, Doc. 25-3, at ¶¶ 6, 8; Declaration of Thomas A. Day of 4/2/21, attached as Exhibit A hereto.

[5] Doc. 25, at 9 (citing *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1295 (10th Cir. 2003) (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995)).

[6] Fact # 12 states: "the Complaint does not reflect that Haulmark responded to Day's offer to produce specific transcripts of interest to him; Haulmark did not respond to Day's offer to produce specific transcripts of interest to him. *See* Doc. 1; Day Dec. at ¶ 22."

[7] Plaintiff's Exhibit 17.

Coordinating Council ("LCC") meeting was not included in Haulmark's November 1, 2019 request, and is therefore non-responsive.

Similarly, the reference to a request "for the transcription of" the April 8, 2020 LCC meeting is nonresponsive to Fact # 19, which dealt with Haulmark's January 14, 2020 request because the request for the transcript of the April 8, 2020 LCC meeting was not included in the January 14, 2020 request.

Haulmark's Response attempts to take issue with the stated facts regarding the Kansas VSP, but provides no evidence to the contrary and no basis to dispute the facts stated. For example, although Haulmark's Response states he cannot admit or deny Fact # 25, the fact cites paragraph 57 of the Complaint in support, which in turn cites Plaintiff's Exhibit 16, which contains the quoted statement. Further, the record, including the attachments to Day's Motion to Dismiss,[8] demonstrates that accessibility is a goal of the Kansas VSP.

Similarly, in response to Fact # 26, Haulmark makes the non-responsive comment that he was not personally present for the September 10, 2020, LCC meeting but does not dispute the fact stated. Although Haulmark complains that Exhibit D does not contain details about the Kansas VSP, the stated fact was only that the LCC approved the Kansas VSP.  Exhibit D does affirmatively state that the Kansas VSP incorporates accessibility for deaf and hard of hearing citizens of the state.

In relevant part, Fact # 27  states that the VSP was reviewed by the Legislative CITO as per ITEC Policy 1210 and state statute, K.S.A. 75-7208(a), and submitted to the State Information Technology Council. Haulmark states he "cannot admit or deny this

---

[8] Doc. 25-2, Doc. 25-3.

fact whether Alan Weis is qualified to ensure that the Virtual Statehouse Project is compliant with the ITEC policy . . . and Title II of the ADA in[sic] pursuant to K.S.A. 75-7208(a)." Because Haulmark's Complaint alleges that Weis is the Legislative Chief Information Technology Officer,[9] Weis is by definition qualified by virtue of holding that position. The Legislative CITO is the person designated by state statute to conduct reviews and approve the project, as stated. It is a matter of law, not fact.

Haulmark's Response is non-responsive to Fact # 32 that: [a]fter the VSP is fully implemented, there will be no audio only streams of legislative activities and the VSP will offer real-time closed captioning with the streaming through Sliq rather than through YouTube. Weis Dec. at ⁋⁋ 6, 8." The stated fact refers to the state of affairs, "after the VSP is fully implemented." Haulmark has been provided with ample documentation about the VSP and its requirements and notably, failed to come forward with evidence or argument disputing the stated fact.

In response to Fact # 33, which states: "Haulmark has not made a request for accommodation to Day in the 2021 Legislative Session," Haulmark's Response argues that the December 16, 2020 Complaint should be considered a request for accommodation. While this is a specious argument, the Complaint was not submitted to LAS as per the Legislature's accommodations policy and also was not submitted on or after January 11, 2021, the start of the current legislative session.[10]

Similarly, while Haulmark generally denies Fact # 36, the stated fact was that the Complaint did not reflect that Haulmark made a request for specific legislation as per the

---

[9] Doc. 1, at ⁋ 57.
[10] Kslegislature.org/li/documents/2021_deadlines.pdf, at 2, subject to judicial notice as per Fed. R. Evid. 201 (stating the date the 2021 Legislative Session began).

LAS policy or a request during the January 2021 session. Haulmark's assertion that he requested "access to future legislative proceedings" does not respond to the fact stated.

Haulmark's Response admits Fact # 37 but argues that he did not use the word, "adopt," in the cited pages of the Complaint (Doc. 1, at pp. 25-27); however, the difference between "develop" and "adopt" is not material. To the extent it can be understood, the Complaint speaks for itself as to the relief requested.

### Plaintiff's Statement of Facts May Be Disregarded as Unsupported

Haulmark's Response contains a section entitled, "Plaintiff's Statement of Material Facts," at pages 7-9, with numbered paragraphs 38-55. This material is irrelevant and need not be considered. Tom Day moved to dismiss on jurisdictional grounds, which would include consideration of jurisdictional facts. Haulmark's additional facts are not material or relevant to Day's Motion to Dismiss.  For the most part, Haulmark's proposed "facts" are conclusory statements about past events, irrelevant to the requested prospective injunctive relief sought against Day. Nor are Haulmark's proposed additional facts supported by any evidence to support his claim of jurisdiction.


### ARGUMENTS AND AUTHORITIES

I.   **THE ACTION SHOULD BE DISMISSED FOR LACK OF JURISDICTION AND BY THE ELEVENTH AMENDMENT**

The jurisdictional facts are undisputed. The Kansas Virtual Statehouse Project is designed with the goal of ADA-compliance as per ITEC Policy 1210, the contractual deliverables, the input of the State ADA Coordinator and Robert Cooper of the Kansas Commission for the Deaf and Hard of Hearing, the LCC's December 2019, resolution and

the considerable evidence submitted regarding the project.[11] Haulmark's Response provides no evidence disputing these facts. As argued in the State's and LAS's Motion to Dismiss and incorporated in Day's Motion by reference,[12] Haulmark fails to meet his burden of showing  standing or a case or controversy, particularly for the prospective injunctive and declaratory relief sought. There is no case or controversy, the matter being either constitutionally or prudentially moot. In these circumstances, there is no order the Court can render as to real-time captioning that would have an effect in the real world.[13] Haulmark's Response does not respond to Day's jurisdictional argument, and hence concedes it.

Day incorporates herein the argument in the State's and LAS's Reply[14] that the voluntary cessation exception does not save this action from either constitutional or prudential mootness. Haulmark admits that the real-time closed captioning provided through the Kansas VSP will resolve the issues from his point of view once "activated."[15] Given the $2.74 million already expended, the signed contract, the considerable work already performed since November 2020, and the Legislature's stated commitment to enhanced accessibility which began in December 2019, it doesn't make any sense to think that the Legislature would not proceed to the project's stated goal – enhanced ADA accessibility. When government officials promise to act upon concerns, those promises should be taken seriously and accorded due deference.[16]   This is such a case for the

---

[11] *See* Doc. 25-2, Doc. 25-3.

[12] Doc 25, at 10-11, citing Doc. 19, at 10-15.

[13] *Crews v. Sawyer,*  No. 19-2541-JWB, 2020 WL 1528502, *4 (D. Kan. Mar. 31, 2020) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)); *see Brown v. Buhman,* 822 F.3d 1151, 1179 (10th Cir. 2016).

[14] Doc. 33, at 9-13.

[15] Doc. 31, p.2, ¶¶110, 125, 157.

[16] *See, e.g., Winzler v. Toyota Motor Sales, U.S.A., Inc.,* 681 F.3d 1208, 1210 (10th Cir. 2012) (citing 13 C. Wright, *et al, Federal Practice and Procedure* 3533.1 (3d Cir. 2008)).

reasons so well stated by Judge Gorsuch in *Winzler*.[17]  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."[18] Similar to the Plaintiff in U.S.D. No. 259,[19] Haulmark does not need any relief from this Court. The real-time closed captioning he seeks to have "activated" is on its way.[20]

 For similar reasons, Haulmark's action against Day under *Ex parte Young* must be dismissed. Haulmark's Response acknowledges that only prospective injunctive relief is available as to Day, not retroactive relief or damages.[21] State law-based claims, such as Haulmark's complaints about KORA, are not a basis for *Ex parte Young*.[22]

Given the considerable evidence about the Kansas VSP, and assuming for the sake of argument that captioning were required by federal law (which has not been established), there is no basis for prospective injunctive relief against Day. As per the undisputed jurisdictional facts, the real-time closed captioning system sought by Haulmark is on its way, improvements having already been rendered, for example, the improved captioning available since February 15, 2021 within 30 to 60 minutes from the end of each legislative proceeding through WebEx.[23] For Haulmark to state the contrary is either disingenuous or uninformed.[24] Haulmark has not made a request for

---

[17] *Id.*, at 1209-10 (citing the lack of practical effect of judicial action in such circumstances, the waste of finite public resources and the risk of interfering with or discouraging remedial action by other governmental actors).

[18] *Unified School Dist. No. 259 v. Disability Rights Center of Kansas,* 491 F.3d 1143, 1150 (10th Cir. 2007) (citation omitted, internal quotation marks omitted).

[19] *Id.*

[20] *See* Day Declaration, Exhibit A hereto.

[21] Doc. 32, at ¶¶ 109, 112, 113.

[22] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984).

[23] Declaration of Thomas A. Day, attached as Exhibit A hereto.

[24] For example, Plaintiff's comment at paragraph 67 that "[t]here is no evidence to show any effort of improvement . . . [in the past year]" is belied by the considerable evidence adduced regarding the Kansas Virtual Statehouse Plan, attached to the Response to Plaintiff's Motion for TRO/Preliminary Injunction, Doc. 14, and also attached to the Motion to Dismiss, Doc. 25-2 and Doc. 25-3, including that Day was involved in several required presentations to the Joint Legislative Budget Committees and the LCC to obtain approvals for the Kansas VSP, prepared a request for proposal, and participated in vendor selection processes, etc.,  before a contract was entered and implementation begun in November 2020.

accommodations to Day since the January 11, 2020 Legislative Session began. Although Haulmark at times brings up the outdated archived records, any request for these records or complaints that these records were not provided in the past is retrospective in nature; it is not relief which may be properly sought against Day under *Ex parte Young*.[25]

As an administrative officer acting at the direction of the LCC, Day lacks the kind of authority to make him a proper *Ex parte Young* defendant as he lacks the capacity to enact the kinds of broad, sweeping and expensive measures sought by Haulmark in the Complaint.[26] Although Haulmark asserts Day has that capacity, and alleges that Day "has the power to bring the online broadcasting services in full compliance with Title II of the ADA...." no authority is cited for this claim.[27]  That the LAS Policy on Accommodations informs requestors to submit their requests to LAS, and that Day administers these requests and arranges for qualified interpreters, does not mean that Day has the capacity to provide the relief requested in the Complaint which goes beyond responding to requests for accommodations at scheduled legislative meetings.  This lack of authority is shown by the record in this case which demonstrates that at every single step in this process, the LCC has had to approve the Kansas VSP and to give authority to Day to act, beginning with the December 2019, resolution, the September 2020 approval of the

---

Similarly, Haulmark's conclusory statement at paragraph 116 that he is being denied services because Tom Day "is holding back" auxiliary aids and services is similarly unsupported by facts.

[25] Doc. 25, at 12-13 (citing *Sanders v. Kansas Dept. of Soc. & Rehab. Serv.*, 317 F. Supp. 2d 1233, 1243-44 (D. Kan. 2004) (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex parte Young*  "does not permit judgments against state officers declaring that they violated federal law in the past"). Further, because the 2021 legislative session started over with all new legislation as per the Kansas Constitution, Art. 2, Section 8, a fact admitted by Haulmark in his Response (Fact # 22), the archived files are not relevant to any current legislation in which Haulmark might seek to participate. LAS retains the option of removing these outdated files from the Internet entirely.

[26] Doc. 1, at 25-27.

[27] Doc. 32, at ⁋ 93, ⁋ 119. For example, although at ⁋⁋ 99 and 105, Haulmark cites the overall KLISS budget and appears to be arguing that Day could simply ignore the budgeted items and divert money to other purposes, no authority is provided for that argument.

Kansas VSP, and the LCC's signature on the Kansas VSP Contract in September 2020.[28] These LCC approvals would not have been necessary if Day had the kind of authority Haulmark claims.

## II.   HAULMARK'S RESPONSE IS INSUFFICIENT TO DEFEAT THE MOTION TO DISMISS

Haulmark's filing[29] consists of a series of argumentative and conclusory statements, for the most part entirely non-responsive to the arguments in Day's Motion to Dismiss. Haulmark's comments and arguments relate to past events, which is not a basis for relief against Day under *Ex parte Young*.[30] For purposes of clarity, only a few of Haulmark's statements will be addressed herein.

As to paragraph 57, Day certainly does dispute that Haulmark's requests were "reasonable." One need only look at Day Exhibit L, which consists of Haulmark's November 1, 2019, letter and the **13-page attachment**[31] reflecting a request for professional transcriptions that "must contain the *errorless accuracy*, uniformity of style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and includes speaker identification and non-speech audio information with clarity,"[32] for more than 900 separate proceedings. Haulmark's November 1, 2019 request is the opposite of reasonable from any objective point of view.[33]

---

[28] *See* Doc. 25-2.

[29] Doc. 32.

[30] Doc. 25, at 12-13 (citing *Sanders v. Kansas Dept. of Soc. & Rehab. Serv.,* 317 F. Supp. 2d 1233, 1243-44 (D. Kan. 2004) (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (*Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past").

[31] Doc. 25-2, at 142-54. The attachment to the November 1, 2019, letter was omitted from the Complaint but properly referred to as per Fed. R. Civ. P. 10(c).

[32] Haulmark November 1, 2019, letter, at page 7, Plaintiff's Exhibit 6, included in Day Exhibit L, Doc. 25-2 at 141 (emphasis added).

[33] *See, e.g., US Airways, Inc. v. Barnett,* 535 U.S. 391, 401 (2002) (the ADA does not "demand action beyond the realm of the reasonable," holding that an accommodation that required an employer to disregard a seniority system was not reasonable).

Haulmark's subsequent similar demands for errorless transcriptions of every other legislative proceeding, transcriptions he insisted by "errorless,"[34] is not reasonable, or even possible, but an insistence upon perfection not required by the ADA.[35]

At paragraph 59 and again at paragraphs 65, 66, 76, 85-86, 116 and 118, Haulmark acknowledges that Day responded to his requests for transcripts of legislative proceedings by making offers to provide specific transcripts and leaving the door open to discuss the matter further.[36] Haulmark admits he did not respond to Day's offers to provide specific transcripts of interest or otherwise engage with Day regarding his requests. Haulmark refused to engage in any interactive process with Day, adopting a position similar to that of Marcia Barber criticized by the Circuit in *Barber v. Colorado Dept. of Revenue*.[37]

Haulmark's statement at paragraph 67 that "[t]here is no evidence to show any effort of improvement being made" to improve accessibility in the past year and a similar statement at paragraph 71 that "there are not any improvements made," is contradicted by the evidence in the record, including the Day Declaration, Weis Declaration and attachments thereto included in Day's Motion to Dismiss[38] as well as the Response to Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction,[39] and Day's most recent declaration stating that since February 15, 2021, improved captioning has

---

[34] *See, e.g.,* Haulmark's November 1, 2019, letter, Plaintiff's Exhibit 6, at 7.

[35] *Cropp v. Laramie County, Colorado,* 793 Fed. Appx. 771, 784-85 (10th Cir. 2019)(citing *Silva v Baptist Health of S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7 (11th Cir. 2017)(noting that ADA does not require "perfect communication"; explaining that defendant was only required to provide plaintiff with auxiliary aid that was "sufficient to ensure a level of communication … substantially equal to that afforded to non-disabled" individuals (emphasis omitted)); *Hans v. Board of Shawnee County Comm'rs,* No. 16-4117-DDC, 2018 WL 1638503, * 19 (D. Kan. Apr. 5, 2018) (citing *Silva*).

[36] *See* Plaintiff's Exhibits 7, 12.

[37] 562 F.2d 1222, 1231-32 (10th Cir. 2009) (cited and discussed at Doc. 25 at 26-27, not distinguished in the Response).

[38] Doc. 25-2, Doc. 25-3.

[39] Doc. 14.

been provided on streamed legislative proceedings within 30 to 60 minutes of conclusion of the legislative meeting.[40]

At page 15, paragraphs 73-75 and 79, Haulmark focuses on a February 2019, letter addressed to Representative Ron Ryckman. Although there is no evidence Day received the February 2019 letter or had capacity to act upon it, past events are irrelevant to Haulmark's claim for prospective injunctive relief as to Day.[41]

At paragraph 76 and again at 97, Haulmark argues that the two working days requirement for accommodation under LAS policy is somehow unjustifiable, but cites no authority for that proposition.[42]

At paragraph 76, Haulmark complains about Day denying Haulmark's requests for production of documents under the Kansas Open Records Act. Again, that is a complaint about the past (and about state law), that does not support a claim under *Ex parte Young*.[43] It is also somewhat nonsensical. The obvious reason Day cited KORA in his response was because Haulmark cited KORA as the basis for the requests.

Haulmark's argument at paragraph 79 and 117 that because Day knew Haulmark was deaf that ends the analysis is unsupported by the authority cited.[44] Knowing an

---

[40] Exhibit A hereto.

[41] *See, e.g., Puerto Rico Acqueduct & Sewer Auth.,*506 U.S. at 146.

[42] Haulmark's Response to the State's and LAS' Motion to Dismiss (Doc. 31), did not argue that the prior notice requirement violated the ADA. It doesn't.

[43] *Pennhurst,* 465 U.S. at 106.

[44] Haulmark's citation to *JV v. Albuquerque Public Schools,* 813 F.3d 1289, 1299-1300 (10th Cir. 2016) is not helpful to Haulmark for reasons including there the Circuit affirmed summary judgment for the school on a disabled student's claim that the school violated Title II in various respects, rejecting the plaintiff's argument that the need for accommodation was "obvious" which under the Circuit's analysis required showing quite a lot, including knowledge of disability, that an accommodation was needed, and why a specific accommodation was needed in a particular situation. Haulmark has not shown that Day or LAS had knowledge that Haulmark needed accommodation as to any particular legislative proceedings or knowledge of why the request for more than 900 "errorless" transcripts for example was a necessary accommodation.

individual is disabled   is not the same as knowing that a specific individual needs accommodation in order to participate in a public entity's services.[45]

Haulmark's discussion of undue burden at ⁋⁋ 98-101 is inapposite as the defense of undue burden was not raised in Day's Motion to Dismiss.

At paragraph 107, Haulmark throws out the phrase, "intentional discrimination (deliberate indifference) on the part of Defendant Tom Day," but as a state official sued in his official capacity, Day is not liable for damages in any event because of the Eleventh Amendment.[46] Haulmark's allegations fail to state a plausible claim under Title II for discrimination or (assuming the Eleventh Amendment were not a bar), damages. Haulmark's theory that Title II entitles him to exactly what he requests when he requests it – perfection -- without discussion or explanation, is not consistent with the law as shown by Day's cited authorities at pages 22-28, not distinguished in the Response. Haulmark cites cases for general propositions, but those cases and those general propositions are inapposite to the points made in the Motion to Dismiss. Haulmark has also never identified any specific legislative activities on specific bills that he wished to participate in but was unable to because of an alleged denial of a requested accommodation. Haulmark's abstract claims fail to state a claim for relief under Title II.[47]

---

[45] *JH ex rel. JP v. Bernalillo County,* 806 F.3d 1255, 1261 (10th Cir. 2015).

[46] Haulmark's Response acknowledges that only prospective injunctive relief is available as to Day. Doc. 32, at ⁋⁋ 109, 112, 133.

[47] *See, e.g., Cropp,* 793 Fed. Appx. at  784-85 (noting Mrs. Cropp never explained why sitting next to her husband was the only means of effective communication and Plaintiffs never showed that the jail knew that the offered accommodations would be wholly ineffective); *Loye v. County of Dakota,* 625 F.3d 494, 499-500 (8th Cir. 2010) (affirming the district court's grant of summary judgment to the public entity on deaf plaintiffs' Title II claims finding that that the entity had provided effective communication and meaningful access under the circumstances); *Makeen v. Colorado,*  No. 14-cv-3452-WJM-CBS, 2016 WL 8470186, at ** 9-10 (D. Colo. Sept. 16, 2016) (dismissing Plaintiff's Title II claim for failure to state a plausible claim where Plaintiff was provided with a note taker for court proceedings and Plaintiff never showed why the note taker was insufficient as an accommodation and failed to show that he was deprived of meaningful access to the Court).

## Conclusion

The Kansas VSP resolves Haulmark's concerns with audio-only files, providing real-time closed captioning, resolving Haulmark's stated reason for seeking prospective injunctive relief, the only relief available against LAS Director Tom Day. Haulmark fails to meet his burden of establishing jurisdiction or a basis for prospective injunctive relief against Day under *Ex parte Young*.  For the reasons stated in Day's Motion to Dismiss and supporting memorandum, not disputed in Haulmark's Response, the action against Day should be dismissed for lack of jurisdiction and as barred by the Eleventh Amendment. The Complaint also fails to state a plausible claim for relief under Title II.

WHEREFORE Tom Day, Director of Legislative Administrative Services sued in his official capacity, respectfully requests that this action against him be dismissed.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s M.J. Willoughby
M.J. Willoughby, KS 14059
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215l Fax: (785) 291-3767
Email: MJ.Willoughby@ag.ks.gov
*Attorney for Tom Day, Director,*
*Legislative Administrative Services*

## CERTIFICATE OF SERVICE

I certify that on April 8, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all participants, and a copy served upon Plaintiff by first-class mail postage prepaid addressed to: Chris Haulmark, 600 S. Harrison St., Apt. # 11, Olathe, KS 66061, Plaintiff pro se.

/s M.J. Willoughby
M.J. Willoughby
Assistant Attorney General