# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **STATE OF KANSAS**, | ) |
| **LEGISLATIVE ADMINISTRATIVE** | ) |
| **SERVICES**, | ) |
| and | ) Civil Action No. __5:20-cv-04084-EFM-TJJ__ |
| **TOM DAY**, in his official capacity as | ) |
| Director of Legislative Administrative | ) |
| Services, | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF CHRIS HAULMARK'S MOTION TO ALTER OR AMEND THE JUDGEMENT PURSUANT TO <u>RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>

Plaintiff Haulmark moves this Court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to open the judgment entered on September 9, 2021, and to amend the finding of fact or conclusions of law and/or make new findings and conclusions and to direct the entry of a new judgement against Defendants State of Kansas and Legislative Administrative Services' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 18), and Defendant Tom Day's Motion to Dismiss (Doc. 24). In support of this Motion, Plaintiff Haulmark shows to this Court that:

## I.   SUMMARY

1.      The judgment in error is based on misunderstanding of the allegations and facts presented to this Court to establish the Factual Background. There has been a new development with respect to a new captioning system implemented after the final briefings were filed. Due to the flawed understanding by this Court of these allegations and facts presented by both parties, to this day, the Defendants still exclude Plaintiff Haulmark from their programs, services, and activities. According to the judgment in error, Plaintiff "Haulmark has failed to allege that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities" in pursuant to the Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 et seq. (hereinafter "ADA"). As explained below, this is incorrect.

2.      An adverse factual inference was drawn against Plaintiff Haulmark as a result of error on these motions filed by the Defendants. Despite this Court not discussing about the requirements of effective communication under the ADA, the absence of evidence to support the Defendants' argument when they were seeking summary judgment that the live captioning provided effective communication for Plaintiff Haulmark is noteworthy. Defendants have not provided any allegations or evidence that Plaintiff Haulmark can access these available archived recordings, which contain legislative proceedings held in Kansas Legislature committees, as audio-only content that is unavailable on YouTube or is accessible elsewhere.

3.      While this Court incorrectly conclude that Plaintiff Haulmark's alleged ADA violations are only in the past, this Court did correctly conclude that Plaintiff

Haulmark cannot seek monetary damages from only Defendant Tom Day but failed to consider that the an injunction is proper to enjoin Defendant Tom Day to abide by the ADA to ensure that Plaintiff Haulmark is not excluded from the Defendants' offered programs, services, and activities. Supreme Court of the United States, Tenth Circuit Court of Appeals, and other circuit courts have ruled that the two other Defendants are not immune (Eleventh Amendment) from monetary damages claims brought by plaintiffs.

4.      After the Kansas Virtual Statehouse Project's $2.74 Million deadline passed and the last briefing was filed, the Defendants completed its implementation of a new live captioning system, as the case was still in its ripening stage. Although this Court drew factual inferences against Plaintiff Haulmark, this Court prematurely decided that this new live captioning services will comply with the effective communication provision of Title II of the ADA. Despite some improvements in this new captioning services over YouTube's non-ADA compliant captioning services, this Court has yet to analyze if the live captioning services fully meets the effective communication requirements pursuant to Title II of the ADA. With this premature decision, this Court has incorrectly determined that Plaintiff's case is entirely moot.

5.      This Court has not addressed the affirmative action requirements under Title II of the ADA that would allow Plaintiff Haulmark to obtain monetary damages for the Defendants' failure to act and because of their intentional discrimination.

## II.      CORRECTIONS TO FACTUAL BACKGROUND

**A.      "The committee proceedings held that day were streamed as audio-only with auto-generated captioning."**

6.      The YouTube platform, which contains inaccurate and unintelligible automatic generated captioning for **some** videos, only contains the legislative proceedings held within the chambers of the legislative bodies, but does not contain the full legislative proceedings of legislature committees since its implementation. Beginning in 2017, the Kansas Legislature's entire legislative proceedings, including those held in the legislature chambers and committees, were streamed and then archived on the Kansas Legislature's website as audio-only recordings. These audio-only recordings remain available for the public to access anytime from anywhere with internet-enabled electronic devices.

7.      The Defendants have not claimed in their filed briefs that these available audio-only recordings contain captioning or any other auxiliary aids or services[1]. It is the Defendants' assertation, without raising any affirmative or undue burdens defenses, that Plaintiff Haulmark's numerous requests for transcripts to their committee proceedings must be limited rather than blanketed over all of their archived recordings.

8.      In his Complaint, Plaintiff Haulmark has alleged there have been no auxiliary aids or services, including captioning, available for the audio-only streaming services provided with the online broadcasting services between January 2017 and the date on which the Complaint was filed. (See ¶¶ 4, 17, 19, 49, and 82(E) in Complaint) (Docket No. 1)

---

[1] In their briefings, Defendants consider Plaintiff Haulmark's requests for accessibility to all of these archived audio-only recordings to be unreasonable, instead, they assert their requirement for smaller requests as being "reasonable accommodation" which is not recognized in the effective communication provisions of Title II of the ADA and by the Department of Justice.

9.      As Plaintiff Haulmark was excluded from these legislative proceedings of the Kansas Legislature committees, Plaintiff Haulmark requested with a February 18, 2019 letter that captions be added to these audio-only streaming services. On June 4, 2019, Plaintiff Haulmark filed the writ of mandamus against the Defendants after receiving no response from the Defendants. Following the dismissal of this writ, Plaintiff Haulmark requested pursuant to Kansas Open Records Act on November 1, 2019, which requires a three day response, confirmation from Defendant Tom Day that he is aware of the ADA violations in pertaining to their online broadcasting services.

10.     Fifteen days later after this Kansas Open Records Act request, Defendant Tom Day denied Plaintiff Haulmark the transcripts, necessary for Plaintiff Haulmark to benefit from these archived audio-only recordings of 2017-2019 Kansas Legislature committee meetings.

11.     Although Plaintiff Haulmark and Defendant Tom Day met in December 2019 to reach an agreement, Plaintiff Haulmark is still denied access to legislative committee meetings for the 2020 Kansas Legislature Session. Because of this, Plaintiff Haulmark began to request transcripts to stay current with ongoing legislative meetings so he could participate in the political process along with his colleagues. Similarly to previous legislative sessions, Plaintiff Haulmark has been prevented from participating in the political process because his transcript requests for all of these archived audio-only recordings are denied by Defendant Tom Day.

12.     After Plaintiff Haulmark initiated this lawsuit against them, the Defendants asserted that they proposed a $2.47 million dollar project with the

estimate of completion to be on February 28, 2021. In the 2021 Legislative Session, Plaintiff Haulmark was excluded from all legislative committee meetings while the project was underway. Plaintiff Haulmark is still excluded from these same committee meetings today because the archived audio-only recordings do not contain any ADA-required auxiliary aids or services including the requested transcripts.

13.    Upon completion of this project, the legislative proceedings are required to be recorded and streamed in audiovisual format with ADA compliant live captioning. The current details of this project indicate that no transcripts, captions, or other auxiliary aids or services will be added to the audio-only archived recordings of legislative proceedings held from January 2017 to end of the project.

14.    The archived audio-only recordings, containing the legislative proceedings of the 2017-2021 Kansas Legislature sessions, remain available for the public to benefit from, but do not contain any necessary auxiliary aids or services including captioning or transcription to ensure Plaintiff Haulmark can benefit as equally as these individuals without a hearing disability. When the transcript requests were denied numerous of times, Plaintiff Haulmark is intentionally excluded on the basis of his hearing disability.

15.    Defendants are misinterpreting the requirements of Title II of the ADA. They argue that by following these requirements of the ADA, the Defendants are able to limit Plaintiff Haulmark's transcript requests while excluding him from the remaining audio-only recordings, for which there are still no auxiliary aids or services available for individuals with a hearing disability to have equal access.  Plaintiff

Haulark has been subjected to discrimination by their demands for smaller requests, which is prohibited by the second clause of Title II of the ADA. The Tenth Circuit explains that "the second clause [of Title II of the ADA] prevents [a public entity] from, say, making it disproportionately more difficult for handicapped individuals to participate; unfairly disadvantaging them compared to others; or otherwise discriminating against them in the manner the [public entity] provides its services, programs, and activities. " *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla*, 693 F.3d 1303, 1308 (10th Cir. 2012)

16.     Since no captioning or transcript has ever been provided for the meetings of Kansas Legislature's committees held between January 2017 and the end of the Kansas Legislature's 2020 Session, including these held on January 13, 2020, it must be understood that Plaintiff Haulmark's pending requests for transcripts to gain effective communication access for the first time to these meetings remain unfulfilled to this day.

17.     Under Title II of the ADA, in relation to the effective communication requirement, the Defendants must prove that the captionings for the audio-only recordings of Kansas Legislature committee meetings are available and provides effective communication. Despite this requirement, they are unable to prove it because no such captions are currently available on Kansas Legislature's website for all of their available audio-only recordings.

**B.     "In June 2019, Haulmark filed a writ of mandamus with the Kansas Supreme Court, requesting that the court compel the State of Kansas, and various other defendants, to provide online broadcasting services."**

Page 7

18.    Plaintiff Haulmark filed a writ of mandamus with the Kansas Supreme Court seeking to compel the State of Kansas, along with various other defendants, to provide communication access to these audio-only streaming services and to improve Youtube captioning in order to be effective. Not to "provide online broadcasting services."

19.    Plaintiff Haulmark filed this lawsuit because no such auxiliary aids or services existed for the legislature committee meetings available through this online broadcasting service. The captioning on YouTube also needed improvement.

20.    The Defendants' online broadcasting services, which include streaming services on the Kansas Legislature's website and on their YouTube channel, had already been in operation before Plaintiff Haulmark contacted them.

21.    Plaintiff Haulmark believes that his lack of legal experience and understanding of the anti-discrimination laws is the reason he was unable to properly outline the cause of action when filing this writ during that time. If given another opportunity today, he would include the ADA requirements and what a public entity is commanded to do under this ADA law. Then he would likely succeed.

**C.    "Haulmark alleges that Defendants' failure to provide accommodations—namely the failure to provide accurate captioning on proceedings posted online—has prevented him from exercising his right to participation in the political process and has led to social isolation due to missing out on legislative proceedings only accessible to individuals without hearing disabilities."**

22.    It is important to recognize that the effective communication provisions have their own requirements and defenses and are separate from other parts of the Title II of the ADA regulations that regulate reasonable modifications.

23.     Not only the failure to provide accurate captionings on the Youtube channel to achieve effective communication, the Defendants have failed to provide any auxiliary aids or services for their audio-only recordings that contain these legislature committee meetings. Thus, Plaintiff Haulmark requested for transcripts to these legislature committee proceedings, not available on the Defendants' Youtube channel. Defendant Tom Day refuses to provide these ADA-required transcripts to ensure that Plaintiff Haulmark has effective communication access to these audio-only recordings of the legislative proceedings held in the Kansas Legislature in the format of committee meetings.

24.     As of during the pleading stage of this case, Youtube's automated captioning services were the only auxiliary aid or service being utilized by the online broadcasting services of the Defendants. The online broadcasting services did not utilize any other different auxiliary aids or services during this pleading stage.

25.     With his pleadings, Plaintiff Haulmark focused on the YouTube's automatic captioning service to demonstrate that the Defendants made it impossible for him to equally participate in legislative proceedings and to equally benefit from them. With their $2.47 million dollar project, the Defendants discussed the possibility of using a different captioning service in the future. In their briefings, Defendants speculated for when the project is completed. They did not explain how the new captioning service would meet the effective communication requirement. Plaintiff Haulmark was therefore not able to challenge the new captioning system because it

has not been implemented until after the final briefing was filed by Defendant Tom
Day on April 8, 2021.

### III.    ERROR ON THE MOTIONS SUBMITTED BY THE DEFENDANTS

26.    The current dispute arises from the motions to dismiss submitted by the
Defendants, therefore, this Court erred in drawing all factual inferences against
Plaintiff Haulmark. Furthermore, there is evidence inference when the Defendants
did not provide evidence to support their argument when seeking summary judgment
that the YouTube's automatic captioning services provides effective communication for
Plaintiff Haulmark as mandated by Title II of the ADA. Until the final filing of the
pleadings, the new captioning system has not been fully implemented to be debated by
both parties. Additionally, Defendants have not provided any evidence that Plaintiff
Haulmark is capable of equally participating in these audio-only recordings, which are
legislative proceedings of Kansas Legislature committees, published on the Kansas
Legislature's website.

27.    For Plaintiff Haulmark "to establish a violation of Title II of the ADA [...]:
He must establish: (1) that he is a qualified individual with a disability; (2) that he
was excluded from participation in or denied the benefits of the [Defendants'] services,
programs or activities, or was otherwise discriminated against by the [Defendants];
and (3) that such exclusion, denial of benefits or discrimination was by reason of his
disability. Under the ADA, a plaintiff must show that the discrimination was
intentionally directed to him or her in particular, and if this burden is met, the burden
then shifts to the [Defendants] to show that the accommodation provided was either

effective or that the accommodation sought and not provided would have resulted in a fundamental alteration of necessary procedures or an undue financial or administrative burden." *Makeen v. Colorado*, Civil Action No. 14-cv-03452-CMA-CBS, 23 (D. Colo. Dec. 18, 2015) (Citing *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273 (D. Conn. 2013)) (Internal quotation marks omitted)

28.    Under Title II of the ADA, the Defendants must show that their real-time captioning of their online broadcasting services as part of their $2.7 million dollar project provides effective communication to ensure Plaintiff Haulmark is able to equally participate in and benefit from the online broadcasting services for the current and future legislative sessions. They have not.

29.    The new captioning services was implemented after the final pleading was filed by Defendant Tom Day on April 8, 2021 and during the ripening stage. Due to the fact that the Defendants did not meet their burden of showing the new captioning services is effective by providing an update with the important details about this services, this Court has no right to issue a decision on this. The Defendants should have provided this Court with an update about the new captioning system being operational for the first time so that Plaintiff Haulmark could have responded and demonstrated why it was ineffective, if not effective, without suffering prejudice.

30.    As discussed earlier, the Complaint and Responses in Opposition explain Plaintiff Haulmark's allegations that Defendant Tom Day refuses to provide transcripts for archived audio-only recordings containing the legislative proceedings of the Kansas Legislature's committees, as well as for the captioning for audiovisual

recordings, containing the legislative proceedings of the legislature, to be improved to ensure effective communication for Plaintiff Haulmark to benefit from.

31.     It has not been demonstrated by the Defendants how their automatic generated captioning is effective, nor how the accommodations requested by Plaintiff Haulmark and not provided would cause an undue financial or administrative burden.

## IV.     CONGRESS INTENDED TITLE II OF THE ADA TO ABROGATE SOVEREIGN IMMUNITY

32.     During the finding of facts from the parties, this Court incorrectly determined that the archived audio-only recordings contained captions, when in fact they did not. Also, this Court did not address and apply the requirements of the effective communication provisions of Title II of the ADA to YouTube's automatic captioning services or the newly implemented captioning services. Additionally, the new live captioning system was not subjected to judicial review. Therefore, this Court is clearly erroneous when establishing Plaintiff Haulmark's claim to be based on past ADA violations.

33.     With the correction of this mistake by this Court, Defendant Tom Day is to be enjoined to provide the requested transcripts for all audio-only recordings of the Kansas Legislature's committee meetings under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). In spite of their lack of filing a sovereign immunity defense, Defendants State of Kansas and Legislative Administrative Services are not immune from monetary damages.

34.     First, the Supreme Court holds that "Title II creates a private cause of action for damages against States for conduct that *actually* violates the Fourteenth

Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) (Emphasis retained)

35.     Then, the Tenth Circuit explains in *Guttman v. Khalsa*, 669 F.3d 1101, 25 A.D. Cas. 1316, 44 NDLR P 130 (10th Cir. 2012) how the three-step analysis, provided by *Georgia*, is used to determine whether a plaintiff is entitled to monetary damages after claiming violations of Title II of the ADA. As the Tenth Circuit demonstrates, the three steps are: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Guttman* at 1113

36.     There is no doubt that by recording committee meetings of the Kansas Legislature only in audio format and to be offered to the public without captioning, transcripts, or any other auxiliary aids or services affirmatively required by the ADA, Plaintiff Haulmark cannot engage in the First Amendment protected activities in order to pursue his Fourteenth Amendment protected rights to participate in the political process. Defendant Tom Day never provided the requested transcripts of these archived audio-only recordings, which violated the ADA and left Plaintiff Haulmark unable to participate in the political process because of his hearing disability.

37.     Plaintiff Haulmark's "right to meaningful participation in the political process and right of access to publicly available information needed to participate in the process is a fundamental right, and an infringement of the right should receive

heightened scrutiny." *Reininger v. Oklahoma*, 292 F.Supp.3d 1265, 1259 (W.D. Okla. 2017).

38.     It was in *Reininger* case that the plaintiff, an individual with a hearing disability, claimed that this online streaming of legislative proceedings did not provide communication access to the audio content. In order to provide effective communication accessibility for individuals with a hearing disability, this individual plaintiff contacted the officers of the legislative bodies regarding compliance with Title II of the ADA and Section 504 of the Rehabilitation Act.

39.     The defendants in *Reininger* admitted noncompliance and refused to add captions due to budgetary constraints. Similar to Defendant Tom Day, the individual defendants of the *Reininger* also argued that they were entitled to sovereign immunity under the Eleventh and Tenth Amendments for monetary damages while admitting that Tenth Circuit "authorized an action for prospective injunctive relief against a state official for a violation of the ADA under the *Ex parte Young* doctrine." *Reininger* at 1259. Like the State of Kansas and Legislative Administrative Services in relation to the legislative proceedings conducted by their respective legislature's committees, the Oklahoma Legislature refused to provide captioning for the live streaming of its legislative proceedings over the Internet, in violation of Title II of the ADA. As the court found in *Reininger*, the Eleventh Amendment's sovereign immunity had been validly abrogated. Further, in *Reininger*, the court observed that those with a hearing disability were discriminated against in state governments, as well, when it came to judicial resources, by Congress, when enacting the ADA.

40.     Another similar case involves the online streaming services operated by the Florida Legislature, which lacked captions, and excluded individuals with a hearing disability. *Nat'l Ass'n of the Deaf v. State*, 318 F. Supp. 3d 1338 (S.D. Fla. 2018). A notice was received from the plaintiff, an individual with a hearing disability who requested accommodations, but the Florida defendants declined to take action, despite repeated requests. This Florida court determined that individuals with a hearing disability have a right to participate in democratic process by accessing publicly available information based on *Reininger's* ruling.

41.     Following the appeal to the Eleventh Circuit by the defendants in *Nat'l Assn of the Deaf*, there were two decisions with the first one being vacated by the second one. The district court's decision was affirmed by *Nat'l Ass'n of Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020) by finding that the ADA abrogated states' sovereign immunity.

42.     By refusing to provide any transcripts or any other auxiliary aids or services for all of the audio-only archives published between January 2017 until the end of the project, the Defendants prevent Plaintiff Haulmark from participating in the political process. Moreover, the Defendants failed to act timely to ensure that their online broadcasting services provide effective communication in a timely manner, as required by the ADA. Because of this outright exclusion on the basis of his hearing disability, Plaintiff Haulmark suffers ongoing injury and harm as a result of these failures.

43.     Haulmark is seeking an injunction for Defendant Tom Day to produce and furnish the transcripts of all archived audio-only recordings available on the Kansas Legislature's website, the only place the legislative proceedings of the Kansas Legislature committees, going back to January 2017, can be accessed. The Tenth Circuit construed services, programs, and activities to mean including all outputs of a public entity. *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla*, 693 F.3d 1303, 2012 U.S. App. LEXIS 19102, 26 Am. Disabilities Cas. (BNA) 1422 (10th Cir. 2012)

44.     According to the Supreme Court, the Tenth Circuit, and a sister district court, the claim for monetary damages by Plaintiff Haulmark is appropriate.

## V.     THE NEW LIVE CAPTIONING SYSTEM

45.     As this case was ripening, the Defendants brought a new live captioning system into operation around April 2021. This new live captioning became activated several weeks after their $2.74 Million Kansas Virtual Statehouse Project's deadline of February 28, 2021 and a few weeks after the last briefing on March 8, 2021. Plaintiff Haulmark requested that in the Temporary Restraining Order, but it is no longer necessary if effective communication access is established as requested.

46.     It is the responsibility of the Defendants to bring this new captioning system to the attention of this Court and of Plaintiff Haulmark after it has been implemented and operational. Then, Plaintiff Haulmark could have evaluated and determined whether the new captioning system was providing effective communication. If it was not, Plaintiff Haulmark would have the opportunity to challenge the Defendants' assertion about what constitutes effective communication.

47.     "[The] defendants were investigating possible auxiliary aids years before plaintiffs' lawsuit, they did not actually provide captioning until after plaintiffs filed their complaint. " *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 387 (4th Cir. 2011). In *Feldman* involving equal access and accommodations for individuals with a hearing disability where a sports stadium alleged that providing captioning after the litigation commenced mooted plaintiffs' ADA claims, the Fourth Circuit held that "[g]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of their alleged ADA violations is *nearly impossible*." *Feldman v. Pro Football, Inc.*, 419 Fed.Appx. 381, 387 (4th Cir.2011). (Emphasis retained)

48.     The Tenth Circuit declared that it is "hesitant to declare the [ADA claims] moot, which would allow Defendants to evade judicial review." *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 865 (10th Cir. 2003)

49.     The Defendants do not make an affirmatively showing that technological mishaps, vendor changes, or flipping the switch to off will not occur in the future that would prevent individuals with a hearing disability from participating in and benefiting from these legislative proceedings that are delivered through streaming audiovisual content after the completion of their $2.74 million dollar project. This current live captioning system is not being implemented in the same manner as what Plaintiff Haulmark stated about the other state legislatures using the same streaming platform.  It is for these reasons that judicial review is needed.

50.     Instead of taking into account the importance of effective communication provisions of Title II of the ADA and how the Defendants could easily stop the current captioning system, this Court made a premature decision to moot Plaintiff Haulmark's claim with regard to the new captioning system, which has prejudiced Plaintiff Haulmark.

## VI.     TITLE II OF THE ADA REQUIRES AFFIRMATIVE ACTION

51.     As Plaintiff Haulmark discusses in his Complaint and other pleadings, the Defendants have failed to meet their affirmative obligation under Title II to ensure that all audio and video content made available through their online broadcast services is fully accessible to Plaintiff Haulmark and to others with hearing disabilities.

52.     If the Defendants provided effective communication since the implementation of their online broadcasting service, Plaintiff Haulmark would not have suffered a cognizable injury when attempting to access any of these archived audio-only recordings. For each of the Kansas Legislature sessions since 2017, Plaintiff Haulmark, like any other political leader without a hearing disability, would have been able to review, discuss, and participate in support or opposition to any of the previous, upcoming, and pending bills in the best interests of the communities he cares about. He would have been able to monitor the streaming and review the archived recordings together with his other colleagues during his political activities while discussing the upcoming elections of incumbent candidates and the pending legislation.

53.     Due to the Defendants' failure to take any affirmative action to ensure that their services, programs, and activities offered to the public are in full compliance with Title II of the ADA, Plaintiff Haulmark's participation in the political process has been on hold, and still is. Thus his reputation as a leader of the political community was damaged, and it is continuing to be damaged when his political colleagues deem him incapable of working with them, which makes him feel worthless due to his hearing disability.

## VI.    CONCLUSION

54.     For the reasons herein set forth, Plaintiff Haulmark respectfully urges this Court to alter or amend the determinations and conclusions set out in this Motion and to grant relief as prayed for with this Motion.

-------------------------------------------------------------------

Respectfully submitted this 17th of
September

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th of September, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and a copy with postage prepaid was placed in mail of the U.S. Mail to the following:

Arthur S. Chalmers
Assistant Attorney General
120 S.W. 10th, 2nd Floor
Topeka, KS 66612

/s/ChrisHaulmark
PLAINTIFF, *pro se*